GLENN D. POMERANTZ (SBN 112503)
Glenn.Pomerantz@mto.com
BART H. WILLIAMS (SBN 134009)
Bart.Williams@mto.com
KELLY M. KLAUS (SBN 161091)
Kelly.Klaus@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Telephone:     (213) 683-9100
Facsimile:      (213) 687-3702

ROBERT H. ROTSTEIN (SBN 72452)
rxr@msk.com
Eric J. German (SBN 224557)
ejg@msk.com
Betsy A. Zedek (SBN 241653)
baz@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California  90064-1683
Tel: (310) 312-2000; Fax: (310) 312-3100

GREGORY P. GOECKNER (SBN 103693)
gregory_goeckner@mpaa.org
DANIEL E. ROBBINS (SBN 156934)
dan_robbins@mpaa.org
15301 Ventura Boulevard, Building E
Sherman Oaks, California  91403-3102
Tel: (818) 995-6600; Fax: (818) 285-4403

Attorneys for Defendants and Counter-complainants
DISNEY ENTERPRISES, INC., PARAMOUNT
PICTURES CORP., SONY PICTURES
ENTERTAINMENT, INC., TWENTIETH CENTURY FOX
FILM CORP., and WARNER BROS. ENTERTAINMENT,
INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REALNETWORKS, INC., a Washington Corporation; and REALNETWORKS HOME ENTERTAINMENT, INC., a Delaware corporation,<br><br>          Plaintiffs and Counter-defendants, | CASE NO.  C 08 4548 HRL<br><br>**COUNTER-COMPLAINT** |

1

vs.

2

DVD COPY CONTROL ASSOCIATION,

3    INC., a Delaware nonprofit corporation,
     DISNEY ENTERPRISES, INC., a

4    Delaware corporation; PARAMOUNT
     PICTURES CORP., a Delaware

5    corporation; SONY PICTURES
     ENTERTAINMENT, INC., a Delaware

6    corporation; TWENTIETH CENTURY
     FOX FILM CORP., a Delaware

7    corporation; NBC UNIVERSAL, INC., a
     Delaware corporation; WARNER BROS.

8    ENTERTAINMENT, INC., a Delaware
     corporation; and VIACOM, Inc., a

9    Delaware Corporation,

10                   Defendants and
                     Counter-complainants.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNTER-COMPLAINT
CASE NO.  C 08 4548 HRL

1    This Court has original subject matter jurisdiction over the first cause of action

2    pleaded herein pursuant to 28 U.S.C. §§ 1331 and 1338(a), and the Digital Millennium Copyright

3    Act, 17 U.S.C. §§ 1201, *et seq*. (the "DMCA"); and supplemental jurisdiction over the second

4    cause of action pleaded herein pursuant to 28 U.S.C. § 1367.  Counter-complainants Disney

5    Enterprises, Inc., Paramount Pictures Corporation, Sony Pictures Entertainment Inc., Twentieth

6    Century Fox Film Corporation, and Warner Bros. Entertainment Inc. (collectively, "Counter-

7    complainants"), by their attorneys, for their counter-complaint against RealNetworks, Inc.

8    ("RealNetworks") and RealNetworks Home Entertainment, Inc. ("RealNetworks Home

9    Entertainment") (jointly, "Real" or "Counter-defendants"), allege, on personal knowledge as to

10   themselves and information and belief as to others, as follows:

11                                   **NATURE OF THE ACTION**

12        1.        Real has announced its intention to commence trafficking in a software product

13   called "RealDVD" that by design bypasses technological measures that protect against access to

14   and copying of movies from digital versatile discs ("DVDs").  As anyone who has ever watched a

15   popular movie on a DVD knows from the opening message, copying the content on the DVD is

16   strictly prohibited.  RealDVD circumvents the technological measures that help to enforce this

17   prohibition.

18        2.        Real admits that what RealDVD is doing "has been done illegally for awhile" with

19   other software products, a long line of which have been shut down by the federal courts.  Real,

20   however, claims that RealDVD differs from its predecessors, and that when RealDVD

21   circumvents the DVD protection measures, it is "legal" and "100% legit."  There is nothing legal

22   or legitimate about it.  Real unlawfully makes and sells a product that circumvents the DVD

23   protection measures and makes playable copies of protected content onto computer hard drives.

24        3.        Counter-complainants own and/or control copyrights in many of the most

25   successful and critically acclaimed movies and recorded television programs released in the

26   United States and throughout the world, and they and their affiliates and licensees are among the

27   leading producers and distributors of such motion pictures content in the DVD format.  Counter-

28   complainants have invested billions of dollars creating their content and distributing it to

1 consumers. Each Counter-complainant studio was unwilling to release its content on DVD until

2 technological measures were adopted to safeguard that content from access and copying.

3 RealDVD places Counter-complainants and their businesses at risk of immediate and widespread

4 harm. For the low price of $29.99, RealDVD can be used to build a hard-drive library of

5 complete copies of motion picture content on DVDs, including from DVDs borrowed from

6 friends or rented (at a fraction of the purchase price) from NetFlix, Blockbuster or other rental

7 services. The misuse of Counter-complainants' content is of no concern to Real, which pockets

8 $29.99 for every base product it sells – and an extra $19.99 for each additional copy of the

9 software that will allow copied DVD content to be played on additional hard drives. It is small

10 wonder, then, that Real's CEO, Rob Glaser, anticipates his product's illicit use with a shrug and a

11 knowing wink: "If you want to steal, we remind you what the rules are and we discourage you

12 from doing it, but we're not your nanny."

13      4.     Real was able to design RealDVD to circumvent the DVD protection technology

14 by misusing a limited license it obtained to make authorized DVD products. Specifically, in

15 August 2007, RealNetworks obtained a license from the organization that licenses the DVD

16 protection technology, the DVD Copy Control Association ("DVD-CCA") (the "DVD-CCA

17 License Agreement"). The DVD-CCA License Agreement authorized Real to make DVD *player*

18 products. Real, however, used the technology it obtained under the DVD-CCA License

19 Agreement to develop RealDVD, a DVD *copying* product that performs the completely

20 unauthorized function of circumventing CSS's access- and copy-controls to make digital-to-

21 digital playable copies from DVDs to computer hard drives. Real's misuse of the DVD

22 protection technology was not only unauthorized but was prohibited by the DVD-CCA license

23 agreement.

24      5.     Counter-complainants are entitled to immediate relief from Real's flagrant

25 violation of their rights. RealDVD's assault on the market for DVDs is obvious: the ability to

26 use RealDVD to "rent (or borrow), rip, and return" motion picture content released on DVD

27 fundamentally changes the economic equation of buying DVDs. For example, why pay $18.50

28 for a DVD if the same content can be copied permanently and perfectly for the two dollars (or

6055007.1           -2-          COUNTER-COMPLAINT
CASE NO. C 08 4548 HRL

1  less) it costs to rent the movie?  For that matter, why pay $3.25 to "rent and rip" a movie if it can

2  be borrowed from a friend or acquaintance for free, copied with RealDVD and then returned?

3        6.     The harm that RealDVD threatens to inflict is hardly limited to the sale and rental

4  of DVDs.  RealDVD also poses an immediate threat to significant alternative means whereby

5  Counter-complainants distribute content in digital format to consumers.  Counter-complainants

6  currently offer their content through video-on-demand channels, Internet download services (*e.g.*,

7  Amazon and iTunes), "Digital Download" DVDs (premium DVD packages that include a digital

8  copy suitable for download to a personal computer or portable device) and other channels.

9  Counter-complainants are actively pursuing and developing – and taking the associated risks of

10  investing money, time and technology in – these and other digital distribution channels.

11  RealDVD, which has incurred none of the risks and made none of the investments in these

12  businesses, threatens to undermine all of these present and potential channels, at significant cost

13  to Counter-complainants and their business partners.

14        7.     The fact that Real is the entity trafficking in RealDVD greatly increases the threat

15  to Counter-complainants' business.  Real is no minor player in the information technology sector.

16  Real itself estimates that its products (*e.g.*, the RealPlayer) reside on millions of personal

17  computers in the United States and Real enjoys extensive brand recognition.  Real plainly has the

18  capability, through these other Internet-connected products, to "blast" electronic messages to its

19  millions of users in an attempt to market its new RealDVD product.  Moreover, Real styles itself

20  as a maker and distributor of lawful products, not as a renegade "hacker."  By promoting

21  RealDVD as completely legal and legitimate, Real conveys the false impression that conduct that

22  consumers have long understood to be wrong is now legal.  This misleading promotion threatens

23  to drive up early and immediate adoption of RealDVD by millions of end-users, each of whom

24  will have downloaded a copy of RealDVD that can be used to evade DVD protection measures

25  and allow for unlawful copying on an enormous scale.

26        8.     Real's conduct will cause grave and irreparable harm to Counter-complainants

27  should it be allowed to continue unabated.  Counter-complainants bring this action to stop that

28  harm and protect their rights.

**THE PARTIES**

9.      Counter-complainant Disney Enterprises, Inc. ("DEI") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business located in Burbank, California.

10.     Counter-complainant Paramount Pictures Corporation ("Paramount") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business located in Los Angeles, California.

11.     Counter-complainant Sony Pictures Entertainment Inc. ("Columbia TriStar") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business located in Culver City, California.

12.     Counter-complainant Twentieth Century Fox Film Corporation ("Fox") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business located in Los Angeles, California.

13.     Counter-complainant Warner Bros. Entertainment Inc. ("Warner Bros.") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business located in Burbank, California.

14.     On information and belief, Counter-defendant RealNetworks, Inc. is incorporated under the laws of the State of Washington and has its principal place of business at 2601 Elliott Avenue, Suite 1000, Seattle, Washington 98121.

15.     On information and belief, Counter-defendant RealNetworks Home Entertainment, Inc. is incorporated under the laws of the State of Delaware and has its principal place of business at 2601 Elliott Avenue, Suite 1000, Seattle, Washington 98121.

**JURISDICTION AND VENUE**

16.     The Court has subject matter jurisdiction over the federal law cause of action pleaded herein pursuant to 28 U.S.C. §§ 1331 (federal question), and 1338(a) (any act of Congress relating to copyright), and pursuant to the DMCA, 17 U.S.C. §§ 1201, *et seq.*  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the state law cause of action

1    pleaded herein because it is so related to Counter-complainants' claims under the DMCA as to be

2    part of the same case or controversy.

3        17.    This Court has personal jurisdiction over Real, and venue is proper in this Judicial

4    District pursuant to 28 U.S.C. § 1391(b) because, *inter alia,* (a) Real and/or its agents are doing

5    business in this District; and (b) a substantial part of the events or omissions giving rise to this

6    lawsuit, as well as substantial injury to Counter-complainants, have occurred or will occur in

7    interstate commerce, in the State of California, and in the Northern District of California as a

8    result of Real's violations of the DMCA, as alleged in detail below.  Venue also is proper in this

9    District pursuant to 28 U.S.C. § 1400(a) in that Real may be found in this District in light of its

10   extensive commercial activities here.  Real also has expressly consented, in Section 9.5 of the

11   DVD-CCA License Agreement, to jurisdiction and venue in this Judicial District over the second

12   cause of action herein.

13                                **BACKGROUND FACTS**

14   **Counter-complainants' Copyrighted Motion Pictures and Television Programs**

15       18.    Counter-complainants, directly or through their affiliates, are engaged in the

16   business of developing, producing, and distributing, and licensing to others the right to distribute

17   and exhibit, copyrighted motion pictures and/or television programs in the United States and

18   throughout the world.

19       19.    Counter-complainants, either directly or through their affiliates and/or licensees,

20   distribute their copyrighted works in various forms, including, without limitation, for exhibition

21   in theaters, through television broadcasts, through cable and direct-to-home satellite services

22   (including basic, premium, "pay-per-view" and "video on demand" television services), and

23   through digital download platforms such as the MovieLink, CinemaNow, Playstation Network,

24   iTunes, Xbox Live Marketplace, and Amazon Video on Demand services.  In addition, Counter-

25   complainants distribute their motion pictures and/or television programs on DVD by selling them

26   directly or indirectly to the home viewing market.  Further, consumers have the option to

27   purchase certain of Counter-complainants' copyrighted works in configurations that include –

28   often for an additional fee – DVDs with added features that include a so-called "Digital

Download" file, *i.e.*, a file containing a digital copy of the motion picture that can be uploaded to a computer hard drive.

20.     A DVD is a digital storage medium that is capable of storing the digital video and audio information that comprises a full-length motion picture (or other audiovisual work).  Since the introduction of DVDs into the marketplace, DVD has become the dominant medium for the distribution of movies or other audiovisual works for home viewing.

21.     Counter-complainants have invested (and continue to invest) substantial sums of money and effort each year to develop, produce and distribute motion pictures and/or television programs protected under copyright and other laws.  Real's illegal actions, as described below, deprive Counter-complainants of their exclusive rights and the economic value of those rights.

**The DVD Technology and the Content Scramble System ("CSS")**

22.     DVDs are five-inch wide optical discs that contain recorded material in digital form, in this case Counter-complainants' copyrighted motion pictures and/or television programs.  Commercial entertainment DVDs also typically contain ancillary or "bonus" material, *e.g.,* interviews or deleted scenes, which is also subject to copyright protection.  DVD technology has significantly improved the clarity and overall quality of home viewing of pre-recorded content, *e.g.,* viewing audiovisual material on a television or computer screen.

23.     Because DVDs contain material in digital form, they present a heightened risk of illegal reproduction and distribution of copyrighted material.  Without appropriate safeguards, the material can be digitally copied and transmitted repeatedly without degradation of the clarity and overall quality.  The distribution of works in digital form on DVDs also presents an increased risk that illegal digital copies of Counter-complainants' copyrighted works will be transmitted over the Internet, stored in computer memory, or duplicated for unlawful sale, transfer or exchange.  Once these copies are "in the clear" and in the hands of others, repeated reproduction and distribution are possible, and the unlawful processes can be replicated endlessly.

24.     To substantially lower the risks of such illegal copying, each Counter-complainant insisted upon the development of an access control and copy prevention system to safeguard against access to and reproduction of their copyrighted works released in digital form on DVD

format.  Counter-complainants currently use the Content Scramble System, or "CSS," for this purpose.

25.     CSS is an encryption-based security and authentication system that requires the use of appropriately licensed and configured hardware, such as a DVD player or computer DVD drive, to decrypt, unscramble and play back the material contained on encrypted DVDs.  CSS includes elements of encryption and other security and authentication measures that require DVD playback products to operate with certain keys in order to descramble and play back copies of the material contained on the DVDs.  CSS also safeguards against reproduction and distribution of such keys and of the copyrighted audiovisual content released on DVD format.

26.     The CSS technology is licensed by the DVD-CCA.  The DVD-CCA licenses the CSS technology enabling the manufacture of CSS-compliant products.  CSS has been licensed to hundreds of DVD player and drive manufacturers (both hardware and software) and DVD content distributors in the United States and around the world.  All sectors of the DVD industry, including the software and hardware manufacturers of DVD players, drives and replicators and of descrambling modules that must be employed in DVD products, as well as disc replicators and content providers (including Counter-complainants and other motion picture and television studios), have adopted CSS as direct licensees of DVD-CCA or by contracting through CSS licensees.

27.     DVD-CCA licenses CSS subject to strict requirements that prevent misuse of the DVD content by licensed players.  These controls are intended to ensure, among other things, that DVD player technology is used only to enable viewing – and not copying – of DVDs.  Nothing in the DVD-CCA License Agreement authorizes a licensee to create a product to make playable copies of DVD content.

28.     Counter-complainants have relied upon the security provided by CSS in manufacturing, producing and distributing to the public their copyrighted works in standard definition DVD format.

1   **Real Obtains A DVD-CCA License And Uses The Licensed Technology To Develop A**

2   **Circumvention Product, RealDVD**

3          29.     On or about August 13, 2007, Counter-defendant RealNetworks executed a DVD-

4   CCA License Agreement in order to become a licensee of CSS technology.

5          30.     With the benefit of the CSS technology it obtained with authorization to build a

6   product to *play* DVDs, Real developed RealDVD, a product that makes playable, permanent

7   *copies* of DVDs.  RealDVD bypasses the CSS protection measures by making a complete, bit-for-

8   bit copy of the entire contents of a CSS-protected DVD onto either a local computer hard drive or

9   a connected external USB hard drive.  These copies are fully playable from the hard drive.  A

10  user of RealDVD can register up to four additional computer hard drives to their RealDVD

11  account, for an additional charge of $19.99 each.  Once registered, each of these additional hard

12  drives will play at least those copies saved to an external USB hard drive connected to the first

13  computer registered to the user's account.

14         31.     The purpose and use of RealDVD is to circumvent, unlawfully and without any

15  authorization, the CSS access control and copy control systems that protect Counter-

16  complainants' content on DVDs.  Counter-complainants have not granted any license,

17  permission, or authorization to Real or its end-users to circumvent CSS as described herein.

18         32.     RealDVD, by design and operation, causes immediate and irreparable harm to

19  Counter-complainants and their exclusive rights protected under federal law.  Users of RealDVD

20  can load their entire DVD collection – or a series of DVDs they rent from services like

21  Blockbuster or Netflix – to computer hard drives to create electronic "jukeboxes."  RealDVD also

22  can be used to load entire DVD collections of friends and neighbors, thus creating a significantly

23  expanded library.  Although RealDVD's graphic user interface warns users not to do so,

24  RealDVD does not stop an end-user from loading rented or borrowed DVDs onto a computer,

25  illegally copying the entire content, and thereby obtaining a permanent, playable copy of the

26  content for the minimal price of a rental fee or for free (in the case of borrowed DVDs).

27

28

33.     Real's dissemination of RealDVD causes substantial harm to Counter-complainants and to their intellectual property and threatens to interfere with the continued growth and development of numerous existing and developing distribution channels.

### FIRST CAUSE OF ACTION

### (VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT,

### 17 U.S.C. §§ 1201, *ET SEQ*.)

### [By DEI Paramount, Fox, and Warner Bros. Against Both

### Counter-defendants]

34.     Counter-complainants Paramount, Fox, DEI and Warner Bros. (the "DMCA Counter-complainants") incorporate by reference each and every allegation set forth in Paragraphs 1 through 33, inclusive, as though fully set forth herein.

35.     Section 1201(a)(2) of the DMCA, 17 U.S.C. § 1201(a)(2), provides, in pertinent part, that no person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that (A) is primarily designed for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title; (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

36.     Section 1201(b) of the DMCA, 17 U.S.C. § 1201(b) provides, in pertinent part, that no person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that (A) is primarily designed for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof; (B) has only limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof; or (C) is marketed by that person or another acting in concert with that

person with that person's knowledge for use in circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof.

37.     CSS is a judicially recognized technological measure employed by the DMCA Counter-complainants that (a) effectively controls access to works protected by the Copyright Act and (b) effectively protects the DMCA Counter-complainants' copyrights by controlling whether an end user can reproduce, manufacture, adapt, publicly perform and/or distribute copies of their copyrighted works or portions thereof.

38.     Real offers to the public, provides, and/or otherwise traffics in a software product – RealDVD – that (a) is primarily designed or produced for the purpose of circumventing CSS or the protection afforded by CSS; (b) has only limited commercially significant purpose or use other than to circumvent CSS or the protection offered by CSS; and/or (c) is marketed by Real and/or others acting in concert with it with the knowledge that RealDVD is used to circumvent CSS or the protection afforded by CSS.

39.     By circumventing CSS and by offering to the public and providing the services hereinabove alleged, Real has violated 17 U.S.C. §§ 1201(a)(2), and 1201(b).

40.     The DMCA Counter-complainants will sustain actual damage in that, among other things, the value of their copyrighted works will be reduced and their goodwill will be harmed as a result of Real's violation of 17 U.S.C. §§ 1201(a)(2), and 1201(b).  The DMCA Counter-complainants also are entitled to Real's profits from its violations of 17 U.S.C. §§ 1201(a)(2), and 1201(b).  Alternatively, at the DMCA Counter-complainants' election, Counter-complainants are entitled to an award of the maximum statutory damages as permitted by the DMCA, 17 U.S.C. § 1203(c).

41.     Real's conduct, unless enjoined and restrained by the Court, will cause grave and irreparable injury to the DMCA Counter-complainants, who have no adequate remedy at law. Pursuant to 17 U.S.C. § 1203, the DMCA Counter-complainants are entitled to a permanent injunction prohibiting further violations of § 1201.

42.     The DMCA Counter-complainants further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 1203.

**SECOND CAUSE OF ACTION**

**(BREACH OF CONTRACT)**

**[By Paramount, Sony Pictures, Fox, and Warner Bros. Against**

**Counter-defendant RealNetworks]**

43.     Counter-complainants Paramount, Fox, Sony Pictures, and Warner Bros. (collectively, the "Beneficiary Claim Counter-complainants") incorporate by reference each and every allegation set forth in Paragraphs 1 through 42, inclusive, as though fully set forth herein.

44.     As part of the consideration for the DVD-CCA License Agreement, RealNetworks expressly agreed to confer third-party beneficiary rights on any "Eligible Content Provider," defined in Section 9.5 as an entity that has commercially released one or more prerecorded motion pictures on DVD utilizing CSS. The Beneficiary Claim Counter-complainants and/or their affiliated companies are CSS Licensees that have commercially released one or more prerecorded motion pictures on DVD utilizing CSS. As such, the Beneficiary Claim Counter-complainants are Eligible Content Providers under the DVD-CCA License Agreement and are express third-party beneficiaries with standing to initiate or institute a Beneficiary Claim (under Section 9.5(a)) to require RealNetworks to comply with its obligations under the DVD-CCA License Agreement. The Beneficiary Claim Counter-complainants bring their state law breach of contract action against RealNetworks as a Beneficiary Claim under Section 9.5 of the DVD-CCA License Agreement. The Beneficiary Claim Counter-complainants have satisfied each and every condition precedent under the DVD-CCA License Agreement to commence a Beneficiary Claim against RealNetworks.

45.     The DVD-CCA License Agreement imposes a number of specific restrictions on RealNetworks. Among other requirements, Section 4.2 of the DVD-CCA License Agreement requires that RealNetworks only manufacture DVD products in compliance with certain technical and procedural specifications (the "CSS Specifications"). The CSS Specifications require, among other things that DVD products implement certain content features intended to protect against

1  access to, duplication of, and/or redistribution of CSS-protected content.  One such measure is

2  that, in order for a user of a DVD to watch a motion picture, a physical DVD must be present in

3  the player or computer DVD disk drive, a provision that the RealDVD software clearly violates.

4         46.     RealDVD fails to comply with the DVD-CCA License Agreement, including the

5  CSS Specifications, by, among other things, allowing Counter-complainants' copyrighted content

6  to be viewed without having a physical DVD in the disk drive of the computer.  This is in

7  material breach of Section 4.2 of the DVD-CCA License Agreement.

8         47.     RealNetworks' breaches of Section 4.2 of the DVD-CCA License Agreement will

9  injure The Beneficiary Claim Counter-complainants by exposing their valuable copyrighted

10  content to infringement of their exclusive rights, including without limitation the exclusive right

11  of reproduction.  Such injury is irreparable in that money damages alone cannot compensate the

12  Beneficiary Claim Counter-complainants for such injury.  Accordingly, as set forth below, the

13  Beneficiary Claim Counter-complainants seek injunctive relief as authorized by the DVD-CCA

14  License Agreement.  Such measures are necessary and appropriate to protect the Beneficiary

15  Claim Counter-complainants' copyrighted works.

16         48.     As a direct and proximate result of RealNetworks' breaches of the DVD-CCA

17  License Agreement, the Beneficiary Claim Counter-complainants will incur mitigation costs to

18  remedy the effects of those breaches, and have and will incur attorneys fees enforcing their rights.

19         49.     The Beneficiary Claim Counter-complainants further allege, on information and

20  belief, that RealNetworks' conduct was willful and/or malicious.

21         50.     Pursuant to Section 9.5 of the DVD-CCA License Agreement, the Beneficiary

22  Claim Counter-complainants are entitled to an award of reasonable attorneys' fees, expenses and

23  costs of up to $2 million, as well as recovery of the Beneficiary Claim Counter-complainants'

24  mitigation costs of up to $100,000, all as set forth in Section 9.5 of the DVD-CCA License

25  Agreement.

26  **PRAYER FOR RELIEF**

27         **WHEREFORE,** Counter-complainants pray for judgment against Real and

28  against all of its affiliates, agents, servants, employees, partners and all persons in active concert

1  or participation with it, for the following relief:

2  (a)  On the first cause of action, a temporary restraining order and preliminary

3  and permanent injunctive relief enjoining Real and all of its employees,

4  officers, directors, agents, servants, affiliates, attorneys, successors and

5  assigns, and all those acting directly or indirectly in concert or participation

6  with any of them, from violating Counter-complainants' rights under the

7  DMCA by selling, offering, marketing or otherwise trafficking in

8  RealDVD, or any product with substantially similar functionality;

9  (b)  On the first cause of action, an award to the DMCA Counter-complainants

10  of damages they have sustained or will sustain by reason of Real's

11  violation of 17 U.S.C. §§ 1201(a)(2) and/or 1201(b), all profits derived by

12  Real from such conduct, or in lieu thereof, should the DMCA Counter-

13  complainants so elect, such statutory damages as the Court shall deem

14  proper as provided in 17 U.S.C. § 1203(c), including damages for each act

15  of circumvention, device, product, component, offer or performance of

16  service in violation of 17 U.S.C. §§ 1201(a)(2) and/or 1201(b);

17  (c)  On the second cause of action, preliminary and permanent injunctive relief

18  enjoining RealNetworks and anyone acting in concert with it from

19  violation of the DVD-CCA License Agreement, including but not limited

20  to the obligations set forth in Section 4.2 of the DVD-CCA License

21  Agreement;

22  (d)  On both causes of action, an order directing that Real file with the Court

23  and serve upon counsel for Counter-complainants within thirty (30) days

24  after the entry of such order or judgment, a report in writing and under oath

25  setting forth in detail the manner and form in which Real has complied

26  with the injunction;

27

28

6055007.1

-13-

COUNTER-COMPLAINT
CASE NO.  C 08 4548 HRL

1

        (e)      Counter-complainants' costs and reasonable attorneys' fees in accordance

2

                 with 17 U.S.C. §§ 505 and/or 1203 and/or as set forth in Section 9.5 of the

3

                 DVD-CCA License Agreement;

4

        (f)       For recovery of the Beneficiary Claim Counter-complainants' mitigation

5

                 costs of up to $100,000, as set forth in Section 9.5 of the DVD-CCA

6

                 License Agreement;

7

        (g)      Prejudgment and post-judgment interest; and

8

        (h)      All such further and additional relief, in law or in equity, to which Counter-

9

                 complainants may be entitled or which the Court deems just and proper.

10

DATED: October 3, 2008               MUNGER, TOLLES & OLSON LLP

11

                             MITCHELL SILBERBERG & KNUPP LLP

12

                             GREGORY P. GOECKNER
                             DANIEL E. ROBBINS

13

14

                             By:_____*/s/ Rohit K. Singla*_____

15

                                 ROHIT K. SINGLA

16

                           Attorneys for Counter-complainants

17

18

19

20

21

22

23

24

25

26

27

28