GLENN D. POMERANTZ (SBN 112503)
Glenn.Pomerantz@mto.com
BART H. WILLIAMS (SBN 134009)
Bart.Williams@mto.com
KELLY M. KLAUS (SBN 161091)
Kelly.Klaus@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

ROBERT H. ROTSTEIN (SBN 72452)
rxr@msk.com
ERIC J. GERMAN (SBN 224557)
ejg@msk.com
BETSY A. ZEDEK (SBN 241653)
baz@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Tel: (310) 312-2000; Fax: (310) 312-3100

GREGORY P. GOECKNER (SBN 103693)
gregory_goeckner@mpaa.org
DANIEL E. ROBBINS (SBN 156934)
dan_robbins@mpaa.org
15301 Ventura Boulevard, Building E
Sherman Oaks, California 91403-3102
Tel: (818) 995-6600; Fax: (818) 285-4403

Attorneys for Studio Plaintiffs and Declaratory Judgment Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

REALNETWORKS, INC., a Washington Corporation; and REALNETWORKS HOME ENTERTAINMENT, INC., a Delaware corporation,

Plaintiffs,

vs.

DVD COPY CONTROL ASSOCIATION, INC., DISNEY ENTERPRISES, INC., PARAMOUNT PICTURES CORP., SONY PICTURES ENTERTAINMENT,

CASE NO. C 08-4548-MHP

**MOTION PICTURE STUDIO PLAINTIFFS' OPPOSITION TO REAL'S MOTION TO AMEND DECLARATORY JUDGMENT COMPLAINT**

DATE: December 22, 2008
TIME: 9:00 a.m.
CTRM: 15 (Hon. Marilyn Hall Patel)

Dockets.Justia.com

INC., TWENTIETH CENTURY FOX FILM CORP, NBC UNIVERSAL, INC., WARNER BROS. ENTERTAINMENT, INC., and VIACOM, INC., Defendants.

---

UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, UNIVERSAL CITY STUDIOS LLLP, PARAMOUNT PICTURES CORPORATION, TWENTIETH CENTURY FOX FILM CORPORATION, SONY PICTURES TELEVISION INC., COLUMBIA PICTURES INDUSTRIES, INC., SONY PICTURES ENTERTAINMENT INC., DISNEY ENTERPRISES, INC., WALT DISNEY PICTURES and WARNER BROS. ENTERTAINMENT INC.,

Plaintiffs,

vs.

REAL NETWORKS, INC. and REAL NETWORKS HOME ENTERTAINMENT, INC.,

Defendants.

CASE NO. C 08-04719 MHP

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

RealNetworks' ("Real") proposed amended complaint – based on a product that it describes only as a "New Platform" – is so vague and general that it fails even to disclose what the New Platform is, much less to give the Studios an opportunity to decide whether they have legal objections to it. The Court should deny Real's motion for at least two reasons.

*First*, Real's amendment is futile because Real fails to allege – as it is Real's burden, as a declaratory judgment plaintiff, to allege – the existence of an actual controversy between it and the Studios concerning the New Platform. Contrary to Real's assertion, the Studios have *not* contended that the opaquely described "New Platform" "violate[s] the CSS License Agreement and the anti-circumvention provisions of the Digital Millennium Copyright Act ('DMCA')," Proposed Amended Complaint ("Proposed Amendment") ¶ 5. The Studios cannot make that contention because Real has failed to tell the Studios what the New Platform is, how it was designed, how it operates, or any other facts that would allow the Studios to decide whether they have a legal objection to the New Platform.

*Second*, Real's proposal to use its amendment to insert the New Platform into the preliminary injunction proceedings will prejudice the Studios' ability to present their motion concerning RealDVD. The parties are in the middle of expedited preliminary injunction discovery concerning RealDVD, and the hearing on the Studios' motion is now on calendar for January 27.[1] Even if Real were to disclose to the Studios the characteristics of the New Platform today, the current schedule (according to which depositions are set to begin on December 1 2008 and expert reports are to be exchanged on December 19) could not possibly accommodate discovery and analysis regarding the New Platform.

[1] As we have explained previously (*see* Docket No. 55, filed Oct. 22, 2008), the Studios' lead counsel, Bart Williams, currently has a conflict with a previously scheduled state court criminal trial, in which he is lead counsel for the defendant. That trial has been scheduled to commence on January 26, 2009, the day before the start of the currently scheduled preliminary injunction hearing in this Court. We respectfully request that the Court move the preliminary injunction hearing up (or back) by a few weeks on the Court's calendar so that Mr. Williams may present the Studios' motion.

It appears that Real's true objective is to have the New Platform ready as an "Option B" that it can ask the Court to authorize if the Court decides to continue to enjoin the distribution of RealDVD. If Real wants to test the New Platform's legality, Real should tell the Studios what the product is and give them a meaningful opportunity to evaluate the product and litigate about it if necessary.

## II.  BACKGROUND

### A.  The Temporary Restraining Order And Preliminary Injunction Motions Have Been Directed To RealDVD

On September 30, 2008, the Studios filed their affirmative complaint against Real in the Central District of California, and Real filed its declaratory judgment complaint in this District. Both complaints – the Studios' and Real's – were directed exclusively to RealDVD, a software product that Real had announced and publicized and that Real had just started to offer publicly.

On October 3, the Court in the Central District transferred the Studios' complaint to this District; Real's declaratory judgment complaint, along with the Studios' counter-complaint in the declaratory judgment case, No. 08-4548, were reassigned to this Court; and this Court held a hearing and entered a temporary restraining order ("TRO"). Following a hearing on October 7, this Court extended the TRO and directed the parties to engage in discovery that "is absolutely necessary" for purposes of the Studios' motion for preliminary injunction. Tr. of Hr'g, Oct. 7, 2008, at 111:19-20. The parties are in the middle of an expedited schedule for preliminary injunction discovery.

### B.  Real's Failure To Tell The Court Or The Studios What The New Platform Is

Real asserts that it "conceived of and began developing the New Platform" at the same time it began "development of RealDVD." Mot. at 3:16-17. It follows that Real has known about the New Platform at least since it obtained access to the CSS technology, in August 2007. *See* Proposed Amendment ¶ 23. Thus, although it is clear that the New Platform has been in the works for some time, Real said nothing to the Studios about the New Platform before the litigation began, even though (as the parties previously informed the Court), Real and the Studios

had a tolling agreement and had communicated about RealDVD. Real also said nothing about the New Platform at either the October 3 or the October 7 TRO hearing before this Court.

Instead, Real first raised the idea about adding the New Platform to this case on October 20, nearly two weeks after the October 7 TRO hearing. On that day, Real's counsel called the Studios' counsel and said that Real had a "new product" that it wanted to add to the preliminary injunction motion. Declaration of Glenn Pomerantz ("Pomerantz Decl.") ¶ 2. Real's counsel did not describe this new product or state when Real was planning to release it. *Id*. Real's counsel said that Real would only agree to provide information about this new product if the Studios agreed that the information would be restricted to the Studios' outside counsel at Munger, Tolles & Olson and Mitchell Silberberg & Knupp, and not shared with counsel's clients. *Id*. ¶ 3. The Studios' counsel responded that there was no way their clients could make an informed decision about whether they had a legal objection to this new product unless the clients themselves knew what the product was. *Id*. Real's counsel later amended this proposal, and said that their client might consider allowing one in-house *lawyer* per Studio (not one in-house "representative," as Real claims, *see* Mot. at 4:26) to have access to the information about the new product. Pomerantz Decl. ¶ 4. Even that amended proposal, however, did nothing to cure the problem with Real's "offer." Information about the new product still would be limited to lawyers, and could not be shared with the non-legal personnel at each Studio who would be critical to the decision whether the Studios object to the new product.

On November 6, Real sent the Studios the Proposed Amendment to its declaratory judgment complaint and requested the Studios' consent to its filing. *Id*. ¶ 5. The Proposed Amendment for the first time described the new product as the "New Platform," though the Proposed Amendment said almost nothing else about what this product is. The Studios' counsel responded by letter, stating that the Studios could not agree there is an actual controversy concerning the New Platform if the Studios do not even know what the product is. *Id*. Ex. A. Real did not respond to the Studios' letter, and instead filed the instant motion for leave to amend.

On November 15, during a call to discuss the schedule for preliminary injunction discovery, Real's attorney again raised the issue of the New Platform. Real's counsel said that

Real had produced a document concerning the New Platform in discovery. *Id.* ¶ 6. That document, however, had been designated "Highly Confidential." Because of that restriction, the Studios' counsel explained that they still could not share information about the New Platform with the key Studio representatives who would need to evaluate the New Platform in order to determine whether the Studios objected to it. *Id*. The Studios' counsel invited Real to make a proposal for how to provide such information to the relevant decision-makers while at the same time preserving the confidentiality that Real's counsel said it needs concerning the New Platform. *Id*. Real's counsel has never made such a proposal. *Id*.

**C. Real Has Not Provided Meaningful Discovery Concerning The New Platform**

Real's description in the Proposed Amendment of the New Platform – what it is, and what it does – is minimalist, to say the least. Real proposes to allege only that the New Platform "provides DVD users with, among other things, the ability to save a personal copy of a DVD they own on a secure hard drive for their own personal use[,]" and that it "preserves the CSS encryption" and "incorporat[es] an additional layer of protection[.]" Proposed Amendment ¶ 24. The Proposed Amendment does not say what the New Platform is. It does not say anything about how Real went about creating the New Platform. And it does not provide any details about the New Platform's technical operation.

The Studios' outside counsel have identified documents in Real's preliminary injunction discovery production that appear to discuss a product that is different from RealDVD, and that presumably is the "New Platform" referred to in the Proposed Amendment. Pomerantz Decl. ¶ 7. Outside counsel have not located any specification or architecture documents that describe the New Platform's technical operation. Real has not even provided product samples for the New Platform that the Studios, their counsel, and their experts can analyze. Real claims to have made source code regarding the New Platform available for inspection by the Studios' experts and consultants. As explained below, however, this "making available" – like Real's "making available" of the source code for RealDVD – has consisted of producing tremendous volumes of data, much of it apparently extraneous and irrelevant, under conditions that make review and analysis as difficult and burdensome as possible.

So far as outside counsel have been able to determine, it appears that Real has designated all documents concerning the New Platform "Highly Confidential." This means that, even under the protective order the parties have been negotiating, these documents may not be shared with the non-legal personnel at each Studio who ultimately would have to be involved in deciding whether the Studio in fact objects to the product. *Id*.

## III. ARGUMENT

"[A] district court need not grant leave to amend where the amendment (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). At a minimum, Real's Proposed Amendment is both futile and prejudicial to the Studios' preliminary injunction motion directed to RealDVD.

### A. Real's Proposed Amendment Is Futile

Real's Proposed Amendment is futile because it fails to allege – as Real has the burden to allege as a declaratory judgment plaintiff – facts that establish "the existence of an actual case or controversy" between Real and the Studios regarding the New Platform. *Cardinal Chemical Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993). Because Real has failed to tell the Studios what the New Platform is, Real cannot have any basis for its boilerplate proposed allegation that the Studios claim the New Platform violates the CSS License and the DMCA. *See* Proposed Amendment ¶¶ 5, 26.

Under Article III of the U.S. Constitution, there is no subject matter jurisdiction over a declaratory judgment claim absent a "definite and concrete" dispute. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quotations omitted). To invoke the Court's jurisdiction to issue a declaratory judgment, Real must allege specific facts that show "there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment*." *Hulteen v. AT&T Corp.*, 498 F.3d 1001, 1004 n.1 (9th Cir. 2007) (en banc) (quotations omitted) (emphasis added).

Real's Proposed Amendment does not allege any facts that show there is any "controversy" concerning the New Platform that is "immediate" or "real." There cannot be an

actual controversy over a product that Real will not even describe to the Studios. Real cannot evade the jurisdictional requirements for a declaratory judgment action by saying that, because RealDVD and the New Platform share some general level of functionality, the Studios must be presumed to have the same legal objections to the New Platform that they have to RealDVD. Unlike the New Platform, the Studios at the time they filed their complaint knew something about what RealDVD was and what it did, because Real had described that product and had even commenced a limited distribution of it in early September. In contrast, Real has not provided the Studios with any of the information necessary to determine whether the same or similar legal objections to RealDVD also apply to the New Platform. Real's offer to restrict information about the New Platform to the Studios' lawyers (outside counsel and one in-house counsel per Studio) obviously is insufficient. Clients, with the advice of their lawyers, make the decisions about what products they do or do not legally object to; lawyers do not make such decisions unilaterally.

Real cites *Financial Fusion, Inc. v. Ablaise Ltd.*, 2006 WL 3734292 (N.D. Cal. Dec. 18, 2006) (Trumbull, Mag. J.), as support for the proposition that there can be an actual controversy where the declaratory judgment defendant knows nothing about the plaintiff's product. *Financial Fusion* holds no such thing. There, the declaratory judgment plaintiff (Financial Fusion) had filed a complaint in this District, alleging that the declaratory judgment defendant (Ablaise) had threatened to sue Financial Fusion's customers for operating websites in alleged violation of one of Ablaise's patents. Ablaise had filed a parallel action in the District of Delaware, alleging that one of those customers (Bank of America) had violated not only the first patent, but a second patent "'by making, using, and operating, its bankofamerica.com *and related websites* throughout the United States.'" *Id.* at *3 (quoting Ablaise's Delaware Complaint) (emphasis in original). Magistrate Judge Trumbull concluded that there was an actual controversy between Financial Fusion and Ablaise concerning the second patent – and that Financial Fusion could amend its declaratory judgment complaint in this District to add the second patent – because Bank of America's websites were "related websites" that Ablaise *actually claimed* infringed the second patent. *Id.* The distinction between *Financial Fusion* and this case is manifest. In that case, the declaratory judgment defendant actually claimed that the second patent was infringed by the

declaratory judgment plaintiff's technology. In this case, the Studios have made no such allegation concerning the New Platform for the simple reason that Real has not told them what the New Platform is.

Real's Proposed Amendment fails to allege the jurisdictional prerequisites to state a declaratory judgment claim concerning the New Platform. The Proposed Amendment is therefore futile, and the Court can and should deny the motion to amend on this ground alone.

**B. Real's Proposed Amendment Will Prejudice The Studios' Preliminary Injunction Motion**

Real's Proposed Amendment is not only futile, but also seeks to prejudice the Studios' presentation of their preliminary injunction motion. Real specifically asks that the Court "direct that the New Platform be adjudicated at the preliminary injunction hearing." Mot. at 3:13-14. The Studios are the moving parties on their motion for preliminary injunction. They have the right to decide which product their motion will be directed to. The Studios made the decision to seek a TRO and then a preliminary injunction against RealDVD because the Studios acquired sufficient information about RealDVD to evaluate the product and conclude that it violates the DMCA, giving rise to a right for injunctive relief. Adding the New Platform – a product that Real will not even describe to the Studios – threatens to derail the Studios' right to obtain a determination on their motion concerning RealDVD under the current schedule.

There simply is no way to add the New Platform to the preliminary injunction proceedings and to have that motion presented for hearing at the end of January (or even mid-February). The parties are in the middle of an expedited discovery and briefing schedule concerning one product, RealDVD. The parties are exchanging documents, and their period for depositions of fact witnesses is scheduled to start on December 1 and to conclude by December 16. The parties' experts are conducting their analyses of RealDVD on a similarly abbreviated schedule. More specifically, expert reports are due to be served on December 19, and expert depositions are to conclude by January 7. Opening briefs are due less than a week later, on January 13. Pomerantz Decl. ¶ 8. Real has not provided even to the Studios' outside counsel any product sample of the New Platform, and outside counsel have not found (and Real has not identified) any documents

that provide specifications or details about the technical implementation of the New Platform. *Id*. ¶ 7.

Real claims to have produced source code for the New Platform, but this "production," like Real's production of RealDVD source code, has consisted of dumping a mass of data and telling the Studios' outside counsel and consultants to find out for themselves what is relevant. As to RealDVD, Real made available (only at Wilson Sonsini's offices in San Francisco)[2] some *nine million* lines of source code, located in over *47,000* separate files, without any design or architecture documents or anything else to aid in navigating the mass of code. *See* Cherukuri Declaration ¶¶ 3-6. On November 26, Real finally provided the code for RealDVD itself, which amounted to just 1 million lines of code and 3700 files. *See id.* ¶¶ 8-10. Real informed the Studios' counsel that more than 85% of the code originally provided was "excess" and related to "other products."

Real also has made available an additional *five million* lines of source code, spread across *33,000* files, that Real claims include some source code related to the New Platform. *See id.* ¶¶ 11-12. If, as seems likely based on the RealDVD source code "production," this "New Platform" source code "production" also includes "excess" code concerning "other products," then sorting through this mass of data will likewise be an time-consuming (and wasteful) procedure for the Studios' experts. As of this date, Real has not told the Studios' counsel how much of the "New Platform" source code is excess. Notably, however, it appears there is little overlap in the code for RealDVD and the code for the New Platform. *See id.* ¶ 14.

The bottom line is that Real obviously is trying to make the Studios' review of the technical information as onerous and time-consuming as possible. Real should not be permitted to make this process even more difficult and burdensome by adding new technology concerning a new product at this late date in preliminary injunction discovery.[3]

---

[2] Even though Real repeatedly agreed to make the source code available at least at MTO's Los Angeles offices and indeed has proposed the same in its version of the draft protective order, Real recently refused to make the code available anywhere but at Wilson Sonsini's offices.

[3] Real's experts and consultants, of course, face no similar burden in making their way through the mass of source code. Real wrote the code, and its engineers can guide Real's experts in their review and analysis.

On the other side of the balance, there is no prejudice to Real from having to litigate the preliminary injunction motion concerning RealDVD – the only product that Real told the Court and the Studios about at the TRO hearing. If, as Real contends, the New Platform has similarities to RealDVD, the outcome of the preliminary injunction motion concerning RealDVD may inform all parties' decision-making without the need for additional litigation and costly discovery and expert analysis. If Real insists on knowing before then whether its New Platform is free of legal doubt, then Real should have to do what any other party in a similar position would have to do: tell those whom Real thinks may have a legal objection what the product is and give them the opportunity to decide whether they have an objection; and, if those parties do have such an objection, give all sides a fair chance to conduct meaningful discovery concerning that product according to a realistic schedule.

## IV. CONCLUSION

Real's motion to amend should be denied.

DATED: December 1, 2008

MUNGER, TOLLES & OLSON LLP

MITCHELL SILBERBERG & KNUPP LLP

GREGORY P. GOECKNER
DANIEL E. ROBBINS

By: /s/
GLENN D. POMERANTZ

Attorneys for Studio Plaintiffs and Declaratory Judgment Defendants