| | |
|---|---|
| 1 | JAMES A. DiBOISE, State Bar No. 83296<br>Email:  jdiboise@wsgr.com |
| 2 | LEO CUNNINGHAM, State Bar No. 121605<br>Email:  lcunningham@wsgr.com |
| 3 | COLLEEN BAL, State Bar No. 167637<br>Email:  cbal@wsgr.com |
| 4 | MICHAEL A. BERTA, State Bar No. 194650<br>Email:  mberta@wsgr.com |
| 5 | TRACY TOSH LANE, State Bar No. 184666<br>Email: ttosh@wsgr.com |
| 6 | WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation |
| 7 | One Market Street<br>Spear Tower, Suite 3300 |
| 8 | San Francisco, CA 94105 |
| 9 | Attorneys for Plaintiffs and<br>Counterclaim Defendants |
| 10 | REALNETWORKS, INC. and<br>REALNETWORKS HOME |
| 11 | ENTERTAINMENT, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 14 | REALNETWORKS, INC., a Washington Corporation; and REALNETWORKS HOME ENTERTAINMENT, INC., a Delaware corporation,<br><br>                    Plaintiffs,<br><br>            v.<br><br>DVD COPY CONTROL ASSOCIATION, INC., a Delaware nonprofit corporation, DISNEY ENTERPRISES, INC., a Delaware corporation; PARAMOUNT PICTURES CORP., a Delaware corporation; SONY PICTURES ENTER., INC., a Delaware corporation; TWENTIETH CENTURY FOX FILM CORP., a Delaware corporation; NBC UNIVERSAL, INC., a Delaware corporation; WARNER BROS. ENTER. INC., a Delaware corporation; and VIACOM, Inc., a Delaware Corporation,<br><br>                    Defendants. | Case Nos. C08 04548 MHP;<br>                 C08 04719 MHP<br><br>**NOTICE OF MOTION AND MOTION TO PRECLUDE CLAIMS BASED ON NON-CSS TECHNOLOGIES OR, ALTERNATIVELY, TO CONTINUE THE PRELIMINARY INJUNCTION HEARING, AND FOR THE APPOINTMENT OF A DISCOVERY REFEREE**<br><br>**Before:  Hon. Marilyn Hall Patel**<br>**Dept:  Courtroom 15**<br>**Date:  March 9, 2009**<br>**Time:  2:00 p.m.** |  |
| 27 | AND RELATED CASES | |
| 28 | **PUBLIC REDACTED VERSION** | |

MOTION TO PRECLUDE OR CONTINUE AND FOR A
DISCOVERY REFEREE
CASE NOS.: C08 04548 MHP; C08 04719 MHP

3585247_2.DOC

Dockets.Justia.com

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on March 9, 2009 at 2:00 p.m., or as soon thereafter as this matter may be heard, before the Honorable Marilyn H. Patel, United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102, plaintiffs and counterclaim defendants RealNetworks and RealNetworks Home Entertainment, Inc. (collectively, "RealNetworks") will move, and hereby do move, for an order precluding the defendants from asserting claims based on ARccOS, RipGuard, or any other non-CSS technologies in support of their motions for a preliminary injunction. In the alternative, RealNetworks will move, and hereby does move, for an order continuing the preliminary injunction hearing currently scheduled for March 3 by six weeks, until April 14, and simultaneously directing the defendants to comply immediately with their discovery obligations. Finally, RealNetworks will move, and hereby does move, for designation of a Magistrate Judge (or special master) to resolve any subsequent discovery disputes that may arise prior to the preliminary injunction hearing.

RealNetworks is also filing a motion to shorten time on this motion, which requests that this motion be heard on February 2, 2009 at 2:00 p.m., with opposition papers being due on January 29, 2009 and reply papers being due on January 30, 2009.

This motion is based on the following Memorandum of Points and Authorities, the accompanying Declaration of Tracy Tosh Lane, and the materials on file in this action.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   ISSUES TO BE DECIDED (LOCAL RULE 7-4(A)(3))**

Should the defendants be prevented—in this preliminary injunction proceeding—from asserting claims premised on non-CSS technology such as ARccOS and RipGuard because RealNetworks has not been provided with timely and adequate discovery on these topics?

If the Court allows the defendants to raise such claims, should the preliminary injunction hearing be continued for six weeks, until April 14, 2009?

Should the defendants be directed to comply immediately with their discovery

obligations and should a referee be appointed to manage the parties' discovery disputes?

## II.   INTRODUCTION AND BACKGROUND

In mid-December, just days before the parties were to complete expedited discovery, and as they were set to begin final preparations for a rapidly approaching preliminary injunction proceeding, the Studio Defendants sought to dramatically alter the focus of this case. (Lane Dec., ¶ 2) On December 18, the day before the parties were to exchange expert reports, the Studio Defendants asserted for the first time that they would seek to raise in the preliminary injunction proceeding new unpleaded claims that RealDVD and Facet circumvent purported "content protection" technologies known as "ARccOS" and "Ripguard." (*Id.*, Ex. A)[1] These new claims were a marked departure from the defendants' original claims, which were based on, and limited to, defendant DVD CCA's Content Scramble System technology ("CSS"). The new claims formed no part of the Complaint filed by the Studios and no part of the earlier TRO proceedings, or the temporary injunction that resulted and is still in effect.

The new claims also put RealNetworks at an immediate and significant informational disadvantage, contrary to the spirit and purpose of the Federal discovery rules. At the time the claims were raised, RealNetworks knew next to nothing about these technologies – and the Studio Defendants had yet to produce a single document regarding either ARccOS and RipGuard.[2] (Lane Dec., ¶ 3.) This was not for lack of information on the part of the Studio Defendants, which have deep experience with, and expertise in, both ARccOS and RipGuard. Indeed, one of the Studio Defendants (Sony, apparently through a corporate affiliate or subsidiary) purportedly invented the ARccOS technology, and RipGuard has been used by some or all of Studio Defendants since at least 2004. (Lane Dec., ¶ 13.)

RealNetworks, by contrast, has no expertise with, or substantive knowledge of these technologies. RealNetworks does not know how they work, or even how RealDVD and Facet

---

[1] All references to "Ex. __" are to the exhibits attached to the accompanying Declaration of Tracy Tosh Lane ("Lane Dec.").

[2] RealNetworks, by contrast, produced documents relating to its Facet product in November 2008, before it formally asked to include that product in these proceedings. (Lane Dec., ¶ 8.)

1  are said to circumvent them.  Real's informational disadvantage was starkly apparent during the
2  defendants' depositions of RealNetworks' employees—depositions that were supposed to be
3  limited to the CSS technology that formed the basis of the defendants' original claims.  During
4  these depositions the Studio Defendants' lawyers repeatedly asked, over strenuous objection and
5  in an argumentative fashion, seemingly irrelevant questions about "ARccOS" and "RipGuard.
6  The deponents testified similarly:

[redacted]

21  Within a few days of first learning about these new claims, on December 22,
22  RealNetworks also learned that the Court would allow them.[3]  The Court provided that as a
23  condition of this ruling, however, that the parties should produce any additional relevant
24  documents by January 9, 2009 to allow each side to prepare adequately for the preliminary
25  injunction hearing, which was continued (from late January) to March 3.  (Dec. 22, 2008 Tr. at
26  80, Ex. B.)  After this ruling, the parties conferred regarding—among other things—the

---

[3] The Court also ruled on RealNetworks motion to amend its complaint to include its Facet product and to add the Facet product to the preliminary injunction proceedings.

document production deadline and discussed a short extension by which to complete production. (Lane Dec., ¶ 4.)

Thereafter, RealNetworks immediately collected, reviewed, and produced in timely fashion (as it has done for each prior production) over 11,000 additional pages of documents relating to its Facet product.[4]  (Lane Dec., ¶ 7.)  In total, to date, RealNetworks has completed the production of (1) documents regarding the development of Facet and RealDVD; (2) the source code for RealDVD and current and historical versions of the Facet source code; (3) multiple witnesses for depositions on the development and operation of both Facet and RealDVD, including the managers who lead the projects, and the principal engineers who wrote and designed the projects; and (4) executable copies of the RealDVD software and a prototype of the Facet product (for inspection).  (*Id.*, ¶ 8.)

By contrast, in the wake of the December 22 ruling, RealNetworks has been deprived of even the most basic information about ARccOS and RipGuard.  (Lane Dec., ¶¶ 6 and 9.) RealNetworks requires and has requested, among other things, (i) the technical specifications for each version and implementation of the technologies known as ARccOS, RipGuard DVD, and any other technologies that the defendants claim RealDVD or Facet circumvents; (ii) documents sufficient to show all DVD titles that have used any implementation or version of ARccOS and/or RipGuard, including documents showing why the Studios implemented ARccOS or RipGuard on some DVD titles but not others; and (iii) internal correspondence discussing either ARccOS or RipGuard, including their merits and shortcomings as alleged "content protection" mechanisms.   (Lane Dec., ¶ 5.)

Initially, the Studio Defendants refused to produce <u>any</u> of this documentation for a variety of reasons, including relevance objections, and also claimed that the ARccOS and RipGuard technologies were a "black box" to them, even though Sony had purportedly invented

---

[4] Real had previously produced thousands of pages of Facet-related documents, including producing the Facet source code and technical documents, in early November when RealNetworks filed its motion to amend regarding Facet. (Lane Dec., ¶ 7.)

1  ARccOS.[5]  (Lane Dec., ¶¶ 13-14.)  After the January 9 deadline had come and gone, the Studio

2  Defendants reconsidered and agreed to produce some documents, but only after RealNetworks

3  insisted that a Magistrate Judge was necessary to resolve discovery disputes.  (Lane Dec., ¶ 6.)

4  At the same time, however, the Studios asserted as a justification for further delay that the

5  documents were subject to third-party confidentiality, and informed RealNetworks that they had

6  yet to seek the necessary permissions to produce the documents.  (*Id.*)

7         It was not until late in the evening on January 22 that the defendants made their first

8  production of documents purportedly containing information relevant to ARccOS and RipGuard.

9  (Lane Dec., ¶ 9; Jan. 22, 2009 Letter, Ex. C.)   Although this initial production comprised over

10  28,000 pages of material (which RealNetworks is currently struggling to review), the Studio

11  Defendants have admitted that the production is not yet complete, and also that they do not know

12  when it might be.  (*Id.*, ¶¶ 9-10.)[6]  Nor have the Studio Defendants stated whether their

13  production will actually contain the specific technical specifications for ARccOS and RipGuard

14  that RealNetworks requires in order to defend itself.  (*Id.*)

15         In addition to the delay in document production, the Studio Defendants have prejudiced

16  RealNetworks' ability to prepare for the preliminary injunction hearing in two additional

17  respects.  First, as of Friday, January 23, the defendants had not offered any dates for the three

18  Rule 30(b)(6) depositions that RealNetworks had requested from the Studios, a topic that was

19  expressly discussed and ruled upon at the December 22 hearing.  (Lane Dec., ¶ 15.)  It was not

20  until <u>after</u> RealNetworks approached the Court for assistance on this issue on January 23 by

---

22  [5] In reliance on the claim that the Studios did not know anything about the technologies that underlie their new claims, RealNetworks also sought technical information directly from a company called Macrovision, which allegedly created RipGuard, and also from the Sony affiliate that currently markets ARccOS technology.  In the course of these efforts, RealNetworks learned that the Studios' claims that the technologies were a "black box," and that they had no knowledge of them, was inaccurate.  (Lane Dec., ¶ 14.)

26  [6] On the morning of January 26, as RealNetworks was preparing to file this motion, counsel for the Studio Defendants indicated that an additional, yet still incomplete, production had been delivered by messenger.  (Lane Dec., ¶ 17.)  Counsel also stated that additional production(s) would be made later in the week.  (*Id.*)  RealNetworks has not, of course, had time to review these new materials, which were only produced after RealNetworks signaled its intention to file this motion.

filing a letter brief that the Studio Defendants offered, late in the day, to make 30(b)(6) deponents available, albeit under strict conditions. (*Id.*, ¶ 15, Ex. I.)[7] That offer, unfortunately, was and still is unacceptable. Among other things, the Studio Defendants have refused to provide witnesses on several topics, have designated multiple witnesses to cover the same topics, and have split topics in such a way as to seek to force Real to forego much of the testimony it has sought by way of 30(b)(6) depositions. (*Id.*)

Second, it appears that although the Studio Defendants have begun to produce documents relating to ARccOS and RipGuard – only a few days before the parties had contemplated exchanging expert reports – they have attempted to prevent RealNetworks from any meaningful understanding of their contents. All documents produced to date have been marked "Highly Confidential" or "Attorneys' Eyes Only" under the provisional protective order, which prevents RealNetworks from showing the documents to their employees—even to the employees who designed and built the RealDVD and Facet products that are at issue here. (Lane Dec., ¶ 10.) The Studio Defendants have also asserted (on January 22, the same night they began late production of documents) that Real's previously approved technical experts should not be allowed to look at any ARccOS or RipGuard documents <u>at all</u>. (Lane Dec., ¶ 11, Ex. D.) The net result of these maneuvers, if allowed, would be that none of RealNetworks' technical employees or experts can look at the recently produced ARccOS and RipGuard documents. These tactics have RealNetworks stymied. It is simply not possible to understand the Studio Defendants' claims under these circumstances, which of course means that it is impossible to fairly defend against them.

Due to the significant prejudice that has been caused to RealNetworks, the defendants should be precluded from raising either ARccOS or RipGuard at the PI hearing. In the alternative, the hearing should be continued until April 14 and the defendants should be ordered

---

[7] On January 23 RealNetworks filed a letter brief with the Court pursuant to its instruction during the TRO hearing to raise disputes in that fashion. (Lane Dec., ¶ 16, Ex. J.) That letter brief requested identical relief as does this motion—it was simply converted into this motion over the weekend to comply with the Court's instruction to that effect. (*Id.*)

to immediately comply with their discovery obligations. In either case, a magistrate should be appointed to monitor these discovery proceedings.

## III.     ARGUMENT

### A.     The Defendants Should Be Precluded from Asserting ARccOS and RipGuard Claims at the Preliminary Injunction Hearing

This Court has the inherent authority to enforce its discovery and case management orders, and to impose sanctions when those orders are not complied with, up to and including striking all or portions of a case or pleading. *United States v. W.R. Grace*, 526 F.3d 499, 515-516 (9th Cir. 2008) (en banc) ("[T]he district court here is well within its authority to manage its docket in enforcing a valid pretrial discovery order."); *Anheuser-Busch, Inc. v. Natural Beverage Distrib.,* 69 F.3d 337, 348 (9th Cir. 1995) (recognizing inherent power to dismiss counterclaim for concealing discovery documents). Rule 37 of the Federal Rules of Civil Procedure likewise authorizes "a wide range of sanctions" for a party's failure to comply with discovery rules or court orders enforcing them, *Wyle v. R.J. Reynolds Indus., Inc.,* 709 F.2d 585, 589 (9th Cir. 1983), including penalizing a party "for dilatory conduct during discovery proceedings." *Bollow v. Fed. Reserve Bank of San Francisco,* 650 F.2d 1093, 1102 (9th Cir.1981) (citing Fed. R. Civ. P. 37(a)(4)). Rules 16 and 41(b) afford similar relief in other contexts. *See* Fed. R. Civ. P. 16, 41(b).

Here, RealNetworks is requesting far less than dismissal of the defendants' claims. Rather, RealNetworks is merely seeking to level the playing field at the impending preliminary injunction proceeding. That field cannot and will not be level if the defendants are allowed to argue, as they apparently intend to, that ARccOS and RipGuard constitute effective "technological measures" pursuant to 17 U.S.C. §§ 1201(a), (b), while at the same time RealNetworks and its experts have been blocked from timely receiving and analyzing even the most basic information about these measures.

Indeed, to even begin to understand the defendants' new allegation would require that RealNetworks know far more than it currently does—which is next to nothing—about ARccOS and RipGuard. RealNetworks must be allowed to obtain and analyze documents reflecting not only what ARccOS and RipGuard actually are and how they work—it also must be permitted

access to documents that bear upon the defendants' claim that ARccOS and RipGuard are "effective" content protection schemes under § 1201.  Among other things, this will require that RealNetworks obtain access to, as it has requested, (i) detailed and comprehensive technical specifications for both technologies; (ii) internal correspondence discussing the merits and drawbacks of the technologies; and (iii) information sufficient to determine how widely, and by whom, these technologies are employed.

RealNetworks cannot take depositions, cannot prepare its experts, and certainly cannot draft its opposition papers or prepare for the preliminary injunction hearing until the defendants' production of this material is both complete and adequate.  To date, it is neither.  As noted above, RealNetworks received a first and incomplete production of ARccOS and RipGuard materials—comprising approximately 28,000 pages of material—on the evening of January 22.  (Lane Dec., ¶ 9.)  RealNetworks has had just three days to consider this material, and an unknown quantity is yet to come.  The defendants, by contrast, are in possession of RealNetworks' completed production of thousands of documents and source code relating to the Facet and RealDVD products.  And they and their experts have had this material for weeks, and in some cases months.  The playing field is, in short, anything but level.

It is no answer that the Studio Defendants have begun production, or have encountered purported obstacles to production.  "Late tender is," as the Ninth Circuit has noted, "no excuse" for the prejudice caused by inadequate or dilatory discovery.  *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006); *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("Last-minute tender of documents does not cure the prejudice to opponents. . . ."); *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam) ("[b]elated compliance with discovery orders does not preclude the imposition of sanctions."); *F.T.C. v. Foster*, No. CIV07-00352 JB/ACT, 2007 WL 1827099, at *4-5 (D.N.M. Jun. 11, 2007) (applying Fed. R. Civ. P. 37 and precluding defendant from introducing at the preliminary-injunction hearing, without separate approval, documents or expert testimony based on documents that defendant failed to timely produce as required by preliminary-injunction discovery).

The Studio Defendants late and inadequate production should result in preclusion at the preliminary injunction proceeding.

### B. If the Defendants' Are Allowed to Assert Claims Premised on ARccOS and RipGuard, the Hearing Should be Continued until April 14, 2009

RealNetworks is at present subject to a temporary restraining order which, RealNetworks expects, will be dissolved after the preliminary injunction hearing. If the Court declines to preclude the defendants from premising their preliminary injunction motion on ARccOS and RipGuard, RealNetworks is nevertheless willing to have the TRO further extended so that the hearing can be continued until April 14. *Rohan ex rel. Gates v. Woodford,* 334 F.3d 803, 817 (9th Cir. 2003) (district courts have inherent authority to stay or adjourn proceedings before them) (citing *Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 (1936)); *Rivers v. Walt Disney Co.*, 980 F.Supp. 1358, 1360 (C.D. Cal. 1997). This puts RealNetworks in the extraordinary position of seeking a continuance of a hearing that it believes will result in relief from a pending injunction, because the cost of not obtaining this short continuance, and of being forced to proceed on March 3 while almost totally in the dark about the heart of the defendants' case, is potentially irreparable.

Again, it is simply no answer that the Studio Defendants have begun to comply with their obligations. Even if the Studio Defendants were to produce <u>all</u> relevant documents immediately, RealNetworks cannot conduct fact or expert depositions until it has had adequate time to review and carefully analyze the complete set of ARccOS and RipGuard materials. Similarly, RealNetworks cannot hope to prepare its expert reports without providing its experts with access to these materials, and to the related testimony of fact witnesses. To complicate matters further, the defendants now contend that RealNetworks' long-approved technical expert should not be permitted access to any ARccOS or RipGuard related documents. (Lane Dec., ¶ 11.) Under these circumstances, RealNetworks is simply unable to prepare for and execute two rounds of substantive briefing, followed closely by a preliminary injunction hearing, as the case schedule currently stands.

RealNetworks therefore proposes the following modified schedule, and requests that it be

entered as an Order of the Court:

| ACTION | DATE |
| --- | --- |
| Production of all additional documents | Feb. 2, 2009 |
| Identify additional witnesses to testify (live or by declaration) at hearing | Feb. 9, 2009 |
| Depositions of fact witnesses | Completed by February 18, 2009 |
| Exchange expert reports | Feb. 20 and Feb 27 (rebuttal), 2009 (5 pm) |
| Expert depositions | March 2 – March 10 , 2009 |
| Opening briefs | March 17, 2009 (5 pm) |
| Responsive briefs | March 31, 2009 (5 pm) |
| Exchange names of trial witnesses and depo designations | April 1, 2009 |
| Exchange counter designations; exchange demonstratives | April 8, 2009 |
| Hearing | Begins April 14, 2009 |

**C.  A Magistrate Judge Should be Appointed to Provide Expedited Review of Any Discovery Disputes before the Preliminary Injunction Hearing**

The course of discovery in this action has been more difficult, and has resulted in more disputes, than either party expected.  To remedy this, and given that the present dispute is anything but an isolated incident, RealNetworks formally requests that a discovery magistrate be appointed to monitor these proceedings.  Rule 16 authorizes a court to manage cases so that wasteful pretrial activities are discouraged, the quality of the trial is improved, and settlement is facilitated.  It recognizes "the need for adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems."  Fed. R. Civ. P. 16(c)(2)(L).  Although there is clearly such a need here, the Studio Defendants have refused to agree to this request.  That refusal suggests that the disparity in information regarding the technologies to be litigated—a disparity arising from the Studios' unfair discovery tactics—benefits the Studios to the detriment of RealNetworks.

**CONCLUSION**

For the foregoing reasons, this motion should be granted.

Dated: January 26, 2009

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: _____/s/_____
       Michael A. Berta

Attorneys for Plaintiffs
REALNETWORKS, INC. AND
REALNETWORKS HOME
ENTERTAINMENT, INC.