GLENN D. POMERANTZ (SBN 112503)
Glenn.Pomerantz@mto.com
BART H. WILLIAMS (SBN 134009)
Bart.Williams@mto.com
KELLY M. KLAUS (SBN 161091)
Kelly.Klaus@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
Tel: (213) 683-9100; Fax: (213) 687-3702

ROBERT H. ROTSTEIN (SBN 72452)
rxr@msk.com
ERIC J. GERMAN (SBN 224557)
ejg@msk.com
BETSY A. ZEDEK (SBN 241653)
baz@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Tel: (310) 312-2000; Fax: (310) 312-3100

GREGORY P. GOECKNER (SBN 103693)
gregory_goeckner@mpaa.org
DANIEL E. ROBBINS (SBN 156934)
dan_robbins@mpaa.org
15301 Ventura Boulevard, Building E
Sherman Oaks, California 91403-3102
Tel: (818) 995-6600; Fax: (818) 285-4403

Attorneys for Defendants/Counterclaim-Plaintiffs/Plaintiffs
COLUMBIA PICTURES INDUSTRIES, INC., DISNEY
ENTERPRISES, INC., PARAMOUNT PICTURES CORP.,
SONY PICTURES ENTERTAINMENT, INC., SONY
PICTURES TELEVISION INC., TWENTIETH CENTURY
FOX FILM CORP., NBC UNIVERSAL, INC., WALT
DISNEY PICTURES, WARNER BROS.
ENTERTAINMENT, INC., UNIVERSAL CITY STUDIOS
PRODUCTIONS LLLP, UNIVERSAL CITY STUDIOS
LLLP, AND VIACOM, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REALNETWORKS, INC., et al., <br><br> Plaintiffs, <br><br> vs. <br><br> DVD COPY CONTROL ASSOCIATION, INC., et al. <br><br> Defendants. <br><br> AND CONSOLIDATED ACTIONS. | CASE NO. C 08-4548-MHP <br><br> Consolidated with Case No. C 08-04719-MHP <br><br> **DECLARATION OF REBECCA GOSE LYNCH IN SUPPORT OF STUDIOS' RESPONSE TO REAL'S MOTION TO EXTEND TIME OR EXCLUDE TOPICS FROM THE PRELIMINARY-INJUNCTION HEARING** |

7004438.1

DECLARATION OF REBECCA GOSE LYNCH

I, Rebecca Gose Lynch, hereby do declare and state:

1. I am an attorney associated with the law firm of Munger, Tolles & Olson LLP, counsel of record for Columbia Pictures Industries, Inc., Disney Enterprises, Inc., NBC Universal, Inc., Paramount Pictures Corporation, Sony Pictures Entertainment, Inc., Sony Pictures Television, Inc., Twentieth Century Fox Film Corporation, Universal City Studios LLLP, Universal City Studios Productions LLLP, Viacom, Inc., Walt Disney Pictures, and Warner Bros. Entertainment, Inc. (collectively, "the Studios"). I make this Declaration based upon my own personal knowledge, except where facts are stated upon information and belief. If called upon to do so, I could and would testify competently to the matters stated herein.

2. I was not present at the hearing on December 22, 2008, but I have read the transcript of that hearing and consulted with my colleagues who were there. At the hearing, counsel for Real advised the Court that, in order to defend against a claim of circumventing ARccOS and Ripguard technologies, Real would need documents from the Studios relating to how those technologies worked. Immediately following the hearing, my colleagues and I contacted certain of the Studios and began the process of trying to identify and collect the types of documents that Real's counsel had advised the Court they needed.

3. On January 2, 2009 -- the first workday following the New Year's holiday -- I wrote to Tracy Tosh Lane and Michael Berta, attorneys for RealNetworks, Inc. and RealNetworks Home Entertainment, Inc. (collectively, "Real"), with document requests related to Facet, ARccOS and RipGuard. Attached hereto as Exhibit A is a true and correct copy of that email. On January 5, 2009, Ms. Lane responded to that email and, *for the first time*, set forth Real's requests for documents related to ARccOS and RipGuard. Attached hereto as Exhibit B is a true and correct copy of Ms. Lane's January 5, 2008 email. Real's document requests -- which were sent a full two weeks after the December 22 hearing -- set forth extraordinarily broad new categories of documents that Real suddenly claimed to need, including *all documents that had the words "ARccOS" or "Ripguard"* in them. In her email, Ms. Lane requested to meet and confer regarding these requests, to which I agreed. In the meantime, my colleague, Lawrence Barth, and

7004438.1 - 1 - LYNCH DECLARATION ISO STUDIOS' RESPONSE TO MOTION TO EXTEND TIME OR EXCLUDE TOPICS

1  I continued to work with our clients to understand the burden involved in responding to Real's
2  initial requests communicated during the hearing, as well as their new requests, and to expedite
3  collection from relevant custodians.

4.  On January 7, 2009, Mr. Barth and I had a telephonic meet-and-confer session with Ms. Lane on the new document requests. During that call, we expressed our concerns with the overbreadth, burden and relevance of many of Real's new expanded requests, but *at no time* did we refuse to produce responsive ARccOS/RipGuard documents. Rather, we explained that we were in the process of discussing Real's new requests with multiple custodians at all six of the Studios so that we could understand burden and other concerns regarding potentially responsive documents. We committed to get back to Ms. Lane as soon as possible regarding the Studios' position on the new requests. In response to questions about timing, we made clear that we were working as fast we could; that we could discuss dates on which we expected to begin producing documents; but that we were not yet in a position to commit to a date on which we would *complete* production of documents in categories that we were still trying to understand. After this phone conference, we continued to discuss Real's new requests with multiple custodians at each Studio, expedite collection processes and work on collecting documents relevant to the Studios' ARccOS and RipGuard claims.

5.  On Friday January 8, 2009, Mr. Barth and I received a letter from Ms. Lane that mischaracterized our phone conversation in multiple respects. Attached hereto as Exhibit C is a true and correct copy of Ms. Lane's letter. Mr. Barth responded to this letter in an email on Monday January 12, 2009, correcting the mischaracterizations and reiterating that we were still investigating the feasibility of Real's requests and would get back to Ms. Lane as soon as we had answers. Attached as Exhibit D is a true and correct copy of Mr. Barth's January 12 email to Ms. Lane.

6.  The next day, January 13, 2009, I indicated to Ms. Lane that we now had sufficient information to provide our position with regard to Real's new requests, and I requested a phone conference to discuss this with her. Although Ms. Lane requested that the Studios agree to a discovery magistrate on the same day, her request had no impact on our ongoing investigation,

document collection and/or ultimate positions on Real's document requests.

7. Later in the afternoon of January 13, I had a second telephonic meet-and-confer session with Ms. Lane to update her on our expedited collection efforts. During this phone call, I told Ms. Lane that it appeared that we would be able to produce documents located by the Studios comprising technical specifications for ARccOS and RipGuard; a list of all DVD titles that have used ARccOS or RipGuard; documents containing the terms "ARccOS" or "RipGuard"; reports regarding DVD durability; and most other reports Real had requested that they claimed were relevant to their harm arguments. As the parties had agreed with regard to previous document collections and productions *by both sides*, we agreed that we would only collect documents from a small group of core custodians most likely to have non-duplicative responsive documents and that we would not collect from attorneys who played only a legal role. I confirmed this conversation in an email to Ms. Lane on January 14. A true and correct copy of this email is attached hereto as Exhibit E.

8. Also during this January 13 phone conversation, Ms. Lane told me that she did not understand how the Studios were able to plan and start work on gathering ARccOS and RipGuard documents immediately after the December 22 hearing, since we did not have Real's written requests prior to her January 5 email. She said that she was at the hearing and did not recall Real providing specific requests or any guidance as to the documents that they wanted on ARccOS and RipGuard. I responded that the transcript of the hearing would give her some guidance, and that our early efforts were made with the goal of producing ARccOS and RipGuard documents as soon as possible.

9. The Studios have worked diligently to collect and produce documents as quickly as possible. Despite having first received Real's written document requests on January 5 and completing negotiations regarding those requests on January 13, and despite the logistics of working with multiple lawyers and custodians at six Studios (and more related entities), the Studios produced the great majority of responsive documents on January 22, 2009. This fast turnaround time was only made possible by having documents reviewed by many lawyers from my firm who are not involved in the case and who set aside their other work on other cases to

1 | aide in this urgent project.

2 |     10. As I had committed to Ms. Lane, the Studios produced the majority of responsive documents on January 22, 2008. This production included 28,095 pages of documents responsive to Real's new requests. That same day, I emailed Ms. Lane to let her know that the vast majority of any remaining documents would be produced early the next week. Attached hereto as Exhibit F is a true and correct copy of my January 22 email to Ms. Lane. Consistent with my January 22 email, we produced 3,565 pages of documents to Real at 9:30 a.m. on Monday January 26, 2009.

    11. In an email to Ms. Lane on that same day (January 26), I confirmed that the Studios had produced the documents that they had committed to produce, except for the following narrow categories: (a) a small batch of documents that the Studios believe are extremely sensitive, and regarding which we have sought heightened access limitations from Ms. Lane, but have not yet heard back; (b) documents containing confidential third party information, with respect to which we were seeking approval from the third parties (noting that this did not include documents containing confidential Macrovision information, which we had produced on January 26, and since the date of this email, we have also produced confidential Sony DADC documents); and (c) one last batch of documents, which we believed to be of limited relevance but which contained the words "ARccOS" or "RipGuard." Attached hereto as Exhibit G is a true and correct copy of my January 26 email to Ms. Lane. As of today, all that remains to be produced are the documents in category (a) and a small handful of non-Macrovision and non-Sony DADC third parties documents in category (b).

    12. The Studios acted with all possible diligence and speed in collecting documents covered by non-disclosure agreements with third parties, and in sending them to those third parties for review and an opportunity to object. Once the Studios' responsive documents were collected, they had to be reviewed in order to find which may be covered by non-disclosure agreements. As soon as such documents were located, and the multiple agreements between the Studios and third parties were analyzed, I immediately sent the documents to Sony DADC and Macrovision for their review. Macrovision provided their consent during the late afternoon on January 21 and we produced their documents the next day. Sony DADC (which is based in

1  Austria) provided consent on January 28 and we produced their documents that same day.
2  Notably, although Macrovision produced its own documents in response to Real's subpoena on
3  January 19 and made its Rule 30(b)(6) witness available for deposition on January 23, Real
4  *declined* to take that deposition.

5        13.    Contrary to Ms. Lane's declaration, we have produced all of the technical
6  specifications for RipGuard and ARccOS that were provided to us by the Studios after collecting
7  documents from their core custodians, as we have produced all such documents covered by non-
8  disclosure agreements with Macrovision and Sony DADC. As we told Ms. Lane, the Studios do
9  not have much, if any, detailed technical documents regarding this technology, and have
10 produced what they found. The Studios marked certain Macrovision and Sony DADC
11 documents as "outside counsel's eyes only" because we were advised that those third parties had
12 reached agreement *with Real* to so designate certain documents.

13       I declare under penalty of perjury under the laws of the State of California and the United
14 States of America that the foregoing is true and correct. Executed this 30th day of January 2009
15 at San Francisco, California.

                                                                             Rebecca Gose Lynch