| | |
|---|---|
| REGINALD D. STEER (SBN 056324)<br>rsteer@akingump.com<br>MARIA ELLINIKOS (SBN 235528)<br>mellinikos@akingump.com<br>**AKIN GUMP STRAUSS HAUER & FELD LLP**<br>580 California, 15th Floor<br>San Francisco, California 94104-1036<br>Telephone: (415) 765-9500<br>Facsimile: (415) 765-9501<br><br>EDWARD P. LAZARUS (SBN 212658)<br>elazarus@akingump.com<br>STEPHEN MICK (SBN 131569)<br>smick@akingump.com<br>MICHAEL SMALL (SBN 222768)<br>msmall@akingump.com<br>**AKIN GUMP STRAUSS HAUER & FELD LLP**<br>2029 Century Park East, Suite 2400<br>Los Angeles, California 90067-3012<br>Telephone: (310) 229-1000<br>Facsimile: (310) 229-1001 | WILLIAM SLOAN COATS (SBN 94864)<br>wcoats@whitecase.com<br>MARK WEINSTEIN (SBN 193043)<br>mweinstein@whitecase.com<br>MARK F. LAMBERT (SBN 197410)<br>mlambert@whitecase.com<br>**WHITE & CASE LLP**<br>3000 El Camino Real<br>5 Palo Alto Square, 9th Floor<br>Palo Alto, California 94306<br>Telephone: (650) 213-0300<br>Facsimile: (650) 213-8158 |

Attorneys for Defendant and Counterclaimant
DVD COPY CONTROL ASSOCIATION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REALNETWORKS, INC., a Washington Corporation; and REALNETWORKS HOME ENTERTAINMENT, INC., a Delaware corporation,<br><br>        Plaintiffs,<br><br>v.<br><br>DVD COPY CONTROL ASSOCIATION, INC., a Delaware nonprofit corporation, et al.<br><br>        Defendants.<br><br>And Related Counterclaims.<br><br>AND RELATED CASES | Case No. C08 04548 MHP;<br>         C08 04719 MHP<br><br>**OPPOSITION OF DVD COPY CONTROL ASSOCIATION, INC. TO PLAINTIFFS' MOTION TO DISMISS SECOND COUNTERCLAIM**<br><br>Before: Hon. Marilyn Hall Patel<br>Dept: Courtroom 15<br>Date: February 23, 2009<br>Time: 2:00 p.m. |

OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS SECOND COUNTERCLAIM
CASE NO. C08 04548 MHP; C08 04719 MHP

## I. INTRODUCTION

DVD Copy Control Association, Inc. ("DVD CCA") has asserted counterclaims against RealNetworks, Inc. and RealNetworks Home Entertainment, Inc. (collectively, "Real") for breach of contract (First Claim for Relief) and breach of the implied covenant of good faith and fair dealing (Second Claim for Relief). Answer of DVD CCA to Amended Complaint for Declaratory Relief; Counterclaims (Dkt. No. 96; "DVD CCA Counterclaims"). Real's motion to dismiss does not challenge the adequacy of the breach of contract counterclaim. It addresses only the claim for breach of the implied covenant of good faith and fair dealing. Real's motion to dismiss that claim has no basis in California law and should be denied.

Ignoring iron-clad California precedent recognizing an implied covenant of good faith and fair dealing in "every contract," Real argues that there is no implied covenant in its contract with DVD CCA because the agreement is a standard license that DVD CCA does not negotiate with individual licensees. Motion to Dismiss DVD CCA's Second Counterclaim at 1 (Dkt. No. 98). Real's argument is both wrong and radical in its implications. Real cites no authority (and DVD CCA is aware of none) that supports the notion that a uniform and non-discriminatory contract like the agreement between DVD CCA and Real (the "Agreement")[1] can have no implied covenant of good faith and fair dealing. Under Real's theory, a party that accepts and enjoys the benefits of a standard license, but then works assiduously to undermine the fundamental purposes of that license, cannot be sued for breaching the implied covenant simply because there was no negotiation between the licensee and licensor. This is true under Real's theory even if, as DVD CCA alleges here, the licensee fully understood – and intentionally disregarded to the licensor's detriment – the licensor's stated purposes in offering the

---

[1] The "Agreement" between DVD CCA and Real comprises: (1) the CSS License Agreement, Version 1.2 and the CSS Specifications applicable to Real, which include (1) the Procedural Specifications; (2) the "CSS General Specifications" v. 1.10, November 1, 20000; (3) the "DVD Video Descrambler" v. 1.10, November 1, 2000; (3) the "Authenticator Module for CSS Decryption Module" version 1.10, November 1, 2000, and (4) the "Authenticator Module for DVD Drive" version 1.10, November 1, 2000. The CSS License Agreement v. 1.2, which defines the Agreement to include the CSS License Agreement and the CSS Specifications applicable to Real, is attached to Real's Complaint For Declaratory Relief ("Complaint") and referenced in Real's Amended Complaint For Declaratory Relief ("Amended Complaint"), but constitutes only a part of the Agreement between the parties. DVD CCA Counterclaims, ¶ 9.

1

OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS SECOND COUNTERCLAIM
CASE NO. C08 04548 MHP

license. Neither case law nor common sense supports the granting of such immunity and thus exempting standardized contracts from the universal rule that all contracts contain implied covenants of good faith and fair dealing.

Real pleads for special treatment by trying to label its agreement with DVD CCA a contract of adhesion. But the agreement is not an adhesion contract and, as especially pertinent to this motion, it certainly cannot be deemed an adhesion contract at the pleading stage in light of the allegations in DVD CCA's Counterclaims that businesses seeking a CSS License have the freedom and discretion to select the type of Agreement they want, depending on their business needs and the type of DVD products they plan to manufacture. Moreover, Real's argument for concluding that the contract is adhesive, and hence no implied covenant of good faith and fair dealing arises and Real's interpretation of the contract controls, depends on a determination of (1) Real's subjective interpretation of the Agreement, and (2) whether that subjective interpretation was "reasonable" – two fact-intensive issues that cannot possibly be resolved on a motion to dismiss. In any event, the pleadings have not placed the entire Agreement before the Court at this juncture, and thus whether Real's interpretation should control cannot be decided at this stage for that reason as well.

## II.  ARGUMENT

### A.  The Covenant Of Good Faith And Fair Dealing Is Implied In Every Contract, Including Licensing Agreements.

Real admits that "a covenant of good faith and fair dealing is implied by law in every contract" and that it exists "to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*," Motion to Dismiss at 2 (Dkt. No. 98), citing *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000).

Because DVD CCA's position is that Real has frustrated DVD CCA's right to receive the benefits of the CSS License Agreement, DVD CCA has alleged that Real has violated the covenant of good faith and fair dealing.

Allegations of breach of the implied covenant of good faith and fair dealing are perfectly appropriate in the licensing context. In licensing cases, the implied covenant of good faith and fair dealing prohibits a licensee from taking advantage of the circumstances of the transaction to unfairly

2

disadvantage the licensor. Raymond T. Nimmer & Jeff Dodd, *Modern Licensing Law* § 12:34 (2008). Courts have consistently applied this principle. *See Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846 (C.D. Cal. 2004) (denying licensee's motion to dismiss licensor's breach of the implied covenant of good faith and fair dealing where licensor alleged that licensee intentionally sought to frustrate licensor's enjoyment of its rights under the contract); *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 936-38 (9th Cir. 1999) (although licensee met its express merchandising obligations to market licensor's animated character, licensee violated implied covenant of good faith by consciously choosing not to "do [the licensor] right," but instead devoting its attention and talent to promoting its own profitable animated characters); *SAS Institute Inc. v. S & H Computer Systems, Inc.*, 605 F. Supp. 816 (M.D. Tenn. 1985) (licensee's reverse engineering and unauthorized copying of licensed computer program violated licensee's implied covenant of good faith) (citing *County of Ventura v. Blackburn*, 362 F.2d 515 (9th Cir. 1966)) (affirming trial court ruling of breach of implied covenant of good faith, where map maker licensor gave the licensee county the right to reproduce and sell his maps so long as county affixed copyright notices to each map, and county failed to do so); *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 169-73 (3rd Cir. 2001) (denying summary judgment on implied covenant claim, where licensee contracted to sell licensor's video products to Wal-Mart, but facts suggested the licensee harbored "a secret intent to decimate Emerson's relationship with Wal-Mart"). Moreover, Real cites no authority for the proposition that the covenant of good faith and fair dealing is not implied in contracts of adhesion.

### B. DVD CCA Has Alleged Sufficient Facts To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing.

As Real admits, all DVD CCA need allege to properly plead a claim for breach of the implied covenant is that Real acted in bad faith to frustrate the benefits of the agreement actually made. DVD CCA's pleading clearly alleges the benefits DVD CCA expected from the Agreement and Real's bad faith. As in *Celador* and the other authorities involving breaches of license agreements, DVD CCA has alleged specific acts that Real committed to frustrate DVD CCA's expected benefit of the contract; namely, Real created the RealDVD and "New Platform" products to profit from allowing casual users to make persistent, playable copies of DVDs whose contents are intended to be protected from copying

3

by CSS. Those allegations are more than sufficient to state a claim for breach of the implied covenant of good faith and fair dealing.

As to the benefits DVD CCA expected from the Agreement, the CSS License Agreement attached to Real's Complaint states that the primary objective of the CSS technology under the Agreement is "to provide reasonable security for content on DVD Discs and thereby . . . to provide protection for such copyrighted content against unauthorized consumer copying." Complaint, Exhibit 1 (CSS License Agreement, Version 1.2) at Recital A (Dkt. No. 2). In the Preliminary Statement to its Counterclaims, DVD CCA clearly articulates the benefits under the Agreement that it expected in exchange for making the CSS technology available to businesses interested in using it:

> In exchange for this permission to use CSS, licensees would simply have to pay an administrative fee and agree to observe detailed specifications for the decryption and descrambling processes in order to achieve CSS's underlying goal of facilitating ready playback of the DVD while preventing consumer copying of the underlying content.

DVD CCA Counterclaims at 2:23-26. And DVD CCA's Second Counterclaim alleges that it expected its licensee, Real, to act "to prevent casual consumers from making unauthorized copies of DVD content," by using the CSS technology "to produce devices" (i) "that require the physical presence of a DVD in a playback device's disk drive when the device plays DVDs", and (ii) "that do not save protected content . . . for subsequent playback without the DVD." DVD CCA Counterclaims, ¶ 27. These expected benefits flow directly from the broader aim and requirements of the Agreement and the CSS technology itself, as alleged in the counterclaim: prevention of unauthorized copying.

Real's attempt to frame DVD CCA's implied covenant claim as imposing "additional obligations based on contractual purposes with which Real did not agree" is incorrect, because Real's obligation to manufacture products that do not enable consumers to make unauthorized copies of DVDs, far from being "additional" to the Agreement, is absolutely fundamental according to DVD CCA's allegations. *See* Raymond T. Nimmer & Jeff Dodd, *Modern Licensing Law* § 12:34 (2008) (implied covenant of good faith is a general standard that "does not alter express contract terms or provide additional terms," but refers to "an obligation of honesty in fact"). Indeed, as DVD CCA has alleged, Real understood that to be the underlying purpose of CSS technology even before it decided to enter into the Agreement licensing that technology. DVD CCA Counterclaims ¶ 26.

4

DVD CCA has also sufficiently alleged Real's bad faith acts that were intended to frustrate DVD CCA's expected benefit. DVD CCA Counterclaims ¶¶ 26, 27; *see also id.*, Preliminary Statement, at 3:4-15. DVD CCA alleges, among other things, that

- Real falsely justifies its subversion of the Agreement and its purposes;
- Real entered into the Agreement "with the intent of creating products that defied what it knew to be DVD CCA's interpretation of the contractual requirements";
- Real's bad faith actions "achieved its objective: both Real DVD and the New Platform implement CSS to copy CSS protected DVD content to a computer hard drive or other storage media, thereby enabling a user to play back the DVD at a later time, without need for the physical DVD itself"; and
- "Prior to entering into the Agreement, RealNetworks never communicated to DVD CCA that it intended to construe the contract as allowing for the copying of DVD content to a computer hard drive or other storage media for playback without the DVD."

By creating products that allow consumers to make unauthorized copies of DVD content in conscious disregard of DVD CCA's understanding of the contract, Real engaged in paradigmatic bad faith conduct. DVD CCA Counterclaims, ¶¶ 26, 27; Restatement (Second) of Contracts § 205 cmt. d (1979) (even where a party thinks his conduct to be justified, "subterfuges and evasions violate the obligation of good faith"; bad faith includes "evasion of the spirit of the bargain," and "willful rendering of imperfect performance"). Thus, Real's effort to characterize this dispute as arising from a failure to agree on terms has no support in the pleadings.

### C. DVD CCA's Counterclaim Alleges Facts To Support The Conclusion That The Agreement Is Not A Contract Of Adhesion.

Real argues that because the "CSS License Agreement"[2] is a contract of adhesion, Real's interpretation controls the scope of the contract and by extension negates the existence of the implied covenant of good faith and fair dealing that DVD CCA alleges in the Counterclaims. Real is wrong. The Counterclaims allege that Real is a sophisticated business that entered into the Agreement with the benefit of legal counsel who advised it of the legal issues posed by its business plans under the CSS licensing structure and the Agreement. DVD CCA Counterclaims ¶¶ 13, 26. In light of these factual allegations, the Agreement cannot be deemed a contract of adhesion at the pleading stage. The cases cited by Real only reinforce the point. They involve contracts between parties of patently unequal bargaining strength, such as employer-employee agreements, insurance contracts, and standardized banking or credit card agreements. *See Intershop Commc'ns AG v. Martinez*, 104 Cal. App. 4th 191, 201 (2002) (employee stock option exchange agreement); *Neal v. State Farm Ins. Co.*, 188 Cal. App. 2d 690, 692 (1961) (employment contract); *Armendariz v. Foundation Health Psychcare Serv., Inc.*, 24 Cal. 4th 83, 113 (2000) (employment contract); *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 817-18 (1981) (mandatory union contract requiring arbitration before union board); *State Farm Fire and Casualty Co. v. Keenan*, 171 Cal. App. 3d 1 (1985) (insurance contract); *Badie v. Bank of America*, 67 Cal. App. 4th 779 (1998) (account agreement between bank and credit card holders); and *Tahoe Nat'l Bank v. Phillips*, 4 Cal. 3d 11 (1971) (lending instrument between a bank and an individual). Real does not cite a single case holding an agreement between sophisticated businesses advised by legal counsel to be adhesive. On the pleadings here, there is no basis to conclude that DVD CCA has patently unequal bargaining power over Real.

---

[2] Real's motion ignores that the Counterclaims allege that the contract between Real and DVD CCA – the Agreement – consists of the CSS License Agreement and the CSS Specifications applicable to the CSS Membership Categories that Real selected: the "DVD Video Descrambler" v. 1.10, November 1, 2000; (3) the "Authenticator Module for CSS Decryption Module" version 1.10, November 1, 2000, and (4) the "Authenticator Module for DVD Drive" version 1.10, November 1, 2000. DVD CCA Counterclaims, ¶ 9.

OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS SECOND COUNTERCLAIM
CASE NO. C08 04548 MHP

### D. Real's Argument That No Implied Covenant Arises Because The Agreement Is Adhesive Is Fact-Bound And Cannot Be Decided On The Pleadings.

Real's argument that the CSS License Agreement is adhesive and that its interpretation controls also fails because whether a contract is adhesive presents a "mixed question of law and fact" that is not properly resolved on a motion to dismiss. *Erickson v. Aetna Health Plans of California, Inc.*, 71 Cal. App. 4th 646, 653 (1999) (determination of contract of adhesion is a mixed question of law and fact) (citing *Woodard v. Southern Cal. Permanente Medical Group*, 171 Cal. App. 3d 656, 667 (1985)); *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267-68 (9th Cir. 1987); *Bryant v. Mattel*, 573 F. Supp. 2d 1254, 1260 (C.D. Cal. 2007). To properly address this mixed question, "a court would have to consider the conditions under which the contract was negotiated and executed, including an assessment of the parties' relative bargaining power." *Erickson*, 71 Cal. App. 4th at 653. In the face of these precedents, Real seeks to support the proposition that the covenant of good faith and fair dealing alleged in the Counterclaims does not exist by making the factual assertion that the parties' contract (the whole of which is not yet even before the Court) is ambiguous in some unspecified way and that Real's interpretation of the "CSS License Agreement" is "reasonable" by dint of the statement of decision from the *Kaleidescape* case. Motion at 4. Real is mistaken on two grounds. First, as a threshold point, the *Kaleidescape* decision – a matter that is beyond the Counterclaims – deals with only a small subset of the contractual provisions on which the DVD CCA's counterclaims here rest, Counterclaims ¶ 15, and does not purport to define the underlying purposes of the license agreement. Second, Real's argument, if accepted, would transform the statement of decision in *Kaleidescape*, which is on appeal and thus presently has no binding effect,[3] into a decision that is binding on DVD

---

[3] Because the appeal is still pending, the trial court ruling in *Kaleidescape* is not a final judgment for purposes of California law regarding the application of the doctrines of res judicata and collateral estoppel to bar relitigation of claims and issues previously litigated and decided. *Franklin & Franklin v. 7-Eleven Owners For Fair Franchising*, 85 Cal. App. 4th 1168, 1174 (2000) (judgments on appeal are not final for purposes of preclusion doctrines under California law). California's rules on those doctrines govern here because federal courts must apply state law principles to ascertain the preclusive effect of decisions rendered by courts of that state. *Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

7

OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS SECOND COUNTERCLAIM
CASE NO. C08 04548 MHP

CCA simply because Real claims it influenced Real's undisclosed state of mind at the time it entered into its contract with DVD CCA. No authority supports Real's argument and Real cites none.

In yet another gambit, Real would have this Court determine at this stage that Real genuinely held a different interpretation of the language of the license agreement than the interpretation it allegedly knew DVD CCA to hold (as opposed to a manufactured construction created to justify its conduct). Counterclaims ¶ 26.[4] But this presents just another variation of the same problem. Matters beyond the Counterclaims concerning the circumstances in which the Agreement was entered, the subjective intent of the parties, the relative bargaining strength of the parties, or other factual matters suggested by Real cannot properly be considered in the context of a motion to dismiss. It is black-letter law that a motion to dismiss may not argue, and the court cannot consider, factual disputes, or evidence outside of the counterclaims. *Bryant v. Mattel*, 573 F. Supp. 2d 1254, 1260 (C.D. Cal. 2007); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* ("Wright & Miller") § 1356 (3d ed. 2004) (Federal Rule 12(b)(6) motion serves to "test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case"). Real's motion violates these fundamental principles. Real's assertions as to its state of mind and other factual assertions regarding the supposed adhesive nature of the Agreement upon which Real's motion depends are contradicted in the Counterclaims, which allege that Real freely entered into the Agreement, did so knowing DVD CCA's interpretation of it and did not disclose its intention to assert an interpretation completely contrary to DVD CCA's. Consequently, Real's motion to dismiss is improper.

E.   **The Entire Agreement Is Not Yet Before The Court.**

Real's argument that its interpretation controls also fails because only part of the Agreement is attached to the pleadings, and none of it is attached to the Counterclaims. Real's First Amended Complaint references only the CSS License Agreement document – one of five documents comprising the Agreement between the parties. *See* DVD CCA Counterclaims ¶ 9. Any asserted contractual

---

[4] To the extent Real suggests that DVD CCA's counterclaims admit that Real held such a genuine and inconsistent interpretation, Real has simply misconstrued the pleadings.

8

Case3:08-cv-04548-MHP   Document116   Filed02/02/09   Page10 of 10

interpretation, regardless of the party advancing it, must be evaluated in accordance with fundamental principles of contract interpretation under California law. Chief among these principles is the requirement that "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." CAL. CIV. CODE § 1641 (West 2001). The whole Agreement is not before the Court, and even if it were, the Court could not properly resolve competing interpretations in the context of a motion to dismiss and the necessary absence of evidence beyond the pleadings. *City of Chino v. Jackson*, 97 Cal. App. 4th 377, 383-84 (2002) ("First, the [trial] court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity', i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party"), *quoting Winet v. Price*, 4 Cal. App. 4th 1159, 1165-66 (1992), (additional citation omitted); *see also Intel Corp. v. Via Technologies, Inc.*, 319 F.3d 1357, 1363, 1368 (Fed. Cir. 2003) (court interpreted language against drafter only after interpreting the language of the agreement "insofar as possible," and only after determining that "as to the critical terms the agreement is indeed ambiguous"). Whatever Real's purported contractual interpretation may be, it is plainly at odds with the interpretation DVD CCA asserts, and which Real knew DVD CCA asserted at the time the contract was made. This Court cannot resolve the dispute over the contract and its interpretation on the basis of a pleading motion such as this.

III.  **CONCLUSION**

For the foregoing reasons, DVD CCA respectfully submits that Real's motion to dismiss the Second Counterclaim should be denied.

Dated: February 2, 2009

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

WHITE & CASE LLP

By _____/s/_____

Reginald D. Steer
Attorneys for Defendant
DVD COPY CONTROL ASSOCIATION, INC.

9

OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS SECOND COUNTERCLAIM
CASE NO. C08 04548 MHP