JAMES A. DiBOISE, State Bar No. 83296
Email: jdiboise@wsgr.com
LEO CUNNINGHAM, State Bar No. 121605
Email: lcunningham@wsgr.com
COLLEEN BAL, State Bar No. 167637
Email: cbal@wsgr.com
MICHAEL A. BERTA, State Bar No. 194650
Email: mberta@wsgr.com
TRACY TOSH LANE, State Bar No. 184666
Email: ttosh@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Street
Spear Tower, Suite 3300
San Francisco, CA 94105

Attorneys for Plaintiffs and
Counterclaim Defendants
REALNETWORKS, INC. and
REALNETWORKS HOME
ENTERTAINMENT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REALNETWORKS, INC., a Washington Corporation; and REALNETWORKS HOME ENTERTAINMENT, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>DVD COPY CONTROL ASSOCIATION, INC., a Delaware nonprofit corporation, DISNEY ENTERPRISES, INC., a Delaware corporation; PARAMOUNT PICTURES CORP., a Delaware corporation; SONY PICTURES ENTER., INC., a Delaware corporation; TWENTIETH CENTURY FOX FILM CORP., a Delaware corporation; NBC UNIVERSAL, INC., a Delaware corporation; WARNER BROS. ENTER. INC., a Delaware corporation; and VIACOM, Inc., a Delaware Corporation,<br><br>Defendants. | Case Nos. C08 04548 MHP;<br>C08 04719 MHP<br><br>**REPLY IN SUPPORT OF MOTION TO PRECLUDE CLAIMS BASED ON NON-CSS TECHNOLOGIES OR, ALTERNATIVELY, TO CONTINUE THE PRELIMINARY INJUNCTION HEARING, AND FOR THE APPOINTMENT OF A DISCOVERY REFEREE**<br><br>Before: Hon. Marilyn Hall Patel<br>Dept: Courtroom 15<br>Date: February 3, 2009<br>Time: 2:00 p.m. |
| AND RELATED CASES | |

**REDACTED – PUBLIC VERSION**

REPLY ISO MOTION TO PRECLUDE
CASE NOS.: C08 04548 MHP; C08 04719 MHP

RealNetworks, Inc. and RealNetworks Home Entertainment, Inc. (collectively, "RealNetworks") submit this reply in support of their Motion to Preclude Non-CSS Technologies or to Continue the Hearing, and for the Appointment of a Discovery Magistrate ("Motion"). This reply responds to the oppositions filed on January 30, 2009 by the Studios and the DVD CCA (collectively, the "Oppositions").

### The Oppositions Ignore the Critical Issue:  Prejudice to RealNetworks

What is perhaps most telling about the Oppositions is that the Studios and the DVD CCA cannot and do not dispute that RealNetworks has been significantly prejudiced by the Studios' failure to have timely produced ARccOS and RipGuard discovery to RealNetworks. It remains undisputed that (i) the Studios' did not produce a *single* relevant ARccOS/RipGuard document until January 22, and (ii) in the short time this Motion has been pending, the Studios have produced more than *seven thousand* pages of new documents (their latest production occurred on January 30) and still have not completed their production. (Supp. Lane Dec., ¶ 2.). There is no reasonable way for RealNetworks to review and digest this volume of documents in time to depose fact witnesses, prepare and exchange expert reports, depose experts and engage in two rounds of briefing regarding ARccOS/RipGuard for a March 3 hearing date. Rather than address or even acknowledge these delays and the corresponding prejudice to RealNetworks, the Studios resort to meritless and irrelevant accusations.

First, the Studios argue that their failure to provide timely and complete discovery is somehow RealNetworks' fault, because it waited "weeks" to provide "specific requests," and declined to accept certain deposition offers. (Studio Opp. at 1.) That is sophistry. Real provided its "specific" document requests to the Studios on January 5 – just three days after receiving the Studios' requests on January 2. Further, there has never been miscommunication about or mystery surrounding what discovery was needed. As Studios' counsel Ms. Gose Lynch states in her declaration, "immediately" after the December 22 hearing the Studios "began the process of trying to identify and collect the documents that *Real's counsel had advised the Court they needed.*" (Gose Lynch Dec., ¶ 3 (emphasis added).). The Studios provide no credible explanation for the one-month delay between this "immediate" collection and their first

production of responsive materials. (Studio Opp. at 3.) To characterize searches for the terms "ARccOS" and "RipGuard" across limited custodians as "extraordinarily broad" is both disingenuous and wrong (Gose Lynch Dec., ¶ 3), given that the Studios previously propounded the *exact same* "ArccOS" and "RipGuard" searches to Real (Supp. Lane Dec., ¶ 8), as well as several other broad "term" searches on January 2, to which RealNetworks responded fully within two weeks. (Supp. Lane Dec., ¶ 3.)[1]

The Studios further contend that RealNetworks is to *blame* for declining the Studios' calculated offer of eleven separate 30(b)(6) witnesses, many of whom are designated to cover the same topics for the same entity. If RealNetworks accepted this offer, it would be foreclosed from obtaining the testimony it required because each party is currently limited to deposing six people, a point that the Studios themselves have been quick to point out. Likewise, what was RealNetworks to do when Macrovision's deposition was scheduled *just three days* after it produced more than 7,500 pages of highly technical documents and other material, much of which RealNetworks' experts were precluded from seeing, and *before* the Studios had produced any documents relating to Macrovision's RipGuard technology? The only sensible course was for RealNetworks to postpone that deposition so that it could conduct the deposition knowledgeably, with the benefit of evidence.

The Studios also claim that no extension is necessary because RealNetworks supposedly has an "in-depth understanding of" the non-CSS technologies at issue here, ARccOS and RipGuard. (Studio Opp. at 3.) This, too, is an incredible claim. To advance it, the Studios offer out-of-context snippets from the depositions of RealNetworks' employees Jeffrey Buzzard and Jeffrey Chasen, each of whom repeatedly testified for 7 hours that he had *no idea* how ARccOS worked. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

---

[1] Neither is there any excuse for the Studios' decision to produce the most critical "ARccOS" documents as "outside counsels' eyes only," a designation beyond what is permitted by the Stipulated Protective Order, when the obvious effect is to keep these documents out of the hands of RealNetworks' experts.

1  ███████████████████████████████████████████████████████████████████████
2  ██████████████████████████████████████████████████") The claims about Mr.
3  Chasen's testimony are even more incredible. ████████████████████████████
4  ███████████████████████████████████████████████████████████████████████
5  ███████████████████████████████████████████████████████████████████████
6  ██████████████████████████████████) The Studios' effort to distort the deposition
7  record speaks volumes about the merits of their position.

8       The critical issue is how RealNetworks can fairly be expected to defend itself, in approximately four weeks, against claims premised on ARccOS and RipGuard when RealNetworks has had no time to digest the more than 7000 pages of documents that the Studios have produced in the last week; the Studios' production is not yet complete; RealNetworks has had no reasonable opportunity to begin fact depositions regarding ARccOS and RipGuard; and expert discovery has yet to begin. The Studios' answer -- "full speed ahead" -- is neither fair nor just. It is the solution that rewards their discovery failures to RealNetworks' potentially irreparable prejudice. The hearing should instead be narrowed to exclude ARccOS and RipGuard, or continued until April 14 to allow RealNetworks adequate time to prepare its defenses. An April 14 hearing date is consistent with the schedule established on December 22, which provided for more than seven weeks of preparation for the hearing (March 3) after the close of discovery (January 9). Given that the Studios' document production is not yet complete, and that fact discovery is not likely to be complete for *several weeks*, an April 14 hearing date (ten weeks away) is reasonable and achievable, especially if a discovery magistrate is appointed.

**Postponing the Schedule Six Weeks Will Not Prejudice Defendants,**
**Which Have Already Obtained A TRO Against RealNetworks**

Given the undeniable prejudice to RealNetworks if the PI hearing is not postponed, the Studios attempt to articulate harm that might result to them upon such a postponement. But that is an impossible task, since the Studios already have secured an injunction which will stay firmly in place during any extension of the hearing date. The Studios claim that, notwithstanding the current restraining order, they are currently being harmed by (i) copies of RealDVD sold to

1   consumers *prior* to the TRO; and (ii) RealNetworks' attempts to find manufacturing partners for
2   its Facet product. (Studio Opp. at 2, 5.)  None of these arguments has merit.  RealNetworks has
3   neither denied nor hidden the fact that its customers continue to use copies of RealDVD that it
4   sold prior to the October 3 TRO, and that it is attempting to find manufacturers for its Facet
5   product.  It has done these things openly because they *in no way* violate this Court's directives,
6   the DMCA, or copyright law, and they do not result in any cognizable harm to the Studios.

7         The Studios' apparent contention that the outcome of the PI hearing might prevent further
8   "harm" caused by the copies of RealDVD that were sold prior to the TRO is baseless.  The
9   preliminary injuction will not affect the small number of copies of RealDVD properly sold prior
10  to the entry of the TRO ██████████████████████████████████████
11  ██████████
12  ████████████████████████████████████████████████
13  ████████████████████████████████████████████████
14  ████████████████████████
15  ██████████████████████████████).[2]  Likewise unavailing is the Studios'
16  suggestion that RealNetworks' effort to find manufacturers for Facet is prohibited by the current
17  TRO or would be restricted by a preliminary injunction.  Even if this activity could possibly be
18  construed as "marketing" – which it cannot – RealNetworks is expressly not prohibited from
19  marketing its products.[3]

---

21    [2] Notably, the Studios have not shown that any of the purchasers of RealDVD has done anything other than create a backup of DVDs that they own, consistent with their fair use rights
22  and the stated purpose for which RealNetworks offered RealDVD.

23    [3] The Studios themselves elicited the clarification at the TRO hearing that marketing is not properly within the scope of an injunction. (████████████████████████████████
24  ████████████████████████████████████████)).  In fact, prohibiting RealNetworks from discussing its products with manufacturers or the public would likely violate
25  its First Amendment rights.  Moreover, the Studios' claim that RealNetworks' conduct relating to Facet could possibly violate the TRO is directly contradicted by the statements of its counsel
26  at the TRO hearing, who conceded that Facet could not fall within the scope of the TRO because it was not at issue for the TRO proceedings. (December 22 Tr. at 16:4-16:9, Supp. Lane Dec.
27  Ex. D (Mr. Williams: "I just want to be clear:  We would not take the position that the Facet product falls under the ambit of the Court's order that you've already issued . . . [W]e do
28  recognize that that would be unreasonable.")).

REPLY ISO MOTION TO PRECLUDE          -4-
CASE NOS.: C08 04548 MHP; C08 04719 MHP

**The Studios' Claim that RealNetworks is Seeking**

**an Extension In Order to "Redesign" Facet is False.**

As discussed in RealNetworks' opening brief and undisputed by the Studios, it produced thousands of pages of Facet-related documents in November and supplemented that production with thousands more in January.  This includes documents regarding the development of Facet, current and historical versions of the Facet source code, a prototype for the Studios' inspection, and numerous witnesses to testify about Facet.  *See* Motion at 4.  In their Opposition, the Studios have attempted to mischaracterize testimony and events occurring at a deposition that did not end until *after* 7 p.m. and *after* the Studios filed their opposition (Friday, January 30) to suggest that RealNetworks is withholding discovery regarding Facet and is in the process of "redesigning" that product.  (*See* Studio Opp. at 1, 2, 4-5; Singla Dec., ¶¶ 4, 9.)  The transcript, obtained on an expedited basis over the weekend, reveals that the Studios' claims are false.  The deponent in question was Martin Schwarz, the head of the Facet Business Development Team.



---

[4] Moreover, the Court never directed RealNetworks to produce 20 prototypes—indeed, that is not even what the Studios asked for on December 22.  They asked for access to "*one or two*" boxes so that they could "test the product."  (December 22 Tr. at 74:14-16, Supp. Lane Dec. Ex. D (emphasis added).)  That is precisely what RealNetworks has given them.

REPLY ISO MOTION TO PRECLUDE                                    -5-
CASE NOS.: C08 04548 MHP; C08 04719 MHP



**A Discovery Magistrate Will Prevent, Not Cause, Delay.**

The single reason the Studios offer for denying RealNetworks' request for the appointment of a discovery magistrate is that there is no "live discovery dispute." (Studio Opp. at 1.) That is false. The Oppositions rest almost entirely on a self-serving and misleading account of the parties' *discovery* conduct to date, which has spawned numerous *existing* disputes, including (i) whether the Studios may improperly split their 30(b)(6) witnesses and topics to such a degree that RealNetworks can only cover a handful of the topics that it has noticed; and (ii) whether the Studios may designate the most critical ARccOS documents as "attorneys' eyes only," in violation of the stipulated protective order. The Opposition attempts to add to this list by identifying additional alleged "live" discovery disputes--the existence and relevance of additional Facet prototypes (they exist but as Mr. Schwarz made clear are irrelevant), and the whereabouts of a red-herring document named "arccos.zip" (it is not in RealNetworks' possession). (Studio Opp. at 1, 3-5.) A discovery magistrate will quickly and efficiently resolve these and all future

/ / /

/ / /

/ / /

1  disputes.  The alternative is inevitable delay, and additional prejudice to RealNetworks.

3  Dated:   February 2, 2009                                  WILSON SONSINI GOODRICH & ROSATI
                                                              Professional Corporation

                                                              By:  _____/s/_____
                                                                      Leo P. Cunningham

                                                              Attorneys for Plaintiffs
                                                              REALNETWORKS, INC. AND
                                                              REALNETWORKS HOME
                                                              ENTERTAINMENT, INC.