Realnetworks, Inc. et al v. DVD Copy Control Association, Inc. et al
Case3:08-cv-04548-MHP   Document118-5   Filed02/02/09   Page1 of 5
Doc. 118 Att. 4

# EXHIBIT E

---

**From:** Barth, Lawrence [mailto:Lawrence.Barth@mto.com]
**Sent:** Tuesday, October 28, 2008 5:28 PM
**To:** Tosh Lane, Tracy; Berta, Michael
**Cc:** Lynch, Rebecca
**Subject:** RealDVD - document discovery


Mike and Tracy:

I am writing (i) to provide you with a refined version of the Studios' document requests in light of our phone conversations to date; and (ii) to confirm our understanding of what the studios will be collecting. Based on the incredibly short time for collection and production, we agreed to the following ground rules applicable to both sides:

A.      Each party will collect documents from only a limited number of custodians who are most likely to have responsive documents. We will share with one another the identities (by name or function) of those from whom we've collected; if either side thinks the other side needs to collect more broadly, we will meet and confer on the subject.

B.      The parties will not collect from lawyers acting solely in legal roles.

C.      The parties will not prepare and exchange privilege logs, but we will share with each another the principles based on which we have claimed privilege in sufficient detail to allow the other side to challenge such principles.

D.      The parties will not search for documents on back-up media.

E.      The parties will continue to work with each other as the process proceeds, *e.g.*, each party will provide prompt "hit reports" for keyword searches, so each of us can make further refinements as necessary, if need be.

I.      **Studios' Document Requests**

A.      Source Code for RealDVD - You indicated that Real will produce this pursuant to a protective order. We have now sent you our revisions to the protective order and hope to finalize it with you very shortly. As you know, the judge has ordered that documents be produced immediately (where possible), even before a protective order is executed. Accordingly, we hope you will produce RealDVD source code at once. Without it, it will be impossible to meet our deadlines for expert designations, reports, depositions, etc.

B.      Documents referring to the design and/or development of RealDVD - Given the burden concerns that you mentioned in our phone call, we have narrowed our request to:

        1.      Documents constituting architecture, technical or design specifications or documentation for RealDVD, including all drafts or versions of specifications or documentation.

        2.      Proposals, planning documents and test cases relating to RealDVD.

Note that, as with source code, we need these documents asap if our experts are to be prepared in a timely fashion.

C.    All documents referring to any proposed or actual functionality of RealDVD, including the ability to add additional computers to RealDVD accounts - Based on our discussion last week, we have crafted keyword searches to take the place of our original formulation:

1.   Documents containing the terms: RealDVD & ("share" "cop!" "security" "encrypt!")

2.   Documents containing the terms: "playback" or (play! /3 cop!)

3.   Documents containing the terms: "authenticat!"

4.   Documents containing the terms: "CGMS" or "CopyNever"

5.   Documents containing the terms: ("five" or "5") /10 cop!

6.   Documents containing the terms: "CPR_MAI" or "CPRMAI"

7.   Documents containing the terms: "edf"

8.   Documents containing the terms: "file rip!" or "file cop!"

9.   Documents containing the terms: "ISO rip!" or "ISO cop!" or "ISO image!"

10.  Documents containing the terms: "lead-in" or "lead in" or "leadin"

11.  Documents containing the terms: "sector header!"

12.  Documents containing the terms: ("disc" or "disk") /2 key

13.  Documents containing the terms: "bus encrypt!"

14.  Documents containing the terms: ("bad" or "unreadable") /3 ("sector" or "data")

15.  Documents containing the terms: "Macrovision" or "Ripguard" or "Arccoss" or "X-Protect" or "Flux" or "Fortium"

D.    Documents containing the terms "CSS" and "License". You found this acceptable.

E.    Documents constituting or referring to marketing, promotional or advertising plans for RealDVD. You found this acceptable.

F.    Documents containing the terms "Streambox" and "RealDVD". You found this acceptable.

G.    Documents containing the terms "MacTheRipper," "DeCSS," "DVD X," "Slysoft," "Plato" "Handbrake" or "rip!". You found this acceptable, but warned us that the "rip!" term might result in Real's identifying a large population of documents; we asked you to test that and, if it does, we will work to narrow it.

H.    Documents containing the terms "rent!" or "borrow!" and "RealDVD". You found this acceptable.

I.    Documents containing the terms "backup cop!" and "RealDVD". You found this acceptable.

J.    Documents containing the terms "DVD CCA" or "CCA". You found this acceptable.

2/2/2009

RealDVD - document discovery
Case3:08-cv-04548-MHP   Document118-5   Filed02/02/09   Page4 of 5
Page 3 of 4

K.    Documents containing the terms "Kaleidescape". You found this acceptable.

L.    Documents sent to or received from the DVD CCA. You found this acceptable.

M.    Pleadings in RealNetworks v. Streambox. You found this acceptable.

N.    Documents relating to proposed amendments to the CSS license agreement from [January 1,] 2007 to the present regarding (i) whether a DVD must be present in the DVD drive during playback, or (ii) prohibiting copying of DVD content. You found this acceptable.

O.    Multiple copies of RealDVD software in a form that will allow our experts to work with all of its functions. I know that the technical issues are the subject of other emails between our firms, and appreciate your looking into this issue. As I've explained, we need the software immediately if we are to meet our deadlines for expert designation, reports, depositions, etc.

II.    Studios' Collection of Documents

A.    Documents comprising or referring to communications (i) within a studio (ii) between or among studios; (iii) between a studio (or studios) and the DVD CCA; and (iv) between a studio (or studios) and any member(s) of the Board of Directors of the DVDCCA or CPAC discussing:

    1. negotiation and development of the DVD CCA CSS license agreement; and

    2. proposed amendments to the DVD CCA license agreement from [January 1,] 2007 to the present regarding

        a. whether a DVD must be physically present in the DVD drive during playback; or

        b. prohibiting or permitting copying of DVD content.

Two notes here: First, we have spelled out the term "DVD CCA CSS license agreement" to make clear that the studios are not going to go back to the period before the formation of the DVD CCA and search, for example, for documents concerning licenses given by Toshiba and Matsushita or other entities that may have given licenses before the formation of the DVD CCA.

Second, I have inserted a time limitation in A.2. and used the conjunction "and" between A.2.a. and A.2.b. to make clear that the studios will be collecting documents relating only to the amendment that I take to be of principal concern to you.

B.    Documents discussing the extent to which the DVD CCA CCS license does or does not prevent copying content from DVDs.

As with your warnings to us, I must reiterate the warning that this may prove overbroad when it comes to conducting actual searches.

C.    Documents discussing actual or potential harm/injury/damage as a result of RealDVD.

As I mentioned on the phone today, we are not planning to collect from individuals whose only responsive documents (i) were generated after the execution of the tolling agreement, at a time when litigation was plainly anticipated; and (ii) would thus be work product. If there are any such documents that are not work product, we will collect and produce them.

D.    Reports/analyses/studies/presentations regarding harm caused by Kaleidescape.

E.    Documents comparing Real or RealDVD with Kaleidescape.

In addition to those categories, to which we have agreed, you asked for:

2/2/2009

F.  High level reports/presentations regarding
   1. copying by buyers, borrowers or renters of DVDs
   2. the extent to which renters or borrowers do not buy DVDs
   3. the extent to which illegal copiers of DVDs do not buy DVDs
   4. the extent to which persons who buy or rent do not also purchase digital copies
   5. calculations/estimates of losses due to piracy/illegal copying of DVDs and other forms of content
   6. bases/methodologies for such calculations/estimtes
   7. characteristics of persons who engage in piracy/illegal copying of DVDS and other forms of content
   8. consumer perception of piracy or illegal copying of digital content

We appreciate your narrowing your request from "documents" to "high level reports/presentations" but, as we tried to explain on the phone, we believe that the request remains so broad that the studios could not possibly collect, review and produce responsive documents within the time we have. Moreover, we shared with you our relevancy concerns regarding many of the documents in this category. If you want to try to narrow the request, we will reconsider it in good faith, as we have others. I urge you to do so just as soon as possible, though, as we are beginning a collection procedure, and hope to avoid (as I know you hope to avoid) the need to circle back to custodians whose documents already have been collected. NB to Tracy: I just received your email attempting to narrow these, and we discussed some concepts on the phone. I will get back to you about those.

G.  Documents filed in legal proceedings where studios have invoked 3rd party beneficiary rights under the DVD CCA CSS license.

We will produce any such filed documents that are not sealed.

H.  Testimony from studio witnesses in The Cartoon Network v. CSC Holdings

I am checking on protective orders and confidentiality concerns. Subject to what I learn, we are inclined to provide responsive materials.

Please correct any misunderstandings immediately. As with all of our previous exchanges of such document requests, we make these without prejudice to seeking any other documents or information later in the proceedings.

Lawrence C. Barth
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071

(213) 683-9274 - phone
(213) 683-5174 - fax
lawrence.barth@mto.com

***NOTICE***

*This e-mail message is confidential, is intended only for the named recipient(s) above, and may contain information that is privileged, attorney work product or exempt from disclosure under applicable law. If you have received this message in error, or are not a named recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you have received this message in error, please immediately notify the sender by return e-mail and delete this e-mail message from your computer. Thank you.*

2/2/2009