| | |
|---|---|
| 1 | JAMES A. DiBOISE, State Bar No. 83296<br>Email: jdiboise@wsgr.com |
| 2 | COLLEEN BAL, State Bar No. 167637<br>Email: cbal@wsgr.com |
| 3 | MICHAEL A. BERTA, State Bar No. 194650<br>Email: mberta@wsgr.com |
| 4 | TRACY TOSH LANE, State Bar No. 184666<br>Email: ttosh@wsgr.com |
| 5 | WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation |
| 6 | One Market Street<br>Spear Tower, Suite 3300 |
| 7 | San Francisco, CA 94105 |
| 8 | Attorneys for Plaintiffs and<br>Counterclaim Defendants |
| 9 | REALNETWORKS, INC. and<br>REALNETWORKS HOME |
| 10 | ENTERTAINMENT, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 13 | REALNETWORKS, INC., a Washington Corporation; and REALNETWORKS HOME ENTERTAINMENT, INC., a Delaware corporation, | Case Nos. C08 04548 MHP;<br>C08 04719 MHP |
| 14 | | |
| 15 | Plaintiffs, | **REPLY IN SUPPORT OF MOTION TO DISMISS DVD COPY CONTROL ASSOCIATION, INC.'S SECOND COUNTERCLAIM** |
| 16 | v. | |
| 17 | DVD COPY CONTROL ASSOCIATION, INC., a Delaware nonprofit corporation, DISNEY ENTERPRISES, INC., a Delaware corporation; PARAMOUNT PICTURES CORP., a Delaware corporation; SONY PICTURES ENTER., INC., a Delaware corporation; TWENTIETH CENTURY FOX FILM CORP., a Delaware corporation; NBC UNIVERSAL, INC., a Delaware corporation; WARNER BROS. ENTER. INC., a Delaware corporation; and VIACOM, Inc., a Delaware Corporation, | **Before: Hon. Marilyn Hall Patel**<br>**Dept: Courtroom 15**<br>**Date: February 23, 2009**<br>**Time: 2:00 p.m.** |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | Defendants. | |
| 24 | | |
| 25 | | |
| 26 | AND RELATED CASES | |

I.      INTRODUCTION

DVD CCA is determined to transform the explicit terms of the CSS License Agreement so as to prohibit the use of CSS technology by the RealDVD and New Platform products by any available means.  But its attempt to imply terms of its choosing into the Agreement to achieve that goal must fail.  DVD CCA's arguments to try to save its second counterclaim from dismissal turn on their head not only hornbook law governing the implied contract of good faith and fair dealing, but also the fundamental precepts used to interpret contracts more generally.  According to DVD CCA, so long as one party (DVD CCA) intended at some unspecified time that a contract should have a specific meaning, the first party's intent becomes part of the agreement, regardless of what the agreement actually says and even if the second party disagreed.  But it is never the case in contract law that one party is given unilateral power to imply additional obligations on the second party with which the second party expressly disagrees.  To the contrary, the implied covenant furthers only the *agreed common purposes* of the parties.

It would be particularly improper here to impose additional, unagreed-upon obligations on Real where DVD CCA has alleged that Real entered a standard, adhesive contract that must be fair and non-discriminatory *to all signatories regardless of when they signed*.  DVD CCA attempts to justify the imposition of additional terms on Real by alleging that Real was "aware" of DVD CCA's intent to imply additional terms at the time that Real entered into the agreement.  But DVD CCA's own allegations establish not only that there was no negotiation between DVD CCA and Real as to the terms, meaning or purpose of the CSS License Agreement, but that there *never* is any negotiation for this Agreement by any licensee, since every licensee *enters the same agreement*.  Thus, Real's supposed awareness of DVD CCA's intent cannot vary the terms of the DVD CCA's standard form license agreement.  There is no justification that would permit DVD CCA to imply additional obligations on Real not imposed on other licensees, based solely on what Real did or did not know about DVD CCA's unexpressed intentions at a particular moment in time.  By DVD CCA's own allegations, the language of the take-it-or-leave-it CSS Agreement controls and must be construed against the drafter (*i.e.*, DVD CCA) to prohibit imposition of unfair additional obligations on particular licensees.

1   DVD CCA's counterclaim for breach of the implied covenant of good faith and fair

2   dealing can only survive if this Court accepts its invitation to permit the drafter of an adhesive

3   contract to imply additional terms into that contract at will.  Because there is no basis in law for

4   DVD CCA's position, Real respectfully requests that the Court decline that invitation and

5   dismiss DVD CCA's second counterclaim with prejudice.

## II. THE FACTS ALLEGED BY DVD CCA'S COUNTERCLAIM ESTABLISH THAT THE CSS LICENSE AGREEMENT IS A CONTRACT OF ADHESION THAT MUST BE CONSTRUED AGAINST THE DRAFTER

In an effort to avoid the logical and legal consequences that flow from the fact that the CSS License Agreement is a contract of adhesion, DVD CCA devotes a significant portion of its Opposition to arguing that it is not.  Opp. at 6-8.  However, DVD CCA's Counterclaim alleges facts that are more than sufficient to establish that the CSS License Agreement is a contract of adhesion.  The Counterclaims allege:

- "Under a uniform and non-discriminatory license, anyone wanting to manufacture a product (hardware, software or other related technology) used for playing back CSS protected DVD content" must license CSS technology.  (Counterclaims at 2 (preliminary statement))

- All licensees "are subject to the same structure for the license's use"  (*Id.*, at 3 (preliminary statement))

- The rules governing implementation of CSS place all manufacturers "on a 'level playing field.'" (*Id.*, ¶ 6)

- Manufacturers of DVD playback products "must obtain licenses from DVD CCA in order to use CSS." (*Id.,* ¶ 6).

These allegations establish that the CSS License Agreement is "a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms"—in other words, a contract of adhesion.  *Intershop Commc'ns AG v. Martinez*, 104 Cal.App. 4th 191, 201 (2002), *citing Neal v. State Farm Ins. Co.*, 188 Cal.App.2d 690, 694 (1961); *see* Motion to Dismiss ("Mot.") at 2.  As explained in Real's opening motion, the CSS License itself establishes by its terms that it is a contract of adhesion, which is only confirmed by DVD CCA's own allegations.

### A. Regardless of Its Alleged Sophistication, Real's Lack of Alternative Sources for CSS Technology Render the License Agreement Adhesive

Despite the fact that the allegations of its counterclaims establish that the CSS License Agreement is a contract of adhesion, DVD CCA now insists that the Agreement "cannot be deemed a contract of adhesion at the pleading stage" because it has alleged that Real is a sophisticated business that entered into the Agreement with the benefit of the advice of legal counsel. Opp. at 6. DVD CCA is wrong.

According to the allegations of the counterclaims, access to CSS technology is *essential* for *anyone* wanting to legally manufacture a product used for playing back the movies sold on DVDs protected by the CSS technology. Counterclaims at 2 and ¶ 7. The allegations also make clear that the only way to gain access to the CSS technology is to sign up for the standardized CSS License Agreement. Counterclaims at 2-3. These allegations render moot DVD CCA's assertion that the Court must consider the relative sophistication of Real and DVD CCA in order to find that the CSS License Agreement is adhesive. As the California Supreme Court has held, where a contracting party has no alternative means of gaining access to an essential service other than by agreeing to a standardized contract, the adhering party's sophistication will not stand in the way of a finding that the contract was one of adhesion. *Graham v. Scissor-Tail, Inc.*, 28 Cal.3d 807, 818 (1981). In that case, Graham, described as an "experienced" music producer and promoter, signed a standardized form contract to promote concerts for Scissor-Tail. Graham's sophistication and experience did not preclude the Court from ruling that this contract was adhesive based on the fact that Graham did not have any alternatives to signing the form contract if he wanted to do business with any prominent or significant concert artist. *Id*; *see also Tunkl v. Regents of the University of California*, 60 Cal.2d 92, 100 (1963) (party that provides an essential service "possesses a decisive advantage of bargaining strength" here exercised by confronting the public with a standardized contract of adhesion).

Despite its alleged sophistication, Real (like Graham) had no choice but to accept the contractual terms offered by DVD CCA if it was to manufacture a product (hardware, software or other related technology) used for playing back CSS protected DVD content. *See*

Counterclaims at 2.  Hence, based solely on the allegations of the Counterclaims, the CSS License Agreement is a contract of adhesion, and Real is unquestionably an adherent to that contract.  *See* Counterclaims at ¶¶ 9, 11 (alleging that Real is a CSS licensee).[1]

### B. No Issues of Fact Need Be Decided to Determine that the License Agreement Is a Contract of Adhesion

DVD CCA also argues that the CSS Agreement cannot properly be deemed a contract of adhesion on a motion to dismiss, because doing so would require the Court to decide factual issues outside the pleadings.  Again, DVD CCA's argument fails.  Courts may properly decide a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) based on the material allegations of a complaint (or counterclaim).  *See, e.g. Bell Atlantic Corp. v.* Twombly, 127 S.Ct. 1955, 1965 (2007); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).  That is precisely what Real is asking the Court to do here.  DVD CCA's allegations establish that (1) Real had no opportunity to negotiate the terms of the CSS License Agreement, and (2) Real had no choice but to accept the terms offered by DVD CCA if it was to make a product that could be used to play back CSS-protected DVD content.  Counterclaims at 2.  There is no need, as DVD CCA would have it, for the Court to consider the conditions under which the Agreement was negotiated or executed (Opp. at 7) where, as here, the Counterclaims themselves establish that Real had no bargaining power.  *See supra* at 2.  Thus, the Court can determine that the CSS License Agreement is a contract of adhesion simply by assuming that the allegations of the counterclaims are true; it need not resolve any factual issues.  *See, e.g. Kayne v. Thomas Kinkade Co.*, No. 07-4721-SI, 2007 WL 4287364 at *5 (N.D. Cal. Dec. 5, 2007) (finding agreement attached to complaint was a contract of adhesion in the course of granting motion to dismiss); *Lewis v. Prudential Bache Securities, Inc.*, 179 Cal. App. 3d 935, 939 (1986) (noting on appeal that trial court had found customer agreement was one of adhesion when it overruled demurrer).

---

[1] Thus, DVD CCA's effort to distinguish the cases cited by Real in its opening brief on the grounds that they "involved parties of patently unequal bargaining strength" (Opp. at 6) is unavailing.  DVD CCA's allegations *establish* that Real, like the parties in the cases upon which it relies, lacked bargaining power to negotiate or otherwise resist the terms imposed by a contract of adhesion.

The cases cited by DVD CCA do not hold otherwise.  In *Erickson v. Aetna Health Plans of California, Inc.*, 71 Cal. App. 4th 646, 653 (1999) and *Woodard v. Southern Cal. Permanente Medical Group*, 171 Cal. App. 3d 656, 667 (1985), the California courts of appeal had no occasion to assess whether they needed to reach beyond the allegations of the pleadings to decide whether the contract was adhesive because the issue was not properly before them on appeal. The two federal cases DVD CCA cites do no more than recite general standards for matters properly considered in deciding a 12(b)(6) motion, and make no mention of contracts of adhesion.  *See Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Bryant v. Mattel*, 573 F. Supp. 2d 1254, 1260 (C.D. Cal. 2007).

Because the allegations of the Counterclaim provide all the necessary facts, this Court may properly—and should—find that the CSS License is a contract of adhesion.  That finding will also necessitate a dismissal of DVD CCA's second counterclaim, as discussed below.

### III. DVD CCA'S ALLEGATIONS ARE NOT SUFFICIENT TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

As discussed in Real's opening brief, DVD CCA fails to state a claim for breach of the implied covenant because (1) the parties never reached agreement on the terms or purposes DVD CCA now seeks to imply, and (2) as a contract of adhesion, the Agreement must be construed against the drafter (DVD CCA).  DVD CCA fails to respond to either of these arguments.

#### A. DVD CCA Cannot Impose Specific Additional Obligations on Real Based Solely on DVD CCA's Own Expectations

To establish that Real has breached the implied covenant of good faith and fair dealing, DVD CCA must allege that Real has frustrated the *agreed common purposes* of the Agreement. *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal.App.3d 1371, 1395 (1990); *see* Mot. at 3. According to DVD CCA's own allegations, however, Real's view of what the Agreement required did not include the additional obligations DVD CCA claims are necessarily included in the Agreement's purpose.  To the contrary, DVD CCA alleges that Real *disagreed* with the terms DVD CCA now seeks to imply.  Counterclaims, ¶ 26.  This failure to agree on the additional terms is fatal to DVD CCA's claim.

In its Opposition, DVD CCA simply ignores the lack of any agreement between the parties. Instead, it relies exclusively on a statement from the Agreement that its general purpose is to "prevent casual consumers from making unauthorized copies of DVD content."[2] *Id.* From this, DVD CCA seeks to imply additional obligations, nowhere present in the language of the Agreement,[3] arguing that these new obligations "flow directly from the broader aim and requirements of the Agreement and the CSS technology itself." Opp. at 4. In particular, DVD CCA would require that (1) "the physical DVD be in a playback device's disc drive during authentication, descrambling and playback," and (2) "the playback device not copy CSS protected content to a computer hard drive or other media for subsequent playback with the DVD disc." *Id.*, ¶26.

DVD CCA's effort to import additional obligations from a general statement of purpose is improper for at least two reasons. First, pursuant to DVD CCA's own allegations (and the language of the contract itself), the CSS Agreement already expressly requires that licensees "observe detailed specifications for the decryption and descrambling processes." (Counterclaims at 2). Indeed, as DVD CCA alleges, there are at least five separate documents comprising the technical specifications of the Agreement. Counterclaims ¶ 9. In other words, according to DVD CCA, the Agreement expressly spells out the specific requirements that Real (and every

---

[2] DVD CCA also seeks to rely on allegations from its counterclaims regarding DVD CCA's unilateral expectations. However, these statements were not agreed to by the parties and contradict the specific terms of the CSS License Agreement which set forth the obligations of the parties. They are therefore properly ignored on this motion. *See, e.g., In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008), *quoting Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (when deciding a motion to dismiss, "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."); *Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1176-76 (C.D. Cal. 2008), *quoting Thompson v. Illinois Dep't of Professional Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) ("where a plaintiff attached documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim.").

[3] By definition, the terms DVD CCA seeks to imply are not already expressly required by the language of the agreement. To the extent any terms DVD CCA seeks to imply are already expressly required, DVD CCA's claim for breach of the implied covenant is superfluous and should be dismissed on that basis. *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1394 (1990) (demurrer properly sustained where implied covenant claim was duplicative of claim for breach of contract).

1  other licensee) must follow in order to meet the contract's agreed-upon purposes.  DVD CCA's
2  effort to import new, specific prohibitions from a general statement of purpose is in effect
3  improperly rewriting the contract.  It is black letter law that the implied covenant cannot be used
4  to vary the terms of a contract.  *Guz. v. Bechtel National, Inc.*, 24 Cal.4th 317, 349-50 (2000)
5  (implied covenant "cannot impose substantive duties or limits on the contracting parties beyond
6  those incorporated in the specific terms of their agreement.").

7  Second, DVD CCA's effort to impose additional, unstated obligations on Real is
8  particularly improper in the context of a contract of adhesion.  As Real pointed out in its opening
9  brief, and DVD CCA does not dispute, a contract of adhesion must be construed against the
10 drafter.  *See* Mot. at 2, 4; *Badie v. Bank of America*, 67 Cal.App.4th 779, 798 (1998); *State Farm
11 and Casualty Co. v. Keenan*, 171 Cal.App.3d 1, 14 (1985).  Since the *adhering* party's
12 reasonable interpretation must be applied to interpret any ambiguity in the agreement itself, it
13 would make no sense to permit the *adhesor* to dictate the meaning of the implied covenant.  To
14 do so would permit the very party who exercised exclusive control over the explicit terms of the
15 agreement to extend that control to dictating implied terms or duties, putting the adhering party
16 at additional disadvantage.

17 This is not a case, as DVD CCA asserts, in which "the implied covenant of good faith
18 and fair dealing prohibits a licensee from taking advantage of the circumstances of the
19 transaction to unfairly disadvantage the licensor."  Opp. at 2-3.  The only party put at a
20 disadvantage by the circumstances of the "transaction" between the parties here was Real.  None
21 of the cases DVD CCA cites in this connection involve licenses characterized as contracts of
22 adhesion, rendering those cases—and their findings of breach of the implied covenant—
23 inapposite here.  *See* Opp. at 3.  DVD CCA is therefore wrong to assert that Real's approach to
24 the implied covenant would permit licensees to undermine the fundamental purpose of any
25 standardized license they might enter without fear of liability for violating the implied covenant.
26 Opp. at 1-2.  It is DVD CCA's approach, not Real's, that would grant one of the contracting
27 parties an unfair advantage.  DVD CCA would give the drafters of contracts of adhesion, who
28 already dictate the explicit terms of those contracts, the ability to impose additional obligations

1 seemingly at whim, so long as they can allege that the obligations are really "benefits" that flow
2 from the broader aims and requirements of the Agreement.   There is no precedent—and DVD
3 CCA does not point to any—that could support such an outcome.
4      DVD CCA's allegations rely exclusively on its own expectations to dictate additional
5 obligations which it then can allege that Real has breached.  As such, DVD CCA has failed to
6 allege a claim for breach of the implied covenant.

7    **B.    Real's Alleged Knowledge of DVD CCA'S Intent Does Not Support DVD CCA's Claim**
8

9      DVD CCA seeks to rely on Real's supposed knowledge of DVD CCA's unstated
10 interpretation of the CSS Agreement as justifying imposition of the additional terms.  Here again,
11 DVD CCA is badly misguided.  DVD CCA alleges that all licenses enter into the same CSS
12 Agreement, and that the Agreement is "uniform and nondiscriminatory."  Counterclaims at 2; *see*
13 *also id.* at 3 (stating that "all licensees are subject to the same structure for the license's use.");
14 11 (stating that contract places "all manufacturers of CSS playback products" on a "level playing
15 field").  It therefore cannot be the case that Real's alleged knowledge can be used to justify
16 imposition of additional terms on Real that are not imposed on other licensees.  By DVD CCA's
17 own allegations, the language of the standard-form CSS Agreement controls and must be
18 construed to prohibit imposition of unfair additional obligations on particular licensees.

19 **IV.   NO ISSUES OF FACT NEED BE DECIDED TO DETERMINE THAT DVD CCA CANNOT IMPOSE THE SPECIFIC OBLIGATIONS IT ALLEGES BY MEANS
20    OF THE IMPLIED COVENANT**

21      DVD CCA argues that the Court cannot decide Real's motion without determining that
22 Real held a different interpretation of the language of the license agreement than the
23 interpretation that it allegedly knew DVD CCA to hold, and that because that determination is a
24 factual matter, the Court cannot grant Real's motion to dismiss.  Opp. at 8.  That argument starts
25 from the false premise that DVD CCA can impose additional implied obligations in a contract of
26 adhesion.  As there was no negotiation between Real and DVD CCA for the CSS License, there
27 can be no additional implied terms.  As explained above, the Court can determine whether it is
28 appropriate to impose these specific additional obligations based only on DVD CCA's

allegations establishing that the CSS License is a contract of adhesion, and thus the Court need not reach the question of who thought what when. Similarly, since the Court can decide whether it is appropriate to imply additional terms based on the allegations in the Counterclaim, it need not reach the other factual issues DVD CCA argues that Real's motion raises: whether the CSS License Agreement is ambiguous (although that issue may be properly decided as a matter of law),[4] or whether Real's interpretation of the CSS License Agreement is in fact reasonable. Opp. at 7-8. *See, e.g. Badie*, 67 Cal.App.4th at 799 (interpretation of contract is question of law unless interpretation turns upon credibility of extrinsic evidence); *Stevenson v. Oceanic Bank*, 223 Cal.App.3d 306, 315 (same). Because Real's motion does not turn on any disputes of fact that are not conclusively established by DVD CCA's pleading, there is simply no need for this Court to decide any disputes of fact in order to grant Real's motion, and the Court should not hesitate to do so on that basis.

---

[4] While the parties have a factual dispute as to which particular additional documents actually comprise the CSS License Agreement, that dispute need not be resolved here because it is not in dispute that the CSS License contains express technical requirements that the DVD CCA is seeking to expand by way of a unilateral intention. Thus, the Court need not resolve any "competing interpretations" of the Agreement to decide this motion. That said, DVD CCA is wrong when it asserts that what it refers to as the "whole Agreement" – *i.e.*, the CSS License Agreement document and the CSS Specifications it alleges are applicable to Real—would not properly be before the Court on this motion. Opp. at 8 and n.1. DVD CCA's counterclaim refers to all of the documents it alleges make up the Agreement. Counterclaims ¶ ¶ 9, 15. Thus, the Court could properly consider those documents in deciding Real's motion to dismiss—although there is no need for it to do so. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002).

## V.  CONCLUSION

For the foregoing reasons, and the reasons stated in its opening brief, Real respectfully requests that this Court dismiss with prejudice DVD CCA's Second Counterclaim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

Dated: February 9, 2009

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: _____/s/_____
    Colleen Bal

Attorneys for Plaintiffs
REALNETWORKS, INC. AND
REALNETWORKS HOME
ENTERTAINMENT, INC.