1  GLENN D. POMERANTZ (SBN 112503)
   Glenn.Pomerantz@mto.com
2  BART H. WILLIAMS (SBN 134009)
   Bart.Williams@mto.com
3  KELLY M. KLAUS (SBN 161091)
   Kelly.Klaus@mto.com
4  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue, 35th Floor
5  Los Angeles, CA 90071-1560
   Tel: (213) 683-9100; Fax: (213) 687-3702
6

ROBERT H. ROTSTEIN (SBN 72452)
rxr@msk.com
ERIC J. GERMAN (SBN 224557)
ejg@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Tel: (310) 312-2000; Fax: (310) 312-3100

7  GREGORY P. GOECKNER (SBN 103693)
   gregory_goeckner@mpaa.org
8  DANIEL E. ROBBINS (SBN 156934)
   dan_robbins@mpaa.org
9  15301 Ventura Boulevard, Building E
   Sherman Oaks, California 91403-3102
10 Tel: (818) 995-6600; Fax: (818) 285-4403

11 Attorneys for Defendants/Counterclaim-Plaintiffs/Plaintiffs
   COLUMBIA PICTURES INDUSTRIES, INC., DISNEY
12 ENTERPRISES, INC., PARAMOUNT PICTURES CORP.,
   SONY PICTURES ENTERTAINMENT, INC., SONY
13 PICTURES TELEVISION INC., TWENTIETH CENTURY
   FOX FILM CORP., NBC UNIVERSAL, INC., WALT
14 DISNEY PICTURES, WARNER BROS.
   ENTERTAINMENT, INC., UNIVERSAL CITY STUDIOS
15 PRODUCTIONS LLLP, UNIVERSAL CITY STUDIOS
   LLLP, AND VIACOM, INC.
16

17                    UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19 REALNETWORKS, INC., et al.,              CASE NO. C 08-4548-MHP

20            Plaintiffs,                    Consolidated with Case No. C 08-04719-MHP

21    vs.                                    **PUBLIC REDACTED VERSION: NOTICE
                                             OF MOTION AND MOTION FOR
22 DVD COPY CONTROL ASSOCIATION,            SANCTIONS FOR SPOLIATION OF
   INC., et al.                             EVIDENCE; MEMORANDUM OF POINTS
23                                          AND AUTHORITIES IN SUPPORT
            Defendants.                      THEREOF**
24
25 AND CONSOLIDATED ACTIONS.               Date: March 16, 2009
                                            Time: 2:00 p.m.
26                                          Ctrm: 15 (Hon. Marilyn Hall Patel)

27                                          [Filed concurrently herewith: Declarations of
                                            Rebecca Gose Lynch and Dr. John P.J. Kelly]
28

7237423.1

NOTICE OF MOT. & MOT. FOR SPOLIATION
SANCTIONS; MEMORANDUM OF P.'S & A.'S

Dockets.Justia.com

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2        PLEASE TAKE NOTICE that on March 16, 2009, at 2:00 p.m. (or, alternatively,

3    April 6, 2009 at 2:00 p.m.),[1] or as soon thereafter as counsel may be heard in Courtroom 15 of the

4    above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, California, Columbia

5    Pictures Industries, Inc., Disney Enterprises, Inc., Paramount Pictures Corp., Sony Pictures

6    Entertainment, Inc., Sony Pictures Television Inc., Twentieth Century Fox Film Corp., NBC

7    Universal, Inc., Walt Disney Pictures, Warner Bros. Entertainment, Inc., Universal City Studios

8    Productions LLLP, Universal City Studios LLLP, and Viacom, Inc. (collectively, "the Studios")

9    will and hereby do move, pursuant to the Court's inherent sanctioning authority, for an Order

10        (1) requiring preservation of relevant documents by RealNetworks, Inc. and

11   RealNetworks Home Entertainment, Inc. (collectively, "Real");

12        (2) precluding Real from impeaching or controverting the testimony of Nicole

13   Hamilton on specific issues;

14        (3) taking an inference that Real was well aware of the ARccOS and RipGuard

15   technologies and sought to circumvent those technologies;

16        (4) precluding Real from offering the testimony of Todd Basche and Richard

17   Wolpert;

18        (5) requiring Real to produce Phil Barrett for a deposition on spoliation and Facet,

19   as ordered by the Court at the December 22, 2009 hearing; and

20        (6) imposing monetary sanctions against Real.

21   This motion is brought on the grounds that Real failed to take adequate steps to preserve evidence

22   and willfully destroyed relevant evidence while it was under a duty to preserve that evidence,

23   which actions have prejudiced the Studios' ability to present their claims and to respond to Real's

24   claims and defenses.

25        This motion is based on this Notice of Motion and Motion, the attached

26   _____

27   [1] The Studios have filed concurrently herewith an Administrative Motion For Order Shortening
     Time For Hearing on Motion For Sanctions For Spoliation Of Evidence, which requests a hearing
28   date of March 16, 2009.

NOTICE OF MOT. &  MOT. FOR SPOLIATION
SANCTIONS; MEMORANDUM OF  P.'S & A.'S

1    Memorandum of Points and Authorities, the Declarations of Rebecca Gose Lynch and Dr. John

2    P.J. Kelly filed concurrently herewith, the pleadings on file in this action, and on such other and

3    further matters as may be presented at or before the hearing on this motion.

4

5

     DATED:  February 25, 2009

6

7                                                        /s/
                                              ROHIT SINGLA
8                                             MUNGER, TOLLES & OLSON LLP
                                              560 MISSION ST., 27TH FLOOR
9                                             SAN FRANCISCO, CA  934105
                                              Telephone:     (415) 512-4000
10
                                              Attorneys for Defendants/Counterclaim-
11                                            Plaintiffs/Plaintiffs
                                              COLUMBIA PICTURES INDUSTRIES, INC., DISNEY
12                                            ENTERPRISES, INC., PARAMOUNT PICTURES
                                              CORP., SONY PICTURES ENTERTAINMENT, INC.,
13                                            SONY PICTURES TELEVISION INC., TWENTIETH
                                              CENTURY FOX FILM CORP., NBC UNIVERSAL,
14                                            INC., WALT DISNEY PICTURES, WARNER BROS.
                                              ENTERTAINMENT, INC., UNIVERSAL CITY
15                                            STUDIOS PRODUCTIONS LLLP, UNIVERSAL CITY
                                              STUDIOS LLLP, AND VIACOM, INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOT. &  MOT. FOR SPOLIATION
                                              SANCTIONS; MEMORANDUM OF  P.'S & A.'S

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................ 3

    A.   Real Anticipated Litigation from the Beginning.................................. 3

        1.
                                .. 3

        2.   Real took active steps to sanitize the discovery record........................ 4

    B.   Real Failed To Preserve Important Evidence...................................... 5

        1.   Ms. Hamilton's notebooks ...................................................... 5

        2.   Emails that ........................................................... 7

        3.   The "arccos.zip" file archive ...................................... 8

        4.   ................................................................................ 9

III. ARGUMENT ................................................................................................... 9

    A.   Real Had a Duty to Preserve Relevant Evidence Since at Least April 2007 ...... 9

    B.   Real Violated Its Obligation to Implement a Litigation Hold ......................... 10

    C.   Real Willfully Destroyed Documents ................................................ 11

    D.   Prejudice to the Studios Can Be Presumed ...................................... 12

    E.   The Studios Are Entitled to Proportionate Sanctions .......................... 13

        1.   The Court should issue a document preservation order ....................... 13

        2.   Real should be precluded from impeaching or controverting certain testimony of Ms. Hamilton .................................................. 13

        3.   The Court should infer that Real knowingly purchased technologies to circumvent ARccOS and RipGuard ................................... 14

        4.   Real should be precluded from offering testimony from Messrs. Basche and Wolpert .......................................................... 15

        5.   Real should be required to produce Mr. Barrett for a deposition on spoliation and Facet.................................................... 16

        6.   Monetary sanctions should be imposed against Real........................... 16

IV.  CONCLUSION ................................................................................................ 16

7237978.1

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*AdvantaCare Health Partners, LP v. Access IV,*
NO. C 03-04496JF, 2004 WL 1837997 (ND. Cal. Aug. 17, 2004) ............................ 15, 16

*AmeriPride Services, Inc. v. Valley Indus. Service, Inc.,*
2006 WL 2308442 (E.D. Cal. Aug. 9, 2006) ................................................................ 11

*Blinzler v. Marriott Int'l Inc.,*
81 F.3d 1148 (1st Cir. 1996) ...................................................................................... 12

*Campbell Indus. v. M/W Gemini,*
619 F.2d 24 (9th Cir. 1980) ........................................................................................ 15

*Capellupo v. FMC Corp.,*
126 F.R.D. 545 (D. Minn. 1989) ................................................................................ 16

*Glover v. The BIC Corp.,*
6 F.3d 1318 (9th Cir. 1993) ........................................................................................ 15

*Hickman v. Taylor,*
329 U.S. 495 (1947) .................................................................................................... 13

*In re Napster, Inc. Copyright Litigation,*
462 F. Supp. 2d 1060 (N.D. Cal. 2006) ................................................................... 9, 15

*Larson v. Bank One Corp.,*
No. 00 C 2100, 2005 WL 4652509 (N.D. Ill. Aug. 18, 2005) .................................... 10

*Leon v. IDX Systems Corp.,*
464 F.3d 951 (9th Cir. 2006) ................................................................................. 11, 12

*Mosel Vitelic Corp. v. Micron Technology, Inc.,*
162 F. Supp. 2d 307 (D. Del. 2000) ........................................................................... 11

*Nation-Wide Check Corp. v. Forest Hills Distrib., Inc.,*
692 F.2d 214 (1st Cir. 1982) ...................................................................................... 15

*National Ass'n Radiation Survivors v. Turnage,*
115 F.R.D. 543 (ND. Cal. 1987). ..................................................................... 12, 14, 16

*Nursing Home Pension Fund v. Oracle Corp.,*
No. C 01-00988 SI, 2008 WL 4093497 (N.D. Cal. 2008) .......................................... 12

*Pressey v. Patterson,*
898 F.2d 1018 (5th Cir. 1990) .................................................................................... 13

*Prudential Ins. Co. of Am. Sales Practices Litigation,*
169 F.R.D. 598 (D.N.J. 1997) .................................................................................... 13

*Residential Funding Corp. v. DeGeorge Fin. Corp.,*
306 F.3d 99 (2d Cir. 2002)......................................................................................... 12

*RMS Services-USA, Inc. v. Houston,*
2007 WL 1058923 (E.D. Mich. Apr. 5, 2007)............................................................ 11

*Rogers v. Chicago Park Dist.,*
89 F.R.D. 716 (N.D. Ill. 1981) .................................................................................... 14

*School-Link Technologies, Inc. v. Applied Resources, Inc.,*
No. 05 2088-JWL, 2007 WL 677647 (D. Kan. Feb. 28, 2007) .................................. 10

7237978.1

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Shoen v. Shoen*,
 5 F.3d 1289 (9th Cir. 1993) ............................................................................................. 13

*Silvestri v. General Motors Corp.*,
 271 F.3d 583 (4th Cir. 2001) ........................................................................................... 10

*Thompson v. General Nutrition Corp., Inc.*,
 593 F. Supp. 1443 (CD Cal. 1984) ................................................................................. 16

*Turner v. Hudson Transit Lines, Inc.*,
 142 F.R.D. 68 (S.D.N.Y. 1991) ....................................................................................... 11

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp,*
 982 F.2d 363 (9th Cir. 1992) ...................................................................................... 14, 15

*Zubulake v. UBS Warburg LLC*,
 220 F.R.D. 212 (S.D.N.Y. 2003) ..................................................................................... 10

*Zubulake v. UBS Warburg LLC*,
 229 F.R.D. 422 (S.D.N.Y. 2003) ..................................................................................... 11

1

# MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3
It has become apparent that, even as Real was filing and pursuing this lawsuit, it

4
failed to take adequate steps to preserve evidence and, in fact, spoliated key evidence.  Our efforts

5
to meet and confer on these issues have been repeatedly met by stonewalling.  The Studio

6
defendants now seek the Court's assistance to ensure that Real preserves documents from here on

7
out and that reasonable sanctions are imposed to try to level the playing field.

8
Real's witnesses and documents confirm that they knew from early <u>2007</u> that

9
litigation over Facet and Vegas (collectively, "RealDVD") was probable,

10

11

12

13

14
despite repeated requests to Real to explain

15
its actions, there is no evidence that Real took any steps to preserve documents.

16

17

18

19

20
And, of course, it is not

21

22
known how many other RealDVD team members          deleted their documents.

23
Even more alarming,

24

25

26

27
―――――――――――――――

28
[2] All exhibit references are to the Lynch Declaration in support of this motion.

NOTICE OF MOT. &  MOT. FOR SPOLIATION
SANCTIONS; MEMORANDUM OF  P.'S & A.'S

1   6). This evidence and the evidence that Real's executives and counsel were working to shape the

2   discovery record smacks of selective preservation.

3          Indeed, it appears Real *still* has not implemented a document preservation policy

4   and documents appear to have been destroyed even during the litigation. For example, Ms.

5   Hamilton maintained three or four notebooks which seem to be the only comprehensive

6   documentation for the development of Facet. Those notebooks were not produced in discovery,

7   and Real now says that it does not know what happened to them. This is shocking given that Ms.

8   Hamilton handed them over to two of Real's executives, whom she identified by name, less than

9   a *week* before Real filed this lawsuit — in the midst of Real's litigation preparations, in the

10  middle of a litigation "standstill" agreement, and just as the Studios' counsel sent Real a letter

11  confirming that the Studios would be seeking a TRO.

12          To take another egregious example,

13

14

15                                                                                          This

16  archive was not produced in discovery even though metadata produced by Real indicates that it

17  was in Real's possession as recently as November 2008 when Real made its document

18  production. When pressed, Real first insisted that producing this file would be "too burdensome"

19  and that the rules did not obligate it to produce actual code files. Exh. 19. Real then told this

20  Court in a brief filed February 2 that the file was no longer "in RealNetworks' possession," Exh.

21  9, indicating that the file was not preserved by Real's outside counsel *during the litigation*. Just a

22  couple of days ago, Real changed its story again, claiming that the file is now "corrupted by a

23  virus." Exh. 22. Of course, Real has not provided the file with the supposed "virus." Real has

24  either been reckless in its preservation of the file or has misrepresented the status of the file, or

25  both.

26          The Studio defendants have repeatedly attempted to meet and confer over these

27  issues, but Real has refused to discuss them openly. Instead, Real has shifted its explanation from

28  email to email or retreated into blanket statements that it has "met its obligations" and that

- 2 -

NOTICE OF MOT. & MOT. FOR SPOLIATION
SANCTIONS; MEMORANDUM OF P.'S & A.'S

1   documents "cannot be found."  Real has refused to detail what steps it has taken to preserve

2   evidence, explain what happened to Ms. Hamilton's notebooks (which would just require asking

3   the two executives to whom she handed them over just days before this lawsuit was filed), or

4   disclose the status of the "arccos.zip" file.

5           The Studio defendants now seek the Court's assistance to ensure that documents

6   are preserved for the litigation and to impose reasonable remedies for the prejudice suffered by

7   the Studios.  The Studios specifically seek an order:

        (1) requiring Real to implement comprehensive preservation efforts going forward;

        (2) precluding Real from impeaching or controverting the testimony of Ms. Hamilton on specific issues, given the destruction of evidence needed to corroborate her testimony;

        (3) making an inference that Real was well aware of the ARccOS/RipGuard technologies and sought to circumvent those technologies;

        (4) precluding Real from offering the testimony of Todd Basche and Richard Wolpert, given the Studios' inability to cross-examine them with their documents;

        (5) requiring Real to produce Mr. Barrett for a deposition on spoliation and Facet, as ordered by this Court at the December 22, 2009 hearing; and

        (6) awarding monetary sanctions.

The Studios are not seeking terminating sanctions at this time.

## II.   BACKGROUND

### A.   Real Anticipated Litigation from the Beginning.

*1.*



NOTICE OF MOT. &  MOT. FOR SPOLIATION
SANCTIONS; MEMORANDUM OF  P.'S & A.'S



## 2. *Real took active steps to sanitize the discovery record.*

Not only was Real aware that litigation was inevitable, but its senior executives and counsel took active steps to sanitize the discovery record. For example,



NOTICE OF MOT. & MOT. FOR SPOLIATION
SANCTIONS; MEMORANDUM OF P.'S & A.'S

1    Real has also confirmed that this effort to craft the discovery record involved its

2    lawyers. Real has claimed privilege over the details of conversations among the RealDVD

3    engineers — even conversations not involving lawyers — regarding the discovery record. Real's

4    counsel, for example, instructed Ms. Hamilton not to answer questions like:

5

6

7

8                                                    The same position was taken at Mr. Bielman's deposition,

9    where privilege was asserted over his conversations with Mr. Barrett — both non-lawyers —

10   about

11   **B.     Real Failed To Preserve Important Evidence.**

12   Despite all of this concern for crafting a favorable discovery record, Real did not

13   instruct key employees to preserve evidence.

14

15                                                                               Indeed,

16   from all we can tell, Real still has not put a litigation hold in place.

17

18

19   The preservation of documents was thus left to chance, the whims of each

20   individual employee, or even the conscious designs of Real's managers. Although there is no

21   way for the Studios to reconstruct what has been destroyed, we know of at least the following

22   items that Real claims are no longer available:

23   *1.     Ms. Hamilton's notebooks.*

24   The Court may recall that the Studios have been seeking the deposition of Ms.

25   Hamilton, a former Real employee, since early December. Although she agreed to a deposition in

26   early December, Real's counsel then (falsely) claimed to represent her and refused to permit the

27   deposition. Real then apparently offered to pay for separate counsel for Ms. Hamilton. That

28   lawyer raised roadblock after roadblock to the deposition, claiming that Ms. Hamilton was

NOTICE OF MOT. & MOT. FOR SPOLIATION
SANCTIONS; MEMORANDUM OF P.'S & A.'S

1    unavailable for weeks at a time and objecting to videotaping, even though she later testified

2

3

4

5

6    Thereafter, the Studios were able to subpoena Ms.

7    Hamilton and promptly schedule her deposition.[3]  (Even at the deposition, however, Real's

8    lawyers hindered the testimony with exceedingly broad privilege claims and instructions not to

9    answer.)

10    Before █████ her deposition Ms. Hamilton asked for three or four spiral

11    notebooks (of about 80 pages each) that she kept while at Real

12

13

14

15    Given Ms. Hamilton's role

16    (Senior Program Manager for the Facet project) and responsibilities

17    we expect these

18    notebooks had critical evidence.

19    It turns out, however, that Ms. Hamilton was fired by Real less than a week before

20    it filed this lawsuit.  When she was fired, Ms. Hamilton handed the notebooks over to two

21    executives at the company. █████████; Exh. 21.  Real's preparations for suit must have

22    been well under way at that point, as it filed this suit just six days later.  Indeed, the parties were

23    then under a "standstill agreement" which expressly anticipated litigation.  Counsel for the

24    Studios also wrote a letter to Real the very next day indicating their intent to file suit at the

─────────────

25

26    [3] It is now clear why Real wished to avoid Ms. Hamilton's deposition.  She testified, *inter alia*,

     that

27

28

NOTICE OF MOT. & MOT. FOR SPOLIATION
SANCTIONS; MEMORANDUM OF  P.'S & A.'S

1   conclusion of the standstill.  Exh. 18.

2          Nonetheless, Real did not produce the notebooks in discovery.  After Ms.

3   Hamilton first mentioned the notebooks, Real's initial response was that "engineering notebooks"

4   were exempted from production.  Exh. 21.  When it was pointed out that Ms. Hamilton's

5   notebooks were not "engineering notebooks" and all notebooks were in any case called for in

6   discovery, Real then explained that it "does not have the notebooks you are requesting for Nicole

7   Hamilton or the other custodians."  *Id.*  When we asked for an explanation as to what happened to

8   her notebooks, Real changed its tune again and explained that it was continuing to look for the

9   notebooks.  Exh. 22.  But because Ms. Hamilton identified the two executives to whom she gave

10  the notebooks, all Real needed to do was ask them.  Real has pointedly not disclosed what those

11  executives did with the notebooks, which apparently represent the most comprehensive record of

12  the development of the Facet product.

13          **2.      *Emails that***

14          Even more troubling,



NOTICE OF MOT. &  MOT. FOR SPOLIATION
SANCTIONS; MEMORANDUM OF  P.'S & A.'S

1

2

3

4

5

6          Notably, RealNetworks did not choose to cross-examine Ms. Hamilton on this

7   issue at her deposition.[4]   Moreover, *RealNetworks is now unilaterally refusing to permit any*

8   *further deposition of Mr. Barrett* even though the Court specifically directed that he be made

9   available for redeposition.  *See* Exh. 8 at 74:11-14; 75:8-76:2.

10

11          **3.      *The "arccos.zip" file archive***

12          Real is claiming

13

14

15          But Real's documents tell a different story.

16

17

18          [6]  Real's document production indicates that Real had that file in its possession late

19   _____

20   [4]  Despite having tried to block Ms. Hamilton's deposition for two months, upon learning of the
     Studios' planned spoliation motion, Real issued a subpoena for Ms. Hamilton's redeposition even
21   though Real was represented at her deposition, these topics were all raised, and Real had every
     opportunity to cross-examine her (and in fact expressly reserved the right to do so at the start of
22   the deposition, but ultimately decided not to).  Apparently, Real only cared to explore Ms.
     Hamilton's testimony regarding spoliation once it knew that the instant motion was being filed.
23   Even if this duplicative deposition of a third party were allowed to proceed — after the close of
     fact discovery — Real made numerous improper privilege objections during Ms. Hamilton's first
24   deposition that would need to be resolved before the deposition could fairly proceed.

25   [5]

26

27   [6]  A ".zip" archive utilizes data compression to archive and compress one or more files into a
     single package.  Therefore, "arccos.zip" was probably a collection of files compressed into a
28   single package.

NOTICE OF MOT. &  MOT. FOR SPOLIATION
SANCTIONS; MEMORANDUM OF  P.'S & A.'S

1   last year because Real produced a lengthy printout of "metadata" for the "arccos.zip" archive.

2   *See* Kelly Decl.  Real did not, however, produce the archive itself.

3           When the Studios requested this archive, Real initially claimed it was withholding

4   the archive because it would be "extremely burdensome" to produce and that it had "complied

5   with [its] discovery obligations" by producing the metadata for the archive but not the archive

6   itself.  Exh. 19.  The next month, in a brief to the Court, Real represented that the "document

7   named 'arccos.zip'" was "not in RealNetworks' possession."  Exh. 9 at 6:21.  This was a

8   troubling statement given the metadata produced and given the earlier statement regarding

9   burdensomeness.  This past Monday, Real revised its story again, claiming for the first time that it

10  had the archive but that "the file is corrupted by a virus."  Exh. 22.  Real has not, needless to say,

11  produced the supposedly "corrupted" version of the archive.

12          **4.**   ███████████████  ███████████████

13          The final categories of documents known (so far) to have been destroyed by Real

14  include ████████████████████████████████████████████████

15  ████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████

19  ████████████████████████████████████████████

20          The Studios have no way to know how many documents were destroyed or what

21  they contained.  All that can be known is that the documents likely contained highly relevant

22  evidence as they were ████████████████████████████████████

23  ████████████████████████████████████████████████████

24  ████████████████████████████████████████████

25  **III.    ARGUMENT**

26      **A.    Real Had a Duty to Preserve Relevant Evidence Since at Least April 2007.**

27          The duty to preserve documents attaches when a party "should have known that

28  the evidence may be relevant to future litigation."  *In re Napster, Inc. Copyright Litigation*, 462 F.

NOTICE OF MOT. &  MOT. FOR SPOLIATION
SANCTIONS; MEMORANDUM OF  P.'S & A.'S

1    Supp. 2d 1060, 1068 (N.D. Cal. 2006).  The preservation duty "extends to that period before the

2    litigation when a party reasonably should know that the evidence may be relevant to anticipated

3    litigation."  *Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) (citation

4    omitted).

5            It is manifest that Real anticipated litigation with the Studios and the DVDCCA

6    from the beginning of the development of RealDVD, and certainly by April 2007.

7    ████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████

11       **B.      Real Violated Its Obligation to Implement a Litigation Hold.**

12           Despite Real's clear anticipation of litigation and heavy involvement of counsel

13   from the beginning, there is no evidence that anyone was instructed to preserve documents at any

14   point in time.  This alone warrants relief.  Real's "duty to preserve documents in the face of

15   pending litigation [was] not a passive obligation."  *Larson v. Bank One Corp.*, No. 00 C 2100,

16   2005 WL 4652509 at *11 (N.D. Ill. Aug. 18, 2005) (citations omitted).  Real was obligated to put

17   a litigation hold in place and actively prevent destruction of relevant evidence.  "Once a party

18   reasonably anticipates litigation, it must . . . put in place a litigation hold to ensure the

19   preservation of relevant documents."  *School-Link Technologies, Inc. v. Applied Resources, Inc.*,

20   No. 05 2088-JWL, 2007 WL 677647, *3 (D. Kan. Feb. 28, 2007).

21           Although Real was not required to preserve every document at the company, it

22   was required to preserve all evidence that "reasonably calculated to lead to the discovery of

23   admissible evidence, [and/or] is reasonably likely to be requested during discovery."  *Zubulake v.

24   UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) (*Zubulake IV*).  Real was required

25   particularly to preserve the documents belonging to the "key" individuals most knowledgeable

26   about the claims — ████████████████████████████████████████

27   ██████████████████████████.  *See id.* at 217-18.  Unfortunately, none of this

28   was done.  We have asked Real for evidence of document preservation efforts and none have

1 | been forthcoming.

2 | ██████████████████████████████████████████

3 | ██████████████████████████████████████████

4 | ████. It is well-established that counsel has a duty to ensure that clients preserve evidence.

5 | "Counsel must take affirmative steps to monitor compliance so that all sources of discoverable

6 | information are identified and searched." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432

7 | (S.D.N.Y. 2003) (*Zubulake V*). Indeed, "the obligation to preserve evidence runs *first* to counsel,

8 | who then has a duty to advise and explain to the client its obligations."[7] *Mosel Vitelic Corp. v.*

9 | *Micron Technology, Inc.*, 162 F. Supp. 2d 307, 311 (D. Del. 2000). Based on the available

10 | evidence, it appears Real *still* has not implemented a document preservation policy.

11 | **C.    Real Willfully Destroyed Documents.**

12 |          Although a finding of willfulness or bad faith is not required for the sanctions the

13 | Studio defendants seek, the evidence here is that Real actively destroyed documents. Ms.

14 | Hamilton's notebooks chronicling the development of Facet are nowhere to be found, despite

15 | being handed over to company executives just days before Real filed suit. The "arccos.zip"

16 | archive is now missing (or "corrupted") even though metadata for it was produced as recently as

17 | November 2008. ████████████████████████████████████

18 | ██████████████████████████████████████████

19 | ██████████████████████████████████████████

20 |          Sanctions and remedies are particularly called for where, as here, the destruction is

21 | willful, *i.e.*, "if the party has 'some notice that the documents were *potentially* relevant to the

22 | litigation before they were destroyed.'" *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir.

23 | 2006) (emphasis in original) (citation omitted). ██████████████████████

24 | ████. This leads to a presumption of bad

---

25 | [7] *See also Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 73 (S.D.N.Y. 1991) (counsel had

26 | a duty to advise client of preservation obligations); *RMS Services-USA, Inc. v. Houston*, 2007 WL 1058923, *1 (E.D. Mich. Apr. 5, 2007) (reminding counsel "of their duty to preserve evidence . . .

27 | in the possession, custody, and control of the parties"); *AmeriPride Services, Inc. v. Valley Indus. Service, Inc.*, 2006 WL 2308442 at *7 (E.D.Cal. Aug. 9, 2006) ("'obligation [to preserve

28 | evidence runs] first to counsel'").

NOTICE OF MOT. & MOT. FOR SPOLIATION
SANCTIONS; MEMORANDUM OF P.'S & A.'S

1  faith:

> When the evidence indicates that a party is aware of circumstances
> that are likely to give rise to future litigation and yet destroys
> potentially relevant records without particularized inquiry, a
> factfinder may reasonably infer that the party probably did so
> because the records would harm its case.

5  *Blinzler v. Marriott Int'l Inc.*, 81 F.3d 1148, 1159 (1st Cir. 1996) (citation omitted).

6  **D.   Prejudice to the Studios Can Be Presumed.**

7  It is clear that the Studios have been prejudiced even by the destruction of

8  evidence that we know about.  The most comprehensive record of the development of Facet is

9  missing.  Evidence from which the Studios could challenge Real's claim to ignorance about

10  ARccOS and RipGuard is suddenly missing. ██████████████████████████

11  ███████████████████████████████████████.

12  But even absent such prejudice, sanctions would still be appropriate.  This Court

13  recently explained that a showing of prejudice is *not* required where the moving party seeks non-

14  terminating sanctions under the Court's inherent authority.  *Nursing Home Pension Fund v.*

15  *Oracle Corp.*, No. c 01-00988 SI, 2008 WL 4093497, *4 (N.D. Cal. 2008) (citation omitted).  As

16  the Ninth Circuit has explained, "because 'the relevance of . . . [destroyed] documents cannot be

17  clearly ascertained because the documents no longer exist,' a party 'can hardly assert any

18  presumption of irrelevance as to the destroyed documents.'"  *Leon*, 464 F.3d at 959.

19  Courts "take care not to hold the prejudiced party to too strict a standard of proof

20  regarding the likely contents of the destroyed evidence, because doing so . . . 'would allow parties

21  who have destroyed evidence to profit from that destruction.'"  *Residential Funding Corp. v.*

22  *DeGeorge Fin. Corp.*, 306 F.3d 99, 109 (2d Cir. 2002) (quotations and brackets omitted).  Where

23  (as here) "the very fact of their destruction" obscures the full scope of purged documents,

24  prejudice is presumed.  *National Assn Radiation Survivors v. Turnage,*, 115 F.R.D. 543, 557.  As

25  this Court put it, "it would be quite difficult for plaintiffs to demonstrate how they were harmed

26  by evidence to which they do not have access."  *Nursing Home*, 2008 WL 4093497, at *6.

27  **E.   The Studios Are Entitled to Proportionate Sanctions.**

28  It is a fundamental premise of our system of justice that "[m]utual knowledge of

NOTICE OF MOT. & MOT. FOR SPOLIATION
SANCTIONS; MEMORANDUM OF P.'S & A.'S

all the relevant facts . . . is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Real's destruction of critical evidence has not only made that impossible, but has also irreparably impaired the integrity of the judicial process. Spoliation of evidence thwarts the "wide access to relevant facts" that "serves the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993).

Even if Real could somehow establish that the spoliation was unintentional, that would be beside the point. Even in the absence of bad faith, if a party has been "negligent or even reckless in failing to take sufficient measures to" preserve evidence, "some sanction is certainly justified." *Pressey v. Patterson*, 898 F.2d 1018, 1023-24 (5th Cir. 1990); *see also Prudential Ins. Co. of Am. Sales Practices Litigation*, 169 F.R.D. 598, 615 (D.N.J. 1997) (ordering sanctions for "haphazard" document preservation efforts).

The Studios respectfully request at this stage measured steps directed to address the specific instances of spoliation that have come to light:

### 1. The Court should issue a document preservation order.

Given the failure to take adequate document preservation steps to date, the Court should issue a document preservation order requiring Real to preserve all existing and future documents relating to RealDVD, CSS, ARccOS, or RipGuard, including all applicable back-up tapes. As noted above, there is no evidence Real has even now implemented a litigation hold and the disappearance of Ms. Hamilton's notebooks and the "arccos.zip" file archive *during the litigation* are cause for serious concern.

### 2. Real should be precluded from impeaching or controverting certain testimony of Ms. Hamilton.

As a remedy for Real's failure to preserve Ms. Hamilton's highly relevant Facet notebooks, the Studios request that the Court issue an order precluding Real from impeaching or controverting her testimony on the following specific issues on which the notebooks could have corroborated her testimony:[8] (1) ████████████████████████

---

[8] *See Napster*, 462 F. Supp. 2d at 1077; *see also Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp*, 982 F.2d 363, 368.

NOTICE OF MOT. & MOT. FOR SPOLIATION
SANCTIONS; MEMORANDUM OF P.'S & A.'S

███████████████████████████████████████

Such a remedy is justified because the major item of potential corroboration has been destroyed by Real *on the eve of filing this suit*. As this Court has stated, "[w]here one party wrongfully denies another the evidence necessary to establish a fact in dispute, the Court must draw the strongest allowable inferences in favor of the aggrieved party." *National Radiation Survivors*, 115 F.R.D. at 557.

### 3. *The Court should infer that Real knowingly purchased technologies to circumvent ARccOS and RipGuard.*

The missing "arccos.zip" archive ███████████████ ██████ appears highly relevant to this litigation and the Studios are severely prejudiced by its suspicious absence. The archive, which may contain any number of individual documents, instructions, manuals and programs, could have shown not only that Real was well aware that ARccOS and RipGuard are copy protection schemes, but also that Real's products are based in part on the work of ███ hackers.

To remedy the sudden disappearance of this file, the Studios respectfully request an inference that Real knew about ARccOS and RipGuard and bought code or information to use in circumventing those technologies. *See, e.g., Rogers v. Chicago Park Dist.*, 89 F.R.D. 716, 718 (N.D. Ill. 1981) (holding a number of facts adverse to defendant as established based on defendant's destruction of probative documents). An adverse inference does not require a showing of bad faith. *See Glover v. The BIC Corp.*, 6 F.3d 1318, 1329-30 (9th Cir. 1993). It is based rather on the assumption that the destruction of the "arccos.zip" file archive is likely to indicate that it was harmful to Real's interests, *i.e.*, on the "common sense observation that a

party who has notice that a document is relevant to litigation and who destroys the document is more likely to have been threatened by the document." *AdvantaCare*, 2004 WL 1837997, at *7 (granting adverse inference instruction) (citation omitted); *see also Nation-Wide Check Corp. v. Forest Hills Distrib., Inc.*, 692 F.2d 214, 217 (1st Cir. 1982) ("trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party which has prevented production did so out of the well-founded fear that the contents would harm him").

### 4.   *Real should be precluded from offering testimony from Messrs. Basche and Wolpert.*

Because ███████████████████████████████████████████████████████████
████████████████████████████████████████████ their testimony should be excluded from the preliminary injunction hearing. The Studios have been unfairly prejudiced in their ability to cross-examine and impeach these witnesses. It is entirely appropriate to exclude evidence that cannot be adequately challenged due to spoliation. "The court's inherent authority to impose sanctions for the wrongful destruction of evidence includes the power to exclude evidence that, given the spoliation, would unfairly prejudice an opposing party." *Napster*, 462 F. Supp. 2d at 1077; *see also Unigard*, 982 F.2d at 368 (refusing to allow plaintiff to present expert evidence in support of its claim after having destroyed physical evidence that would have been probative of the same claim); *Campbell Indus. v. M/W Gemini*, 619 F.2d 24, 27 (9th Cir. 1980) (recognizing that part of the court's "broad discretion" in this area "lies the power to exclude . . . testimony of witnesses whose use at trial … would unfairly prejudice an opposing party") (citation omitted). Real has designated at least eight fact witnesses to testify, so the exclusion of Messrs. Basche and Wolpert is a very measured sanction, particularly as their documents may have been helpful in cross-examining other witnesses.

### 5.   *Real should be required to produce Mr. Barrett for a deposition on spoliation and Facet*

As discussed above, the Court has already ruled that the Studios are entitled to a

NOTICE OF MOT. & MOT. FOR SPOLIATION
SANCTIONS; MEMORANDUM OF P.'S & A.'S

1   redeposition of Mr. Barrett on Facet.[9] *See* Exh. 8 at 74:11-14; 75:8-76:2.  Given the new

2   evidence of ████████████████████████████████████████████████

3   ██████, there is yet greater reason for this deposition to go forward.  The Studios thus

4   respectfully request that the Court order that this deposition take place.

### 6.   *Monetary sanctions should be imposed against Real.*

6   In addition to the sanctions discussed above, the Studio defendants respectfully

7   seek an award of their attorneys fees and costs, which are routinely awarded to a moving party for

8   having to pursue the evidence of spoliation and filing the appropriate motion.  *See, e.g.,*

9   *AdvantaCare*, 2004 WL 1837997, at *9-11; *National Radiation Survivors*, 115 F.R.D. at 558-59;

10  *Thompson*, 593 F. Supp. at 1456-57; *Capellupo v. FMC Corp.*, 126 F.R.D. 545, 552 (D. Minn.

11  1989).

12  Indeed, because a fee award will not sufficiently remedy the abuse of the court's

13  processes, or deter spoliation in the future, courts often award impose additional financial

14  penalties.  *See, e.g., National Radiation Survivors*, 115 F.R.D. at 559; *Capellupo*, 126 F.R.D. at

15  551-53.

## IV.   CONCLUSION

17  For the foregoing reasons, the Studios respectfully request that the Court grant this

18  motion and award the remedies set forth above.

---

[9] The Court also ruled that the Studios were entitled to re-depose Mr. Brennan, whom Real is also
refusing to produce.

NOTICE OF MOT. &  MOT. FOR SPOLIATION
SANCTIONS; MEMORANDUM OF  P.'S & A.'S

1
                    Respectfully submitted,

2

3    DATED:  February 25, 2009

4                                  */s/ Rohit K. Singla*

                    ROHIT SINGLA

5                    MUNGER, TOLLES & OLSON LLP

6                    Attorneys for Defendants/Counterclaim-
                    Plaintiffs/Plaintiffs

7

8                    COLUMBIA PICTURES INDUSTRIES, INC., DISNEY
                    ENTERPRISES, INC., PARAMOUNT PICTURES

9                    CORP., SONY PICTURES ENTERTAINMENT, INC.,
                    SONY PICTURES TELEVISION INC., TWENTIETH

10                 CENTURY FOX FILM CORP., NBC UNIVERSAL,
                    INC., WALT DISNEY PICTURES, WARNER BROS.

11                 ENTERTAINMENT, INC., UNIVERSAL CITY
                    STUDIOS PRODUCTIONS LLLP, UNIVERSAL CITY

12                 STUDIOS LLLP, AND VIACOM, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7237423.1
                             NOTICE OF MOT. & MOT. FOR SPOLIATION
                             SANCTIONS; MEMORANDUM OF  P.'S & A.'S