1   GLENN D. POMERANTZ (SBN 112503)          ROBERT H. ROTSTEIN (SBN 72452)
    Glenn.Pomerantz@mto.com                   rxr@msk.com
2   BART H. WILLIAMS (SBN 134009)            ERIC J. GERMAN (SBN 224557)
    Bart.Williams@mto.com                     ejg@msk.com
3   KELLY M. KLAUS (SBN 161091)              MITCHELL SILBERBERG & KNUPP LLP
    Kelly.Klaus@mto.com                       11377 West Olympic Boulevard
4   MUNGER, TOLLES & OLSON LLP               Los Angeles, California 90064-1683
    355 South Grand Avenue, 35th Floor        Tel: (310) 312-2000; Fax: (310) 312-3100
5   Los Angeles, CA 90071-1560
    Tel: (213) 683-9100; Fax: (213) 687-3702
6

7   GREGORY P. GOECKNER (SBN 103693)
    gregory_goeckner@mpaa.org
8   DANIEL E. ROBBINS (SBN 156934)
    dan_robbins@mpaa.org
9   15301 Ventura Boulevard, Building E
    Sherman Oaks, California 91403-3102
10  Tel: (818) 995-6600; Fax: (818) 285-4403

11  Attorneys for Defendants/Counterclaim-Plaintiffs/Plaintiffs
    COLUMBIA PICTURES INDUSTRIES, INC., DISNEY
12  ENTERPRISES, INC., PARAMOUNT PICTURES CORP.,
    SONY PICTURES ENTERTAINMENT, INC., SONY
13  PICTURES TELEVISION INC., TWENTIETH CENTURY
    FOX FILM CORP., NBC UNIVERSAL, INC., WALT
14  DISNEY PICTURES, WARNER BROS.
    ENTERTAINMENT, INC., UNIVERSAL CITY STUDIOS
15  PRODUCTIONS LLLP, UNIVERSAL CITY STUDIOS
    LLLP, AND VIACOM, INC.
16

17                        UNITED STATES DISTRICT COURT

18                       NORTHERN DISTRICT OF CALIFORNIA

19

20  REALNETWORKS, INC., et al.,              CASE NO.  C 08-4548-MHP

21              Plaintiffs,                  **PUBLIC REDACTED VERSION:
                                             DECLARATION OF REBECCA GOSE
22        vs.                                LYNCH IN SUPPORT OF MOTION FOR
                                             SANCTIONS FOR SPOLIATION OF
23  DVD COPY CONTROL ASSOCIATION,            EVIDENCE**
    INC., et al.
24                                           Date:  March 16, 2009
                Defendants.                  Time:  2:00 p.m.
25                                           Ctrm: 15 (Hon. Marilyn Hall Patel)

26  AND CONSOLIDATED ACTIONS.

27

28

## DECLARATION OF REBECCA GOSE LYNCH

I, Rebecca Gose Lynch, declare:

1. I am an attorney associated with the law firm of Munger, Tolles & Olson LLP, counsel of record for Columbia Pictures Industries, Inc., Disney Enterprises, Inc., Paramount Pictures Corp., Sony Pictures Entertainment, Inc., Sony Pictures Television Inc., Twentieth Century Fox Film Corp., NBC Universal, Inc., Walt Disney Pictures, Warner Bros. Entertainment, Inc., Universal City Studios Productions LLLP, Universal City Studios LLLP, and Viacom, Inc. ("the Studios") in the above-captioned matter. I make this Declaration based upon my own personal knowledge, except where facts are stated upon information and belief, and if called upon to do so, I could and would testify competently to the matters stated herein.

2. Attached hereto are true and correct copies of excerpts of the following transcripts of proceedings in this litigation:

| | |
|---|---|
| Exhibit 1: | Final Transcript of Deposition of Phillip Barrett. |
| Exhibit 2: | Rough Transcript of Deposition of Todd Basche. |
| Exhibit 3: | Rough Transcript of Deposition of James Bielman. |
| Exhibit 4: | Final Transcript of Deposition of James Brennan. |
| Exhibit 5: | Final Transcript of Deposition of Jeffrey Chasen. |
| Exhibit 6: | Final Transcript of Deposition of Nicole Hamilton. |
| Exhibit 7: | Final Transcript of Deposition of Richard Wolpert. |
| Exhibit 8: | Reporter's Transcript of Proceeding dated December 22, 2008. |

3. Attached hereto as Exhibit 9 is a true and correct copy of excerpts from Real's Reply in Support of Motion to Preclude Claims Based on Non-CSS Technologies or, Alternatively, to Continue the Preliminary Injunction Hearing, and for the Appointment of a Discovery Referee.

4. Attached hereto are true and correct copies of the following documents produced by Real to the Studios in this litigation:

| | | |
|---|---|---|
| 1 | Exhibit 10: | Email dated January 29, 2007, which was produced by |
| 2 | | Real bearing control number REAL105086. |
| 3 | Exhibit 11: | Email dated July 30, 2007, which was produced by Real |
| 4 | | bearing control number REAL051340-47. |
| 5 | Exhibit 12: | Email dated July 30, 2007, which was produced by Real |
| 6 | | bearing control number REAL098684-85. |
| 7 | Exhibit 13: | Email dated December 4, 2007, which was produced by |
| 8 | | Real bearing control number, REAL051130-66. |
| 9 | Exhibit 14: | Email dated December 11, 2007, which was produced by |
| 10 | | Real bearing control number REAL077776-82. |
| 11 | Exhibit 15: | Email dated January 4, 2008, which was produced by |
| 12 | | Real bearing control number REAL078285-86. |
| 13 | Exhibit 16: | Email dated April 17, 2008, which was produced by |
| 14 | | Real bearing control number REAL105695-08. |
| 15 | Exhibit 17: | Handwritten notes, which were produced by Real bearing |
| 16 | | control number REAL135584-604. |

17    5.    True and correct copies of correspondence between counsel in this

18 litigation are attached hereto as follows:

| | | |
|---|---|---|
| 19 | Exhibit 18: | Letter from Glenn Pomerantz to Robert Kimball dated |
| 20 | | September 25, 2008. |
| 21 | Exhibit 19: | Email string between Jamie DiBoise, Rohit Singla, Colleen |
| 22 | | Bal and Michael Berta dated January 9, 2009. |
| 23 | Exhibit 20: | Email between Rohit Singla, Leo Cunningham, Jamie |
| 24 | | DiBoise, Tracy Tosh Lane and Michael Berta dated |
| 25 | | February 3, 2009. |
| 26 | Exhibit 21: | Email string between Rebecca Lynch and Tracy Tosh Lane |
| 27 | | dated February 11, 2009. |
| 28 | | |

1    Exhibit 22:    Email string between Tracy Tosh Lane, Bart Williams,

2                   Jamie DiBoise, Colleen Bal and Michael Berta dated

3                   February 23, 2009.

4           I declare under penalty of perjury under the laws of the United States and

5    California that the foregoing is true and correct and that this Declaration was executed this 25th

6    day of February 2009, in San Francisco, California.

7

8                                                    _____/s/_____

9                                                    REBECCA GOSE LYNCH

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBITS 1-17 AND 20
# FILED UNDER SEAL

# EXHIBIT 18

MUNGER, TOLLES & OLSON LLP

355 SOUTH GRAND AVENUE

THIRTY-FIFTH FLOOR

LOS ANGELES, CALIFORNIA 90071-1560

TELEPHONE (213) 683-9100

FACSIMILE (213) 687-3702

———

560 MISSION STREET

SAN FRANCISCO, CALIFORNIA 94105-2907

TELEPHONE (415) 512-4000

FACSIMILE (415) 512-4077

September 25, 2008

WRITER'S DIRECT LINE
(213) 683-9132
(213) 683-5132 FAX
Glenn.Pomerantz@mto.com

**Via Email and Facsimile**

Robert Kimball, Esq.
Sr. Vice President, Legal & Business Affairs
RealNetworks, Inc.
2601 Elliott Avenue
Seattle, WA 98121

  Re:  <u>RealDVD</u>

Dear Mr. Kimball:

   We have been retained by Disney, Fox, Paramount, Sony Pictures, Universal Studios and Warner Bros. ("the Companies") in connection with RealNetworks' planned distribution of "RealDVD" software, which we understand RealNetworks plans to start distributing as early as September 30. We maintain that RealDVD is designed and intended to avoid, bypass or otherwise impair the access control and copy-protection measures embedded on commercially released DVDs containing the Companies' motion picture and television content.

   The Companies firmly believe that RealDVD, if launched into commerce, will result in rapid and widespread violation of their rights. We intend to file a lawsuit at the first opportunity on September 30 in federal court in Los Angeles to stop the unlawful distribution and sale of RealDVD. In order to prevent that irreparable injury pending a prompt and orderly adjudication of our clients' claims, we call upon RealNetworks to cease and desist from its planned launch until the Companies' motion to enjoin such distribution is determined and to provide us with certain information, as described below.

6010457.1

MUNGER, TOLLES & OLSON LLP
Robert Kimball, Esq.
September 25, 2008
Page 2

1.  Will RealNetworks agree not to distribute and sell RealDVD until at least October 28? This schedule will permit the parties expeditiously to brief a request for immediate injunctive relief. It will also permit the Court to have sufficient time to consider the parties' submissions and, if it desires, to hold a hearing. We propose the following schedule:

(a) The Companies shall file and serve their opening motion papers on Tuesday, September 30;

(b) RealNetworks shall file and serve its opposition papers on Tuesday, October 7;

(c) The Companies shall file and serve their reply papers on Tuesday, October 14; and

(d) We will jointly request that the Court set our motion for hearing during the week of October 20 on a date and time convenient to the Court.

2.  In order to permit the proper framing of the relevant legal issues and to advance the prompt adjudication of this matter, please respond to the following:

(a) Please describe the extent to which, if the Court were to enjoin the distribution, sale and use of RealDVD after copies of the software had already been distributed to computer users, RealNetworks will have the ability, without any action by the end-user, to disable all copies of the RealDVD product that have been distributed prior thereto, thereby eliminating end-users' access to any copies of copy-protected DVDs previously created using RealDVD?

(b) Please provide us with contact information for the person we should contact to arrange for service and coordination of contacts with the Court.

6010457 1

MUNGER, TOLLES & OLSON LLP
Robert Kimball, Esq.
September 25, 2008
Page 3

Because RealNetworks has indicated that it intends to launch RealDVD by the end of this month, please provide a response to these questions by the close of business tomorrow. This letter in no way constitutes a waiver of any rights, remedies, claims, or defenses, legal or equitable, that the Companies may have, all of which are expressly reserved.

Sincerely,

Glenn D. Pomerantz

6010457 1

# EXHIBIT 19

| From: | DiBoise, Jamie [JDiBoise@wsgr.com] |
|---|---|
| Sent: | Friday, January 09, 2009 2:23 PM |
| To: | Singla, Rohit; Bal, Colleen; Berta, Michael |
| Cc: | Pomerantz, Glenn; Klaus, Kelly; Barth, Lawrence; Steer, Reginald; Aull, Ashley; Mark F. Lambert; Weinstein, Mark R.; DiBoise, Jamie |

**Subject:** RE: technical requests

Rohit -- this is not hostage taking, just a simple exposition of the disparate positions the Studios are taking with respect to getting discovery and giving discovery.

You deposed Mr. Brennan and Mr. Barrett regarding Facet with a full document production and full knowledge of Real's position on the scope of the PI hearing. To seek more discovery on those topics you could have asked those gentlemen about is re-ploughing old ground.

We are not holding discovery on the Facet box hostage; we are allowing you to inspect the Facet box. You want more and we believe your current "more" request is both irrelevant and burdensome. If you want additional discovery regarding the Facet box you are inspecting, you may request it. Based on the specific request you make, we will respond.

However, what Real is complaining about is the flat out continued refusal of the Studios to produce ANY discovery on some topics and overly selective production on others. I invite you to read Tracy's letter to Larry of yesterday.

Further, your attempted justification below compares apples to oranges and is simply past history (not to mention incorrect with respect to both SmithGeiger and Ms. Hamilton). We are dealing with the discovery we want now as a result of the December 22nd hearing before Judge Patel, not what we were forced to do because of the Studios' past transgressions.

Finally, the scope of the PI hearing has been set by Judge Patel. You advanced these same arguments at the December 22nd hearing and the Court considered them and ruled. There is nothing for the Studios to accept or reject at this point; there is simply the Court's ruling and the PI hearing.

I make the same request of you and your colleagues that you make of me, let's work together to get each of us what we want within reasonable limits.

James A. DiBoise
WSGR



One Market Street
Spear Tower Suite 3300
San Francisco, CA 94105
415.947.2114
Fax No. 415.947.2099
jdibolse@wsgr.com

---

**From:** Singla, Rohit [mailto:Rohit.Singla@mto.com]
**Sent:** Friday, January 09, 2009 1:14 PM
**To:** DiBoise, Jamie; Bal, Colleen; Berta, Michael
**Cc:** Pomerantz, Glenn; Klaus, Kelly; Barth, Lawrence; Steer, Reginald; Aull, Ashley; Mark F. Lambert; Weinstein, Mark R.
**Subject:** RE: technical requests

Thanks again for the prompt response. We have, although it may not look like it, resolved a number of my original requests. On the remaining open issues:

1. We plan to be there Monday morning to look at the Facet box. We are buying plane tickets. Right now, we expect Ashley Aull from our firm and Ravi Cherukuri to be there.

2. As for evidence on the Facet box, then we request a 30(b)(6) or PMK deposition on the Facet box you are showing as as well as all the boxes you are not showing us to take place next Wed, Th, or Fri of next week (i.e., Jan. 14-16.) It is critical that this take place soon rather than later. I cannot see that there is any reason this would need to be delayed past Friday. Absent a deposition, we will need to reconsider whether we accept the scope of the proposed P.I. hearing.

5-7. I appreciate your clarifying your position.

Finally, I must respond to whatever is "galling" you all. As you know, I disagree with Real's repeated attempts to equate our request for specific, identified documents and things -- that all relate to Facet, RipGuard, and ARccOS -- with Real's broad requests for "all documents from the studios regarding X," particularly as some of your requests cover old ground. Moreover, this is starting to sound like more "hostage" taking, with which I fundamentally disagree, as you know. To give you one vivid example, Real refused to provide any witnesses for deposition (including third parties like Ms. Hamilton and Smith Geiger) until we complied Real's demands for witnesses on 50-some 30(b)(6) topics. I found that troubling. We have not and will not take that approach. So, for example, we offered witnesses on some of the 30(b)(6) topics without any demands that Real first produce its witnesses. To the extent we are going down the same road, I would ask Real to reconsider.

---

**From:** DiBoise, Jamie [mailto:JDiBoise@wsgr.com]
**Sent:** Friday, January 09, 2009 12:45 PM
**To:** Singla, Rohit; Bal, Colleen; Berta, Michael
**Cc:** Pomerantz, Glenn; Klaus, Kelly; Barth, Lawrence; Steer, Reginald; Aull, Ashley; Mark F. Lambert; Weinstein, Mark R.; DiBoise, Jamie
**Subject:** RE: technical requests

**Rohit -- just to be clear, it will be important that we get a days notice not an hour's notice regarding inspecting the Facet box.**

**As to the other points you raise in your email, if you want evidence regarding the**

facet box just include it in your discovery requests to us. We see no need to continue the dialogue on the Facet box as I have been very clear in my comments on exactly what it is you are being provided and we were equally as clear with the Court on December 22nd about what we would and could produce regarding the Facet box.

As to source code, the Facet source code continues to be available to you and your experts and a copy of same will be made available pursuant to the Protective Order once we get it finalized.

There is no compromise on earlier Facet boxes being made available. We have told you that we believe they are irrelevant to the PI hearing issues and it would truly be a burden for us to divert resources to track down and find any engineering Facet boxes that Mr. Barrett may have been referring to in his testimony.

This issue more than any other is especially galling to us in our efforts to negotiate discovery with the Studios. We have been met with outright refusals to produce relevant documents by the Studios on the ground that you will not go back over ground that has already been covered. We disagree with the foundation for that statement and with the principle it attempts to set up as a basis for guiding discovery efforts for this PI hearing. Yet, you at the very same time want to cover previously plowed ground regarding the Facet boxes that you covered in two full day depositions and previous document productions. While we will make every effort here to get the facts adduced for the Court to consider in the PI hearing, discovery is, as the Court explicitly stated at the December 22nd hearing, a two way street.

With respect to the wiki and the arccoss.zip files, yes, other than the fact that we have complied with our discovery obligations as to those documents as negotiated between the parties and that it is plowing old ground again, there is the additional consideration that it would be a extremely burdensome task for us to comply with your requests as it would entail substantial review by Real's lawyers and Real's employees to determine if your request could be complied with and then to review those materials prior to production.

---

**James A. DiBoise**
**WSGR**
**One Market Street**
**Spear Tower Suite 3300**
**San Francisco, CA 94105**
**415.947.2114**
**Fax No. 415.947.2099**
**jdiboise@wsgr.com**

---

**From:** Singla, Rohit [mailto:Rohit.Singla@mto.com]
**Sent:** Thursday, January 08, 2009 7:47 PM
**To:** DiBoise, Jamie; Bal, Colleen; Berta, Michael

**Cc:** Pomerantz, Glenn; Klaus, Kelly; Barth, Lawrence; Steer, Reginald; Aull, Ashley; Mark F. Lambert; Weinstein, Mark R.
**Subject:** RE: technical requests

Thanks the prompt response Jamie.  Some further clarification would be helpful:

1. We will make arrangements to come view the Facet box in your office, most likely on Monday or Tuesday during business hours.

2. You did not respond to our request for admissible evidence about what exactly is the box you are showing us: how close is it to the final production version, how was it constructed, on what is the design based if you have no technical specifications that you have not given us, etc., etc.  As I mentioned, we are open to that taking the form of an early PMK-type deposition (next week?) or some kind of interrogatory response-type written statement.  This may be fruitful to discuss on the phone.

3. As to the source code, I think we are on the same page.  If there is a "current" Facet source code that is different from the "prior" code, we just want to make sure we have access to both.  I understand you to be saying we do.  Let me know if that is wrong.

4. We accept your representation that there are no more technical specifications.

5. Can you provide any proposed compromise on the "20" prior boxes?  For example, maybe some would be easier to view than others.  For example, Mark W. asked about the box shown in the March 2008 Facet User Guide submitted to the Court.  Can we see that?

6/7. To make sure I understand your position, can you tell me if there is any reason that you will not provide the soft copy of the wiki and the arcoss.zip files, other than that you believe you are not obligated to?  Is it burdensome in some way?

8. Thanks for the confirmation.

Finally, can you let me know which of the issues below you think were new and not previously raised?  That comment surprised me.

---

**From:** DiBoise, Jamie [mailto:JDiBoise@wsgr.com]
**Sent:** Thursday, January 08, 2009 7:00 PM
**To:** Singla, Rohit; Bal, Colleen; Berta, Michael
**Cc:** Pomerantz, Glenn; Klaus, Kelly; Barth, Lawrence; Steer, Reginald; Mark F. Lambert; Weinstein, Mark R.; DiBoise, Jamie
**Subject:** RE: technical requests

**Rohit – responding to your various requests below, I would first note that many of these requests are new and hadn't been raised previously with us. However, in the interests of resolving any issues amicably and to provide you with as much information as we can on an expedited basis, I can tell you the following in response to your questions.**

**We have available for defendants' inspection a Facet box in our office in**

Seattle.  You may inspect that Facet box at your scheduling convenience, within reason.  Just contact mike or myself to firm up any details for defendants' inspection.

The Facet box made available for inspection is the Facet product with the functionality that Real plans to release.  Although the actual physical box eventually manufactured may well look different and be a different size with a different layout due to supply or optimization issues, as the Judge recognized at the hearing, the functionality at issue in this case is on the Facet box made available for defendants' inspection and is what is scheduled for production.  Because we have made available what is at issue and what is scheduled for production, your request to review other boxes (request 6) that are not what is scheduled for production is unnecessary and irrelevant to this injunction proceeding, as well as simply not possible to do in the time frame we have for this hearing.

With respect to Request 3, the current Facet code and prior Facet code have already been made available to you and your experts have been reviewing it, so we believe that issue is now closed.

On request 4, as we have stated previously, we are unaware of any such documents that have not been produced, as was also confirmed by the witnesses you have already deposed on this issue.

On requests 6 and 7, we have provided both the wiki and the email you reference in the form agreed to by the parties for document productions, both in soft copy.

On request 8, we are meeting our obligations on evidence preservation.

---

James A. DiBoise
WSGR
One Market Street
Spear Tower Suite 3300
San Francisco, CA  94105
415.947.2114
Fax No. 415.947.2099
jdiboise@wsgr.com

---

2/24/2009

**From:** Singla, Rohit [mailto:Rohit.Singla@mto.com]
**Sent:** Thursday, January 08, 2009 6:58 AM
**To:** DiBoise, Jamie; Bal, Colleen; Berta, Michael
**Cc:** Pomerantz, Glenn; Klaus, Kelly; Barth, Lawrence; Steer, Reginald; Mark F. Lambert; Weinstein, Mark R.
**Subject:** technical requests

Jamie --

As you suggested, I am sending you a specific list of the items that we discussed this morning that the Studio defendants want produced by the 9th. Items 1-5 were discussed before the Court. We believe all should be discrete, easily locatable items that Real should be able to promptly produce. I have been inquiring about the arccoss.zip file for weeks now, with no response.

I appreciate your discussing these with your client and your team and letting us know if you have any issues with this list:

1. Access to (or a copy of) the "final" Facet prototype in whatever form it is in, as soon as possible. I appreciate your agreement that we could take photos of the prototypes, and we will treat them as highly confidential.

2. As I mentioned, we will also need as soon as possible an admissible representation from Real regarding the "final prototype". Based on what you have told us so far, we are unclear on what the product actually is, how close it is to final, etc. We may be able to negotiate some kind of written description (analogous to a rog response). Or it may be easiest for this to take the form of an early 30(b)(6) deposition, ahead of the rest of the discovery schedule.

3. The current Facet source code. You mentioned that the Facet source code might have been (or might be) changed from the version made available in November. If that is the case, we would like the current code, as well as copies of the version from November.

4. Any technical documentation, particularly of the Facet hardware design(s), that we have not already been provided. We have not seen hardware specifications.

5. Access to each of the "20 prototypes," or proofs of concept or call-them-what-you will, for Facet. As with the "final prototype," we understand we will be allowed to take pictures of any boxes.

6. A soft copy (electronic copy) of the current Facet Wiki, that permits us to view revision histories, etc.

7. The original arccoss.zip file that was attached in emails sent to/from Mr. Chasen.

8. Finally, please confirm that Real is preserving all versions of Facet and RealDVD source code and all Facet "prototypes" or "proofs of concept" or any other physical embodiment.

Thanks.


This email and any attachments thereto may contain private, confidential,
material for the sole use of the intended recipient.  Any review, copying,
this email (or any attachments thereto) by others is strictly prohibited.
intended recipient, please contact the sender immediately and permanently
and any copies of this email and any attachments thereto.

This email and any attachments thereto may contain private, confidential, and p
material for the sole use of the intended recipient.  Any review, copying, or d
this email (or any attachments thereto) by others is strictly prohibited.  If y
intended recipient, please contact the sender immediately and permanently delet
and any copies of this email and any attachments thereto.

This email and any attachments thereto may contain private, confidential, and privil
material for the sole use of the intended recipient.  Any review, copying, or distri
this email (or any attachments thereto) by others is strictly prohibited.  If you ar
intended recipient, please contact the sender immediately and permanently delete the
and any copies of this email and any attachments thereto.

2/24/2009

# EXHIBIT 21

| | |
|---|---|
| **From:** | Lynch, Rebecca |
| **Sent:** | Wednesday, February 11, 2009 1:21 PM |
| **To:** | Tosh Lane, Tracy |
| **Cc:** | Barth, Lawrence; Singla, Rohit; Berta, Michael; Nelson, Christopher; ~REALDVD |
| **Subject:** | RE: My notebooks |

Tracy:

We are concerned by your email, and I write to seek clarification of the facts.

Ms. Hamilton has clearly stated that she turned over 3 or 4 notebooks containing her handwritten notes regarding the development of RealDVD to Rishi Matthew and Dale DeWhitt of RealNetworks during a meeting in late September 2008.

Will you please tell us today whether Ms. Hamilton's notebooks were destroyed or disposed of and, if so, provide us with details including timing, persons involved, etc. If her notebooks are within the custody, possession or control of RealNetworks (including WSGR or any other counsel), we ask that you confirm that fact by return email, and we request they be produced immediately. If the notebooks still exist but are not within the custody, possession or control of RealNetworks, will you kindly advise us by return email of their whereabouts, and of the circumstances in which they left RealNetworks' custody, possession or control.

Finally, will you please clarify what you mean when you say that RealNetworks does not have "notebooks . . . for . . . the other custodians." If no other custodians from whom you collected documents kept notebooks, the inquiry may end there. If any of them did, we would ask the same questions set forth above with respect to Ms. Hamilton's notebooks: (i) were they destroyed or disposed of?; (ii) are they in RealNetworks' custody, possession or control?; and (iii) if neither, where are they?

Thank you  -Becca

**From:** Tosh Lane, Tracy [mailto:TTosh@wsgr.com]
**Sent:** Wednesday, February 11, 2009 10:18 AM
**To:** Lynch, Rebecca
**Cc:** Barth, Lawrence; Singla, Rohit; Berta, Michael; Nelson, Christopher
**Subject:** RE: My notebooks

Becca,

We have produced both hard copy and electronic responsive documents for our custodians, and have confirmed that Real does not have the notebooks you are requesting for Nicole Hamilton or the other custodians.  Thanks.

Tracy

**From:** Lynch, Rebecca [mailto:Rebecca.Lynch@mto.com]
**Sent:** Monday, February 09, 2009 2:20 PM
**To:** Tosh Lane, Tracy
**Cc:** Barth, Lawrence; Singla, Rohit
**Subject:** FW: My notebooks

Please let me know when you have time to discuss this issue.  It was not our understanding that core custodians' notebooks, notes and other hard copy documents that were responsive to our document requests were excluded from collection or production.  If Ms. Hamilton (a core custodian) kept a notebook about the development of RealDVD and it contained the various keywords in our requests, we would view that as responsive.

I can talk this afternoon or tomorrow morning.  Thanks.  -Becca

**From**: Tosh Lane; Tracy
**To**: Singla, Rohit; Nicole Hamilton
**Cc**: Steer, Reginald ; Bal, Colleen ; Berta, Michael ; DiBoise, Jamie
**Sent**: Fri Feb 06 14:10:34 2009
**Subject**: RE: My notebooks
Rohit,

Engineering notebooks were not requested by the Studios and Real did not agree to produce them.  As I mentioned in my last email, after much meeting and conferring with Mr. Barth we made very specific agreements regarding production and Real has honored those agreements and produced its documents.  As Mr. Barth has pointed out many times,  given the timeframe for the preliminary injunction proceeding, not every conceivable relevant document is being produced at this stage of the proceeding.

Thanks.

Tracy

**From:** Singla, Rohit [Rohit.Singla@mto.com]
**Sent:** Friday, February 06, 2009 11:30 AM
**To:** Nicole Hamilton; Tosh Lane, Tracy
**Cc:** Steer, Reginald
**Subject:** RE: My notebooks

Tracy --

Ms. Hamilton asked me about these documents this morning.  I told her that I do not think we were provided these notebooks by RealNetworks.  Please let me know if I am mistaken.

If they were not produced to us, please produce them to us as soon as possible, and certainly well in advance of Ms. Hamilton's deposition next Friday.  Not only do they appear highly relevant to the litigation, but it appears that Ms. Hamilton believes her notebooks would assist her testimony.

I understand if you need a day or two to review the notebooks for privilege.  In that case, we have no objection to RealNetworks' providing copies to Ms. Hamilton before they are provided to us.

**From:** Nicole Hamilton [mailto:nicole@nicolehamilton.com]
**Sent:** Friday, February 06, 2009 11:15 AM
**To:** Singla, Rohit; 'Tosh Lane, Tracy'
**Subject:** My notebooks

Thinking ahead to the deposition, it is very important to me not only that I cooperate fully, behave professionally and answer truthfully and to the best of my ability, but that, to the every extent possible, that my answers should be accurate. In anticipation that many of the questions may be of a detailed nature, asking specifically what happened when, it would be very helpful to me to be able to refer to my contemporaneous hand-written notes, contained in a series of 3 or maybe 4 spiral-bound notebooks which I turned over to Rishi Matthew and Dale DeWhitt in the meeting at which I was terminated.

Regards,
Nicole

---
Nicole Hamilton
16645 NE 46th Street
Redmond, WA  98052-5441
H: 425-702-8134
C: 425-765-9574
nicole@nicolehamilton.com

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient.  Any review, copying, or distribution this email (or any attachments thereto) by others is strictly prohibited.  If you are not intended recipient, please contact the sender immediately and permanently delete the origi and any copies of this email and any attachments thereto.

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient.  Any review, copying, or distribution this email (or any attachments thereto) by others is strictly prohibited.  If you are not intended recipient, please contact the sender immediately and permanently delete the origi and any copies of this email and any attachments thereto.

# EXHIBIT 22

| From: | Singla, Rohit |
|---|---|
| Sent: | Monday, February 23, 2009 2:56 PM |
| To: | ~REALDVD |
| Subject: | FW: Outstanding Document Production Questions |

**From:** Tosh Lane, Tracy [mailto:TTosh@wsgr.com]
**Sent:** Monday, February 23, 2009 2:50 PM
**To:** Williams, Bart; DiBoise, Jamie; Bal, Colleen; Berta, Michael
**Cc:** Pomerantz, Glenn; Singla, Rohit; Klaus, Kelly; Barth, Lawrence
**Subject:** RE: Outstanding Document Production Questions

Dear Bart,

I am responding to your email to Jamie as I have been the person primarily involved in document discovery.

Before responding to your specific questions, I want to highlight that the parties agreed from the outset that document discovery relating to the preliminary injunction motion would be limited. We agreed to collect documents from limited custodians responsive to targeted requests. We realize that you want additional information and documents, and we certainly have follow-up questions as well for the Studios regarding additional responsive documents. When we have asked such questions in the past, counsel for the Studios has reminded me that we are in an expedited proceeding, and that there most certainly are relevant documents which have not been searched for and produced as one would expect in regular discovery. I can tell you Real has lived by all of its discovery agreements and obligations, conducted a reasonable search and produced responsive documents.

In response to your specific questions:

1.   Notebooks:  We have inquired of Real and are informed that our document custodians did not have responsive notebooks, and that such notebooks were not generally kept. We understand that Nicole Hamilton claims that she kept a series of notebooks and are continuing to inquire of Real as to their whereabouts, if they exist. However, to date, we have not located such notebooks of Nicole Hamilton. The only notebook of Ms. Hamilton's that we have located thus far contains a log regarding source code access.

2.   ARccOS Zip File:  We understand that the file is corrupted by a virus. We have gone back to our document vendor to double check the file and have received confirmation that it is corrupt. We have produced this document to you as we had it and as agreed.

3.   Wolpert's Documents:   Real has taken appropriate steps to preserve all employees documents, including Mr. Wolpert's.

4.   Basche's Documents:  We did not collect documents from Mr. Basche because when we inquired of him he did not have any responsive documents. We did collect from Mr. Zeitz, however, and as you know, Mr. Basche testified that while he did not recall generating any documents relating to the Facet project, and that he may have generated one document relating to RealDVD, he sent whatever documents he produced and hard copy documents to Harold Zeitz.

I also want to respond to the questions posed by Mr. Singla in his February 19 email:

1.   Further Depositions of Brennan and Barrett:  We disagree that the Court ordered that these individuals be deposed again or that the Court understood that the Defendants have already deposed each of these witnesses for 7 hours. Please point to the portion of the transcript you are relying upon.

2/24/2009

2.   Facet Prototypes:  We further disagree that the Court ordered that Real provide access to every possible iteration of the Facet product.  Indeed, when Mr. Singla raised the issue of additional Facet prototypes to the Court during the February 3 telephonic hearing, the Court did not order Real to provide additional access and instead specifically stated that we should "go on what we have now."  *See* Transcript, pp. 31-36.  We have provided the Studios access to a feature-complete Facet prototype and consider the matter closed.

3.   Hamilton Documents:  Ms. Hamilton has asserted that the DVDs provided to Peter Chu (which we have been unable to open to date) contain back-ups of her Real laptop.  Ms. Hamilton's laptop was collected and searched for responsive documents in the course of Real's document production in this case.  There is no reason for us to spend considerable time reviewing additional documents which are duplicative.

4.   Bielman documents:  Mr. Bielman's documents have been collected and produced according to the parties' agreements.  I am not aware of the specific DVD Walk statistics you are referring to, and Mr. Bielman testified that he had not seen documents reflecting such statistics and that he did not know who would have them (nor did he say when they would have been created).  We have collected documents from key custodians as agreed and are not willing to go back and search on a document-by-document basis for additional documents.  We did not agree to conduct follow-up searches or to supplement our document productions (and the Studios have never undertaken this effort) and the limited time before PI hearing simply does not permit it.

I have spent significant time tracking down answers to respond to your specific questions (hopefully so that these can be closed once and for all).  Given the impending expert discovery, briefing and PI hearing, we do not think it is productive to spend time revisiting document production issues.  We need to move forward to be ready for April 1.

Tracy

---

**From:** Williams, Bart [mailto:Bart.Williams@mto.com]
**Sent:** Friday, February 20, 2009 4:52 PM
**To:** DiBoise, Jamie; Tosh Lane, Tracy; Bal, Colleen; Berta, Michael
**Cc:** Pomerantz, Glenn; Singla, Rohit; Klaus, Kelly; Barth, Lawrence
**Subject:** Outstanding Document Production Questions
**Importance:** High

Jamie - We have received no response to any of the questions in the attached emails.  These are very serious issues, and we need to know the answers to these questions immediately, since we may bring these issues to the Court's attention and seek appropriate relief.  We also request an explanation for what was done, if anything, to preserve Mr. Basche's and Mr. Wolpert's documents.

Given the tardiness of your responses, and the speed with which the April 1 hearing is approaching, we hereby request that you respond by 2:00 p.m. on Monday, February 23.

Thank you.

Bart H. Williams | Munger, Tolles & Olson LLP
355 South Grand Avenue | Los Angeles, CA 90071
Tel: 213.683.9295 | Fax: 213.683.5195 | Bart.Williams@mto.com | www.mto.com

This email and any attachments thereto may contain private, confidential, and privil
material for the sole use of the intended recipient.  Any review, copying, or distri

2/24/2009

this email (or any attachments thereto) by others is strictly prohibited.  If you ar
intended recipient, please contact the sender immediately and permanently delete the
and any copies of this email and any attachments thereto.

2/24/2009