| | | |
|---|---|---|
| 1 | GLENN D. POMERANTZ (SBN 112503)<br>Glenn.Pomerantz@mto.com | ROBERT H. ROTSTEIN (SBN 72452)<br>rxr@msk.com |
| 2 | BART H. WILLIAMS (SBN 134009)<br>Bart.Williams@mto.com | ERIC J. GERMAN (SBN 224557)<br>ejg@msk.com |
| 3 | KELLY M. KLAUS (SBN 161091)<br>Kelly.Klaus@mto.com | MITCHELL SILBERBERG & KNUPP LLP<br>11377 West Olympic Boulevard |
| 4 | MUNGER, TOLLES & OLSON LLP<br>355 South Grand Avenue, 35th Floor | Los Angeles, California 90064-1683<br>Tel: (310) 312-2000; Fax: (310) 312-3100 |
| 5 | Los Angeles, CA 90071-1560<br>Tel: (213) 683-9100; Fax: (213) 687-3702 | |
| 7 | GREGORY P. GOECKNER (SBN 103693)<br>gregory_goeckner@mpaa.org | |
| 8 | DANIEL E. ROBBINS (SBN 156934)<br>dan_robbins@mpaa.org | |
| 9 | 15301 Ventura Boulevard, Building E<br>Sherman Oaks, California 91403-3102 | |
| 10 | Tel: (818) 995-6600; Fax: (818) 285-4403 | |

Attorneys for Defendants/Counterclaim-Plaintiffs/Plaintiffs
COLUMBIA PICTURES INDUSTRIES, INC., DISNEY ENTERPRISES, INC., PARAMOUNT PICTURES CORP., SONY PICTURES ENTERTAINMENT, INC., SONY PICTURES TELEVISION INC., TWENTIETH CENTURY FOX FILM CORP., NBC UNIVERSAL, INC., WALT DISNEY PICTURES, WARNER BROS. ENTERTAINMENT, INC., UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, UNIVERSAL CITY STUDIOS LLLP, AND VIACOM, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REALNETWORKS, INC., et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>DVD COPY CONTROL ASSOCIATION, INC., et al.<br><br>Defendants.<br><br>AND CONSOLIDATED ACTIONS. | CASE NO. C 08-4548-MHP<br><br>Consolidated with Case No. C 08-04719-MHP<br><br>**PUBLIC REDACTED VERSION: STUDIO DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**<br><br>Date: March 23, 2009<br>Time: 2:00 p.m.<br>Ctrm: 15 (Hon. Marilyn Hall Patel)<br><br>[Filed concurrently herewith: Declarations of Zachary Katz and Dr. John P.J. Kelly] |

7398418.1

REPLY ISO MOTION FOR SPOLIATION
SANCTIONS, CASE NO. C 08-4548-MHP

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................................. 1
II. ARGUMENT ................................................................................................................... 2
    A. Real Violated Its Duty To Preserve Evidence Starting in Early 2007. .................. 2
        1. Real had a duty to implement a litigation hold. .......................................... 2
        2. Real does not deny that it tried to sanitize the discovery record. ................ 3
        3. Real's boilerplate declarations are insufficient and not credible. ............... 4
        4. Real's October 2008 litigation hold was too little, too late. ........................ 6
    B. Real Destroyed and/or Failed To Preserve Key Documents. ................................. 6
        1. Ms. Hamilton's notebooks have been destroyed. ....................................... 6
        2. Mr. Basche's documents were destroyed. .................................................. 8
        3. Mr. Wolpert's denial that he [REDACTED] is unpersuasive. ........ 8
        4. Mr. Barrett's [REDACTED]. ...................................................................... 9
    C. Real's Production of the arccos.zip Archive Confirms the Need for Sanctions. ................................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

### FEDERAL CASES

*Amari Co., Inc. v. Burgess*,
  2008 WL 268698 (N.D. Ill. Jan. 28, 2008) .................................................................. 5

*Application of Mogen David Wine Corp.*,
  372 F.2d 539 (C.C.P.A. 1967) ...................................................................................... 5

*Arnold v. Cargill, Inc.*,
  2004 WL 1853149 (D. Minn. Aug. 12, 2004) .............................................................. 9

*Dow Chemical Co. v. Reinhard*,
  2008 WL 2245007 (E.D. Mich. May 30, 2008) ......................................................... 10

*E*Trade Securities LLC v. Deutsche Bank AG*,
  230 F.R.D. 582 (D. Minn. 2005) .................................................................................. 5

*Fair Housing of Marin v. Combs*,
  285 F.3d 899 (9th Cir. 2002) ................................................................................. 8, 12

*Genentech, Inc. v. Insmed Incorporation*,
  442 F. Supp. 2d 838 (N.D. Cal. 2006) ....................................................................... 10

*Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*,
  397 F.3d 1217 (9th Cir. 2005) ..................................................................................... 8

*Hamilton v. Signature Flight Support Corp.*,
  No. C 05-490 CW (MEJ), 2005 WL 3481423
  (N.D. Cal. Dec. 20, 2005) ............................................................................................ 4

*Henry v. Quicken Loans Inc.*,
  2008 WL 4735228 (E.D. Mich. Oct. 15, 2008) ........................................................... 5

*Hynix v. Rambus*,
  591 F. Supp. 2d 1038 (N.D. Cal. 2006) ....................................................................... 3

*In re M & L Business Mach. Co., Inc.*,
  161 B.R. 689 (D. Colo. 1993) .................................................................................... 10

*In re Napster, Inc. Copyright Litigation*,
  462 F. Supp. 2d 1060 (N.D. Cal. 2006) ............................................................... 2, 8, 9

*Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*,
  478 F. Supp. 2d 340 (E.D.N.Y. 2007) ......................................................................... 5

*Keithley v. Home Store.com, Inc.*,
  2008 WL 3833384 (N.D. Cal. Aug. 12, 2008) .......................................................... 12

*Missouri Coalition for Environment Foundation v. U.S. Army Corps of Engineers*,
  542 F.3d 1204 (8th Cir. 2008) ..................................................................................... 5

*Sesay v. Chertoff*,
  2008 WL 4790972 (S.D. Cal. Oct. 30, 2008) .............................................................. 8

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,
  982 F.2d 363 (9th Cir. 1992) ....................................................................................... 2

*Wm. T. Thompson Co. v. General Nutrition Corp., Inc.*,
  593 F. Supp. 1443 (C.D. Cal. 1984) .......................................................................... 12

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Zubulake v. UBS Warburg LLC,*
 220 F.R.D. 212 (S.D.N.Y. 2003) ............................................................................... 2, 5

*Zubulake v. UBS Warburg LLC,*
 229 F.R.D. 422 (S.D.N.Y. 2004) ...................................................................................... 7

**FEDERAL RULES**

F.R.C.P. 37(b) ............................................................................................................................. 9

## I. INTRODUCTION

Real had a fair opportunity to address the very serious concerns raised in the moving papers, but has not disputed much of the facts underlying the Studios' spoliation motion. The record now establishes *at least* the following undisputed facts:

- For months Real represented to the Studios *and the Court* that it did not possess the "arccos.zip" electronic archive obtained by Mr. Chasen from ▬▬▬▬▬. It then represented that the file was corrupted and unreadable. *After* the Studios filed this motion, Real produced the file. It is not corrupted, and it contains highly relevant evidence regarding Real's attempt to circumvent ARccOS.

- *At least* one RealDVD technical notebook compiled by RealDVD's Senior Program Manager — Nicole Hamilton — was in Real's possession a week before this litigation began, but was then lost or destroyed by Real months into discovery.

- A senior consultant on the RealDVD project (Todd Basche) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

- Real's management consciously anticipated litigation in 2007. Nonetheless, Real never implemented a litigation hold and circulated document "hold notices" only on October 6, 2008, after filing suit, after the temporary restraining order issued, and after evidence had been destroyed.

- Real's management and counsel were so concerned about the discovery record they would face in this case that they instructed ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

The record also contains compelling evidence from which the Court may find the additional following facts, which are consistent with the misconduct described above:

- Two or three additional RealDVD technical notebooks compiled by Ms. Hamilton were destroyed after September 2008. (Ms. Hamilton testified ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.)

- Another senior advisor on the RealDVD project — Richard Wolpert — deleted numerous relevant documents during the period in which litigation was actually anticipated (as he admitted in his deposition, but now denies).

- Yet another senior executive on the RealDVD project ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

Even under the undisputed facts, it is clear that Real violated its affirmative duty to preserve evidence after it reasonably anticipated this very suit, that Real destroyed specific relevant documents, and that Real made affirmative misrepresentations during discovery to shield

the damning arccos.zip file. If the Court makes additional findings based on the record before it, it may conclude that Real purposely sought to destroy — and did destroy — inculpatory evidence. Either way, sanctions are appropriate.

Real has created a false and incomplete record of what happened during the development of RealDVD and significantly handicapped the Studios' ability to demonstrate what really happened. Neither the Court nor the Studios can know what was deleted (either intentionally or due to the absence of a litigation hold). The only fair inference is the obvious one: Real did not discard evidence that was *helpful* to it; the evidence it discarded or sought to hide was harmful to it, as illustrated by its misrepresentations concerning the arccos.zip file.

The rules requiring parties (and anticipated parties) to maintain evidence intact are not self-enforcing. Absent appropriate sanctions, there is a powerful incentive to neglect to retain, or even actively destroy, potentially damaging evidence. The Court, based on its findings, should thus fashion appropriate remedies — of the type suggested by the Studios in their motion papers — designed to place the Studios in the litigation position they would have been in if Real had met its obligations. The evidence strongly suggests Real's actions were willful, and to the extent the Court so finds, it should also fashion remedies sufficient to punish such misconduct.

## II. ARGUMENT

### A. Real Violated Its Duty To Preserve Evidence Starting in Early 2007.

#### 1. *Real had a duty to implement a litigation hold.*

Real argues it had no obligation to preserve evidence until it chose to disclose RealDVD to the Studios and the Studios then threatened litigation. That is not the law. Real's duty to preserve documents attached as soon as *Real* — not the Studios — "recognized the possibility" of litigation. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216-17 (S.D.N.Y. 2003); *see also In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006) (duty to preserve attaches when a party "should have known that the evidence may be relevant to future litigation"). The duty to take steps to preserve evidence often arises years before actual litigation. *See, e.g., Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 369 (9th Cir. 1992) (failure to preserve evidence two years before initiation of litigation was sanctionable).

Even the case on which Real primarily relies is in accord: "Notice does not have to be of actual litigation, but can concern potential litigation. Otherwise, any person could shred documents to their heart's content before suit is brought without fear of sanction." *Hynix v. Rambus*, 591 F. Supp. 2d 1038, 1061 (N.D. Cal. 2006) (internal quotation marks omitted). Although a theoretical or abstract possibility of litigation years in the future does not necessarily create a duty to preserve, here, Real anticipated this specific suit, about RealDVD, with the Studios, concerning the DMCA, eighteen months before filing suit. Real's failure to put a litigation hold in place at that point is alone grounds for sanctions.

Real's documents and employees' testimony show it knew in early 2007 that litigation with the Studios over RealDVD was likely ▌▌▌▌▌ *See* Opening Br. at 1. *Real does not dispute this.* Not one of Real's fifteen affiants denies knowing litigation was probable.



Katz Decl. Exh. A, at REAL137330 (emphasis added).

### 2. *Real does not deny that it tried to sanitize the discovery record.*

Real notably does not deny that it intentionally shaped the discovery record throughout the development of Vegas and Facet. For example, ▌▌▌▌▌ . *See* Katz Decl. Exh. B (Hamilton Depo.) at 31:10-32:6. And Real does not deny that ▌▌▌▌▌ . *See* Opening Br. at 4-5. Indeed, most of Real's affiants strongly corroborate Ms. Hamilton's testimony that ▌▌▌▌▌

> ███████████████████████████████████████ They admit that the team discussed minimizing the use of words like "ripping" in our correspondence because the term could be misconstrued . . . . Similarly . . . some members of the Facet development team discussed not describing ARccOS as "Digital Rights Management" or "DRM."

Watson Decl. ¶ 4; Albertson Decl. ¶ 4 (similar); ████████ Brennan Decl. ¶ 4 (similar); Leitner Decl. ¶ 7 (similar); ████████ Wood Decl. ¶ 5 (similar).

Real's early focus on the discovery record confirms that Real anticipated litigation. *Cf. Hamilton v. Signature Flight Support Corp.*, No. C 05-490 CW (MEJ), 2005 WL 3481423, at *5 (N.D. Cal. Dec. 20, 2005) (pre-litigation conduct can show consciousness that litigation was foreseeable). Real's efforts to shape the discovery record also smacks of selective preservation — the documents that remain are those Real believed would be most helpful to it.

### 3. *Real's boilerplate declarations are insufficient and not credible.*

Real responds with a series of boilerplate declarations in which its employees purport to swear, in almost identical word-for-word fashion, that they delete none of their work-related email. *See* Bielman Decl. ¶ 3 ("My ordinary practices are not to delete work-related messages from either my email inbox or sent mail folder."); Buzzard Decl. ¶ 3 (same); Watson Decl. ¶ 3 (same); Chasen Decl. ¶ 3 (same); Albertson Decl. ¶ 3 ("My ordinary practice is not to delete messages from my email inbox or sent mail that are related to my work"); ████████ Wood Decl. ¶ 4 (similar); ████████ Brennan Decl. ¶ 3 (similar).

First, even taking the declarations at face value, most are careful to speak about only the affiant's "ordinary practices" — without clarifying whether or not any relevant emails or documents were actually deleted in this situation. And some of the affiants refused to provide even boilerplate reassurances about electronic documents, raising the strong inference that they did delete relevant electronic documents. *See, e.g.,* Coppinger Decl. Indeed, Mr. Leitner states that it was his "general practice to save any emails and other documents *that I believe I will need*" — further evidence of selective preservation. Leitner Decl. ¶ 4 (emphasis added). In any case, many declarations do not make even boilerplate assertions about paper documents such as

1  notebooks, handwritten notes on presentations, etc. Ms. Hamilton, for example, testified that
2  ███████████████████████████████████████████████████████████. *See* Katz Decl Exh.
3  B (Hamilton Depo.), at 161:6-21.

4        Second, Real cannot satisfy its preservation obligations by relying on the everyday habits
5  of its employees; it must take affirmative steps to ensure that all relevant documents are being
6  adequately preserved. "Once a party reasonably anticipates litigation, *it must suspend its routine*
7  *document retention/destruction policy* and put in place a 'litigation hold' to ensure the
8  preservation of relevant documents." *Zubulake*, 220 F.R.D. at 218 (emphasis added). *See also*
9  *E*Trade Securities LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 591-93 (D. Minn. 2005)
10 (rejecting a party's contention that its standard document retention policies were adequate to
11 satisfy its document preservation duty, and imposing sanctions for spoliation of evidence).
12 Although many of Real's affiants have signed the same boilerplate language about saving all their
13 emails, the actual practice of these individuals could vary widely. *Notably, Real has declined to*
14 *explain its company-wide retention policies and practices*, including policies and practices for
15 automated deletions on servers, back-up tapes, etc.

16       Third, the Court should put little stock in Real's boilerplate declarations. *See, e.g.*,
17 *Missouri Coalition for Environment Foundation v. U.S. Army Corps of Engineers*, 542 F.3d 1204,
18 1210 (8th Cir. 2008) ("[b]oilerplate or conclusory affidavits, standing alone, are insufficient" to
19 show FOIA exemption); *Henry v. Quicken Loans Inc.*, 2008 WL 4735228, at *6 (E.D. Mich. Oct.
20 15, 2008) (refusing to place credence on affidavits of a "'boilerplate nature'" that appeared to
21 have been "drafted by counsel"); *Amari Co., Inc. v. Burgess*, 2008 WL 268698, at *5 (N.D. Ill.
22 Jan. 28, 2008) (refusing to accept "declaration[s] [that] consist[] of boilerplate allegations that are
23 vague and conclusory in nature"); *Application of Mogen David Wine Corp.*, 372 F.2d 539, 541-42
24 (C.C.P.A. 1967) (multiple highly similar affidavits given little probative value); *Jewish Sephardic*
25 *Yellow Pages, Ltd. v. DAG Media, Inc.*, 478 F. Supp. 2d 340, 365 (E.D.N.Y. 2007) ("boilerplate
26 affidavits" given little probative value).

27       Finally, the claim that all these employees never deleted any email over 12-18 months
28 strains credulity. In fact, many emails appear to be missing. To take one example, only six of the

1 numerous emails between Mr. Chasen and ███████████████
2 ███████████████████████████████████████████████████
3 ███████████████████████████████████████████████████
4 ███████████████████████████████████████ It appears that Real
5 has either withheld or failed to preserve the prior communications about ARccOS/RipGuard.

    **4.**  *Real's October 2008 litigation hold was too little, too late.*

7   Real points to the litigation hold issued in early October 2008, after it filed suit. But even
8 this eighteen-months-tardy litigation hold was apparently not sent to key people involved in the
9 RealDVD project, such as Mr. Basche and Mr. DeWhitt. Moreover, the hold relates only to the
10 first "RealDVD" product subject to the "declaratory judgment" action at the time, *i.e.*, Vegas.
11   Facet was not added to the case until months later and *there was apparently no litigation*
12 *hold specific to Facet*, even though Facet was under development by early 2007. Although Real
13 formally refers to both Vegas and Facet as "RealDVD," Real's engineers often use "RealDVD" to
14 mean Vegas alone. Thus, a witness like ████████████████████████████████████
15 ████████████████████████████████████████████████████████████████████
16 ████████████████████████████████████.

   **B.**  <u>**Real Destroyed and/or Failed To Preserve Key Documents.**</u>

    **1.**  *Ms. Hamilton's notebooks have been destroyed.*

19   Real has now confirmed that it destroyed Ms. Hamilton's notebooks in late December or
20 early January — months into this litigation and *after* the Studios identified Ms. Hamilton as a
21 deponent. Real tells a convoluted story to suggest that the destruction was unintentional because
22 ████████████████████████████████████████████████████████████████████
23 ████████████████████████████████████████████████████████████████████
24 ████████████████████████████████████████████████████████████████████
25 ████████████████████████████████████████████████████████████████████
26 ████████████████████████████████████████████████████████████████████

---

[1] The emails produced reveal a number of prior emails in the same chains that were not produced.

████████████. It was incumbent on Real and its employees to preserve and produce Ms. Hamilton's notebooks.

Indeed, the destruction of the notebooks illustrates the consequences of Real's failure to timely implement a litigation hold. Had Real adopted a document retention program initially, Ms. Hamilton's notebooks should have been preserved. Nor was it enough for Real to simply issue a litigation hold memo in October 2008 but then permit Ms. Hamilton's notebooks to be destroyed. Real had to also "take affirmative steps to monitor compliance" with the hold memo. *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004).

Real tries to downplay the notebooks by quoting Ms. Hamilton's comment that 

Katz Decl. Exh. B (Hamilton Depo.), at 150:19-25.

Ms. Hamilton was specifically hired to take leadership over the Facet project.  The notebooks, as the contemporaneous record of Facet's Senior Program Manager, appear to have been an unrivalled source of information about the business, legal and technological issues central to this case.

Indeed, these kinds of notebooks maintained by senior technical staff like Ms. Hamilton are typically carefully guarded by technology companies, not least because they can be critical in

1 future litigation and to back-up patent applications and claims of inventorship. ███
2 ██████████████████████████████████████████████████████████████████████ *See id.* at
3 32:1-12. Real's destruction of the notebooks, whether willful or reckless (or even just negligent),
4 should be sanctioned. *See Napster*, 462 F.Supp.2d at 1078.

        2.      *Mr. Basche's documents were destroyed.*

There is no dispute that Mr. Basche, one of Real's Strategic Advisors on RealDVD, was never asked to preserve documents (even in October 2008 when a partial litigation hold was finally put into place) and that he deleted all of his relevant documents. Real now claims that after the spoliation motion was filed, Mr. Basche "located a back-up of many of his documents." Opp. at 6. Real does not explain why Mr. Basche did not produce the back-up earlier, nor has it produced any documents from the back-up. Real's papers also omit an alarming fact buried in Mr. Basche's declaration: *The back-up does not include any email. See* Basche Decl. ¶ 4. In any case, like the last-minute "discovery" of the arccos.zip file (discussed below), this belated and limited attempt to compensate for the failure to preserve evidence does not immunize Real from sanctions. *See, e.g., Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

        3.      *Mr. Wolpert's denial that he deleted* ███████ *is unpersuasive.*

Mr. Wolpert, Real's other Strategic Advisor for RealDVD, now claims that when he testified at his deposition that he ████████████████ he was not talking about emails and documents relevant to Vegas or Facet, but junk mail ("unsolicited email messages") relating to his other business. Wolpert Decl. ¶ 7. This self-serving effort to rewrite his deposition testimony is unpersuasive. Courts may, and should, give "great weight to prior admissions made in depositions and disregard subsequent contradictory and self-serving declarations." *Sesay v. Chertoff*, 2008 WL 4790972, at *5 (S.D. Cal. Oct. 30, 2008). *See also Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005) (affirming exclusion of declaration and deposition corrections that contradicted prior testimony).

[REDACTED]

Lynch Decl. Exh. 7 (Wolpert Depo.), at 156:21-157:9 (emphasis added). Mr. Wolpert was not talking about junk email. He was asked about documents relating to Vegas in the months before Vegas shipped, and he testified that he selectively preserved those Vegas documents he thought he might need.

    **4.**    **Mr. Barrett's** [REDACTED]



[REDACTED]. This is improper because when the Studios asked to redepose Mr. Barrett after Ms. Hamilton testified, Real refused, even though the Court had ordered redeposition of Mr. Barrett on Facet.[2] *See, e.g.*, F.R.C.P. 37(b); *Napster*, 462 F. Supp. 2d at 1077; *Arnold v. Cargill, Inc.*, 2004 WL 1853149, at *1-*2 (D. Minn. Aug. 12, 2004) (striking declarations from witnesses whom plaintiffs failed to produce for deposition).

    Real relies also on *ad hominem* attacks on Ms. Hamilton, even though it appears that until

---

[2] At the December 22 hearing, the Studios provided a list of discovery needs, including redepositions of Messrs. Barrett and Brennan on Facet because the relevant technical information was provided only after they were deposed. The Court directed that Real provide that discovery. When Real's counsel then asked the Court "[w]hat are we being directed to give," the Court responded "whatever it is that we are talking about here. [Defense counsel] had a whole list." Lynch Decl. Exh. 8 (Transcript of Dec. 22 Hearing), at 74:11-14, 75:21-25.

just recently, Real was prepared to pay Ms. Hamilton and her counsel thousands of dollars to guarantee that the Wilson Sonsini firm could also "represent" her. Way Decl. Exh. A. Real's *ad hominem* attacks should be stricken not least because Real has repeatedly asserted privilege and other objections to prevent the Studios from taking discovery on the very issues on which Real now attacks Ms. Hamilton. Real asserted a supposed "joint privilege" over its communications with Ms. Hamilton's former counsel Mr. Chu, refusing to produce any of their communications or to permit Ms. Hamilton to testify to those communications — even though Mr. Chu himself denied the existence of any joint privilege. *See* Lane Decl. Exh. B. Despite the sham privilege claim, Real has now selectively chosen to disclose portions of its communications with Mr. Chu. This is improper. *See, e.g., Genentech, Inc. v. Insmed Incorporation*, 442 F. Supp. 2d 838, 844 (N.D. Cal. 2006) ("goal of waiver . . . is to prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice"); *In re M & L Business Mach. Co., Inc.*, 161 B.R. 689, 695 (D. Colo. 1993) (attorney-client privilege cannot be asserted selectively as a "tactical tool"); *Dow Chemical Co. v. Reinhard*, 2008 WL 2245007, at *5 (E.D. Mich. May 30, 2008) ("patently unfair for a party to assert a privilege during pretrial proceedings, frustrate rightful discovery by the other party, and then voluntarily waive that privilege at trial, thereby catching the opposing party unprepared, surprised, and at an extreme disadvantage" (internal quotation marks omitted)).

Similarly, Real has refused to provide discovery regarding Ms. Hamilton's termination and its ensuing communications with her. *See* Katz Decl. Exh B (Hamilton Depo.), at 122:8-123:5. Now Real turns around and selectively discloses portions of that record, including Ms. Hamilton's employment records. Again this is improper and should be stricken.

In any case, the facts Real asserts in its papers are not supported by its own declarations. For example, Real cites declaration after declaration from its engineers claiming Ms. Hamilton did not express any "concerns regarding the legality of Facet." Opp. at 5.

1
2
3
4 [redacted]

### C. Real's Production of the arccos.zip Archive Confirms the Need for Sanctions.

The Studios began requesting production of the arccos.zip archive in December, soon after Real produced the correspondence between Mr. Chasen and [redacted]. At the December 22 hearing, Real expressed complete ignorance of ARccOS and RipGuard, representing to the Court: [redacted] Katz Decl. Exh. G (Transcript of Dec. 22 Hearing), at 40:9-17. In response to the Studios' discovery request, Real first claimed that it would be too "burdensome" to produce the archive, then that the archive was no longer in "RealNetworks' possession," and finally that it "is corrupted by a virus." Remarkably, however, a few days after the Studios filed their spoliation papers, Real was able not only to find the archive, but produce it as a single file on a single CD, entirely uncorrupted by any virus. *See* Kelly Supp. Decl. ¶¶ 3-5.

Real both improperly withheld the file in discovery and then repeatedly misrepresented to the Studios and to the Court the availability of the file. By these stratagems, Real has forced the Studios to waste time and money pursuing the archive. It has denied the Studios the opportunity to cross-examine Real's witnesses about the file. And the Studios' experts were unable to incorporate this important evidence into their expert reports.[3]

Unsurprisingly, the archive has evidence [redacted]

---

[3] The Studios' experts intend to address the arccos.zip archive at the preliminary injunction hearing once they have completed their analysis.

1 ████████████████████████████████████.

2     Real's efforts to hide this file constitute one of the most egregious examples of Real's misconduct. This is precisely the sort of conduct that requires evidentiary and monetary sanctions. In *Keithley v. Home Store.com, Inc.*, for example, this Court sanctioned a party that, like Real, repeatedly changed its story regarding the existence of documents and represented to the court that documents did not exist just weeks before finally producing them under threat of sanctions. 2008 WL 3833384, at *1, *6, *9-*10 (N.D. Cal. Aug. 12, 2008). The fact is that "[l]ast-minute tender of documents does not cure the prejudice to opponents" from refusing to produce documents and denying that they exist. *Fair Housing of Marin*, 285 F.3d at 906 (imposing sanctions where litigant had misrepresented to court and opposing counsel that documents did not exist); *see also Wm. T. Thompson Co. v. General Nutrition Corp., Inc.*, 593 F. Supp. 1443, 1456 (C.D. Cal. 1984) ("[P]artial last-minute tender of responsive documents does not cure the damage created by this delay, and consequently does not immunize GNC from the imposition of sanctions.").

    The Studios respectfully request that the Court grant the instant motion and award the remedies set forth in the moving papers.

DATED: March 18, 2009              /s/
                                           ROHIT SINGLA
                                           MUNGER, TOLLES & OLSON LLP

                                           Attorneys for Studio Defendants/Counterclaim-Plaintiffs/Plaintiffs

                                           COLUMBIA PICTURES INDUSTRIES, INC., DISNEY ENTERPRISES, INC., PARAMOUNT PICTURES CORP., SONY PICTURES ENTERTAINMENT, INC., SONY PICTURES TELEVISION INC., TWENTIETH CENTURY FOX FILM CORP., NBC UNIVERSAL, INC., WALT DISNEY PICTURES, WARNER BROS. ENTERTAINMENT, INC., UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, UNIVERSAL CITY STUDIOS LLLP, AND VIACOM, INC.