1  REGINALD D. STEER (SBN 056324)          WILLIAM SLOAN COATS (SBN 94864)
   rsteer@akingump.com                     wcoats@whitecase.com
2  MARIA ELLINIKOS (SBN 235528)            MARK WEINSTEIN (SBN 193043)
   mellinikos@akingump.com                 mweinstein@whitecase.com
3  **AKIN GUMP STRAUSS HAUER & FELD LLP**  MARK F. LAMBERT (SBN 197410)
   580 California Street, 15th Floor        mlambert@whitecase.com
4  San Francisco, California 94104-1036    **WHITE & CASE LLP**
   Telephone:      (415) 765-9500          3000 El Camino Real
5  Facsimile:      (415) 765-9501          5 Palo Alto Square, 9th Floor
                                            Palo Alto, California 94306
6  EDWARD P. LAZARUS (SBN 212658)          Telephone:      (650) 213-0300
   elazarus@akingump.com                   Facsimile:      (650) 213-8158
7  STEPHEN MICK (SBN 131569)
   smick@akingump.com
8  MICHAEL SMALL (SBN 222768)
   msmall@akingump.com
9  **AKIN GUMP STRAUSS HAUER & FELD LLP**
   2029 Century Park East, Suite 2400
10 Los Angeles, California 90067-3012
   Telephone:      (310) 229-1000
11 Facsimile:      (310) 229-1001

12 Attorneys for Defendant and Counterclaimant
   DVD COPY CONTROL ASSOCIATION, INC.

13

14                     UNITED STATES DISTRICT COURT

15                    NORTHERN DISTRICT OF CALIFORNIA

16  REALNETWORKS, INC., a Washington           Case No. C08 04548 MHP
    Corporation; and REALNETWORKS HOME         Related Case No. C08 CV 04719 MHP
17  ENTERTAINMENT, INC., a Delaware corporation,

18                  Plaintiffs,                 **MEMORANDUM OF POINTS AND**
                                                **AUTHORITIES IN SUPPORT OF**
19            v.                                **MOTION OF DVD COPY CONTROL**
                                                **ASSOCIATION, INC. FOR**
20  DVD COPY CONTROL ASSOCIATION, INC., a       **PRELIMINARY INJUNCTION**
    Delaware nonprofit corporation, et al.
                                                **[Filed concurrently herewith:**
21                  Defendants.                 **Declarations of Jacob Pak, Maria**
                                                **Ellinikos and Dr. John P.J. Kelly]**
22

23  ───────────────────────────────────        Date:  April 1, 2009
                                                Time:  9:00 A.M.
24  AND RELATED CASES                           Ctrm:  15

25                                              **The Honorable Marilyn H. Patel**

26

27                  **PUBLIC REDACTED VERSION**

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND ...............................................................................3

     A.     The Elements Of The CSS Copy Protection System.............................3

     B.     The Contractual Memorialization Of The CSS System.........................4

     C.     RealNetworks' Execution Of The Agreement. ......................................8

     D.     RealNetworks' Plan To Evade The Requirements Of The Agreement. .................9

     E.     How RealDVD Operates. ...................................................................12

III.    DVD CCA IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS THAT REALNETWORKS HAS BREACHED THE AGREEMENT AND THE COVENANT OF GOOD FAITH AND FAIR DEALING................................................13

     A.     RealNetworks Has Breached the Agreement.......................................14

     B.     RealNetworks Has Breached the Covenant of Good Faith and Fair Dealing.................................................................................................18

IV.     ENTRY OF A PRELIMINARY INJUNCTION IS NECESSARY TO PREVENT IRREPARABLE INJURY TO DVD CCA, AND PUBLIC INTEREST CONSIDERATIONS AND THE BALANCE OF EQUITIES WEIGH IN FAVOR OF INTERIM RELIEF. ....................................................................................20

     A.     The Agreement Stipulates That A Breach Of Key Provisions Safeguarding CSS-Encrypted Content, Which RealNetworks Has Violated, Will Cause Irreparable Injury To DVD CCA.......................................................20

     B.     The Release of RealDVD Will Cause Irreparable Injury To DVD CCA. ...........21

     C.     Public Interest And Equitable Considerations Support Injunctive Relief. ..........23

V.      CONCLUSION.................................................................................................24

i

# TABLE OF AUTHORITIES

## CASES

*Adobe Sys., Inc. v. One Stop Micro, Inc.,*
 84 F. Supp. 2d 1086 (N.D. Cal. 2000) ................................................................. 15

*Advanced Micro Devices, Inc. v. Intel Corp.,*
 9 Cal. 4th 362 (1994) ........................................................................................... 15

*Badie v. Bank of Am.,*
 67 Cal. App. 4th 779 (1998) ................................................................................. 15

*Bank of the West v. Superior Court,*
 2 Cal. 4th 1254 (1992) .......................................................................................... 15

*Binder v. Aetna Life Ins. Co.,*
 75 Cal. App. 4th 832 (1999) ................................................................................. 14

*Cedars-Sinai Medical Ctr. v. Shewry,*
 137 Cal. App. 4th 964 (2006) ............................................................................... 14

*Cirrus Holding Co. Ltd. v. Cirrus Indus., Inc.,*
 794 A.2d 1191 (Del. Ch. 2001) ............................................................................ 20

*Concept, Inc. v. Thermotemp, Inc.,*
 553 So. 2d 1325 (Fla. Dist. Ct. App. 1989) ......................................................... 20

*Crawford v. Weather Shield Mfg. Inc.,*
 44 Cal. 4th 541 (2008) .......................................................................................... 14

*Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.,*
 356 F.3d 1256 (10th Cir. 2004) ............................................................................ 21

*DVD CCA v. Kaleidescape, Inc.,*
 No.1:04 CV 031829 (Cal. Superior Ct., March 29, 2007) .................... 10, 11, 17, 18

*eBay, Inc. v. Bidder's Edge, Inc.,*
 100 F. Supp. 2d 1058 (N.D. Cal. 2000) ............................................................... 23

*Egan v. Mutual of Omaha Ins. Co.,*
 24 Cal. 3d 809 (1979) ........................................................................................... 18

*Guz v. Bechtel Nat'l Inc.,*
 24 Cal. 4th 317 (2000) .......................................................................................... 18

*Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co.,*
 510 N.W.2d 153 (Iowa 1993) ............................................................................... 20

*Independent Ass'n of Mailbox Ctr. Owners, Inc. v. Superior Court,*
 133 Cal. App. 4th 396 (2005) ............................................................................... 15

*Johnston v. Comm'r,*
 461 F.3d 1162 (9th Cir. 2006) .............................................................................. 14

ii

*Lippman v. Sears, Roebuck & Co.,*
    44 Cal. 2d 136 (1955) ................................................................................................19

*Mann v. Johnson Mem. Hosp.,*
    611 N.E.2d 676 (Ind. Ct. App. 1993) ......................................................................20

*Merced County Sheriff's Employee's Assn. v. County of Merced,*
    188 Cal. App. 3d 662 (1987) ....................................................................................14

*Morey v. Vannucci,*
    64 Cal. App. 4th 904 (1998) ....................................................................................14

*Pac. Gas & Elec. v. Superior Court*
    15 Cal. App. 4th 576 .................................................................................................15

*Rainier Credit Co. v. W. Alliance Corp.,*
    171 Cal. App. 3d 255 (1985) ....................................................................................15

*Schoolcraft v. Ross,*
    81 Cal. App. 3d 75 (1978) ........................................................................................19

*Stanley Works v. Newell Co.,*
    No. 2:91CV00488, 1992 WL 345622 (D. Conn. Oct. 2, 1992).................................20

*Traders Int'l, Ltd. v. Scheuermann,*
    No. H-06-1632, 2006 WL 2521336 (S.D. Tex. Aug. 30, 2006)................................21

*United Teachers of Oakland, Local 771 v. Oakland Unified School Dist.,*
    75 Cal. App. 3d 322(1977) ......................................................................................14

*Universal Sales Corp. v. California Press Mfg. Co.,*
    20 Cal. 2d 751 (1942) ..............................................................................................19

*Utility Consumers' Action Network, Inc. v. AT&T Broadband of Southern California, Inc.,*
    135 Cal. App. 4th 1023 (2006) .................................................................................21

*Zanker Dev. Co. v. Cogito Sys. Corp.,*
    215 Cal. App. 3d 1377 (1989) ..................................................................................24

**STATUTES**

Cal. Civ. Code § 1636 ......................................................................................................14

Cal. Civ. Code § 1638 ......................................................................................................14

Cal. Civ. Code § 1649 ......................................................................................................14

Cal. Civ. Code. § 1654 .....................................................................................................15

**OTHER AUTHORITIES**

*Restatement (Second) of Contracts* § 201(2)(a) (1981) ............................................14, 18

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Today, hundreds of millions of people worldwide take for granted the technology that allows them to watch movies and television programs at their convenience on DVDs. But this stunningly successful breakthrough -- virtually unimaginable a generation ago -- did not develop spontaneously. It is the product of a delicate set of agreements achieved through painstaking negotiation among the companies that provide the content for DVDs, on the one hand, and the consumer electronics and information technology companies that make the devices consumers use to play back and enjoy DVDs, on the other. Declaration of Andrew Parsons ("Parsons Dec.") ¶ 4.

The advent of DVDs dates back to the early 1990s. At that time, the companies that provide content for movies and television started to consider distributing content in a digital format on DVDs, but were concerned about the dangers posed by the ease with which DVDs could be copied. Without some means of copy-protection, an infinite number of perfect duplicates could be made of any DVD, including borrowed DVDs. And if that happened, individuals could use, copy, and even distribute DVDs without paying for the copyrighted material on the DVD. Faced with this prospect, content providers individually decided not to distribute movies on DVDs, until and unless there was a workable technology that would render it very difficult for typical consumers to make unauthorized copies of the providers' copyrighted materials. Parsons Dec. ¶ 4; King Dep. 76:19-77:10 (Declaration of Maria Ellinikos ("Ellinikos Dec."), Exh. I). For their part, the consumer electronics and information technology companies that were spending great resources developing products for playing DVDs needed a content protection system to give them assurances that there would be content available to be played back on their products and that would not add unduly to the price of those products. Parsons Dec. ¶ 4.

Enormous effort across industries with widely differing perspectives produced a solution to the problem of protecting copyrighted works at a manageable cost – the DVD-Video Content Scramble System ("CSS"). Parsons Dec. ¶ 4; King Dep. 51:19-52:24 (Ellinikos Dec., Exh. I). This system encrypts the video information on a DVD and creates layers of protection against casual user copying,

1  including an interlocking series of cryptographic keys and encryption and playback process

2  requirements to prevent duplication of copyrighted content.   The fundamental purpose of the CSS

3  system is to ensure that a playable digital copy of protected content on a DVD cannot be made by a

4  casual user.  Parsons Dec. ¶ 5; King Dep. 79:25-82:2 (Ellinikos Dec., Exh. I);

5

6

7

8          The anti-copying objective of the CSS system is memorialized in an Agreement that is

9  administered and enforced by the DVD Copy Control Association, Inc. ("DVD CCA").[1]

10  RealNetworks, Inc. ("RealNetworks") is a CSS Licensee.  By executing the Agreement, RealNetworks

11  bound itself to comply with the detailed requirements that were carefully designed to prevent users

12  from making and keeping playable copies of CSS-protected DVD content.  The Agreement stipulates

13  that a breach of these anti-copying obligations would cause irreparable injury to DVD CCA,

14  warranting the entry of injunctive relief.

15          From the outset, however, RealNetworks sought to undermine the CSS system.  As its own

16  documents show and its witnesses admit, RealNetworks' shameless objective all along was to create a

17  product that would defy the core anti-copying purpose of CSS.  RealNetworks ultimately achieved this

18  illicit goal by concocting "RealDVD" -- software specifically designed to enable a consumer to easily

19  make lasting, digital copies of CSS-protected DVDs (including copies made from DVDs that the

20  consumer has borrowed or rented) on a computer hard drive or other storage media and later watch the

21  copied DVD content without any further need for the physical DVD.[2]  RealNetworks insists that

22  RealDVD is a "100% legal" DVD copying product.  This is false.  There is no doubt that RealDVD

23

24  _____

25          [1] All references herein to the "Agreement" are to the CSS License Agreement, together with
       interrelated contractual documents that contain CSS Specifications.  See infra pages 4-5.

26          [2] As explained below, RealNetworks has created two versions of RealDVD, one code named
       "Vegas," and the other code named "Facet."  The Vegas application is built to run on the Microsoft

27  Windows Operating System; whereas Facet is designed to run on the Linux Operating System. Because
       Facet and Vegas have the same basic functionality, DVD CCA refers to them interchangeably as

28  RealDVD, except where specific distinctions between the two versions of RealDVD are expressly noted.

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

materially breaches the Agreement. This Court should therefore enter a preliminary injunction blocking RealNetworks from distributing RealDVD, and thereby prevent the irreparable injury to DVD CCA that flows from RealNetworks' brazen violations of the CSS safeguards.

## II.   FACTUAL BACKGROUND

### A.   The Elements Of The CSS Copy Protection System.



MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. C08 04548 MHP: C08 CV 04719 MHP



**B.      The Contractual Memorialization Of The CSS System.**

---

[3] All citations herein to the CSS License Agreement are to Version 1.2, which is the version that Real Networks executed.  Pak Dec., Exh. J at Real001411, 001438.

4



[4] Section 2.1 of the License Agreement requires the licensee to select the membership category or categories appropriate for its product. Pak Dec., Exh. J at Real001415. Through this category selection process, the prospective licensee identifies the type (or types) of technology for which a license is sought – e.g., DVD Player, DVD Drive, Descrambler, Authenticator, etc. Pak Dec. ¶ 14.

[5] In contrast to the publicly-available Procedural Specifications, the confidential CSS Specifications are sent to licensees only after they have executed the CSS License Agreement. Pak Dec. ¶ 17.

[6] *See, e.g.,* CSS

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. C08 04548 MHP: C08 CV 04719 MHP

Procedural Specifications, § 6.2 (to promote "Copy Protection," CSS Licensees must adhere to "conditions . . . with respect to. . . playback of . . . CSS Data") (Pak Dec., Exh. P at DVD016768).

[7]

6

7

1

2

3

4

5

6

7

8

9

10   **C.   RealNetworks' Execution Of The Agreement.**

11       RealNetworks became a CSS Licensee to obtain the decryption keys permitting playback of

12   CSS protected DVD content, so that it could make and sell its RealDVD software.  Hamilton Dep.

13   235:12-20 (Ellinikos Dec., Exh. H); Chasen Dep. 46:21-49:3 (Ellinikos Dec., Exh. D).  To begin the

14   licensing process, RealNetworks downloaded from the DVD CCA website in June 2007 the publicly-

15   available Procedural Specifications and the CSS License Agreement.  Hamilton Dep. 38:15-24, 223:22-

16   224:7 (Ellinikos Dec., Exh. H); Pak Dec., Exh. E.  DVD CCA provided additional information to

17   RealNetworks, including a description of the Membership Categories applicable to various DVD

18   playback technologies.  Pak Dec. ¶ 18.  RealNetworks executed the CSS License Agreement on August

19   13, 2007.  Pak Dec., Exh. J at Real001438.  DVD CCA countersigned the CSS License Agreement on

20   August 23, 2007.  *Id.* at Real001438.

21       When it executed the CSS License Agreement, RealNetworks selected two membership

22   categories: "Authenticator Module for CSS Decryption Module" and "Descrambler Manufacturer."

23   Pak Dec. ¶ 20; Hamilton Dep. 225:18-230:2 (Ellinikos Dec., Exh. H); Ellinikos Dec., Exh. O.  On

24   September 10, 2007, RealNetworks received from DVD CCA the CSS General Specifications and the

25

26   _____

27      [8] "Confidential Information" is defined in the CSS License Agreement to include the CSS
Specifications that are "marked 'confidential,' when disclosed in tangible form."  Pak Dec., Exh. J at

28   Real001412.

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

Technical Specifications for the two membership categories RealNetworks joined.[9]   Later in 2007,

RealNetworks joined a third membership category:  "Authenticator Module for DVD Drive

Manufacturer."  Hamilton Dep. 215:15-17 (Ellinikos Dec., Exh. H).   DVD CCA thereafter sent

RealNetworks the Technical Specifications for that category.  Pak Dec. ¶ 20.

**D.   RealNetworks' Plan To Evade The Requirements Of The Agreement.**

By executing the CSS License Agreement, RealNetworks bound itself to comply with the anti-

copying requirements of the Agreement.  But RealNetworks never intended to comply with those

obligations.

---

[9] In particular, RealNetworks received the Authenticator Module for CSS Decryption Module, Version 1.10 (defined, *supra*, as "Authenticator Specifications") (Pak Dec., Exh. N); and "DVD-Video Descrambler, Version 1.10 (defined, *supra*, as "Descrambler Specifications") (Pak Dec., Exh. M).  Pak Dec. ¶¶ 21-22, Exh. K; Hamilton Dep. 38:11-14 (Ellinikos Dec., Exh. H).

[10]

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

1        In devising RealDVD, RealNetworks was aware that consumers rent and borrow DVDs, as well

2   as purchase them. ████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████

6   ██████████████████████████████

7        As it was crafting RealDVD, RealNetworks placed considerable stock in a March 2007

8   California state trial court decision that rejected a challenge brought by DVD CCA under the CSS

9   General Specifications to a device known as the "Kaleidescape system." █████████████

10  ████████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████████

13       The trial court in the *Kaleidescape* case (erroneously, in DVD CCA's view) ruled that the CSS

14  General Specifications are not CSS Specifications with which licensees must comply under Section 4.2

15  of the CSS License Agreement. *DVD CCA v. Kaleidescape, Inc.*, No.1:04 CV 031829 (Cal. Superior

16  Ct., March 29, 2007). During the *Kaleidescape* litigation and in its response to the decision (which it

17  immediately appealed), DVD CCA publicly stated its view that, under the CSS License Agreement, the

18  CSS General Specifications are binding on all licensees and that the CSS General Specifications

19  require playback to be directly from a physical DVD Disc. ███████████████████████

20  ████████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████

26  

27  ████████████████████████████████████████████████████████████████

28  ██████████████████████████████████████████████

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

1        In devising RealDVD, RealNetworks was aware that consumers rent and borrow DVDs, as well

2    as purchase them.

3

4

5

6

7        As it was crafting RealDVD, RealNetworks placed considerable stock in a March 2007

8    California state trial court decision that rejected a challenge brought by DVD CCA under the CSS

9    General Specifications to a device known as the "Kaleidescape system."

10

11

12

13       The trial court in the *Kaleidescape* case (erroneously, in DVD CCA's view) ruled that the CSS

14   General Specifications are not CSS Specifications with which licensees must comply under Section 4.2

15   of the CSS License Agreement.  *DVD CCA v. Kaleidescape, Inc.*, No.1:04 CV 031829 (Cal. Superior

16   Ct., March 29, 2007).  During the *Kaleidescape* litigation and in its response to the decision (which it

17   immediately appealed), DVD CCA publicly stated its view that, under the CSS License Agreement, the

18   CSS General Specifications are binding on all licensees and that the CSS General Specifications

19   require playback to be directly from a physical DVD Disc.

20

21

22

23

24

25

26

27

28

10

1

2

3

4

5

6

7

8          Nevertheless, RealNetworks forged ahead with its plan to create a software product that copies

9   DVDs to computer hard drives to be played back without further need for the physical DVD Disc.

10

11

12

13

14                                                                                        There is

15   no evidence that RealNetworks ever communicated to DVD CCA that it intended to construe the

16   *Kaleidescape* decision and the Agreement as authorizing the making of permanent playable copies of

17   DVDs on a computer hard drive.

18

19

20

21   [11]

22   [12]

23

24   [13]

25

26

27

28

11



**E.     How RealDVD Operates.**

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   **III.**   **DVD CCA IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS THAT**

21       **REALNETWORKS HAS BREACHED THE AGREEMENT AND THE COVENANT OF GOOD FAITH AND FAIR DEALING.**

22       A plaintiff is entitled to a preliminary injunction when it demonstrates that it will likely succeed

23 on the merits of its claims; will suffer irreparable harm in the absence of interim relief; and equitable

24 and public interest considerations weigh in its favor. *Winter v. National Resources Defense Council,*

25 *Inc.*, 129 S. Ct. 365, 374 (2008). Applying this standard, DVD CCA is entitled to a preliminary

26 injunction on its claims against RealNetworks for breach of contract and breach of the covenant of

27 good faith and fair dealing that is implied in all contracts.

28

13

### A.    RealNetworks Has Breached the Agreement.

Under California law, contracts are interpreted to reflect the mutual intent of the parties at the time of contracting.  Cal. Civ. Code § 1636; *Cedars-Sinai Medical Ctr. v. Shewry*, 137 Cal. App. 4th 964, 979 (2006).[15]  The starting point for ascertaining the parties' intent is the language of the agreement.  Cal. Civ. Code § 1638; *Crawford v. Weather Shield Mfg. Inc.*, 44 Cal. 4th 541, 552 (2008).  If the language of the contract is reasonably susceptible to more than one interpretation, it is deemed ambiguous, and the court is then required to consider extrinsic evidence of the parties' respective understandings of the contract.  *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (1998).   If there is extrinsic evidence that one party understood that the other party interpreted the contract in a particular way, then the latter's interpretation shall control.  Cal. Civ. Code § 1649; *see United Teachers of Oakland, Local 771 v. Oakland Unified School Dist.*, 75 Cal. App. 3d 322, 330 (1977).  The principle that one party's interpretation controls when the other party was aware of it is also reflected in the *Restatement of Contracts*,[16] which states: "Where the parties have attached different meanings to a promise or agreement or a term thereof, it is interpreted in accordance with the meaning attached by one of them if at the time the agreement was made . . . that party did not know of any different meaning attached by the other, and the other knew the meaning attached by the first party."  *Restatement (Second) of Contracts* § 201(2)(a) (1981); s*ee Merced County Sheriff's Employee's Assn. v. County of Merced*, 188 Cal. App. 3d 662, 673 (1987) (applying *Restatement* § 201(2)(a) and holding that parties were bound by contractual understanding of plaintiff when defendant had reason to know of plaintiff's understanding and never communicated its understanding to the plaintiff); *Johnston v. Comm'r*, 461 F.3d 1162, 1165 (9th Cir. 2006) (same).

Applying these rules of contract interpretation, the language of the Agreement evinces one overriding contractual objective: to prevent casual users from copying CSS-protected DVD content.  The principal means of carrying out that objective is to require protected content to flow only from the physical DVD in an authorized DVD Drive through the authentication process and directly to the

---

[15] The CSS License Agreement states that it is governed by California law.  *See* CSS License Agreement, § 10.4(a), Pak Dec., Exh. J at Real001436.

[16] California courts look to the *Restatement of Contracts* for guidance on contract law issues. *See, e.g.*, *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850, n.8 (1999).

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

1    Descrambler software for display. The CSS Specifications emphasize that this process must ensure that

2    the data is not intercepted in a manner that allows a user to create a digital copy of a movie. The

3    objective of the Agreement and the means for accomplishing it are reinforced by the contractual

4    language expressly preventing licensees from circumventing the purpose of the contract.

5        Even if the language of the Agreement were ambiguous or susceptible to more than one

6    interpretation, the undisputed extrinsic evidence demonstrates that DVD CCA interpreted the

7    Agreement as memorializing the central anti-copying objective of the CSS system, and that DVD CCA

8    considered the requirement of the physical presence of the DVD Disc to be a primary tool for achieving

9    that objective. ████████████████████████████████████

10   ████████████████████████ The extrinsic evidence also conclusively shows that, at the time it executed

11   the CSS License Agreement, RealNetworks was fully aware that DVD CCA interpreted the Agreement

12   in this way. ██████████████████████████████████████

13   ███████████████████████████ There is no evidence whatsoever that RealNetworks ever

14   conveyed a contrary interpretation to DVD CCA. Therefore, even if the language of the Agreement

15   were ambiguous or susceptible to more than one interpretation, DVD CCA's interpretation would carry

16   the day under California rules of contract interpretation, thus precluding RealNetworks from producing

17   and selling a device that copies DVDs for playback from a source other than the physical DVD Disc.[17]

18

19

20       [17] Under California law, uniform contracts, such as the Agreement, are generally subject to the
     same rules as any other contract. *See, e.g., Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264

21   (1992) ("While insurance contracts have special features, they are still contracts to which the ordinary
     rules of contract interpretation apply."); *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 798-99 (1998)

22   (applying normal rules of contract interpretation, including rules governing use of extrinsic evidence, to
     a standardized consumer banking contract); *Independent Ass'n of Mailbox Ctr. Owners, Inc. v. Superior*

23   *Court*, 133 Cal. App. 4th 396, 407 (2005) (applying normal rules of contract interpretation to
     standardized franchise contract); *Adobe Sys., Inc. v. One Stop Micro, Inc.*, 84 F. Supp. 2d 1086, 1092

24   (N.D. Cal. 2000) (using extrinsic evidence to resolve ambiguity in uniform software licensing
     agreement). The doctrine of contra proferentem, which states that ambiguities in a contract should be

25   construed against its drafter, Cal. Civ. Code. § 1654, is inapplicable because it is a rule of last resort that
     comes into play only when (unlike the case here) the meaning of a contract cannot be ascertained

26   through other canons of interpretation, including through the use of extrinsic evidence. *See Rainier
     Credit Co. v. W. Alliance Corp.*, 171 Cal. App. 3d 255, 263 (1985); *Pacific Gas & Elec. Co. v. Superior*

27   *Court*, 15 Cal. App. 4th 576, 596 (1993), *abrogated on other ground in Advanced Micro Devices, Inc. v.
     Intel Corp.*, 9 Cal. 4th 362, 376 (1994).

28

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

As set forth above, RealDVD saves and copies DVDs to computer hard drives and plays them back in the absence of the DVD Disc itself, bypassing multiple layers of the CSS protection system. Thus, RealNetworks has breached the Agreement. In particular, RealDVD does not comply with the anti-copying requirements of the Agreement in at least the following material respects.

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

[REDACTED]

Its complaint against DVD CCA interposes the *Kaleidescape* decision as a defense to charges that RealDVD breaches the Agreement. RealNetworks Amended Complaint ¶ 5. But that decision furnishes no shield to RealNetworks for two reasons. First, DVD CCA's theory of breach in the *Kaleidescape* trial was confined to the assertion that the Kaleidescape system violated Sections 1.5 and 2.1.2 of the CSS General Specifications. DVD CCA's charges against RealNetworks are not so limited. DVD CCA has alleged here that, in designing RealDVD, RealNetworks violated not only the CSS General Specifications, but also the Procedural Specifications, the CSS License Agreement, and the category-specific CSS Specifications that RealNetworks selected, each of which contain multiple provisions (cited above) which rely on and require the presence of the physical DVD disc when decrypting and playing back its contents. The trial court's ruling in *Kaleidescape* that the CSS General Specifications are not part of the CSS Specifications has no conceivable bearing on the applicability of

---

[18] CSS Licensees are required to select the appropriate membership category or categories for their products. CSS License Agreement, § 2.1, Pak Dec., Exh. J at Real001415. One of the three categories that RealNetworks selected was Authenticator Module for DVD Drive Manufacturer. Hamilton Dep. 215:15-17 (Ellinikos Dec., Exh. H); Pak Dec. ¶ 21. [REDACTED] (Ellinikos Dec., Exh. H). This inappropriate selection constitutes a breach of the Agreement, CSS License Agreement, § 2.1, Pak Dec., Exh. J at Real001415-16, entitling DVD CCA to preliminary relief. *See infra*, p. 20 (noting that a breach of Section 2.1 warrants injunctive relief under Section 9.2 of the CSS License Agreement). RealNetworks further breached Section 2.1 of the License Agreement in failing to select the membership category for CSS Decryption Modules. *See* Kelly Dec. ¶¶ 47, 68 [REDACTED]

17

1   the other CSS Specifications to RealDVD.[19]  Second, even as to the CSS General Specifications

2   themselves, the trial court decision in *Kaleidescape* does not shelter RealDVD.



10                                                                                          .[20]  By contrast, there is

11   no evidence that DVD CCA was aware that RealNetworks had a contrary understanding of the

12   Agreement.  On these uncontested facts, the principles of Section 1649 of the California Civil Code

13   and Section 201(2) of the *Restatement* bind RealNetworks to its understanding of DVD CCA's

14   understanding, *i.e.* that the Agreement requires that devices play back CSS protected content from a

15   DVD that is in the DVD Drive of the playback system.

16   **B.    RealNetworks Has Breached the Covenant of Good Faith and Fair Dealing.**

17          An implied duty of good faith and fair dealing is part of every contract.  *Egan v. Mutual of*

18   *Omaha Ins. Co.*, 24 Cal. 3d 809, 818 (1979).   The obligations imposed by this covenant preclude one

19   party from taking action that frustrates the other party's contractual expectations.  *Guz v. Bechtel Nat'l*

20   *Inc.*, 24 Cal. 4th 317, 349 (2000).  Put another way, "[t]he implied covenant imposes upon each party

---

22   [19] The distinct and expanded theories of breach in this case follow from the fact that

23   ███████████████████   Accordingly, the contractual constraints to which the two products are subject, while overlapping, are not identical.

24   [20] ████████████████████

25   ████████████████████   Because the appeal is still pending, the trial court ruling is not a final judgment for purposes of California law regarding the application of the doctrines of res judicata and collateral estoppel to bar relitigation of claims and issues previously

26   litigated and decided.  *Franklin & Franklin v. 7-Eleven Owners For Fair Franchising*, 85 Cal. App. 4th

27   1168, 1174 (2000).   California's rules on those doctrines govern here because federal courts must apply state law principles to ascertain the preclusive effect of decisions rendered by courts of that state.  *Intri-*

28   *Plex Tech., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

1  the obligation to do everything that the contract presupposes they will do to accomplish its purpose."

2  *Schoolcraft v. Ross*, 81 Cal. App. 3d 75, 80 (1978).

3       Here, DVD CCA expected that, to accomplish the Agreement's purpose of preventing copying

4  of protected content, RealNetworks would use the CSS technology it obtained from DVD CCA under

5  the license to produce a device that plays back protected content from the physical DVD Disc, and that

6  does not copy protected content to a hard drive or other storage media for playback without the DVD

7  Disc. DVD CCA thus expected that RealNetworks' device would preclude consumers from making

8  lasting digital copies of DVDs, including, for example, the compilation of a permanent DVD library on

9  a computer from rented or borrowed DVDs. By producing a device that does exactly the opposite,

10 RealNetworks has frustrated DVD CCA's contractual expectation. RealNetworks

11

12

13

14

15

16                                                        committed a

17 paradigmatic breach of the covenant of good faith and fair dealing.[21]

18

19

20

21

22

23

24

---

[21] *See Lippman v. Sears, Roebuck & Co.*, 44 Cal. 2d 136, 142-43 (1955) (retailer breached covenant of good faith and fair dealing by failing to maintain retail store on shopping center premises; retailer's payment of rent for the space failed to make up for frustration of lessor's expectation that retailer had leased space to serve as the center's anchor tenant); *Universal Sales Corp. v. California Press Mfg. Co.*, 20 Cal. 2d 751, 771 (1942) (seller of machine breached covenant of good faith and fair dealing by failing to share information regarding an improved machine and thus frustrating expectation of partner in joint venture to develop and market the machine).

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

IV.    **ENTRY OF A PRELIMINARY INJUNCTION IS NECESSARY TO PREVENT IRREPARABLE INJURY TO DVD CCA, AND PUBLIC INTEREST CONSIDERATIONS AND THE BALANCE OF EQUITIES WEIGH IN FAVOR OF INTERIM RELIEF.**

A.    **The Agreement Stipulates That A Breach Of Key Provisions Safeguarding CSS-Encrypted Content, Which RealNetworks Has Violated, Will Cause Irreparable Injury To DVD CCA.**

RealNetworks' multiple breaches of the Agreement trigger application of the remedial provision of the CSS License Agreement, Section 9.2. In that provision, the parties expressly stipulated that DVD CCA would suffer "lasting effect . . . and harm [arising] from a breach" of certain specified contract terms safeguarding CSS-encrypted content, including Sections 2.1, 4.2 (which, as indicated above, requires compliance with the CSS Specifications), and 5 of the CSS License Agreement, because such breaches would "mak[e] available the means for widespread unauthorized copying of copyrighted content intended to be protected." Pak. Dec., Exh. J at Real001432. In recognition of the magnitude of this threat to the central objective of the Agreement, the parties further stipulated in Section 9.2 that the harm flowing from a breach of these contract terms "[would] be irreparable," and that "monetary damages [would] not [be] sufficient to remedy the injury." *Id.* Accordingly, to provide a sufficient remedy for injury, the parties stipulated in Section 9.2 that DVD CCA would be entitled to "specific performance or other temporary, preliminary, or permanent injunctive relief . . . (whether or not there have been commercial sales of products subject to the requested relief)." *Id.* Because RealNetworks has breached (*inter alia*) Sections 2.1, 4.2 and 5 of the CSS License Agreement, DVD CCA is entitled to a preliminary injunction pursuant to the stipulated remedy of Section 9.2.

Most of the courts nationwide that have addressed the enforceability of stipulated irreparable injury provisions like Section 9.2 of the CSS License Agreement have held that such provisions are dispositive and should be honored, without any need to evaluate the evidentiary basis for the irreparable injury claim.[22] This Court should follow suit and enforce the stipulated irreparable injury

---

[22] *See Cirrus Holding Co. Ltd. v. Cirrus Indus., Inc.*, 794 A.2d 1191, 1209 (Del. Ch. 2001); *Concept, Inc. v. Thermotemp, Inc.*, 553 So. 2d 1325, 1326-28 (Fla. Dist. Ct. App. 1989); *Mann v. Johnson Mem. Hosp.*, 611 N.E.2d 676, 679 (Ind. Ct. App. 1993); *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co.*, 510 N.W.2d 153, 158 (Iowa 1993); *Stanley Works v. Newell Co.*, No. 2:91CV00488, 1992 WL 345622, *1-2 (D. Conn. Oct. 2, 1992). Other courts have held that, while not dispositive, stipulated irreparable injury provisions must be given significant weight in crafting relief; these courts honor the provisions, except when there is absolutely no evidence of potential harm to the

20

1  provision in the CSS License Agreement by entering a preliminary injunction against RealNetworks.

2  Indeed, enforcement of the stipulated remedy provision is central to the functioning of the Agreement

3  as a whole.  DVD CCA's insistence that licensees adhere to the licensing requirements ensures the

4  maintenance of the delicate balance that the Agreement strikes to accommodate the interests of content

5  providers, on the one hand, and the consumer electronics and information technology companies that

6  make the devices consumers use to play back DVDs, on the other.  If licensees are permitted to get

7  around those requirements by making unlawful copies of DVD content, the entire system is

8  undermined.   Parsons Dec. ¶¶ 5-6.  Instead of trying to guess upfront in a liquidated damages

9  provision as to the amount of damages such harm would cause or leave that decision to a jury, the

10  parties here came up with a simple and equitable solution: they agreed in advance that a breach would

11  result in irreparable injury and that the remedy for that breach would be injunctive relief.   The

12  stipulated remedy to which they agreed comprehensively assesses the injury that DVD CCA will suffer

13  from the degradation of its system for protecting intellectual property, from the attendant risk that other

14  licensees will forsake their obligations and follow the violator's lead, and from the destruction of

15  critical trust relationships with other businesses.[23]

16  **B.   The Release of RealDVD Will Cause Irreparable Injury To DVD CCA.**

17        Even without the stipulated irreparable injury provision in the CSS License Agreement, DVD

18  CCA is entitled to injunctive relief because RealNetworks' release of RealDVD will cause irreparable

19  injury to DVD CCA.  The threat posed to DVD CCA by the specter of the unauthorized copying of

20  DVDs by RealDVD is manifest in the record.  RealNetworks has touted RealDVD as a cheap and easy

21  way to watch and store DVDs.  It has proclaimed that, for less than $30, consumers can permanently

22  download RealDVD on to their personal computers, store copies of DVDs on their computers, and

23

24  party seeking to enforce the stipulation.  *See, e.g., Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 356 F.3d 1256, 1265 (10th Cir. 2004); *Traders Int'l, Ltd. v. Scheuermann*, No. H-06-1632, 2006

25  WL 2521336, *9 (S.D. Tex. Aug. 30, 2006).

26        [23] The stipulated irreparable injury provision in the CSS License Agreement is akin to liquidated damages provisions in contracts, which California courts regularly honor because "they remove the

27  uncertainty factor from determining damages from a breach of contract and reduce litigation." *Utility Consumers' Action Network, Inc. v. AT&T Broadband of Southern California, Inc.*, 135 Cal. App. 4th

28  1023, 1038 (2006).

21

1   watch them later at their convenience.



11   As the Motion

12   Picture Studio Plaintiffs have shown in their brief, consumer perception that it is "legal" to copy DVDs

13   on computers through RealDVD is likely to take hold in the marketplace because of RealNetworks'

14   well-known brand name and mainstream distribution networks.

15        If RealNetworks is permitted to launch its product and test its prediction of a strong consumer

16   response to a device that can make playable copies of DVDs, the integrity of the CSS system will be

17   fatally undermined, thus vitiating the purpose and mission of DVD CCA.  Parsons Dec. ¶ 7;

18   DVD CCA was formed to create an

19   environment in which content providers could release their intellectual property on the DVD format

20   without fear of copying, and in which the consumer electronics and information technology companies

21   would be assured that there would be content available to be played back on their products and that

22   their products would be affordable.  Parsons Dec. ¶¶ 4, 6.  Allowing RealNetworks to market a product

23   capable of copying would compromise the environment of trust essential to DVD CCA's mission.  *Id.*

24

25   24

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

1  at ¶ 6.  And absent that collective trust, DVD CCA will be irreparably injured because its value as an

2  organization turns entirely on its ability to enforce the Agreement and ensure compliance with the CSS

3  safeguards.  *Id.* at ¶ 7.   Simply put, the raison d'être of DVD CCA will be gutted if licensees are

4  permitted freely to violate the Agreement by selling a DVD copying machine.  This injury to DVD

5  CCA's reputation and goodwill alone warrants injunctive relief.  *See eBay, Inc. v. Bidder's Edge, Inc.*,

6  100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000) (loss of customer goodwill is irreparable "because it is

7  neither easily calculable, nor easily compensable and is therefore an appropriate basis for injunctive

8  relief").[25]

9       **C.    Public Interest And Equitable Considerations Support Injunctive Relief.**

10      Public interest considerations strongly support the entry of the interim relief that DVD CCA is

11  requesting.  The effects of the demise of efforts to prevent copying of CSS-encrypted content through

12  the proliferation of products like RealDVD will ultimately be felt by consumers.  As content providers

13  lose confidence in DVD CCA's ability to control unauthorized copying, they could be forced to switch

14  to other media or adopt other more costly means of protection -- all of which will curtail the vitality or

15  increase the cost of one of the most successful consumer products in history.  The millions upon

16  millions of members of the public who rent or purchase DVDs for their personal home viewing thus

17  will lose out.  Dunn Dep. 177:23-180:1 (Ellinikos Dec., Exh. F) (discussing consumer demand).

18      The balance of equities tips sharply in DVD CCA's favor as well.  In essence, RealNetworks

19  seeks to rewrite the Agreement to generate a whole new contract -- one that allows it to reap the

20  benefits of CSS encryption technology, but without abiding by the legal framework governing use of

21  that technology.   The equities cannot be balanced through an order requiring RealNetworks to pay

22

23  [25] The threat to the fabric of the CSS License Agreement is all the more ominous because it
     comes at an especially critical moment for DVD CCA.  In response to marked changes in the way the

24  public today watches films and television programs, content providers and consumer electronic and
     information technology companies are devoting substantial resources to delivering content in new

25  forms, such as through internet download and video-on-demand services. ████████████████████
     ███████████████████████ The 21st century technological innovations already have proven to be

26  economically fruitful, and the potential for further development of novel means for consumers to enjoy
     CSS-protected content legally is bright. ██████████████ But these breakthroughs are now imperiled by

27  the emergence of RealDVD, which seeks to stake out its place in the digital download market by
     eviscerating the content protection system that has given comfort to content providers and provided a

28  level playing field on which technology companies may operate and innovate.

                                            23

1 damages for its ongoing breaches of the Agreement, but permitting RealNetworks to sell RealDVD.

2 Even assuming (contrary to the premise of the contract's stipulated irreparable injury provision) that

3 damages could be calculated, the notion that damages payments would strike a happy medium flies in

4 the face of the time-honored principle that "[no] man should be required to contract a second time with

5 one who has without cause breached a prior contract with him." *Zanker Dev. Co. v. Cogito Sys. Corp.*,

6 215 Cal. App. 3d 1377, 1382 (1989) (internal quotation and citation omitted.) Permitting a damages

7 remedy here would create a new contract by enabling RealNetworks to do what the original contract

8 forbade it from doing (so long as it is able to pay for it), to the great detriment of DVD CCA.

9 By comparison, RealNetworks will incur relatively modest burdens if it is preliminarily

10 enjoined from selling RealDVD. RealNetworks has admitted that it does not know of other companies

11 that may be poised to market products that could compete with RealDVD: it therefore cannot show

12 that competitors will capitalize on its absence from the market to gain an advantage over the company

13 while the preliminary injunction is in place.

14 Furthermore, RealNetworks produces a number of different products, the sales of which will not be

15 constrained by a preliminary injunction barring sales of RealDVD.

16

17 ; *see also* Ellinikos Dec., Exh. Y at 40-43

18 (discussing revenue RealNetworks earned from its products).

19 **V.    CONCLUSION**

20 For the foregoing reasons, DVD CCA respectfully submits that the Court should grant its

21 motion for a preliminary injunction.

22 Dated: March 19, 2009                    Respectfully submitted,

23                                          AKIN GUMP STRAUSS HAUER & FELD LLP

24                                          WHITE & CASE LLP

25

26                                          By _____/s/_____
                                                       Reginald D. Steer
27                                          Attorneys for Defendant and Counterclaimant
                                            DVD COPY CONTROL ASSOCIATION, INC.
28
                                                       24

# ATTACHMENT A

# ATTACHMENT
# FILED UNDER SEAL

# ATTACHMENT B

# ATTACHMENT
# FILED UNDER SEAL