REGINALD D. STEER (SBN 056324)
rsteer@akingump.com
MARIA ELLINIKOS (SBN 235528)
mellinikos@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
580 California Street, 15th Floor
San Francisco, California 94104-1036
Telephone: (415) 765-9500
Facsimile: (415) 765-9501

EDWARD P. LAZARUS (SBN 212658)
elazarus@akingump.com
STEPHEN MICK (SBN 131569)
smick@akingump.com
MICHAEL SMALL (SBN 222768)
msmall@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2029 Century Park East, Suite 2400
Los Angeles, California 90067-3012
Telephone: (310) 229-1000
Facsimile: (310) 229-1001

WILLIAM SLOAN COATS (SBN 94864)
wcoats@whitecase.com
MARK WEINSTEIN (SBN 193043)
mweinstein@whitecase.com
MARK F. LAMBERT (SBN 197410)
mlambert@whitecase.com
**WHITE & CASE LLP**
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, California 94306
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

Attorneys for Defendant and Counterclaimant
DVD COPY CONTROL ASSOCIATION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REALNETWORKS, INC., a Washington Corporation; and REALNETWORKS HOME ENTERTAINMENT, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>DVD COPY CONTROL ASSOCIATION, INC., a Delaware nonprofit corporation, et al.<br><br>Defendants.<br><br>AND RELATED CASES | Case No. C08 04548 MHP<br>Related Case No. C08 CV 04719 MHP<br><br>**DECLARATION OF ANDREW PARSONS IN SUPPORT OF DVD COPY CONTROL ASSOCIATION, INC.'S MOTION FOR PRELIMINARY INJUNCTION** |

PARSONS DECL ISO. MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

I, Andrew Parsons, declare:

1. I am the Senior Vice President of Advanced Product Development at Pioneer Electronics, USA Incorporated ("Pioneer") and a member of the Board of Directors for the DVD Copy Control Association, Inc. ("DVD CCA"). I have personal knowledge of the facts contained in this Declaration and, if called as a witness, I could competently testify as to its contents.

2. Pioneer is a consumer electronics company that specializes in the manufacture, sale and distribution of entertainment products such as display devices (including flat panel plasma televisions), stereo equipment, DVD players and other devices. I have been with Pioneer for more than 24 years. My job responsibilities at Pioneer include identifying and following technology trends in the marketplace that can be incorporated into Pioneer products. My responsibilities at Pioneer for more than the past twelve years have focused on DVD-based products, such as DVD players and DVD drives for computers. More recently, my responsibilities have focused on the development and promotion of products that support the newer Blu-ray Disc (BD) format.

3. I have served as a member of the Board of Directors for the DVD CCA for more than four years. The DVD CCA is a non-profit corporation that administers the license for the Content Scramble System ("CSS"), a technology for preventing copying of DVD content by consumers. The DVD CCA licenses this technology to entertainment, consumer electronics and information technology companies that wish to implement CSS in their products. CSS is licensed by the DVD CCA under a contract that requires all licensees to adhere to detailed restrictions intended to safeguard CSS-protected content.

4. The CSS technology grew out of a series of meetings of a group known as the Copy Protection Technical Working Group ("CPTWG"). The CPTWG is a public forum for motion picture companies, technology providers and other interested persons to come together and discuss copy protection technologies. During a series of meetings that began in approximately the mid-1990s, representatives from the motion picture, consumer electronics and information technology industries all recognized the common benefit to be gained in adopting a single and standard format, the DVD, for delivering digital content to the public. The motion picture studios, however, were concerned with the

1

distribution of copyrighted motion pictures on DVD because it provided a high-quality *digital* format. Because a digital copy of a motion picture is identical to its original, a potentially infinite number of digital copies of a motion picture could be made and distributed, with each copy, each copy-of-a-copy, and so forth, being identical in quality to the original.  The motion picture companies were understandably reluctant to distribute their copyrighted content on DVD unless a system was developed to prevent it from being copied by consumers.  The consumer electronics and information technology companies, for their part, needed a content protection system that could be implemented without adding significantly to the cost of their products.  Following numerous meetings and enormous effort from these three industry groups, the DVD video format was adopted and CSS was developed and made available for licensing.

5. The DVD video format and CSS have been extraordinarily successful throughout the past decade.  More than 300 companies have licensed CSS from the DVD CCA, many in the business of making DVD players or computer software for playing back DVDs.  CSS has been implemented in millions of DVD players and computers worldwide and is used to protect the content on hundreds of millions of DVDs.  This success is attributable in large part to the fact that the DVD CCA, through the uniform CSS license it administers, fostered an environment of cooperation in which content providers could release their copyrighted motion picture titles on DVD knowing that the products used to play them back will protect the content.  Consumer electronics and information technology companies have likewise benefited by being able to sell inexpensive devices that are able to play a wide range of available DVD titles, which in turn has benefited consumers.

6. This environment of cooperation is possible only because each company that obtains a license from the DVD CCA agrees to comply with the uniform set of rules set forth in the CSS license that are designed to prevent copying of DVD content.  It is critical, therefore, that DVD CCA have the ability to enforce the CSS license by obtaining injunctions against non-compliant products sold by its licensees.  If the DVD CCA were unable to force its licensees to remove non-compliant products from the market, it would encourage other licensees to introduce similar products. This would, in turn, cause content providers to lose confidence in whether the protections embodied in

the CSS License can be enforced, threatening the effectiveness of the license and the continued existence of the DVD CCA.

7. In the present case, I believe that the DVD CCA will be irreparably harmed if the court were to determine that RealDVD violates the CSS license, but nonetheless allows RealNetworks to continue selling non-compliant products. RealNetworks could flood the market with hundreds of thousands of copies of its software (if not more) during the time this case awaits trial. This would no doubt encourage other CSS licensees to jump into the market with new products that work just like RealDVD. This software could, in turn, be used to make a potentially unlimited number of copies of CSS-protected motion picture DVDs, including DVDs that are rented or borrowed. The end result would likely be loss of the content providers' confidence in the enforceability of the CSS License, which has been essential to the DVD video format, its commercial success and the benefits it has afforded to consumers for more than ten years.

I declare under penalty of perjury that the foregoing is true and accurate and that this Declaration was executed on this 17th day of March 2009 at _____, California.

_____
Andrew Parsons

3
PARSONS DECL ISO. MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

03/17/2009 12:56 IFAX plem2@whitecase.com → RECEPTION 002/002
03/14/2009 07:02 13109522539 CHERYL PAGE 02
Case3:08-cv-04548-MHP Document199-7 Filed03/19/09 Page5 of 5

1  the CSS License can be enforced, threatening the effectiveness of the license and the continued
2  existence of the DVD CCA.
3      7.    In the present case, I believe that the DVD CCA will be irreparably harmed if the
4  court were to determine that RealDVD violates the CSS license, but nonetheless allows RealNetworks
5  to continue selling non-compliant products. RealNetworks could flood the market with hundreds of
6  thousands of copies of its software (if not more) during the time this case awaits trial. This would no
7  doubt encourage other CSS licensees to jump into the market with new products that work just like
8  RealDVD. This software could, in turn, be used to make a potentially unlimited number of copies of
9  CSS-protected motion picture DVDs, including DVDs that are rented or borrowed. The end result
10 would likely be loss of the content providers' confidence in the enforceability of the CSS License,
11 which has been essential to the DVD video format, its commercial success and the benefits it has
12 afforded to consumers for more than ten years.
13 I declare under penalty of perjury that the foregoing is ...
15 Declaration was executed on this 17th day of March 2009 at _Long Beach_, California.

17 Andrew Parsons