1   GLENN D. POMERANTZ (SBN 112503)          ROBERT H. ROTSTEIN (SBN 72452)
    Glenn.Pomerantz@mto.com                   rxr@msk.com
2   BART H. WILLIAMS (SBN 134009)             ERIC J. GERMAN (SBN 224557)
    Bart.Williams@mto.com                     ejg@msk.com
3   KELLY M. KLAUS (SBN 161091)               MITCHELL SILBERBERG & KNUPP LLP
    Kelly.Klaus@mto.com                       11377 West Olympic Boulevard
4   MUNGER, TOLLES & OLSON LLP                Los Angeles, California  90064-1683
    355 South Grand Avenue                    Tel: (310) 312-2000; Fax: (310) 312-3100
5   Thirty-Fifth Floor
    Los Angeles, CA  90071-1560
6   Tel: (213) 683-9100; Fax: (213) 687-3702

7

8   GREGORY P. GOECKNER (SBN 103693)
    gregory_goeckner@mpaa.org
9   DANIEL E. ROBBINS (SBN 156934)
    dan_robbins@mpaa.org
10  15301 Ventura Boulevard, Building E
    Sherman Oaks, California  91403-3102
11  Tel: (818) 995-6600; Fax: (818) 285-4403

12  Attorneys for Motion Picture Studio
    Plaintiffs/Declaratory Relief Claim Defendants

13

14                  UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16
    REALNETWORKS, INC., et al.,              CASE NO.  C 08-4548-MHP
17
                    Plaintiffs,              **PUBLIC REDACTED VERSION:**
18                                           **RESPONSE MEMORANDUM OF STUDIO**
         vs.                                 **PLAINTIFFS IN SUPPORT OF MOTION**
19                                           **FOR PRELIMINARY INJUNCTION**
    DVD COPY CONTROL ASSOCIATION,
20  INC., et al.,                            Date:   April 24, 2009
                                             Time:   9:00 a.m.
21                  Defendants.              Ctrm:  15 (Hon. Marilyn Hall Patel)

22

23                                           CASE NO. C 08-4719-MHP
    UNIVERSAL CITY STUDIOS
24  PRODUCTIONS LLLP, et al.,

25                  Plaintiffs,

26       vs.

27  REALNETWORKS, INC., et al.,

28                  Defendants.

Dockets.Justia.com

1

**TABLE OF CONTENTS**

2

                                                                                    Page

3    I.    INTRODUCTION ....................................................................................................... 1

4    II.   THE STUDIOS ARE OVERWHELMINGLY LIKELY TO PREVAIL ON THE
           MERITS ..................................................................................................................... 3

5          A.    RealDVD's Circumvention Of CSS Is Clear ........................................................ 4

6                1.    Real's Arguments Based On The CSS License Fail ..................................... 4

7                2.    Real's Secondary Arguments For Avoiding Liability Based On CSS
                       Circumvention Are Meritless ...................................................................... 5

8          B.    RealDVD's Circumvention Of ARccOS And RipGuard Is Clear .......................... 8

9                1.    Real's Claims That ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
                       ▮▮▮▮▮▮▮▮▮▮▮▮ Are Neither Relevant Nor Credible ..................... 8

10               2.    Real Attempts To Avoid Section 1201(b) Liability By
                       Mischaracterizing The Studios' DMCA Claim On
11                     ARccOS/RipGuard As An Access-Control Claim, When It Is A
                       Copy-Control Claim ................................................................................... 12

12               3.    Real's Remaining Arguments for Avoiding Section 1201(b)(1)
                       Liability Based On ARccOS/RipGuard Circumvention Are
13                     Meritless .................................................................................................. 13

14         C.    Real's Appeal To "Fair Use" Is Meritless ........................................................... 14

15               1.    An End-User's Fair Use Defense Is Irrelevant To Real's DMCA
                       Liability .................................................................................................... 15

16               2.    Real Should Be Judicially Estopped From Arguing That An End-
                       User's Fair Use Is A Defense To A DMCA Trafficking Claim ...... 16

17               3.    Even If Fair Use Were Relevant, The Defense Would Not Excuse
                       Copying Movies And TV Shows With RealDVD ...................................... 18

18   III.  THE STUDIOS HAVE SHOWN IRREPARABLE HARM FROM REAL'S
           TRAFFICKING IN REALDVD THAT OUTWEIGHS ANY "HARM" TO REAL ...... 21
19
           A.    Irreparable Injury Is Presumed ........................................................................... 21
20
           B.    Real Ignores The Evidence That RealDVD Threatens Massive Harm to the
21               Studios' Current and Emerging Businesses ........................................................ 21

22         C.    Real's Argument That RealDVD Will Only Appeal to "Lawful" Copiers is
                 Wrong ................................................................................................................. 23
23
           D.    Real's Attempt To Blame The Victims For Harm Caused By RealDVD Is
24               Meritless ............................................................................................................. 23

25         E.    Damages Cannot Easily Be Calculated ............................................................... 24

26         F.    The Balance of Hardships and The Public Interest Decidedly Favor the
                 Studios ................................................................................................................ 24
27   IV.   CONCLUSION ......................................................................................................... 25

STUDIOS' RESPONSE MEMO ISO P.I. MOTION
CASE NOS. C 08-4548-MHP/08-4719-MHP

1

**TABLE OF AUTHORITIES**

2
**Page**

3

*321 Studios v. MGM,*
    307 F. Supp. 2d 1085 (N.D. Cal. 2004) ............................................................... *passim*

*A&M Records, Inc. v. Napster, Inc.,*
    114 F. Supp. 2d 896 (N.D. Cal. 2000) ..................................................................... 20

*A&M Records, Inc. v. Napster, Inc.,*
    2000 WL 573136 (N.D. Cal. May 12, 2000) ........................................................ 2, 23

*A&M Records, Inc. v. Napster, Inc.,*
    239 F.3d 1004 (9th Cir. 2001).......................................................................... 19, 20

*Allen-Myland v. IBM,*
    746 F. Supp. 520 (E.D. Pa. 1990) .......................................................................... 19

*American Geophysical Union v. Texaco, Inc.,*
    60 F.3d 913 (2d Cir. 1994)...................................................................................... 19

*Atari, Inc. v. JS&A Group, Inc.,*
    597 F. Supp. 5 (N.D. Ill. 1983) .............................................................................. 19

*Campbell v. Acuff-Rose Music, Inc.,*
    510 U.S. 569 (1994)........................................................................................... 18, 19

*Chamberlain Group, Inc. v. Skylink Techs., Inc.,*
    381 F.3d 1178 (Fed. Cir. 2004).............................................................................. 16

*Cummins-Allison Corp. v. Glory Ltd.,*
    2003 WL 355470 (N.D. Ill. Feb. 12, 2003) ........................................................... 22

*Davidson & Assocs., Inc. v. Internet Gateway, Inc.,*
    334 F. Supp. 2d 1164 (E.D. Mo. 2004)..................................................................... 6

*eBay Inc. v. MercExchange,*
    547 U.S. 388 (2006)................................................................................................ 21

*Harper & Row, Publishers, Inc. v. Nation Enters.,*
    471 U.S. 539 (1985)................................................................................................ 19

*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.,*
    307 F. Supp. 2d 521 (S.D.N.Y. 2004)....................................................................... 6

*Jacobsen v. Katzer,*
    535 F.3d 1373 (Fed. Cir. 2008)............................................................................... 21

*Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.,*
    552 F.3d 1033 (9th Cir. 2009).................................................................................. 8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    387 F.3d 522 (6th Cir. 2004)............................................................................ 12, 21

*LGS Architects, Inc. v. Concordia Homes of Nevada,*
    434 F.3d 1150 (9th Cir. 2006)................................................................................ 21

*Macrovision v. Sima Prods. Corp.,*
    2006 WL 1063284 (S.D.N.Y. Apr. 20, 2006)..................................................... 1, 15

*Microsoft Corp. v. EEE Business Inc.,*
    555 F. Supp. 2d 1051 (N.D. Cal. 2008) ................................................................... 7

- ii -

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Paramount Pictures Corp. v. 321 Studios,*
    2004 WL 402756 (S.D.N.Y. Mar. 3, 2004) ................................................................ 1, 6, 7

4

*Perfect 10, Inc. v. Amazon.com, Inc.,*
    508 F.3d 1146 (9th Cir. 2007) ................................................................ 18

5

*Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.,*
    254 F.R.D. 568 (N.D. Cal. 2008) ................................................................ 8

6

*RealNetworks, Inc. v. Streambox, Inc.,*
    2000 WL 127311 (W.D. Wash. Jan. 18, 2000) ................................................ 1, 16, 17

7

*RIAA v. Diamond Multimedia Sys., Inc.,*
    180 F.3d 1072 (9th Cir. 1999) ................................................................ 20

8

*Roderick v. Mazzetti & Associates, Inc.,*
    2006 WL 1883328 (N.D.Cal. July 7, 2006) ................................................................ 18

9

*S.O.S. Inc. v. Payday, Inc.,*
    886 F.2d 1081 (9th Cir. 1989) ................................................................ 5

10

*Sega Enters. Ltd. v. MAPHIA,*
    857 F. Supp. 679 (N.D. Cal. 1994) ................................................................ 25

11

*Sony Computer Entm't. Am., Inc. v. Divineo, Inc.,*
    457 F. Supp. 2d 957 (N.D. Cal. 2006) ................................................ 1, 14, 17, 20

12

*Sony Corp. of Am. v. Universal City Studios,*
    464 U.S. 417 (1984) ................................................................ 16, 20

13

*Sun Microsystems, Inc. v. Microsoft Corp.,*
    188 F.3d 1115 (9th Cir. 1999) ................................................................ 5, 6

14

*Ticketmaster L.L.C. v. RMG Tech., Inc.,*
    507 F. Supp. 2d 1096 (C.D. Cal. 2007) ................................................................ 6

15

*UMG Recordings, Inc. v. MP3, Inc.,*
    92 F. Supp. 2d 349 (S.D.N.Y. 2000) ................................................................ 20

16

*United Nat'l. Ins. Co. v. Spectrum Worldwide, Inc.,*
    555 F.3d 772 (9th Cir. 2009) ................................................................ 18

17

*United States v. Elcom. Ltd.,*
    203 F. Supp. 2d 1111 (N.D. Cal. 2002) ................................................ 1, 15, 16

18

*Universal City Studios, Inc. v. Corley,*
    273 F.3d 429 (2nd Cir. 2001) ................................................................ *passim*

19

*Universal City Studios, Inc. v. Reimerdes,*
    111 F. Supp. 2d 294 (S.D.N.Y. 2000) ................................................................ *passim*

20

*Wagner v. Prof'l Eng'rs,*
    354 F.3d 1036 (9th Cir. 2004) ................................................................ 1, 18

21

22

23

24

25

26

**STATUTES AND RULES**

27

17 U.S.C.
    § 107 ................................................................ 16, 18, 19, 20

28

1

**TABLE OF AUTHORITIES**
(continued)

2
Page

3      § 117.................................................................................................................. 19
       § 1201(a)(2)........................................................................................... 12, 15, 16
4      § 1201(a)(3)(A) ................................................................................................ 5, 6
       § 1201(b)(1) ........................................................................................................ 16
5      § 1201(b)(2)(A) ................................................................................................ 5, 6
       § 1201(b)(2)(B) .................................................................................................. 13
6      § 1203(b)(1) ................................................................................................ *passim*

7      Federal Rule of Evidence 408 .......................................................................... 24

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **I.    INTRODUCTION**

2           The evidence overwhelmingly establishes that RealDVD[1] is technology designed,

3    produced and marketed to allow copying of copyrighted content by circumventing CSS, ARccOS

4    and RipGuard.  Real tries to sidestep this evidence with irrelevant and baseless arguments.  ·

5           ***An end-user's defense of "fair use" is irrelevant under the DMCA***.  Real tries to shift

6    the focus away from its own misconduct by arguing that "the question at the heart of this case" is

7    whether people who buy one copy of a copyrighted work are entitled to make additional copies

8    for free.  Opp. at 1:1.  But the plain language of the DMCA and more than a half-dozen opinions

9    from the last decade establish that whether an end-user's use is "fair use" is *irrelevant* under the

10   DMCA.[2]  Real's effort to challenge that settled law is not only legally deficient, but Real can and

11   should be estopped from doing so.  When Real was a DMCA plaintiff, in *Real v. Streambox*, Real

12   argued for, and won, the point that fair use is irrelevant under the DMCA.  Real cannot play "fast

13   and loose" by arguing for (and prevailing) on a point, only to turn around in a later case and argue

14   for the exact opposite rule.  *Wagner v. Prof'l Eng'rs*, 354 F.3d 1036, 1044 (9th Cir. 2004).

15          Real's about-face from *Real v. Streambox* is only one example of Real playing fast and

16   loose with both law and facts.  Real portrays itself as a champion of users' rights to make

17   supposed "personal use copies" of copies of copyrighted content consumers have purchased.  But

18   when the shoe is on the other foot, and Real is the copyright holder, Real does not recognize any

19   "right" of its end-users to make "personal use" copies of Real's product.  *Real charges $19.99 for*

20   *every additional copy of its RealDVD software*, whether the consumer wants to use RealDVD on

21   a computer in another room of their house or on a laptop.  Supp. Ex. 12.[3]  Real provides no reason

---

22   [1] As in Real's brief, "RealDVD" refers to both "Vegas" and "Facet" unless otherwise noted.  The

23   design and function of the products are identical for purposes of Real's liability, and Real has not
     given any reason why they should not fall together under the DMCA.

24   [2] *See Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 443 (2nd Cir. 2001); *Sony Computer
     Entm't. Am., Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957, 965 (N.D. Cal. 2006); *Macrovision v.*

25   *Sima Prods. Corp.*, 2006 WL 1063284, at *2 (S.D.N.Y. Apr. 20, 2006); *Paramount Pictures
     Corp. v. 321 Studios*, 2004 WL 402756, at *1 (S.D.N.Y. Mar. 3, 2004); *321 Studios v. MGM*, 307

26   F. Supp. 2d 1085, 1097 (N.D. Cal. 2004); *United States v. Elcom. Ltd.*, 203 F. Supp. 2d 1111,
     1125 (N.D. Cal. 2002); *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 323-24

27   (S.D.N.Y. 2000); *RealNetworks, Inc. v. Streambox, Inc.*, 2000 WL 127311, at *8 (W.D. Wash.
     Jan. 18, 2000).

28   [3] References to "Supp. Ex." are to the exhibits to the Supplemental Blavin Declaration, filed

STUDIOS' RESPONSE MEMO ISO P.I. MOTION
CASE NOS. C 08-4548-MHP/08-4719-MHP

1    why the Studios alone must provide their content on a "buy one, get one (or five) free" basis.

2         Even if an end-user's fair use defense were relevant (and it is not), that defense would not

3    save Real. Making copies of DVDs is not fair use. Furthermore, fair use is an affirmative

4    defense, which Real must prove. Real does not even mention the factors set forth in the

5    Copyright Act, let alone show that they would support fair use. Real instead asserts, *ipse dixit*,

6    that consumers have a "fair use right" to "make a backup copy of media that they have

7    legitimately obtained." Opp. at 20:18-19. RealDVD does not make "backup" copies. The copies

8    that RealDVD makes (including the up to five–per-account copies on "Vegas" ) are just new

9    copies to be played. Real itself made this point a prominent marketing feature before the Studios

10   filed suit. *See* Ex. 66; Supp. Ex. 12. And, even in its brief, Real shifts from calling them

11   "backup" to "space-shifting" to "convenience" copies. *E.g.*, Opp. at 22:3, 44:22. Regardless of

12   what Real calls them, these copies are not subject to the fair use defense.

13        ***Real cannot evade liability by favorably comparing itself to Napster or other illegal***

14   ***services***. Real also argues it should not be liable because it is not as bad as Napster or its

15   progeny. Opp. at 1-2. This harkens back to Real's TRO argument that the Court should adjudge

16   Real's conduct in comparison to distributors of illegal ripping devices. "We're not as bad as they

17   are" failed then, and it fails now. The DMCA is not limited to circumvention that causes "viral"

18   infringement. The DMCA prevents trafficking in circumvention devices even when the device

19   facilitates making one illegal digital copy at a time and regardless of whether those copies are

20   further distributed. Indeed, the DMCA was enacted (and CSS was invented) when there was no

21   Napster or similar peer-to-peer service.[4]

22        ***RealDVD is a device for circumventing CSS***. Real devotes so much space to legally

23   irrelevant issues because the evidence is so clear that RealDVD is a circumvention device.

24   _____

     concurrently. References to "Ex." are to the Blavin Declaration filed on March 19.
25   [4] RealDVD is subject to its own kind of "viral" infringement. ████████████████████

26   ████████████████████████████████████████████████████████████████████

27   ████████████████████████████████████████ With either "Vegas" or
     "Facet," a single DVD can be passed around and copied endlessly, whether through a college
28   dorm, a workplace, or an auction site like eBay.

1   RealDVD facilitates circumvention of not one but several different technological protection

2   measures. The first is CSS. Real never directly addresses the plain language of the CSS License,

3   which makes clear that ████████████████████████████████████████████

4   ████████████ Ex. 15 (at § 1.1). As expected, Real stakes its defense on the state trial court

5   ruling (now on appeal) in the *Kaleidescape* case. The DVD CCA explains why Real's reliance on

6   that case is meritless and how RealDVD violates multiple provisions of the CSS License. But

7   *even if* Real were right (and it is not) that RealDVD does not violate an express prohibition, Real

8   still cannot escape liability under the DMCA. The copyright owners (the Studios) have not

9   authorized Real, its customers or anyone else to copy their content protected with CSS.

10          ***RealDVD is a device for circumventing ARccOS and RipGuard***. RealDVD also enables

11   circumvention of the ARccOS and RipGuard copy-protection technologies. Real cannot refute

12   the evidence on this point, so Real tries to change the subject by accusing the Studios of

13   switching to ARccOS/RipGuard to substitute for a weak claim of CSS circumvention. Opp. at 4.

14   That is baseless. The evidence of RealDVD's use to circumvent CSS is clear. The Studios added

15   ARccOS and RipGuard when ████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████

17   ████████████ Faced with this evidence, Real now disingenuously tries to portray ███

18   ████████████████████████████████████████████████████████████████████

19   ████████████ This does not pass the straight-face test. ██████████████████

20   ████████████████████████████████████████████████████████████████████

21          Real's liability is clear, and RealDVD threatens the Studios with irreparable harm that

22   outweighs any harm to Real. The TRO should be converted into a preliminary injunction.

23   **II.     THE STUDIOS ARE OVERWHELMINGLY LIKELY TO PREVAIL ON THE
            MERITS**

24          Real's Opposition is wrong on all liability issues. Contrary to Real's arguments,

25   (1) RealDVD is designed, marketed and used to circumvent CSS; (2) the product is designed,

26   marketed and used to circumvent ARccOS and RipGuard; and (3) Real's appeal to the end-user's

27   defense of fair use is legally and factually meritless. We address each of these points in turn.

28

STUDIOS' RESPONSE MEMO ISO P.I. MOTION
                                          CASE NOS. C 08-4548-MHP/08-4719-MHP

1

2

3

**A.    RealDVD's Circumvention Of CSS Is Clear**

        1.    **Real's Arguments Based On The CSS License Fail**

The crux of Real's defense to the CSS-circumvention claim is that the CSS License does

"not prohibit[]" copying DVD content to a hard drive, and that RealDVD therefore cannot be

used to circumvent CSS. Opp. at 26, 30. This argument is meritless.

The CSS License is clear that

Ex. 15 (at § 1.1). To effectuate this purpose, the License

requires (among other things) that (1)

; and (2)

. As the DVD CCA shows, Real violates both

requirements:

*See* DVD CCA Open. Br. at 17-20.

Real does not dispute these facts about RealDVD's operation. Real instead claims that

Opp. at 26:18-20. No evidence supports this assertion. All of

the admissible evidence shows that

[5] Real violates the License.

Even assuming, *arguendo*, that Real did not violate express prohibitions of the License,

[5] The evidence that                              is overwhelming.

And courts addressing

CSS have held that the license authorizes devices that "decrypt, unscramble and play back, *but not copy*" DVDs. *Reimerdes*, 111 F. Supp. 2d at 308 (emphasis added).

STUDIOS' RESPONSE MEMO ISO P.I. MOTION
CASE NOS. C 08-4548-MHP/08-4719-MHP

1    Real still would be liable under the DMCA. RealDVD facilitates circumvention of CSS "without

2    the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A). As demonstrated in the

3    Studios' opening brief, the Studios have not authorized Real or any end-user of RealDVD to

4    circumvent CSS for the purpose of copying the Studios' copyrighted content. Indeed, the exact

5    opposite is true: the Studios expressly prohibit end-user copying as evidenced by the FBI

6    warning on all copyrighted DVDs and the express language on DVD packages. And the Studios

7    communicate this prohibition to consumer electronic and IT companies like Real through ███

8    ████████████████████. Studios' Open. Br. at 11-12.

9         Further, nothing in the CSS License gives Real the authorization to override the Studios'

10   clear bar on end-user copying of DVD content. Even though Real is wrong that the CSS License

11   does not prohibit copying, authorization cannot be inferred from the absence of an express

12   prohibition. On the contrary, authority for what RealDVD does must be affirmatively and

13   expressly granted. *See S.O.S. Inc. v. Payday, Inc.*, 886 F.2d 1081, 1089 (9th Cir. 1989). Real in

14   its discovery responses admits ███████████████████ Ex. 64 at 9-10 (Interr.

15   No. 6). And Real's internal documents admit that ██████████

16   ████████████████████████████████████████

17   ████████████████████ (emphases added).

18        In sum, Real has breached the CSS License and thus violates the DMCA. But even if

19   Real were somehow deemed not to be in breach of the License, Real still would be liable for

20   trafficking in circumvention technology in violation of the DMCA.

21              2.    **Real's Secondary Arguments For Avoiding Liability Based On CSS
                      Circumvention Are Meritless**
22
          Real's additional arguments to avoid DMCA liability based on CSS are all without merit.
23
          *First*, Real argues that the existence of the CSS License operates to exclude any claim
24
     based on the DMCA. *See* Opp. at 30-31. *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d
25
     1115 (9th Cir. 1999), upon which Real bases this argument, holds no such thing. *Sun* merely
26
     restates the general rule that when a licensee breaches an affirmative covenant in a copyright
27
     license, the licensor's remedy is to sue for breach of contract, not copyright infringement. *Id.* at
28

STUDIOS' RESPONSE MEMO ISO P.I. MOTION
CASE NOS. C 08-4548-MHP/08-4719-MHP

1   1121.[6] The case said nothing about the interplay between a contract and a DMCA claim, which is

2   why Real resorts to rhetoric rather than case law in support of its argument. *See* Opp. at 31:8-9

3   ("The Studios' view of the law would transform a breach of the license into a crime."). The cases

4   Real ignores make clear that the existence of a breach of contract claim *does not* exclude a claim

5   for violation of the DMCA. *See Ticketmaster L.L.C. v. RMG Tech., Inc.*, 507 F. Supp. 2d 1096,

6   1111-13 (C.D. Cal. 2007) (granting preliminary injunction for Ticketmaster, which was held

7   "highly likely to succeed" on its claims for contract breach and DMCA violation based on

8   defendant's trafficking in automated devices to access and navigate Ticketmaster's website);

9   *Davidson & Assocs., Inc. v. Internet Gateway, Inc.*, 334 F. Supp. 2d 1164 (E.D. Mo. 2004)

10  (defendant liable for breaching video game software licenses and circumvention in violation of

11  the DMCA), *aff'd*, 422 F.3d 630 (8th Cir. 2005).

12      *Second*, as the Studios anticipated, Real argues there is no circumvention of CSS's access

13  controls because RealDVD ███████████████████████████████████

14  ████████████████████████████ Opp. at 32-33. As the Studios demonstrated, this argument is contrary

15  to the DMCA's text and the reasoned cases under the statute. Under the DMCA, "circumvention"

16  expressly includes "avoid[ing]" or "bypass[ing]" or "otherwise "impair[ing]" the technological

17  control measure. 17 U.S.C. §§ 1201(a)(3)(A), 1201(b)(2)(A). *See* Studios' Open. Br. at 14-15 &

18  n.7. ███████████████████████████████████████████████████

19  Real clearly is "avoiding" and/or "bypassing" CSS's technological protections. Indeed, the

20  DeCSS code at issue in *Corley/Reimerdes*[7] and the unlawful ripping technology in *321 Studios*

21  both used *valid* keys to circumvent CSS. As Judge Illston correctly held, because 321 Studios

22  "does not have authority to use this key," its DVD ripper "therefore avoids and bypasses CSS."

23  _____

24  [6] "If, however, a license is limited in scope and the licensee acts outside its scope, the licensor can bring an action for copyright infringement." *Sun*, 188 F.3d at 1121.

25  [7] *I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521 (S.D.N.Y. 2004) – on which Real places substantial reliance – tried to distinguish *Corley* on the ground that the

26  DeCSS code did not make use of the authorized key for decrypting CSS. *See id.* at 532-33. In fact, DeCSS was created by reverse engineering a DVD player and "cull[ing] from it the player

27  keys and other information necessary to decrypt CSS." *Corley*, 273 F.3d at 437. *I.M.S.*'s misunderstanding of the facts from *Corley* (a case decided by the Second Circuit) is an additional

28  reason that *I.M.S.* is not persuasive and should not be followed.

1   *321 Studios*, 307 F. Supp. 2d at 1098.  *Accord Microsoft Corp. v. EEE Business Inc.*, 555 F. Supp.

2   2d 1051, 1059 (N.D. Cal. 2008) ("By distributing [a valid key] *without authorization*," the

3   defendant "effectively circumvented Microsoft's technological measure to control access to a

4   copyrighted work in violation of the DMCA.") (emphasis added).  Real claims it differs from the

5   defendants in *Corley* and *321 Studios* because Real has ██████████████████████.  Opp.

6   at 33.  Real, however, has ████████████████ for a limited purpose – namely, to build a DVD

7   player – but Real ██████████████ for an unauthorized purpose, namely, to manufacture a DVD

8   *copier*.  The unauthorized use of ████████ to avoid and/or bypass CSS's access controls is

9   circumvention under the DMCA.

10      *Third*, Real argues that it cannot be liable for violating § 1201(b)(1) (for RealDVD's use

11  in circumventing CSS's copy controls) because RealDVD purportedly ████████████████

12  ██████████████████████████████████ Opp. at 33.  As shown, Real in fact

13  does not ██████████████████████ Even if it did, nothing in the CSS License

14  provides Real with the *affirmative authorization* required to override the Studios' clear

15  prohibition of end-user circumvention and copying.  Real's reliance on the fact that ████████

16  ████████████████████████████ is likewise misplaced.  Real has no authority to

17  make a product that copies DVD content, with or without ████████████████████

18      *Fourth*, Real argues CSS is not a copy-control measure subject to § 1201(b) because CSS

19  does not prevent a "Windows cut-and-paste operation" from making a hard-drive copy of

20  "*scrambled* video content."  Opp. at 33:27-34:1 (emphasis added).  The key word there is

21  "scrambled":  the copy that can be made with "Windows cut-and-paste" is scrambled and thus

22  unplayable, because CSS blocks the Windows copy from transferring the keys to the hard drive.[8]

23  321 Studios made the same argument that Real is making, namely, that § 1201(b) is inapplicable

24  because CSS "does not prevent copying the encrypted data on the DVD."  *321 Studios*, 307 F.

25  Supp. 2d at 1097.  Judge Illston correctly rejected this argument on the ground that such

26  "'copying is not particularly useful,' as any copy made without circumventing CSS could not be

27  ─────────────────
28  [8] RealDVD, of course, ██████████████████████████████████

1  accessed or viewed." *Id.* The argument should be rejected here, as should all of Real's defenses

2  to the Studios' circumvention claim based on CSS.[9]

3      **B.  RealDVD's Circumvention Of ARccOS And RipGuard Is Clear**

4          1.  **Real's Claims That** ████████████████████████████████

5              ████████████████ **Are Neither Relevant Nor Credible**

6  Real's primary defense on ARccOS and RipGuard is that ████████████████████

████████████████████████████ Opp. at 16:14-15,

7  ████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████

12 In support of this fiction, Real relies on ███████████████████████████

13 ████████████████████████████████████████████████████████████

14 ████████████ Real's *documents*, however, show that ████████████████

15 ████████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████

17 ████████████████ "The offering or provision of the program is the prohibited conduct – and it is

18 prohibited irrespective of why the program was written . . . ." *Reimerdes*, 111 F. Supp. 2d at 319.

19 ████████████████████████████████████████████████████████████

20 ████████████ Real's brief-writers took pains to ████████████████████████

21

22 ─────────────────────────

[9] Real also tries to paint a picture of itself as having acted properly and in good faith because it

23 developed RealDVD with the guidance of a lawyer whom Real describes as "one of the primary
   drafters and negotiators of the CSS License." Opp. at 9:27-28. *See also* Chasen Decl. ¶ 9.

24 During their depositions, Real's officers and engineers ████████████████████████

25 ████████████████████████████████████████████████████████████
   ████████████ Real's counsel, however, ████████████████████████████████

26 *Id.* Although this testimony is irrelevant, the Studios object to ████████████

27 *See, e.g., Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1042-43 (9th Cir.
   2009) (using privilege as sword and shield waives the privilege); *Phoenix Solutions Inc. v. Wells*

28 *Fargo Bank, N.A.*, 254 F.R.D. 568, 576-77 (N.D. Cal. 2008) (Patel, J.) (same).

1            Real carefully states, for example, that ███████████████████████

2 ████████████████████████████████████████████████████████████████████

3 ███████████████████ Opp. at 16:1-2 (emphasis added).  Of course Real's engineers did not

4 have the specifications for ARccOS and RipGuard: the companies that make the technologies

5 (Sony DADC and Macrovision) closely guard the specifications from companies like Real that

6 seek to circumvent copy protection.  Unlike CSS, someone building a legitimate DVD *player*

7 does not need ARccOS or RipGuard specifications; those technologies are invisible to players.

8 ████████████████████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████████████████

10 ████████████████████████████████

11 ████████████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████████

13 ████████████████████████████████████

14 Ex. 37 (at REAL000620) (emphasis added).

15         Real did not ██████████████████████████████████████████

16 ████████████████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████████████

20 ███████████████████████████████████████████████████ Real's

21 claims ██████████████████████████████ cannot be squared with the facts.

22 ████████████████████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████

28 ████████████████████████████████████████████████



Ex. 37 (at REAL000620) (emphasis added).

Ex. 23 (at REAL078804, ¶ 15) (emphasis added).

Supp. Ex. 9 (at REAL074747) (emphasis added).

Ex. 29 (at REAL065558).

- 10 -

STUDIOS' RESPONSE MEMO ISO P.I. MOTION
CASE NOS. C 08-4548-MHP/08-4719-MHP



1

2

3

4

5

6

            2.        **Real Attempts To Avoid Section 1201(b) Liability By Mischaracterizing The Studios' DMCA Claim On ARccOS/RipGuard As An Access-Control Claim, When It Is A *Copy*-Control Claim**

       Real's attacks on the Studios' ARccOS/RipGuard circumvention claim are meritless.

Real first argues that ARccOS and RipGuard are not effective *access*-control measures because

those technologies do not prevent DVD players from *playing* DVDs. Opp. at 35-36 (relying on

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 387 F.3d 522, 547 (6th Cir. 2004) (case

involving allegation of § 1201(a)(2) violation)). This is a red herring. No one is asserting that

ARccOS/RipGuard are *access* control measures under § 1201(a)(2) (obviously CSS remains an

access-control measure for DVDs). The Studios assert that RealDVD circumvents ARccOS and

RipGuard under § 1201*(b)(1)*, which targets circumvention of technological measures "that

effectively protect[] a right of a copyright owner under this title," *i.e.*, *copy*-control measures.

       Real next asserts that ARccOS and RipGuard are not effective copy-control measures

because

        Opp. at 36:1. ARccOS and RipGuard supplement CSS,

Moreover, Real's argument rests on conjured facts. Real asserts that:

Opp. at 35:22-24 (emphasis added).

       Real cites no evidence for this assertion, and there is none. What the evidence actually

shows is that

STUDIOS' RESPONSE MEMO ISO P.I. MOTION
CASE NOS. C 08-4548-MHP/08-4719-MHP

1 | Recognizing this fact, Real argues that

2

3 | *See* Opp. at 35 n.14.  Real misreads the facts and the law.  On the facts,

4

5

6

7

8

9

10

11

12 On the law, a copy-control measure is "effective" under the DMCA if "in the ordinary

13 course of its operation," the measure "prevents, restricts, *or otherwise limits* the exercise of a

14 right of a copyright owner under this title." 17 U.S.C. § 1201(b)(2)(B) (emphasis added).  Even

15 in those cases where

16

17

18

19

20 **3.   Real's Remaining Arguments for Avoiding Section 1201(b)(1) Liability**
**Based On ARccOS/RipGuard Circumvention Are Meritless**

21 Real's remaining arguments regarding ARccOS and Ripguard are meritless. *First*, Real

22 argues that

23 Opp. at

24 37:10-11.  This argument is too clever by half

25

26

27 That is circumvention.  17 U.S.C. § 1201(b)(2)(B).

28

1   Moreover, Real ignores entirely ████████████████████████████

2   ████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████

4   *Second*, Real argues that ██████████████████████████████████

5   ████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████

14  *Third*, Real ████████████████████████████████████████████

15  ████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  *Sony*, 457 F. Supp. 2d at 965 ("The fact that circumvention devices may be widely

21  available does not mean that a technological measure is not, as the DMCA provides, effectively

22  protecting the rights of copyright owners . . ."). *Accord*, *321 Studios*, 307 F. Supp. 2d at 1095.

23      In sum, Real's violation of § 1201(b)(1) with respect to ARccOS and RipGuard is clear.

24  **C.    Real's Appeal To "Fair Use" Is Meritless**

25      Real's reliance on allegations about end-users' "fair uses" does not save Real from

26  liability under the DMCA. *First*, under the statute and longstanding case authority, the defense of

27  fair use is not relevant to the liability of a trafficker in circumvention technology. *Second*, Real is

28  judicially estopped from arguing otherwise. *Third*, *even if* fair use were relevant in a trafficking

- 14 -

1    case, copying with RealDVD is not fair use.

2          1.    **An End-User's Fair Use Defense Is Irrelevant To Real's DMCA**
                 **Liability**
3
                 As the Studios demonstrated, an unbroken line of federal case law –including a case
4
     decided on Real's own motion – holds that an end-user's alleged defense of fair use to copyright
5
     infringement is *irrelevant* to a DMCA defendant's liability for trafficking in circumvention
6
     devices. *See* Studios' Open. Br. at 18-19; n.2, *supra*. The law is clear and fatal to Real's appeal
7
     to fair use:
8
          •    "[T]he DMCA targets the circumvention of digital walls guarding
9               copyrighted material (and trafficking in circumvention tools), but does not
                concern itself with the use of those materials after circumvention has
10              occurred." *Corley*, 273 F.3d at 443.

11         •    "If Congress had meant the fair use defense to apply to [violations of
                § 1201(a)(2), the provision that bars trafficking in devices that circumvent
12              access controls], it would have said so. Indeed, as the legislative history
                demonstrates, the decision not to make fair use a defense to a claim under
13              Section 1201(a) was quite deliberate." *Reimerdes*, 111 F. Supp. 2d at 322,
14              *aff'd, Corley*.

15         •    "Nothing within the express language would permit trafficking in devices
                designed to bypass use restrictions in order to enable a fair use, as opposed
16              to an infringing use." *Elcom*, 203 F. Supp. 2d at 1124.

17         •    "This Court finds, as did both the *Corley* and *Elcom* courts, that legal
                downstream use of the copyrighted material by customers is not a defense
18              to the software manufacturer's violation of the provisions of § 1201(b)(1)."
                *321 Studios*, 307 F. Supp. 2d at 1097-98.
19
           •    "Sima's defense that it only intends to enable 'fair use' copying of
20              copyrighted works is no defense at all – as stated above, the DMCA
                provides no exception to its prohibition of the manufacture of these
21              devices." *Macrovision*, 2006 WL 1063284, at *2.

22         Real ignores the weight of law on this issue and instead argues that the DMCA's copy-

23   control provision (§ 1201(b)) – though, notably, *not* the access-control provision (§ 1201(a)(2)) –

24   incorporates the fair use defense by referring to "a right of a copyright owner." According to

25   Real, these words import the fair use defense into § 1201(b) because the right may be limited by

26   the defense. Opp. at 40:1-4. Judge Whyte considered – and rejected – this exact argument in

27   *Elcom*: "The statute does not distinguish between devices based on the uses to which the device

28

STUDIOS' RESPONSE MEMO ISO P.I. MOTION
CASE NOS. C 08-4548-MHP/08-4719-MHP

1  will be put. . . . Section 1201(b) imposes a blanket ban on trafficking in or the marketing of any

2  device that circumvents use restrictions." *Elcom*, 203 F. Supp. 2d at 1124.

3      Real's reliance on *Chamberlain Group, Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178 (Fed.

4  Cir. 2004), to argue the contrary, is misplaced. *See* Opp. at 40-41. That case did not even

5  concern § 1201(b) – the provision that Real says imports fair use into the DMCA – but rather

6  § 1201(a)(2). *See* 381 F.3d at 1185. Moreover, the case concerned completely inapposite

7  technological measures and content, namely, technology that allowed end-users to access the

8  codes needed to open their garage doors. The technology did not enable the copying of any

9  copyrighted content. The court expressly made this point in distinguishing the cases about

10  technology used to circumvent CSS (*Corley* and *Reimerdes*). *Id.* at 1198. As *Corley* and

11  *Reimerdes* (and other cases) held, the DMCA clearly proscribes trafficking in devices to

12  circumvent CSS. And the court expressly *declined* to "reach the relationship between § 107 fair

13  use and violations of § 1201." *Id.* at 1200 n.14. Accordingly, *Chamberlain* is simply irrelevant.

14              2.      **Real Should Be Judicially Estopped From Arguing That An End-**
                       **User's Fair Use Is A Defense To A DMCA Trafficking Claim**

15      Real should be estopped from arguing for a fair use exception because this argument is the

16  exact opposite of the arguments that Real made – and on which it *prevailed* – when Real was a

17  DMCA plaintiff in *RealNetworks v. Streambox*. In that case, Real provided Internet streaming of

18  copyrighted audio and video files in a format called "RealMedia." The RealMedia files were

19  protected through various Real proprietary measures, including a "Copy Switch." If the "Copy

20  Switch" was turned "on" by the content owner, the content could be downloaded (*i.e.*, copied) as

21  well as streamed. If the "Copy Switch" was turned "off," then the content could only be

22  streamed. 2000 WL 127311 at *2-3. Streambox distributed a product called the "Streambox

23  VCR," which enabled end-users to circumvent Real's protection and make copies of the

24  RealMedia content files. *Id.* at *4. Like the Studios here, Real brought DMCA claims under

25  §§ 1201(a)(2) and 1201(b)(1) and sought a TRO and preliminary injunction (both of which the

26  court in that case granted). Streambox (like Real here) relied on *Sony Corp. of Am. v. Universal

27  City Studios*, 464 U.S. 417 (1984), to argue that the users of Streambox VCR were making fair

STUDIOS' RESPONSE MEMO ISO P.I. MOTION
CASE NOS. C 08-4548-MHP/08-4719-MHP

1 | use copies.

2 | Real in that case was represented by the same law firm (indeed, the same lead counsel)

3 | that represents Real in this case. There, however, Real argued over and over that fair use had no

4 | applicability to claims brought under the DMCA:

5 | • *"There is no Fair Use Defense* [for Streambox against the DMCA] . . .
6 | *[T]he DMCA does not have a 'fair use' exception allowing individuals to circumvent access and copy protection measures."*

7 | • *"In enacting the DMCA, [Congress] expressly outlawed products such as the [Streambox] VCR that serve to promote the unauthorized copying and*
8 | *distribution of copyrighted works. A decision permitting the distribution of such a product would ignore Congress' clear directive and eviscerate the*
9 | *DMCA."*

10 | • *"[T]here is no fair use defense to the Digital Millennium Copyright Act*
11 | *. . . . And the reason there is no fair use right to do that is because the Digital Millennium Copyright Act said, you can't do it. Congress has*
12 | *made that decision for us."*

13 | • *"The DMCA does not have a fair use exception."*

14 | • *"There is no fair use to circumvent access controls or copy protection features."*

15 | • *"Time shifting doesn't apply to the DMCA, because in order to time shift you have to make a copy, and the whole act was designed to make certain*
16 | *that products could not be made, distributed that permit you to defeat the access controls and the rights of the copyright holder to say whether or not*
17 | *you can copy."*

18 | Ex. 68 at 3-5; Supp. Ex. 11 (at 9:5-12; 19:12-15; 61:15-20; 64:12-14) (emphases added).

19 | Importantly, Real *won* based on these arguments. The court rejected Streambox's

20 | "primary defense" that the "VCR allows consumers to make 'fair use' copies of RealMedia files."

21 | 2000 WL 127311 at *8. Adopting Real's argument, the court held that, under the DMCA, "those

22 | who manufacture equipment and products generally can no longer gauge their conduct as

23 | permitted or forbidden by reference to the *Sony* doctrine. . . . [A] given piece of machinery might

24 | qualify as a staple item of commerce, with a substantial noninfringing use, and hence be immune

25 | from attack under *Sony*'s construction of the Copyright Act – but nonetheless still be subject to

26 | suppression under Section 1201." *Id.*

27 | Judicial estoppel "precludes a party from gaining an advantage by taking one position, and

28 |

STUDIOS' RESPONSE MEMO ISO P.I. MOTION
CASE NOS. C 08-4548-MHP/08-4719-MHP

1   then seeking a second advantage by taking an incompatible position." *Wagner*, 354 F.3d at 1044.

2   It "applies to a party's stated position whether it is an expression of intention, a statement of fact,

3   or a legal assertion." *Id.*; *see also Roderick v. Mazzetti & Associates, Inc.*, 2006 WL 1883328, at

4   *5-6 (N.D.Cal. July 7, 2006) (Patel, J.) (finding claims "barred under the doctrine").

5   　　　　Here, all three requirements for judicial estoppel are met: (1) Real's current position is

6   "clearly inconsistent" with its earlier position; (2) Real succeeded in persuading the district court

7   to accept the earlier position; and (3) Real would derive an unfair advantage if not estopped. *See*

8   *United Nat'l. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 778-79 (9th Cir. 2009). The

9   Court can and should hold that Real is estopped from arguing in this case that "fair use" provides

10  any exception to a DMCA trafficking violation.

11  　　　　　　　　3.　　**Even If Fair Use Were Relevant, The Defense Would Not Excuse**
　　　　　　　　　　　　**Copying Movies And TV Shows With RealDVD**

12

13  　　　　Fair use does not exist simply because Real claims it does, or because it cites its own self-

    serving conceptions of "consumer expectations." Fair use is an affirmative defense to copyright
14
    infringement, which is not the claim here. But even if it were, Real, as the party relying on fair
15
    use, has the burden of proving fair use under § 107. *Campbell v. Acuff-Rose Music, Inc.*, 510
16
    U.S. 569, 590 (1994). *See also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th
17
    Cir. 2007) (proponent of fair use bears burden even in response to preliminary injunction motion).
18
    Real does not even *mention* the factors that § 107 identifies as relevant to a fair use defense, much
19
    less try to show that they would support fair use. This is not surprising, since every one of those
20
    factors weighs decisively against fair use:
21
    　　　　**Factor One: "the purpose and character of the use"**: The Supreme Court has held that
22
    the key issue on this factor is "whether and to what extent the new work is transformative[,]" *i.e.*,
23
    whether it "adds something new, with a further purpose or different character, altering the first
24
    with new expression, meaning, or message[.]" *Campbell*, 510 U.S. at 579 (quotations omitted).
25
    There is nothing transformative about a second (or more) exact copy of DVD content: it is
26
    *verbatim* copying of the entirety of the original work used for the identical purpose of having a
27

28

1   playable copy.[11] RealDVD copies also are commercial in nature. *See* § 107(1). The copies

2   RealDVD makes substitute for copies the Studios sell (as discussed below regarding the fourth

3   factor).

4       **Factor Two: "the nature of the copyrighted work"**: This factor clearly weighs against

5   fair use. Movies and TV shows are precisely the type of creative works that the copyright laws

6   protect most. *See Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 563 (1985).

7       **Factor Three: "the amount and substantiality of the portion used in relation to the**

8   **copyrighted work as a whole"**: RealDVD copies the entire work, and so this factor, too, weighs

9   against fair use. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015-16 (9th Cir. 2001).

10      **Factor Four: "the effect of the use upon the potential market for or value of the**

11  **copyrighted work"**: This factor looks not only to "the extent of market harm caused by the

12  particular actions of the alleged infringer, *but also whether unrestricted and widespread conduct*

13  *of the sort engaged in by the defendant ... would result in a substantially adverse impact on the*

14  *potential market for the original.*" *Campbell*, 510 U.S. at 590 (emphasis added) (quotations

15  omitted). It is obvious that widespread copying of DVDs threatens to decimate the Studios' core

16  business of selling content on DVDs. Copying DVD content through RealDVD also suffocates

17  new, innovative distribution mechanisms that are just getting off the ground or that are "likely to

18  be developed," which also are relevant under the fourth factor. *American Geophysical Union v.*

19  *Texaco, Inc.*, 60 F.3d 913, 918, 927, 930-31 (2d Cir. 1994). Even Real's expert concedes that

---

20  [11] Real claims at times that these copies are "archival." Even if they were, they would not be

21  subject to the fair use defense. They are not archival, however. The Copyright Act includes
    express exemptions (not "fair use" exemptions) for archival copies with respect to particular types

22  of works, not at issue here, such as computer programs. *See* 17 U.S.C. § 117. Even in that
    context, an archive copy is one that is used solely "to guard against destruction or damage by

23  mechanical or electrical failure," and not a second copy of a work. *Atari, Inc. v. JS&A Group,*
    *Inc.*, 597 F. Supp. 5, 9 (N.D. Ill. 1983) (quoting CONTU Report). *See also Allen-Myland v. IBM*,

24  746 F. Supp. 520, 537 (E.D. Pa. 1990). Real encourages its customers to watch the copy that
    RealDVD makes on the hard drive and *not* off the DVD. So, under Real's scenario, the "back

25  up" copy actually is the original copy on the DVD – the same DVD that Real, for litigation
    purposes, repeatedly and baselessly disparages as "notoriously fragile." Opp. at 3:3-4. *See*

26  Recommendation of the Register of Copyrights in RM 2002-4 (Oct. 27, 2003) at 106 (Register of
    Copyrights "not persuaded" that "DVDs are so susceptible to damage and deterioration that a

27  convincing case could be made that the practice of making preventive backup copies of
    audiovisual works on DVDs should be noninfringing."), available at

28  http://www.copyright.gov/1201/docs/registers-recommendation.pdf.

STUDIOS' RESPONSE MEMO ISO P.I. MOTION
                                    CASE NOS. C 08-4548-MHP/08-4719-MHP

1 duplicate copying with RealDVD substitutes for the Studios' recently launched "digital copy"

2 products. *See* Bresnahan Decl. ¶ 9. And copying with RealDVD also threatens download-to-

3 burn, managed copy, and other nascent markets. *See* Dunn Decl. ¶¶ 21-28.

4       Instead of discussing the statutory factors (which it cannot satisfy), Real makes a series of

5 sound-bite arguments in support of a wishful fair use rule that no court has adopted.

6       *First*, Real argues that the *Sony-Betamax* case created some "expect[ation] that

7 [consumers] can make a backup copy of media that they have legitimately obtained." Opp. at

8 20:18-19. Real has no support for the claim that *Sony-Betamax* – which dealt only with "time-

9 shifting," defined narrowly as recording free over-the-air TV shows for later playback and

10 erasure, 464 U.S. at 421 – created a legal right to make permanent, playable copies of any form of

11 copyrighted content. In fact, the case law goes the other way. This Court in *Napster* was

12 "unconvinced" that "*Sony* applies" to making duplicate copies of copyrighted works under the

13 banner of "space-shifting." *A&M Records, Inc. v. Napster, Inc.*, 114 F. Supp. 2d 896, 915 (N.D.

14 Cal. 2000). *Accord UMG Recordings, Inc. v. MP3, Inc.*, 92 F. Supp. 2d 349, 351 (S.D.N.Y.

15 2000). Real provides no basis for changing that conclusion here.

16       *Second*, Real (like Napster before it) relies on dicta from *RIAA v. Diamond Multimedia*

17 *Sys., Inc.*, 180 F.3d 1072, 1079 (9th Cir. 1999). *See* Opp. at 21:6-11. That case, however,

18 concerned an inapposite statute, the Audio Home Recording Act, not the Copyright Act or the

19 DMCA. It was "irrelevant" in *Napster*, which was a copyright infringement case. *See Napster*,

20 114 F. Supp. 2d at 916 n.19. And it is irrelevant in this DMCA case.

21       *Third*, Real describes an "atmosphere in which consumers believe that back-up copying,

22 as well as space and time shifting, are authorized[.]" Opp. at 21:20-21. This is just self-serving

23 rhetoric. Everyone undoubtedly would *like* to get lots of things for free, but this does not mean

24 that consumers have any reasonable expectation of free DVD copies.[12] Further, all available

---

25 [12] Real pads this argument with misleading statements lifted from the music context. For

26 example, Real block-quotes counsel's statement at the *Grokster* oral argument. But counsel was explicitly referring to his "record company clients" and what they had authorized Opp. at 3:9-11.

27 Real's quotation from the SonyBMG website, Opp. at 21, is likewise inapposite: SonyBMG is a *record* company. Record companies notably did *not* release their content on discs with access-

28 and copy-controls, which are at issue here. The comparison does not stand.

1  evidence – the FBI warning; Real's assertions that "law-abiding" consumers do not want rippers;

2  Real's own internal documents showing that ████████████████████████████████

3  ████ – shows that copying DVD content is widely known to be illegal.

4      For all these reasons, the "fair use" defense of RealDVD users, even if considered, is

5  entirely meritless and provides no defense to Real's DMCA liability.

6  **III.   THE STUDIOS HAVE SHOWN IRREPARABLE HARM FROM REAL'S**
       **TRAFFICKING IN REALDVD THAT OUTWEIGHS ANY "HARM" TO REAL**

7      **A.   Irreparable Injury Is Presumed**

8      Real's clear violation of the DMCA's anti-circumvention provision creates a presumption

9  of irreparable injury for two reasons. *First*, the presumption exists in DMCA cases, as in

10 copyright cases generally. Real's assertion that the presumption has "never been applied in

11 circumvention cases," Opp. at 42:4, is just wrong. *See Lexmark,* 387 F.3d at 532-33 (6th Cir.

12 2004) ("We see no reason why a similar presumption of irreparable harm should not apply to

13 claims under the DMCA."); *Reimerdes,* 82 F. Supp. 2d at 215 (same). And the presumption

14 continues to exist even after *eBay Inc. v. MercExchange,* 547 U.S. 388 (2006). *See Jacobsen v.*

15 *Katzer,* 535 F.3d 1373, 1378 (Fed. Cir. 2008); *LGS Architects, Inc. v. Concordia Homes of*

16 *Nevada,* 434 F.3d 1150, 1155-56 (9th Cir. 2006).

17     *Second*, irreparable harm is presumed for statutes that, like the DMCA, expressly

18 authorize injunctive relief to prevent a violation. 17 U.S.C. § 1203(b)(1) (authorizing injunctive

19 relief to "prevent or restrain a violation" of the DMCA); Studios' Open. Br. at 20.[13]

20     **B.   Real Ignores The Evidence That RealDVD Threatens Massive Harm to the**
       **Studios' Current and Emerging Businesses**

21

22     Even if a showing of irreparable injury were required, Real ignores the substantial harm

23 that RealDVD threatens to the Studios' existing and nascent businesses. Michael Dunn, President

24 of Twentieth Century Fox Home Entertainment LLC, who (unlike Real's experts) has more than

25 two decades of real-world experience in the relevant market, demonstrates in his declaration that

26 ─────────────────────
   [13] The *eBay* decision, interpreting the Patent Act, does not affect this principle because, as the

27 Supreme Court emphasized, the "Patent Act expressly provides that injunctions 'may' issue '*in*
   *accordance with the principles of equity*.'" *eBay,* 547 U.S. at 392 (quoting 35 U.S.C. § 283)

28 (emphasis added). No such language exists in § 1203(b)(1) of the DMCA.

1 | RealDVD threatens irreparable harm in at least three ways. *First*, through rent/borrow-rip-return,
2 | RealDVD materially changes the value of the Studios' product offerings to consumers, effectively
3 | reducing the price of DVDs to $3.25 (for consumers who copy rented DVDs) or zero (for those
4 | who copy borrowed DVDs). Dunn Decl. ¶¶ 10, 22-23. *Second*, RealDVD will harm nascent and
5 | nearly-identical legitimate markets for video content, including Internet download services and
6 | "digital copy," *i.e.*, DVDs sold — at a higher price — with a second copy that can be moved to
7 | the hard drive. *Id.* ¶¶ 13-20, 24-26. Real's own witnesses concede that RealDVD copies are a
8 | substitute for "digital copy" products. *See* Bresnahan Decl. ¶ 9. *Third*, RealDVD threatens to
9 | change ingrained consumer perceptions about what is lawful behavior. Dunn Decl. ¶¶ 27-28.

10 | Real's argument that the Studios did not adduce evidence of RealDVD's actually harming
11 | their business, Opp. at 43, is a non-sequitur. Because the Court enjoined Real from engaging in
12 | the mass distribution of RealDVD last fall, data do not exist about the widespread effects of
13 | RealDVD on the Studios' markets.[14]  That of course does not allow Real to turn around and argue
14 | that the Studios cannot demonstrate irreparable harm. *See Cummins-Allison Corp. v. Glory Ltd.*,
15 | 2003 WL 355470, at *45 (N.D. Ill. Feb. 12, 2003) ("It is often the case that, when assessing the
16 | question of irreparable harm, courts considering preliminary injunction motions are faced with an
17 | alleged infringing product that has not yet entered the market, or has done so only recently. As a
18 | result, courts frequently must consider the question of irreparable harm without the benefit of an
19 | historical record of the effect on plaintiff from sales of the allegedly infringing product."). In
20 | fact, the harm here is obvious and does not require significant empirical studies. As the Court
21 | recognized at the TRO hearing, once a user of RealDVD makes a copy of a DVD, they "have it
22 | forever," and those "copies of copyrighted content" remain "out there." Supp. Ex. 8 (at 47:18,
23 | 104:23-24).

24 | Real half-heartedly asserts that the absence of a study about harm from Kaleidescape and
25 | like products is proof that RealDVD will not harm the Studios' businesses. Opp. at 43. That is a
26 | ridiculous comparison. Kaleidescape, for example, retails for $10,000 to $30,000 (compared to

27 |
28 | [14] Real was able to distribute ▬▬▬▬ before being enjoined (not a small number considering it was only for sale for less than four days).

STUDIOS' RESPONSE MEMO ISO P.I. MOTION
CASE NOS. C 08-4548-MHP/08-4719-MHP

$29.99 for RealDVD).  As Real itself concedes, such products ██████████████████
██████████████████ Opp. at 6:5-6.

## C.     Real's Argument That RealDVD Will Only Appeal to "Lawful" Copiers is Wrong

Real's contention that RealDVD will only appeal to those consumers who "care about legality" and who will make a "backup or convenience copy," Opp. at 44:21-23, is flawed on several levels.  *First*, it assumes its own conclusion: that any copying other than rent/borrow-rip-return is legal.  As shown, Real is wrong on that.  *Second*, the very presence in the market of RealDVD, which Real touts as "legal" and "100% legit," threatens to change ingrained consumer perceptions about what is in fact lawful behavior.  The experience of the music industry provides compelling evidence that even "law abiding" people will engage in unlawful copying if given easy access to copying technology and if surrounded by peers doing the same.  Napster, like RealDVD, "warned" its users not to engage in unlawful behavior.[15]  Real, of course, recognizes that its admonitions are not likely to be any more effective.  *See* Ex. 67 (Real CEO Rob Glaser: "If you want to steal, we remind you what the rules are and we discourage you from doing it, but we're not your nanny.").  *Third*, █████████████████████████ illegal rippers are not easily accessible to the public.  *See* Studios' Open. Br. at 24.  This undermines Real's unsubstantiated assumption that people "interested in stealing movies or engaging in movie piracy" will not purchase the easy-to-use RealDVD.  Opp. at 44:19-20.

## D.     Real's Attempt To Blame The Victims For Harm Caused By RealDVD Is Meritless

Real argues that ████████████████████████████████
██████████████████████████ Opp. at 45:16-17.  This is specious.  It ignores, first, that ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

---

[15] *See A&M Records, Inc. v. Napster, Inc.*, 2000 WL 573136, at *2 (N.D. Cal. May 12, 2000) (Napster warning: "Napster will terminate the accounts of users who are repeat infringers of the copyrights, or other intellectual property rights, of others.").

[16] *See* Bresnahan Decl. ¶ 9.

### E.   Damages Cannot Easily Be Calculated

Real also ignores the hole in its argument that damages can easily be calculated for illegal copying by RealDVD: that Real has cited no survey to determine with reasonable accuracy the "quantity of sales diverted by the population subset," which Mr. Klein concedes would be needed, Opp. at 46, Klein Decl. ¶¶ 7, 11, and for which Mr. Klein admitted he had no reliable way to measure because (among other reasons) he is not a survey expert (and Real has not proffered one). Supp. Ex. 7 (Klein Depo.) at 62:22-63:3; 80:21-81:15.[17] Notably, Real is not calling either Mr. Klein or any of its other purported "harm" experts to testify at the hearing.

### F.   The Balance of Hardships and The Public Interest Decidedly Favor the Studios

Real argues that a preliminary injunction would ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇ Opp. at 48:20-21. Such claims are exaggerated and irrelevant. As Real

[16] Real includes in its brief ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Real should be precluded from relying on this evidence in opposition to the preliminary injunction motion.

[17] After Real submitted its Opposition, an organization called "The National Consumers League" released a "survey," purportedly measuring consumer copying preferences. Supp. Ex. 13. As the small print at the bottom of the release announcing this survey reveals, *Real paid for this survey.* Unsurprisingly, the survey reports that respondents would prefer not to pay for copies of DVD content. The survey did not purport to measure how RealDVD users would use the product (e.g., whether for rent/borrow-rip-return), which Mr. Klein said ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Supp. Ex. 7 (Klein Depo.) at 62:22-63:3. Ironically for Real, the results showing that people would rather make free copies than pay for them demonstrates the harm to copyright owners from RealDVD.

1   itself notes, it is a large corporation with many ongoing projects.  *Id.* at 5.

2

3

4                               And Real's arguments ignore the devastating losses to the Studios (

5                    ) caused by Real's threatened illegal displacement of the Studios'

6   legitimate businesses.  In all events, Real's problems are of its own making.  Before it devoted

7   engineers and resources to developing and launching RealDVD, Real was well aware of the

8   significant legal concerns raised by RealDVD.

9        Finally, Real's contentions about potential harm to consumers are conclusory and

10  improperly assume the legality of Real's conduct.  Opp. at 50.  It is not a misuse of copyright to

11  charge for additional copies of copyrighted content.  *See Sega Enters. Ltd. v. MAPHIA*, 857 F.

12  Supp. 679, 687 (N.D. Cal. 1994).  Were it otherwise, Real would be misusing its claimed

13  copyright in RealDVD by charging end-users for additional copies of that program.  Real

14  obviously does not believe that is misuse.  The irreparable injury, balance of hardships and public

15  interest factors decidedly favor the Studios.

16  **IV.    CONCLUSION**

17        The Studios respectfully request that the Court enter a preliminary injunction.

18  DATED:   April 10, 2009                    MUNGER, TOLLES & OLSON LLP

19

20                                        By:_____*/s/ Glenn D. Pomerantz*_____

21                                               GLENN D. POMERANTZ

22

23

24

25

26

27

28