REGINALD D. STEER (SBN 056324)
rsteer@akingump.com
MARIA ELLINIKOS (SBN 235528)
mellinikos@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
580 California Street, 15th Floor
San Francisco, California 94104-1036
Telephone:       (415) 765-9500
Facsimile:       (415) 765-9501

EDWARD P. LAZARUS (SBN 212658)
elazarus@akingump.com
STEPHEN MICK (SBN 131569)
smick@akingump.com
MICHAEL SMALL (SBN 222768)
msmall@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2029 Century Park East, Suite 2400
Los Angeles, California 90067-3012
Telephone:       (310) 229-1000
Facsimile:       (310) 229-1001

WILLIAM SLOAN COATS (SBN 94864)
wcoats@whitecase.com
MARK WEINSTEIN (SBN 193043)
mweinstein@whitecase.com
MARK F. LAMBERT (SBN 197410)
mlambert@whitecase.com
**WHITE & CASE LLP**
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, California 94306
Telephone:       (650) 213-0300
Facsimile:       (650) 213-8158

Attorneys for Defendant and Counterclaimant
DVD COPY CONTROL ASSOCIATION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

REALNETWORKS, INC., a Washington
Corporation; and REALNETWORKS HOME
ENTERTAINMENT, INC., a Delaware
corporation,

                    Plaintiffs,

          v.

DVD COPY CONTROL ASSOCIATION, INC., a
Delaware nonprofit corporation, et al.

                    Defendants.

_____

And Related Cases

Case No. C08 04548 MHP
Case No. C08 04719 MHP (related case)

**DECLARATION OF JACOB PAK IN
SUPPORT OF RESPONSE
MEMORANDUM IN SUPPORT OF
MOTION OF DVD COPY CONTROL
ASSOCIATION, INC. FOR
PRELIMINARY INJUNCTION**

PUBLIC – REDACTED VERSION

1

DECL. OF JACOB PAK ISO RESPONSE BRIEF OF DVD CCA ISO OF PRELIMINARY INJUNCTION MOTION
Case No. C08 04548 MHP; Case No. C08 04719 MHP

I, Jacob Pak, declare:

1.     I am the President of DVD Copy Control Association, Inc. ("DVD CCA").  This supplemental declaration is made in support of the Response Memorandum in support of DVD Copy Control Association, Inc.'s Motion for Preliminary Injunction Against RealNetworks, Inc. and RealNetworks Home Entertainment (together, "RealNetworks").  Unless stated upon information and belief, I make this declaration based upon my personal knowledge, and if called to testify as to the contents of this declaration, I could and would competently do so.

2.     The composition of DVD CCA's governing Board of Directors is determined in accordance with the company's Certificate of Incorporation (as amended and restated) (the "Certificate"), a true and correct copy of which is attached hereto as Exhibit A.   The composition of the Board of Directors and certain nomination and election requirements are set forth in Article Twelfth of the Certificate.  In summary, Article Twelfth provides for a 12 member Board of Directors, composed of five "Motion Picture Company Directors," three "Consumer Electronics Manufacturer Directors," three "Computer Manufacturer Directors," and one "At Large" director.

3.     Rules defining the required quorum for the Board of Directors to take action by vote, rules requiring a two thirds vote of the directors (including requirements of concurrence by at least one director in each industry group category as defined under the Bylaws and the Certificate), and rules concerning nominations of directors are set forth in DVD CCA's Bylaws.  The Bylaws also provide that all applicants will be considered eligible to become licensees and Members of the DVD CCA, subject to certain exceptions that apply to applicants who were previously licensees but were terminated for failure to pay fees or assessments or by determination of a court.  The Bylaws also contain provisions defining the privileges and obligations of Members of the DVD CCA, and the procedures available to Members for proposing and voting on amendments to the CSS Specifications.

4.

2

DECL. OF JACOB PAK ISO RESPONSE BRIEF OF DVD CCA ISO OF PRELIMINARY INJUNCTION MOTION
Case No. C08 04548 MHP; Case No. C08 04719 MHP

5.     RealNetworks' memorandum of points and authorities in opposition to DVD CCA's motion for preliminary injunction (the "RealNetworks' Memorandum") references a company called Telestream, Inc. that purportedly manufactures software called "Drive-in." DVD CCA records show that Telestream did not become a CSS Licensee until May, 2008. Prior to receiving RealNetworks' Memorandum, DVD CCA was not aware of the "Drive-in" product.

I declare under penalty of perjury under the laws of the State of California and of the United States of America that the foregoing is true and correct and that this declaration was executed at Morgan Hill, California, this 10th day of April, 2009.

_____
Jacob Pak

DECL. OF JACOB PAK ISO RESPONSE BRIEF OF DVD CCA ISO OF PRELIMINARY INJUNCTION MOTION
Case No. C08 04548 MHP; Case No. C08 04719 MHP

# EXHIBIT A

# Delaware

PAGE   1

### The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT COPIES OF ALL DOCUMENTS FILED FROM AND INCLUDING THE RESTATED CERTIFICATE OR A MERGER WITH A RESTATED CERTIFICATE ATTACHED OF "DVD COPY CONTROL ASSOCIATION, INC." AS RECEIVED AND FILED IN THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

RESTATED CERTIFICATE, FILED THE TWENTIETH DAY OF MARCH, A.D. 2001, AT 4:30 O'CLOCK P.M.

CERTIFICATE OF CHANGE OF REGISTERED AGENT, FILED THE TWELFTH DAY OF FEBRUARY, A.D. 2002, AT 9 O'CLOCK A.M.

CERTIFICATE OF AMENDMENT, FILED THE TENTH DAY OF MAY, A.D. 2002, AT 9 O'CLOCK A.M.

CERTIFICATE OF AMENDMENT, FILED THE THIRTY-FIRST DAY OF MARCH, A.D. 2006, AT 3:34 O'CLOCK P.M.



2978151   8100X

070909914

Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 5917183

DATE: 08-10-07

MAR-20-2001  16:06

P.02/11

# SECOND AMENDED AND RESTATED

## CERTIFICATE OF INCORPORATION

### OF

## DVD COPY CONTROL ASSOCIATION, INC.

DVD Copy Control Association, Inc., a corporation organized and existing under the General Corporation Law of the State of Delaware (the "Corporation"), hereby certifies as follows:

1.     The name of the Corporation is DVD COPY CONTROL ASSOCIATION, INC. The date of filing of its original Certificate of Incorporation with the Secretary of State for the State of Delaware was December 11, 1998.

2.     This Second Amended and Restated Certificate of Incorporation amends and restates the provisions of the Certificate of Incorporation of the Corporation as heretofore amended or supplemented.

3.     The text of the Certificate of Incorporation as amended or supplemented heretofore is hereby amended and restated to read in its entirety as follows:

FIRST: The name of the Corporation is DVD Copy Control Association, Inc. (the "Corporation").

SECOND: The registered office of the Corporation in the State of Delaware is located at 1209 Orange Street, in the City of Wilmington, County of New Castle, State of Delaware. The name of the registered agent of the Corporation in the State of Delaware at such address is The Corporation Trust Company.

THIRD: The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the laws of the State of Delaware, as amended from time to time.

FOURTH: The Corporation shall be a non-stock corporation without authority to issue capital stock, and is not organized for profit. The procedures for the qualification and admission of Members shall be as set forth in the by-laws of the Corporation, as amended from time to time (the "By-laws").

FIFTH: No part of the net earnings or funds of the Corporation shall inure to the benefit of, or be distributable to, any member of the Board of Directors, officer, employee or other private person, except that the Corporation shall be authorized and empowered to pay salary or reasonable compensation for services rendered and to make payments and distributions in furtherance of the purposes set forth in Article THIRD

*STATE OF DELAWARE*
*SECRETARY OF STATE*
*DIVISION OF CORPORATIONS*
*FILED 04:30 PM 03/20/2001*
*010138005 ~ 2978151*

hereof. No substantial part of the activities of the Corporation shall be the carrying on of propaganda, or otherwise attempting to influence legislation, and the Corporation shall not participate in or intervene in (including the publishing or distributing of statements) any political campaign on behalf of or in opposition to any candidate for public office.

SIXTH: In the event of the liquidation, dissolution or winding up of the Corporation, its assets shall be distributed for one or more exempt purposes within the meaning of Section 501(c)(6) of the Internal Revenue Code of 1986, as amended, or shall be distributed to the Federal government for a public purpose.

SEVENTH: The private property of the incorporator, Members, members of the Board of Directors and officers of the Corporation shall not be subject to the payment of corporate debts to any extent whatsoever.

EIGHTH: Except as otherwise provided by applicable law or in the By-laws of the Corporation, the business and affairs of the Corporation shall be governed and managed by the Board of Directors as the By-laws shall provide.

NINTH: Except for the terms and provisions of the sections of the By-laws specified under Article ELEVENTH, which may only be amended or modified in accordance with Article ELEVENTH, the Board of Directors may from time to time make or amend the By-laws of the Corporation; provided, however, that any By-laws made or amended by the Board of Directors may be amended or rescinded by the Participating Members (as defined in the By-laws) and the Board of Directors shall not have any power to readopt any amendment previously adopted by the Board of Directors which may have been rescinded by the Members entitled to vote thereon, and any By-laws made by the Participating Members may only be amended by the Participating Members.

TENTH: Except as otherwise required by applicable law or by this Certificate of Incorporation, the Participating Members shall have the exclusive right to vote on all matters pertaining to the affairs of the Corporation on which a vote of the Members (as defined in the By-laws) is required or deemed by the Board of Directors to be desirable. A person (as defined in the By-laws) shall be a member of, and may vote with, each class of Participating Members for which it is so qualified and in good standing. Except as otherwise provided in Article TWELFTH, or Article 6 of the By-laws, at all biennial and special meetings of Members, each Participating Member in good standing shall be entitled to one vote on each matter submitted to the Participating Members; provided, that, except as otherwise provided in Article TWELFTH or Article 6 of the By-laws, if a Participating Member is part of a Controlled Group (as defined in Article 6 of the By-laws), the members of such Controlled Group shall collectively be entitled to only one vote on each matter submitted to the Participating Members. Each Class C or D Participating Member (as defined in the By-laws) in good standing shall be entitled to one vote on all matters submitted to the Class C or D Participating Members at all class meetings of the Class C and D Participating Members, respectively. Each Class A Participating Member (as defined in the By-laws) shall be entitled to one vote on each

matter submitted to the Class A Participating Members at all class meetings of the Class A Participating Members; provided, that if a Participating Member is part of a Controlled Group, the members of such Controlled Group shall collectively be entitled to only one vote on each matter submitted to the Class A Participating Members. Each Class B Participating Member (as defined in the By-laws) shall be entitled to one vote on each matter submitted to the Class B Participating members at all class meetings of the Class B Participating Members; provided, that if a Participating Member is part of a Controlled Group, the members of such Controlled Group shall collectively be entitled to only one vote on each matter submitted to the Class B Participating Members. Except to the extent required by applicable law, Basic Members (as defined in the By-laws) shall have no right to vote at any meeting of the Members. Except in cases of votes for the election of directors, unless demanded by a Member present at a meeting in person or by proxy and entitled to vote thereat or so directed by the chairman of the meeting, the vote thereat on any question need not be by ballot. On a vote for the election of directors, upon demand of any such Member for a vote by ballot on any question or at the direction of such chairman that a vote by ballot be taken on any questions, such vote shall be taken. On a vote by ballot each ballot shall be signed by the Member voting, or by its proxy, if there be such proxy.

ELEVENTH: Subject to Article TWELFTH, the affirmative vote of the majority of the entire Board of Directors (including the affirmative vote of at least one Motion Picture Company Director (as defined in Article TWELFTH), at least one Computer Manufacturer Director (as defined in Article TWELFTH) and at least one Consumer Electronics Manufacturer Director (as defined in Article TWELFTH)):

(i)      and the affirmative vote of 100% of the Participating Members voting shall be required to approve the amendment or modification of the Form License Agreement (as defined in the By-laws); provided, however, that for the amendment or modification of Sections 3.2, 5.2(b)(ii), 5.2(d), 5.2(h), 5.2(i), 6.1(a), 6.5, 10.2, Exhibit B and the definitions set forth in Section 1 to the extent necessary to conform them to changes in the foregoing sections of the Form License Agreement, the affirmative vote of at least 67% of (a) the Class A Participating Members voting who joined the Corporation as a Motion Picture Company, (b) the Class B Participating Members voting who joined the Corporation as a Computer Manufacturer, and (c) the Class B Participating Members voting who joined the Corporation as a Consumer Electronics Manufacturer, shall be required to approve such modification or amendment;

(ii)      and the affirmative vote of at least ninety-five percent (95%) of the Participating Members voting shall be required for the amendment or modification of this Certificate of Incorporation, By-laws 1.1, 1.2, 1.4, 1.5, 1.6, 1.7, 1.8, 1.9, 1.10, 1.11, 1.12, 1.13, 1.14, 1.15, 1.16, 1.17, 1.18, 1.19, 1.20, 1.21, 1.22, 1.23, 1.24, 1.25, 1.26, 1.27, 1.28, 1.29, 1.30, 1.31, 1.32, 1.34, 1.35, 1.36, 1.37, 1.38, 1.39, 1.40, 1.41, 1.42, 1.43, 1.44, 1.45, 1.46, 1.47, 1.48, 1.49, 1.50, 1.51, 1.52, 1.53, 1.54, 1.55, 1.56, 1.57, 1.58, 1.59, 1.60, 1.62, 1.63, 1.64, 1.65, 1.66, 1.67, 1.68, 1.69, 1.70, 1.71, 1.72, 1.73, 1.74, 1.75, 1.76, 1.77, 1.78, 2.1, 2.2, 3.1, 3.2, 3.3, 3.4, 3.5, 6.1, 6.2, 6.3, 6.4, 6.5, 7.1, 8.6, 8.7 and Articles 14 and 15.

(iii)   and the affirmative vote of at least sixty-seven percent (67%) of the Participating Members voting shall be required for the amendment of By-laws , 1.33, 5.2, 6.6, 7.2, and 8.10; and

(iv)   and the affirmative vote of a majority of the Participating Members voting shall be required for the amendment of By-laws 4.1, 4.2, 4.3, 4.4, 4.5, 4.6, 4.7, 4.8, 4.9, 5.1, 5.3, 5.4, 5.8, 5.9, 5.10, 5.11, 5.12, 5.13, and 8.3;

provided, however, that if any provisions of this Certificate of Incorporation, the By-laws or the License Agreement uniquely applies to, or requires the consent of, the Class C Participating Member and/or the Class D Participating Member, the affirmative vote of either or both such Members, as the case may be, shall be required to approve any amendment or modification of such provisions.

TWELFTH:  The initial Board of Directors shall consist of two Computer Manufacturer Directors, two Consumer Electronics Manufacturer Directors, and two Motion Picture Company Directors.  Members of this initial Board of Directors shall serve until April 1, 2002 (the "Expansion Date"), and thereafter until their respective successors have been elected and qualified as provided herein and in the By-laws, or until their earlier resignation or removal.  Members of this initial Board of Directors shall be individuals designated by the following companies: Intel Corporation; Toshiba Corporation; Matsushita Electric Industrial Co., Ltd.; Warner Brothers; Twentieth Century Fox; and an additional company to be selected by Intel Corporation, provided that such selection may be vetoed by a vote of two-thirds of the Computer Manufacturer members of CPAC (as that term is defined in the By-laws); and provided further that in the event that a selection by Intel Corporation is vetoed, another selection shall be made, again subject to veto by a two-thirds vote as described above.  In the event that any of these listed companies should cease to be a Participating Member of the Corporation (as those terms are defined in the By-laws), or shall notify the Secretary of the Corporation that it declines to designate an individual to serve on the Board of Directors, a substitute company shall be selected by the CPAC members of the Industry Group (as such term is defined in the By-laws) of which the departed company was a member.

From and after the Expansion Date, the Board of Directors shall be elected biennially as provided in this Article TWELFTH.  Effective at the first biennial meeting of the Members held on or after the Expansion Date, and thereafter, the number of directors of the Corporation shall be twelve (12).  The Board of Directors shall be divided into two classes, designated Class I and Class II.  Each class shall consist of six directors.  Five of the Class I Directors shall be Motion Picture Company Directors and one Class I Director shall be an Other Class A Member Director or a Motion Picture Company Director (the "At-Large Class I Director").  Three of the Class II Directors shall be Computer Manufacturer Directors and three of the Class II Directors shall be Consumer Electronics Manufacturer Directors.

For purposes of this Certificate of Incorporation, "Computer Manufacturer Director" shall mean a person who is an officer, director or employee of a Class B

Participating Member who joins the Corporation as a "Computer Manufacturer" (as defined in the By-laws) and is elected (i) prior to the Expansion Date; or (ii) as a Class II Director in accordance with this Certificate of Incorporation. "Consumer Electronics Manufacturer Director" shall mean a person who is an officer, director or employee of a Class B Participating Member who joins the Corporation as a "Consumer Electronics Manufacturer" (as defined in the By-laws) and is elected (i) prior to the Expansion Date; or (ii) as a Class II Director in accordance with this Certificate of Incorporation. "Motion Picture Company Director" shall mean a person who is an officer, director or employee of a Class A Participating Member who joins the Corporation as a "Motion Picture Company" (as defined in the By-laws) and is elected (i) prior to the Expansion Date; or (ii) as a Class I director in accordance with this Certificate of Incorporation. "Other Class A Member Director" shall mean a person who is an officer, director or employee of a Class A Participating Member who is not a Motion Picture Company and is elected as a Class I Director in accordance with this Certificate of Incorporation.

At each biennial meeting of the Members held on or after the Expansion Date, two slates of directors shall be nominated for Class II board seats: (i) a Computer Manufacturer slate; and (ii) a Consumer Electronics Manufacturer slate. Each Class B, C and D Participating Member shall have (I) one vote for a director on the Computer Manufacturer slate if such member joined the Corporation as a "Computer Manufacturer" or (II) one vote for a director on the Consumer Electronics slate if such Member joined the Corporation as a "Consumer Electronics Manufacturer," provided, that for the purposes of each of clauses (I) and (II), if a Participating Member is a part of a Controlled Group, the members of such Controlled Group may submit only one vote pursuant to clause (I) or (II), as the case may be. The three nominees for Computer Manufacturer Director and Consumer Electronics Director, in each case, receiving the highest number of votes shall be elected to fill such directorships; provided, however, that at the first biennial meeting of the Members one of the Consumer Electronics Manufacturer Directors shall be a person designated by the Class D Participating Member, another of the Consumer Electronics Manufacturer Directors shall be a person designated by the Class C Participating Member, and the third Consumer Electronics Manufacturer Director shall be the Consumer Electronics Manufacturer Director nominee receiving the highest number of votes; and provided further that at the second biennial meeting of the Members, and thereafter, one of the Consumer Electronics Manufacturer Directors shall be a person designated by the Class C Participating Member and the Class D Participating Member, acting together, and the other two Consumer Electronics Manufacturer Directors shall be Director nominees receiving the highest number of votes. In the case of a tie in any election of directors, a run-off election shall be held.

At each biennial meeting of the Members, two slates of directors shall be nominated for the Class I Board seats: (i) a Motion Picture Company slate and (ii) an At-Large Class I slate. Each Class A Participating Member shall have (I) one vote for a director on the Motion Picture Company slate if such Member has joined the Corporation as a "Motion Picture Company" and (II) one vote for a director on the At-Large Class I slate; provided, that for the purposes of each of clauses (I) and (II), if a Participating Member is a part of a Controlled Group, the members of such Controlled Group may

submit only one vote pursuant to each of clauses (I) and (II).  The five nominees for
Motion Picture Company Director and the nominee for At-Large Class I Director, in each
case, receiving the highest number of votes shall be elected to fill such directorships.  In
the case of a tie in any election of directors, a run-off election shall be held.  In the case
that a Member's nominee(s) wins an election as both a Motion Picture Company Director
and the At-Large Class I Director, then such Member's nominee shall be elected as a
Motion Picture Company Director and the nominee for the At-Large Class I Director
receiving the next highest number of votes shall be elected to such directorship.

Notwithstanding anything contained herein or in the By-laws, and subject
to the specific requirements in (a) and (b), below, the Board of Directors may make such
Specification Amendments and amendments to any License Agreement and may consent
to amendments to the Master License Agreement on behalf of the Corporation (as such
terms are defined in the By-laws) --

(x) to make changes to this Certificate and to the By-laws solely
for the purpose of correcting errors or making changes that are in the nature of
clarification; and

(y) to adopt requirements for the use of Embedded Data (as that
term is defined in the By-laws) (such amendments or consents to amendments,
"Embedded Data Amendments") , provided that, prior to adopting any Embedded
Data Amendments pursuant to this paragraph, the Board of Directors shall refer
the proposed Embedded Data Amendments, or the subject of proposed Embedded
Data Amendments, to CPAC (as defined in the By-laws), for its evaluation and
consideration pursuant to the process set forth in Section 6.2.1-6.2.4 of the By-
laws or to such modified process as the Board of Directors may establish, in its
referral or thereafter.  In establishing a modified process, the Board of Directors
may limit the period of time for CPAC's consideration of the Embedded Data
Amendment and may set forth criteria to be used by CPAC in its consideration.
The Board's power to make an Embedded Data Amendment shall commence at
the earlier of the conclusion of a time period established by the Board of Directors
for CPAC consideration or the date on which the Board receives a report from
CPAC recommending that the Board adopt such Embedded Data Amendment,
provided that any modified CPAC consideration process and any such amendments or
consent to amendments shall be adopted

(a) (i) at a meeting of the Board of Directors at which one hundred percent
(100%) of the Directors in office are present in person or by proxy;

(ii) such action is supported by the affirmative vote of a majority of
Directors present at such meeting, including at least one Motion Picture
Company Director, one Computer Manufacturer Director, and one
Consumer Electronics Manufacturer Director; and

(iii) no negative vote is cast against such action by any Director
present at such meeting; or

(b) pursuant to a unanimous written consent signed by all of the Directors
then in office, and such writing is filed with the minutes of proceedings of the
Board of Directors,

6

and provided further that the powers set forth in this paragraph shall expire on the Expansion Date.

THIRTEENTH: Each director must be a Participating Member or an employee, officer or director of a Participating Member. A Participating Member, and the other members of its Controlled Group (if any) may have no more than one of its employees, officers or directors serving as a director of the Corporation and such Participating Member shall designate in writing to the Secretary of the Corporation the class in which its representative may be elected to serve as director. Each director shall continue in office until the biennial meeting next following his election and until his successor shall have been elected and shall qualify, until the termination of such director's status as a Member or as an officer, director or employee of a Participating Member, or until his death, resignation or removal. The term of office of any director may be terminated at any time, with or without cause, but only by a vote of at least two-thirds of the class (or classes) of Participating Members who elected such director (excluding from the calculation of a quorum and two-thirds majority any Participating Member who is also the director or for whom, or for whose affiliate or subsidiary, the director is an employee, officer or director).

FOURTEENTH: A director of the Corporation shall have no personal liability to the Corporation or its Members for monetary damages for breach of fiduciary duty as a director, provided that this provision shall not eliminate the liability of a director (i) for any breach of the director's duty of loyalty to the Corporation or its members; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under Section 174 of the Delaware General Corporation Law; or (iv) for any transaction from which the director derived an improper personal benefit.

FIFTEENTH: (A) The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Corporation), by reason of the fact that he or she is or was a Member, director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including reasonable attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person in connection with such action, suit or proceeding if such person acted in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of the Corporation, and with respect to any criminal action or proceeding, had no reasonable cause to believe such person's conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which such person reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that such person's conduct was unlawful.

(B)     The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Corporation to procure a judgment in its favor by reason of the fact that such person is or was a Member, director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees) actually and reasonably incurred by such person in connection with the defense or settlement of such action or suit if such person acted in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of the Corporation and except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable to the Corporation unless and only to the extent that the Court of Chancery of the State of Delaware or the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which the Court of Chancery of the State of Delaware or such other court shall deem proper.

(C)     Expenses incurred by an officer or director in defending a civil or criminal action, suit or proceeding shall be paid by the Corporation in advance of the final disposition of such action, suit or proceeding upon the receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by the Corporation as authorized in Section 145 of the Delaware General Corporation Law. Such expenses incurred by other employees and agents may be so paid upon such terms and conditions, if any, as the Board of Directors deems appropriate.

(D)     In addition to any indemnification provided for in this Article FIFTEENTH, the Corporation shall, to the fullest and broadest extent permitted by applicable law, including, without limitation, Section 145 of the Delaware General Corporation Law as it may be amended from time to time, have the power to indemnify all persons whom it may indemnify pursuant thereto.

(E)     Any indemnification provided by this Article FIFTEENTH shall apply as to action by any person in his or her official capacity and as to action in another capacity while holding such office and shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such a person.

(F)     Any indemnification provided by this Article FIFTEENTH shall not be deemed exclusive of any rights to which a person seeking indemnification may be entitled under any By-law, agreement, vote of disinterested directors or otherwise, both as to action in such person's official capacity and as to action in another capacity while holding such office, and shall continue as to a person who has ceased to be a director,

8

officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such a person.

(G)   Any provision of this Article FIFTEENTH which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall, not invalidate or render unenforceable such provision in any other jurisdiction.

(H)   Any indemnification provided by this Article FIFTEENTH shall be deemed to be a contract between the Corporation and each director, officer, employee or agent of the Corporation who serves in such capacity, both as to action in such person's official capacity and as to action in another capacity while holding such office, at any time while this Article FIFTEENTH and the relevant provisions of the General Corporation Law of the State of Delaware and other applicable law, if any, are in effect, and any repeal or modification thereof shall not affect any rights or obligations then existing with respect to any state of facts then or theretofore existing or any action, suit or proceeding theretofore or thereafter brought or threatened based in whole or in part upon any such state of facts.

(I)   Notwithstanding any provision of this Article FIFTEENTH to the contrary, the Corporation shall have the power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any liability asserted against such person and incurred by such person in any such capacity, or arising out of such person's status as such, whether or not the Corporation would have the power to indemnify such person against such liability.

   4.   This Amended and Restated Certificate of Incorporation was duly adopted by the Corporation in accordance with Sections 242 and 245 of the General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF, the undersigned has duly executed this Second Amended and Restated Certificate of Incorporation as of this _15_ day of February, 2001.

By: _____

Name: John Hoy

Title: President

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 02/12/2002
020092325 — 2978151

CERTIFICATE OF CHANGE OF LOCATION OF REGISTERED OFFICE
AND OF REGISTERED AGENT

It is hereby certified that:

1. The name of the corporation (hereinafter called the "corporation") is

DVD COPY CONTROL ASSOCIATION, INC.

2. The registered office of the corporation within the State of Delaware is hereby changed to 2711 Centerville Road, Suite 400, City of Wilmington 19808, County of New Castle.

3. The registered agent of the corporation within the State of Delaware is hereby changed to Corporation Service Company, the business office of which is identical with the registered office of the corporation as hereby changed.

4. The corporation has authorized the changes hereinbefore set forth by resolution of its Board of Directors.

Signed on  2 - 6 - 02

_____
John Hoy, President

DE BC D-:COA CERTIFICATE OF CHANGE 09/00 (#163)

*STATE OF DELAWARE*
*SECRETARY OF STATE*
*DIVISION OF CORPORATIONS*
*FILED 09:00 AM 05/10/2002*
*020299309 – 2978151*

CERTIFICATE OF AMENDMENT
OF
CERTIFICATE OF INCORPORATION
OF
DVD COPY CONTROL ASSOCIATION, INC.

DVD Copy Control Association, Inc., a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware, DOES HEREBY CERTIFY that:

**FIRST:**    The corporation has no capital stock.

**SECOND:**    On February 27, 2002, at a meeting duly called and held, the Board of Directors of the corporation declared the advisability of adopting, and did adopt, the following resolution amending the Certificate of Incorporation of the corporation:

"BE IT RESOLVED that the first phrase of the second sentence of the first paragraph of Article TWELFTH of the Certificate of Incorporation be, and it is hereby, amended so as to read as follows:

'Members of this Initial Board of Directors shall serve until April 1, 2002, and thereafter until their respective successors have been elected and qualified (the "Expansion Date") as provided herein . . .'"

**THIRD:**    Said amendment was duly adopted in accordance with the provisions of Section 242 of the General Corporation Law of the State of Delaware.

**FOURTH:**    Said amendment was duly adopted by the Initial Board of Directors, without the necessity of member approval, in accordance with the provisions of Article TWELFTH (x) of the Certificate of Incorporation.

IN WITNESS WHEREOF, said DVD COPY CONTROL ASSOCIATION, INC., has caused its corporate seal to be hereunto affixed and this certificate to be signed by John Hoy, its President, as of this 10th day of May 2002.

DVD COPY CONTROL ASSOCIATION, INC.

John Hoy, President

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 03:50 PM 03/31/2006*
*FILED 03:34 PM 03/31/2006*
*SRV 060308103 - 2978151 FILE*

STATE OF DELAWARE

CERTIFICATE OF AMENDMENT

OF

DVD COPY CONTROL ASSOCIATION, INC.

(a corporation without capital stock)

The corporation, DVD Copy Control Association, Inc., a nonstock corporation, organized and existing under the laws of the State of Delaware, hereby certifies as follows:

(1)    That a majority of all the members of the governing body voted in favor of the amendments to Articles Eleventh, Twelfth and Thirteenth to the Certificate of Incorporation which are attached hereto as Exhibit A.

(2)    That said amendments were duly adopted in accordance with the provisions of Section 242 of the General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF,  said corporation has caused this certificate to be signed this 9th day of March, 2006.

By_____ /s/ John Hoy_____

John Hoy, President

23111111.1

Exhibit A

ELEVENTH: Subject to Article TWELFTH, the affirmative vote of the majority of the entire Board of Directors (including the affirmative vote of at least one Motion Picture Company Director (as defined in Article TWELFTH), at least one Computer Manufacturer Director (as defined in Article TWELFTH) and at least one Consumer Electronics Manufacturer Director (as defined in Article TWELFTH)):

(i)        and the affirmative vote of 100% of the Participating Members voting shall be required to approve the amendment or modification of the Form License Agreement (as defined in the By-laws); provided, however, that for the amendment or modification of Sections 3.2, 5.2(b)(ii), 5.2(d), 5.2(h), 5.2(i), 6.1(a), 6.5, 10.2, Exhibit B and the definitions set forth in Section 1 to the extent necessary to conform them to changes in the foregoing sections of the Form License Agreement, the affirmative vote of at least 67% of (a) the Class A Participating Members voting who joined the Corporation as a Motion Picture Company, (b) the Class B Participating Members voting who joined the Corporation as a Computer Manufacturer, and (c) collectively the Class B Participating Members voting who joined the Corporation as Consumer Electronics Manufacturers and the Class C and D Participating Members, shall be required to approve such modification or amendment;

(ii)       and the affirmative vote of at least ninety-five percent (95%) of the Participating Members voting shall be required for the amendment or modification of this Certificate of Incorporation, By-laws 1.1, 1.2, 1.4, 1.5, 1.6, 1.7, 1.8, 1.9, 1.10, 1.11, 1.12, 1.13, 1.14, 1.15, 1.16, 1.17, 1.18, 1.19, 1.20, 1.21, 1.22, 1.23, 1.24, 1.25, 1.26, 1.27, 1.28, 1.29, 1.30, 1.31, 1.32, 1.34, 1.35, 1.36, 1.37, 1.38, 1.39, 1.40, 1.41, 1.42, 1.43, 1.44, 1.45, 1.46, 1.47, 1.48, 1.49, 1.50, 1.51, 1.52, 1.53, 1.54, 1.55, 1.56, 1.57, 1.58, 1.59, 1.60, 1.62, 1.63, 1.64, 1.65, 1.66, 1.67, 1.68, 1.69, 1.70, 1.71, 1.72, 1.73, 1.74, 1.75, 1.76, 1.77, 1.78, 2.1, 2.2, 3.1, 3.2, 3.3, 3.4, 3.5, 6.1, 6.2, 6.3, 6.4, 6.5, 7.1, 8.6, 8.7 and Articles 14 and 15.

(iii)      and the affirmative vote of at least sixty-seven percent (67%) of the Participating Members voting shall be required for the amendment of By-laws , 1.33, 5.2, 6.6, 7.2, and 8.10; and

(iv)      and the affirmative vote of a majority of the Participating Members voting shall be required for the amendment of By-laws 4.1, 4.2, 4.3, 4.4, 4.5, 4.6, 4.7, 4.8, 4.9, 5.1, 5.3, 5.4, 5.8, 5.9, 5.10, 5.11, 5.12, 5.13, and 8.3;

provided, however, that if any provisions of this Certificate of Incorporation, the By-laws or the License Agreement uniquely applies to, or requires the consent of, the Class C Participating Member and/or the Class D Participating Member, the affirmative vote of either or both such Members, as the case may be, shall be required to approve any amendment or modification of such provisions.

TWELFTH: The initial Board of Directors shall consist of two Computer Manufacturer Directors, two Consumer Electronics Manufacturer Directors, and two Motion Picture Company Directors.  Members of this initial Board of Directors shall serve until April 1,

2002, and thereafter until their respective successors have been elected and qualified (the "Expansion Date") as provided herein and in the By-laws, or until their earlier resignation or removal. Members of this initial Board of Directors shall be individuals designated by the following companies: Intel Corporation; Toshiba Corporation; Matsushita Electric Industrial Co., Ltd.; Warner Brothers; Twentieth Century Fox; and an additional company to be selected by Intel Corporation, provided that such selection may be vetoed by a vote of two-thirds of the Computer Manufacturer members of CPAC (as that term is defined in the By-laws); and provided further that in the event that a selection by Intel Corporation is vetoed, another selection shall be made, again subject to veto by a two-thirds vote as described above. In the event that any of these listed companies should cease to be a Participating Member of the Corporation (as those terms are defined in the By-laws), or shall notify the Secretary of the Corporation that it declines to designate an individual to serve on the Board of Directors, a substitute company shall be selected by the CPAC members of the Industry Group (as such term is defined in the By-laws) of which the departed company was a member.

From and after the Expansion Date, the Board of Directors shall be elected biennially as provided in this Article TWELFTH. Effective at the first biennial meeting of the Members held on or after the Expansion Date, and thereafter, the number of directors of the Corporation shall be twelve (12). The Board of Directors shall be divided into two classes, designated Class I and Class II. Each class shall consist of six directors. Five of the Class I Directors shall be Motion Picture Company Directors and one Class I Director shall be an Other Class A Member Director or a Motion Picture Company Director (the "At-Large Class I Director"). Three of the Class II Directors shall be Computer Manufacturer Directors and three of the Class II Directors shall be Consumer Electronics Manufacturer Directors.

For purposes of this Certificate of Incorporation, "Computer Manufacturer Director" shall mean a person who is an officer, director or employee of the Controlled Group of a Class B Participating Member who joins the Corporation as a "Computer Manufacturer" (as defined in the By-laws) and is elected (i) prior to the Expansion Date; or (ii) as a Class II Director in accordance with this Certificate of Incorporation. "Consumer Electronics Manufacturer Director" shall mean a person who is an officer, director or employee of the Controlled Group of a Class B Participating Member who joins the Corporation as a 'Consumer Electronics Manufacturer' (as defined in the By-laws) or who is an officer, director or employee of the Controlled Group of the Class C Participating Member or of the Controlled Group of the Class D Participating Member. "Motion Picture Company Director" shall mean a person who is an officer, director or employee of the Controlled Group of a Class A Participating Member who joins the Corporation as a "Motion Picture Company" (as defined in the By-laws) and is elected (i) prior to the Expansion Date; or (ii) as a Class I director in accordance with this Certificate of Incorporation. "Other Class A Member Director" shall mean a person who is an officer, director or employee of the Controlled Group of a Class A Participating Member who is not a Motion Picture Company and is elected as a Class I Director in accordance with this Certificate of Incorporation.

At each biennial meeting of the Members held on or after the Expansion Date, two slates of directors shall be nominated for Class II board seats: (i) a Computer Manufacturer slate; and (ii) a Consumer Electronics Manufacturer slate. Each Class B, C and D Participating Member shall have (I) one vote for a director on the Computer Manufacturer slate if such member joined the Corporation as a "Computer Manufacturer" or (II) one vote for a director on the Consumer

Electronics slate if such Member joined the Corporation as a "Consumer Electronics Manufacturer," provided, that for the purposes of each of clauses (I) and (II), if a Participating Member is a part of a Controlled Group, the members of such Controlled Group may submit only one vote pursuant to clause (I) or (II), as the case may be. The three nominees for Computer Manufacturer Director and Consumer Electronics Director, in each case, receiving the highest number of votes shall be elected to fill such directorships; provided, however, that at the first biennial meeting of the Members one of the Consumer Electronics Manufacturer Directors shall be a person designated by the Class D Participating Member, another of the Consumer Electronics Manufacturer Directors shall be a person designated by the Class C Participating Member, and the third Consumer Electronics Manufacturer Director shall be the Consumer Electronics Manufacturer Director nominee receiving the highest number of votes; and provided further that at the second biennial meeting of the Members, and thereafter, one of the Consumer Electronics Manufacturer Directors shall be a person designated by the Class C Participating Member and the Class D Participating Member, acting together, and the other two Consumer Electronics Manufacturer Directors shall be Director nominees receiving the highest number of votes provided that each of such other two Director nominees shall be an officer, director or employee of the Controlled Group of a Class B Participating Member. In the case of a tie in any election of directors, a run-off election shall be held.

At each biennial meeting of the Members, two slates of directors shall be nominated for the Class I Board seats: (i) a Motion Picture Company slate and (ii) an At-Large Class I slate. Each Class A Participating Member shall have (I) one vote for a director on the Motion Picture Company slate if such Member has joined the Corporation as a "Motion Picture Company" and (II) one vote for a director on the At-Large Class I slate; provided, that for the purposes of each of clauses (I) and (II), if a Participating Member is a part of a Controlled Group, the members of such Controlled Group may submit only one vote pursuant to each of clauses (I) and (II). The five nominees for Motion Picture Company Director and the nominee for At-Large Class I Director, in each case, receiving the highest number of votes shall be elected to fill such directorships. In the case of a tie in any election of directors, a run-off election shall be held. In the case that a Member's nominee(s) wins an election as both a Motion Picture Company Director and the At-Large Class I Director, then such Member's nominee shall be elected as a Motion Picture Company Director and the nominee for the At-Large Class I Director receiving the next highest number of votes shall be elected to such directorship.

Notwithstanding anything contained herein or in the By-laws, and subject to the specific requirements in (a) and (b), below, the Board of Directors may make such Specification Amendments and amendments to any License Agreement and may consent to amendments to the Master License Agreement on behalf of the Corporation (as such terms are defined in the By-laws)

(x) to make changes to this Certificate and to the By-laws solely for the purpose of correcting errors or making changes that are in the nature of clarification; and

(y) to adopt requirements for the use of Embedded Data (as that term is defined in the By-laws) (such amendments or consents to amendments, "Embedded Data Amendments") , provided that, prior to adopting any Embedded Data Amendments pursuant to this paragraph, the Board of Directors shall refer the proposed Embedded Data Amendments, or the subject of proposed Embedded Data Amendments, to CPAC (as

defined in the By-laws), for its evaluation and consideration pursuant to the process set forth in Section 6.2.1-6.2.4 of the By-laws or to such modified process as the Board of Directors may establish, in its referral or thereafter. In establishing a modified process, the Board of Directors may limit the period of time for CPAC's consideration of the Embedded Data Amendment and may set forth criteria to be used by CPAC in its consideration. The Board's power to make an Embedded Data Amendment shall commence at the earlier of the conclusion of a time period established by the Board of Directors for CPAC consideration or the date on which the Board receives a report from CPAC recommending that the Board adopt such Embedded Data Amendment,

provided that any modified CPAC consideration process and any such amendments or consent to amendments shall be adopted

(a)    (i) at a meeting of the Board of Directors at which one hundred percent (100%) of the Directors in office are present in person or by proxy;

(ii) such action is supported by the affirmative vote of a majority of Directors present at such meeting, including at least one Motion Picture Company Director, one Computer Manufacturer Director, and one Consumer Electronics Manufacturer Director; and

(iii) no negative vote is cast against such action by any Director present at such meeting; or

(b) pursuant to a unanimous written consent signed by all of the Directors then in office, and such writing is filed with the minutes of proceedings of the Board of Directors,

and provided further that the powers set forth in this paragraph shall expire on the Expansion Date.

THIRTEENTH: Each director must be a Participating Member or an employee, officer or director of the Controlled Group of a Participating Member. A Participating Member, and the other members of its Controlled Group (if any) may have no more than one of its employees, officers or directors serving as a director of the Corporation and such Participating Member shall designate in writing to the Secretary of the Corporation the class in which its representative may be elected to serve as director. Each director shall continue in office until the biennial meeting next following his election and until his successor shall have been elected and shall qualify, until the termination of such director's status as a Member or as an officer, director or employee of a Participating Member, or until his death, resignation or removal. The term of office of any director may be terminated at any time, with or without cause, but only by a vote of at least two-thirds of the class (or classes) of Participating Members who elected such director (excluding from the calculation of a quorum and two-thirds majority any Participating Member who is also the director or for whom, or for whose affiliate or subsidiary, the director is an employee, officer or director).