1   JAMES A. DiBOISE, State Bar No. 83296
    Email: jdiboise@wsgr.com
2   LEO CUNNINGHAM, State Bar No. 121605
    Email: lcunningham@wsgr.com
3   COLLEEN BAL, State Bar No. 167637
    Email: cbal@wsgr.com
4   MICHAEL A. BERTA, State Bar No. 194650
    Email: mberta@wsgr.com
5   TRACY TOSH LANE, State Bar No. 184666
    Email: ttosh@wsgr.com
6   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
7   One Market Street
    Spear Tower, Suite 3300
8   San Francisco, CA 94105

9   Attorneys for Plaintiffs and
    Counterclaim Defendants
10  REALNETWORKS, INC. and
    REALNETWORKS HOME
11  ENTERTAINMENT, INC.

12              UNITED STATES DISTRICT COURT

13           NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 14 REALNETWORKS, INC., a Washington Corporation; and REALNETWORKS HOME 15 ENTERTAINMENT, INC., a Delaware corporation, | Case Nos. C08 04548 MHP; C08 04719 MHP |
| 16 Plaintiffs, | **REALNETWORKS' OPPOSITION TO STUDIOS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND TESTIMONY RE SETTLEMENT COMMUNICATIONS** |
| 17 v. | |
| 18 DVD COPY CONTROL ASSOCIATION, INC., a 19 Delaware nonprofit corporation, DISNEY ENTERPRISES, INC., a Delaware corporation; 20 PARAMOUNT PICTURES CORP., a Delaware corporation; SONY PICTURES ENTER., INC., a 21 Delaware corporation; TWENTIETH CENTURY FOX FILM CORP., a Delaware corporation; NBC 22 UNIVERSAL, INC., a Delaware corporation; WARNER BROS. ENTER. INC., a Delaware 23 corporation; and VIACOM, Inc., a Delaware Corporation, | **Before: Hon. Marilyn Hall Patel** **Dept: Courtroom 15** **Date: April 24, 2009** **Time: 9:00 a.m.** **[PUBLIC REDACTED VERSION]** |
| 24 Defendants. | |
| 25 | |
| 26 | |
| 27 AND RELATED CASES | |
| 28 | |

Dockets.Justia.com

1

**I.   INTRODUCTION**

2       The Studios' motion *in limine* seeks to exclude all evidence of pre-litigation discussions

3   between Real and the Studios, which the Studios characterize as "settlement communications"

4   ██████████████████████████████████████████████████

5   ████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████

8   ██████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████

10  ██████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████

12  ██████████████████████████████████████████████████████

13  ██████████████████████

14      ████████████████████████████████████████████████████

15  ██████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████

17  ██████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████

19  ██████████████

20      ████████████████████████████████████████████████████

21  ████████████████████████████████████████   Real informed the

22  Studios about RealDVD in advance of its release in order to explore mutual business

23  opportunities has nothing to do with settlement of this or any other dispute.  Nor is the evidence

24  of those discussions being offered to prove the invalidity of the Studios' claims.  It will be

25  offered to show Real's good intentions to support Real's witnesses' credibility, and to refute the

26  Studios' continuing canard that Real "rushed to market" with RealDVD.  ████████████████

27  ████████████████████████████████████████████████████████

28  ██████████████████████████████████████████████████

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮   That proof does not relate to the invalidity of the Studios' claim.  It is

3 relevant to issues of intent and credibility.  In particular it refutes the Studios' innuendo that Real

4 was cavalier regarding the Studios' purported rent-rip-and-return concern and that Real's CEO

5 responded to the issue with a "tacit wink-and-nod."   In short, the Studios have repeatedly

6 attacked Real's character, and now seek to hide the truth behind FRE 408.

7 Finally, the Studios argue that evidence of Real's discussions with them should be

8 excluded because the PI hearing will simply be too busy.  The Studios have put these issues

9 regarding Real's intent and credibility before the Court with their continued assertions that Real

10 "rushed to market" and ignored rent-rip-and-return.  The Studios are not entitled to a hit-and-run

11 when reality is otherwise.

12 **II.     ARGUMENT**

13     **A.     Real's Discussions with the Studios Occurred Prior to the ▮▮▮▮▮▮ and
are Not Subject to FRE 408**

14

15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   Real's business

17 discussions with the Studios regarding RealDVD began in mid-August – well before there was

18 any dispute between the parties or any discussion of resolving a dispute.  The testimony of Rob

19 Glaser, Elizabeth Coppinger, and others, establishes that Real began meeting with the Studios on

20 approximately August 15, 2008, to introduce RealDVD and explore mutually beneficial business

21 opportunities.  At this time, the parties also discussed the security features of RealDVD, Real's

22 willingness to work with the Studios regarding concerns over rental discs being copied, and

23 Real's willingness to delay the launch of RealDVD to address Studio concerns (which it

24 ultimately did).  Real conducted more than a half dozen business conversations with the Studios

25 regarding RealDVD between mid-August and the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1

2

3

4       The Studios have ignored this fact and offered no reason why such

5  discussions should be excluded.

6     **B.      The Studios Have Repeatedly**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23            *        *        *

24

25    [1]  Indeed in the very portion of the transcript cited by the Studios to support that assertion --
where Real's counsel tells the witness

26

27
The Studios cannot credibly claim that they did not elicit the testimony at issue.  *See* Mtn. in
Limine at 3-4.

28

1

2

3

4

5

6

7

8

9

10

11

12  Counsel for the DVD CCA solicited similar testimony from Richard Wolpert. ███████

13

14

15

16

17  ████████████████████   The Studios should not be permitted to take and

18  receive extensive discovery regarding protected conversations and then object when they do not

19  like the testimony received.

20      Under California law, the Studios'

21

22

23

24

25

26

27

28

C.    **Real Does Not Offer the Disputed Evidence for Purposes Proscribed by FRE 408**

Nor does the evidence offered by Real violate FRE 408. As discussed above, many of the discussions at issue were business conversations, did not involve any disputes or settlement thereof, and are therefore not even within the ambit of FRE 408. Even those discussions that occurred ██████████████████ are not offered for any purpose contrary to FRE 408, and therefore should not be excluded under that rule. *See Zurich American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 689-90 (7th Cir. 2005) (settlement communications may be admitted for purposes other than to demonstrate liability, including rebuttal, to show knowledge and intent, to show a continuing course of reckless conduce and to prove estoppel).

At every turn in this litigation, the Studios have cast aspersions upon Real's intent with respect to RealDVD and the credibility its witnesses. The Studios argue as recently as the preliminary injunction briefing that:

- "Despite Real's knowledge that RealDVD was of dubious legality, Real rushed it to market." Studios Opening PI Brief at 8.

- Real "decided to rush to market first and fight about the legality of its product later." *Id*. at 25.

- "Real was fully cognizant that RealDVD could and would be used by customers to make free copies of the Studios' DVDs, including DVDs rented or borrowed from friends. Its response was a tacit wink-and-nod, as exemplified by CEO Rob Glaser . . ." *Id*.

- "[R]eal decided it was more concerned with having a "first mover advantage" and so it opted not to approach the Studios until just days before the planned launch of RealDVD . . . And importantly, RealDVD cannot distinguish between rented, borrowed or purchased DVDs." *Id*. at 21.

The evidence that Real intends to offer – that it approached the Studios in mid-August to introduce RealDVD, explain its features, explore mutual business opportunities, and address the Studios' concerns – all go to Real's intent, good faith, and credibility (and ironically, the

1    Studios' bad faith and lack of credibility in making such false assertions), which the Studios have

2    put in issue in this case.  The evidence at issue does not relate to the parties' proposed settlement

3    demands or offers, and it is not offered on the issue of harm as the Studios contend.  Motion in

4    Limine at 5.  The evidence is responsive to the Studios' false assertions regarding Real's intent

5    and credibility, and cannot be excluded under FRE 408.  Discussions otherwise protected by

6    FRE 408 have been admitted when "the purported settlement discussions are intertwined with

7    other, substantive matters in the case." *Motorola Inc. v. DBTel*, Inc., No. 02 C 3336, 2002 WL

8    1348849, at *1 (N.D.Ill. June 19, 2002); *see also eAcceleration Corp. v. Trend Mirco, Inc.*, 408

9    F.Supp.2d 1110 (Court admitted settlement discussions in preliminary injunction context

10   unrelated to liability).[2]

11        **D.      The Disputed Evidence Should Not Be Excluded Under FRE 403**

12            Finally, the Studios' half-heartedly argue that the evidence Real seeks to offer will be

13   time consuming and require the Studios to call their own witnesses in rebuttal.  This is false.

14   Real does not expect testimony regarding pre-release discussions to take a significant amount of

15   time during the hearing.  And nothing Real intends to offer requires the Studios to call additional

16   witnesses – indeed they cannot.  The Studios have been aware since at least the opening

17   preliminary injunction briefing that Real intended to offer evidence of the parties' pre-release

18   discussions, and the Studios elected not to designate their own witness on this issue.  They

19   cannot do so now.

20

21

22

23

24

25

26   [2] The Studios' reliance on a Utah district court opinion is misplaced.  *See Seroctin Research &
     Tech., Inc. v. Unigen Pharm., Inc.*, 541 F. Supp. 2d 1238, 1239 n.1 (D. Utah 2008).  During a
27   preliminary injunction proceeding courts may give weight to evidence that would be inadmissible
     at trial.  *Flint Dist. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).
28

**III.     CONCLUSION**

For all the foregoing reasons, the Court should deny the Studios' Motion in Limine and admit the limited evidence offered by Real regarding the parties pre-litigation discussions regarding RealDVD.


Dated:   April 23, 2009

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: _____/s/_____
          Leo P. Cunningham


Attorneys for Plaintiffs
REALNETWORKS, INC. AND
REALNETWORKS HOME
ENTERTAINMENT, INC.