GLENN D. POMERANTZ (SBN 112503)
Glenn.Pomerantz@mto.com
BART H. WILLIAMS (SBN 134009)
Bart.Williams@mto.com
KELLY M. KLAUS (SBN 161091)
Kelly.Klaus@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Tel: (213) 683-9100; Fax: (213) 687-3702

GREGORY P. GOECKNER (SBN 103693)
gregory_goeckner@mpaa.org
DANIEL E. ROBBINS (SBN 156934)
dan_robbins@mpaa.org
15301 Ventura Boulevard, Building E
Sherman Oaks, California 91403-3102
Tel: (818) 995-6600; Fax: (818) 285-4403

ROBERT H. ROTSTEIN (SBN 72452)
rxr@msk.com
ERIC J. GERMAN (SBN 224557)
ejg@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Tel: (310) 312-2000; Fax: (310) 312-3100

Attorneys for Motion Picture Studio Plaintiffs/
Declaratory Relief Claim Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REALNETWORKS, INC., et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>DVD COPY CONTROL ASSOCIATION, INC., et al.,<br><br>Defendants. | CASE NO. C 08-4548-MHP<br><br>**REPLY IN SUPPORT OF MOTION PICTURE STUDIOS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND TESTIMONY** ▮<br><br>Date: April 24, 2009<br>Time: 9:00 a.m.<br>Ctrm: 15 (Hon. Marilyn Hall Patel) |
| UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>REALNETWORKS, INC., et al.,<br><br>Defendants. | CASE NO. C 08-4719-MHP<br><br>**PUBLIC REDACTED VERSION** |

REPLY ISO STUDIOS' MOTION *IN LIMINE* RE ▮
CASE NOS. C08-4548-MHP/C08-4719-MHP

1    Real's arguments for excluding what plainly were ▮▮▮
2    are meritless:
3    <u>First</u>, Real paints a misleading picture that it had "more than a half dozen <u>business</u>
4    conversations with <u>the Studios</u> regarding RealDVD between mid-August [2008] and ▮▮▮
5    ▮." Opp. at 2:24-25 (emphasis added). In fact, Real had a discussion in ▮▮▮ with
6    ▮▮▮. Real then approached ▮▮▮
7    ▮▮▮
8    ▮▮▮
9    ▮▮▮
10   ▮▮▮
11   What Real is saying is that, because it contacted ▮▮▮ before
12   launching RealDVD – and ▮▮▮ before doing so – Real thereby
13   demonstrated its "good faith" "intent" "to explore mutual business opportunities, and address the
14   Studios' concerns." Opp. at 6:26-28. That is self-evidently wrong. If Real had been genuinely
15   seeking cooperation ▮▮▮ Real
16   would have instituted these discussions earlier than the eve of unveiling RealDVD. Real had
17   <u>numerous</u> discussions with multiple third parties going back more than ▮▮▮ before the
18   product launch. <u>See, e.g.</u>, Reply Declaration of Kelly M. Klaus, Ex. A ▮▮▮
19   ▮▮▮; <u>id.</u>, Ex. B
20   ▮▮▮. Indeed, the very third parties that Real approached made it clear that
21   Real should have been talking with the Studios. That is completely unsurprising, given that Real
22   was planning to release a product that circumvents the Studios' access- and copy-controls and
23   copies their copyrighted content. This was, for instance, ▮▮▮ reaction when Real
24   presented it with its plans for RealDVD:
25   ▮▮▮
26   ▮▮▮
27   ▮▮▮
28   <u>Id.</u>, Ex. C at 1.

- 1 -      REPLY ISO STUDIOS' MOTION <i>IN LIMINE</i> RE ▮▮▮
           CASE NOS. C08-4548-MHP/C08-4719-MHP

1        Second, Real's claim that the Studios "repeatedly" breached and waived any rights under

2   the Tolling Agreement, is factually false and, in any event, a complete non-sequitur. Opp. at 3:6.

3   ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

4   ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■[1]

5        Third, Real's claim that it only intends to introduce evidence of ■■■■■■■■■

6   ■■■■■■■■■ to show "Real's intent, good faith, and credibility," and ■■■■■■■■■■■■■■

7   ■■■■■■■■■■■■■■■■■■■■■■ Opp. at 6:1, 28, is wrong. The whole point of this self-serving

8   testimony is to try to rebut the Studios' showing on irreparable harm and balance of harms with

9   the pious claim that Real "really, truly" wants to deal with rent-rip-return. Such use is squarely

10  within the scope of ■■■■■. See *Seroctin Research & Tech, Inc. v. Unigen Pharm., Inc.*, 541 F.

11  Supp. 2d 1238, 1239 n.1 (D. Utah 2008) (granting a motion to strike evidence ■■■■■■■

12  ■■■■■■■■■■■■■■■■■■■■■■■■■■■■ was offered as proof on "any fact bearing on

13  [plaintiffs'] *prima facie* case for a preliminary injunction, including balancing the harms").

14       Fourth, and finally, Real continues to pretend that the "only" possible harm from

---

[1] Real's "breach/waiver" arguments are wrong. Real claims that it "never made any ... contention" in the Central District that the Studios had engaged in undue delay in seeking a TRO (something the Tolling Agreement precluded either side from arguing). Id. at 3:17-18 (underscoring Real's). This is Real's first paragraph to the Court in the Central District in opposition to a TRO:

> Plaintiffs filed a complaint and sought a TRO today seeking to disrupt Real's in-progress launch of RealDVD this morning. Plaintiffs have known since the first week of September that Real was planning to launch the RealDVD product by today, and as is evident from the volume and content of Plaintiffs' *ex parte* papers (comprising a 25-page brief and four inches of supporting documents), they have been preparing their papers for quite some time. Yet, they chose not to share those papers with Real until approximately 10:00 am this morning, in an apparent effort to block any possibility of a response from Real.

Williams Decl., Ex. G at 1:5-12. This argument – the first in Real's brief in response to a TRO motion – plainly is inviting the Court to find that the Studios delayed not just serving Real with papers but filing a motion for a TRO.

Real also claims that Studio counsel asked Elizabeth Coppinger ■■■■■■■■■■■■■■■■■■■■■■■■■■. In fact, Ms. Coppinger ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ See Williams Decl., Ex. B (Dunn. Depo.) at 192:21-193:4. Of course, by stopping the questioning of Studio witnesses – but sitting by while Ms. Coppinger and Mr. Wolpert offered ■■■■■■■■■■■■■■■■■■■ – Real has created a one-sided and misleading record ■■■■■■■■.

- 2 -   REPLY ISO STUDIOS' MOTION *IN LIMINE* RE ■■■■■■■
CASE NOS. C08-4548-MHP/C08-4719-MHP

1  RealDVD is the copying of rental discs. Real apparently hopes that if it says "rent-rip-return"
2  enough times, it can ignore the numerous other harms that its product causes. RealDVD allows
3  for the unlawful copying not only of rental discs, but also of discs that are purchased or borrowed
4  from a friend, neighbor or fellow dorm resident. Real's supposed "good faith" invitation to the
5  Studios to incur significant expense to mark their rental discs would do nothing to resolve these
6  harms, or the manifold other harms RealDVD inflicts on the Studios' established and developing
7  businesses. And, of course, if Real actually believed in "good faith" that marking rental discs was
8  some sort of panacea to solve the ills of its product, Real would have raised the idea with the
9  Studios more than just three days (or even three weeks) before releasing that product to the
10 public. Real's approach to the Studios was a transparent effort to paper a false record of
11 cooperation that the Studios cannot rebut without violating ▇▇▇ or the Tolling Agreement.
12     The Studios' motion should be granted.

13 DATED: April 24, 2009                MUNGER, TOLLES & OLSON LLP
14
15
16                                     By:      /s/ Kelly M. Klaus
                                                KELLY M. KLAUS
17
18
...
28

- 3 -                     REPLY ISO STUDIOS' MOTION *IN LIMINE* RE
                          ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
                          CASE NOS. C08-4548-MHP/C08-4719-MHP