

United States District Court
For the Northern District of California

1

2

3

4

5

6

7                  UNITED STATES DISTRICT COURT

8                NORTHERN DISTRICT OF CALIFORNIA

9
     REALNETWORKS, INC., a Washington              No. C 08-04548 MHP
10   Corporation; and REALNETWORKS HOME
     ENTERTAINMENT, INC., a Delaware
11   Corporation

12              Plaintiffs and Counter-
                defendants,
13
        v.
14
     DVD COPY CONTROL ASSOCIATION,
15   INC., a Delaware nonprofit corporation,
     DISNEY ENTERPRISES, INC., a Delaware
16   corporation; PARAMOUNT PICTURES
     CORP., a Delaware corporation; SONY
17   PICTURES ENTER., INC., a Delaware
     corporation; TWENTIETH CENTURY FOX
18   FILM CORP., a Delaware corporation; NBC
     UNIVERSAL, INC., a Delaware corporation;
19   WARNER BROS. ENTER. INC., a Delaware
     corporation; and VIACOM, Inc., a Delaware
20   Corporation,

21              Defendants and Counter-
                complainants.
22   _____/

23   UNIVERSAL CITY STUDIOS                        No. C 08-04719 MHP
     PRODUCTIONS L.L.L.P., UNIVERSAL
24   CITY STUDIOS L.L.L.P., PARAMOUNT
     PICTURES CORPORATION, TWENTIETH
25   CENTURY FOX FILM CORP., SONY
     PICTURES TELEVISION INC., COLUMBIA
26   PICTURES INDUSTRIES, INC., SONY
     PICTURES ENTERTAINMENT INC.,
27   DISNEY ENTERPRISES, INC., WALT
     DISNEY PICTURES and WARNER BROS.
28   ENTER. INC.,

                Plaintiffs,

| | |
|---|---|
| v. | **MEMORANDUM & ORDER** |
| REALNETWORKS, INC., a Washington Corporation; and REALNETWORKS HOME ENTERTAINMENT, INC., a Delaware Corporation | **Re: Plaintiffs' Motion to Dismiss DVD CCA's Second Counterclaim; Plaintiffs' Motion to Preclude Claims Based on Non-CSS Technologies; Defendants' Motion for Sanctions for Spoliation of Evidence.** |
| Defendants. | |

Plaintiffs RealNetworks, Inc. and RealNetworks Home Entertainment, Inc. (together, "Real") seek a declaratory judgment that they have neither breached a license agreement with DVD Copy Control Association, Inc. ("DVD CCA") nor violated the anti-circumvention provisions of the Digital Millennium Copyright Act, 17 U.S.C. sections 1201, et seq. ("DMCA"). Now before the court are three motions: (1) Real's motions to dismiss DVD CCA's second counter-claim for breach of the implied covenant of good faith and fair dealing; and (2) Real's motion to preclude claims based on non-Content Scramble System ("non-CSS") technologies or, alternatively, to continue the preliminary injunction hearing, and for the appointment of a discovery referee; and (3) Defendants' motion for sanctions for spoliation of evidence. Having considered the parties' submissions and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

RealNetworks, Inc. is a company incorporated and based in Seattle, Washington, that develops, manufactures and sells platforms for the delivery of digital media. Amended Complaint for Declaratory Relief, Docket No. 62, ¶ 10, Exh. A ("Amended Complaint").[1] RealNetworks Home Entertainment, Inc. is a subsidiary of RealNetworks, Inc. and is incorporated in Delaware, with its principal place of business in Seattle, Washington. Id. ¶ 11.

Real sells and distributes a software product known as RealDVD. Id. ¶ 2. The RealDVD product has a variety of different functions, such as playing back DVDs placed into the computer's DVD drive, looking up information about the DVD from Internet databases, providing links to various information websites relevant to the chosen DVD and storing an image of the copy-protected DVD to a computer hard drive for safekeeping and later playback purposes. Id. Moreover, the

*United States District Court*
*For the Northern District of California*

2

**United States District Court**
For the Northern District of California

1    RealDVD allows users to create personal copies of DVDs on a computer's hard drive.  Id. ¶ 24.

2    Real also has a new product called "New Platform" or "Facet."  Id. ¶ 2.

3          Columbia Pictures Industries, Inc., Disney Enterprises, Inc., Paramount Pictures Corp., Sony

4    Pictures Entertainment, Inc., Sony Pictures Television, Inc., Twentieth Century Fox Film Corp.,

5    NBC Universal, Inc., Walt Disney Pictures, Warner Bros. Entertainment, Inc., Universal City

6    Studios Productions L.L.L.P., Universal City Studios L.L.P. and Viacom, Inc. (collectively, "Studio

7    defendants") are motion picture companies that are members of DVD CCA, a not-for-profit

8    corporation that consists of companies in the motion picture, consumer electronics and computer

9    industries.  Id. ¶ 4.  DVD CCA licenses Content Scramble System ("CSS") technology to

10   manufacturers of devices and software pursuant to a standard license agreement ("CSS License

11   Agreement").  Id.

12         CSS technology scrambles the DVD content so that it cannot be copied or played coherently

13   without first being decrypted through a process employing a set of decryption keys.  Id. ¶ 20.

14   Studio defendants use CSS technology to encrypt the content on their copyrighted DVDs.  Id.  The

15   CSS License Agreement imposes restrictions on the use of CSS technology, according to CSS

16   specifications and provides a licensee with decryption keys and the authorized methods and

17   processes for decryption.  Id. ¶ 21.  DVD CCA has a strong interest in protecting DVD content and

18   preventing unauthorized copying of the content providers' copyrighted materials.  See Counter-

19   Complaint by Disney Enterprises, Inc., Paramount Pictures Corporation, Sony Pictures

20   Entertainment Inc., Twentieth Century Fox Film Corporation, and Warner Bros. Entertainment Inc.,

21   Docket No. 15, ("Counter-Complaint") ¶¶ 24, 26-27.

22         On August 13, 2007, DVD CCA licensed its CSS technology to Real pursuant to a CSS

23   License Agreement.  Amended Complaint ¶ 23; see also Docket No. 2, Exh. 1 to Complaint (CSS

24   License Agreement).  Under this license, Real obtained the CSS technology with authorization to

25   build a product to play DVDs.  Approximately a year later, Real was contacted by various studios

26   objecting to the impending release of the RealDVD product, expressing concerns that RealDVD

27   violated terms of the CSS License Agreement by making playable, permanent copies of DVDs.

28

United States District Court

For the Northern District of California

1    Shortly before September 8, 2008 Studio defendants and DVD CCA (together, "defendants")

2    formally advised Real that it was in violation of the CSS License Agreement, because Real's

3    RealDVD product allows digital-to-digital copying of DVD content in a personal computer

4    environment.  DVD CCA also advised Real that the RealDVD product violates the anti-

5    circumvention provisions of the DMCA.  Based on these communications, Real decided to postpone

6    the RealDVD product launch from September 8, 2008 to later that month.  See Lang Dec. ISO

7    Real's Opposition to Def.'s Motion for TRO, Docket No. 28, ¶ 7.  On September 9, 2008, following

8    negotiations, Real and Studio defendants entered into a tolling/standstill agreement regarding

9    RealDVD.  On September 25, 2008, counsel for defendants sent a letter to Real informing it that

10    Studio defendants intended to file a lawsuit against Real and seek injunctive relief.  Lane Dec. ISO

11    Pls.' Opp. to Mot. for Sanctions for Spoliation, Docket No. 181, Exh. F ("First Lane Dec.").

12    On September 30, 2008, Real filed an action for declaratory judgment pursuant to 28 U.S.C.

13    sections 2201 and 2202 against defendants, seeking a declaratory judgment that, in marketing and

14    selling its RealDVD product, Real did not breach the CSS License Agreement and did not violate

15    the anti-circumvention provisions of the DMCA.  See Complaint, Docket No. 1.  That same day,

16    Real released and made the RealDVD product available for download.  Lang Dec., Docket No. 28, ¶

17    11.  Also that day, some of the Studio defendants (along with Universal City Studios Productions

18    L.L.L.P., Universal City 23 Studios L.L.L.P., Walt Disney Pictures, Sony Pictures Television Inc.,

19    and Columbia Pictures Industries, Inc.) filed an action in the Central District of California, alleging

20    that RealDVD did, in fact, breach the CSS License Agreement and violate the anti-circumvention

21    measures of the DMCA. On October 14, 2008, that suit was formally transferred to the Northern

22    District of California, and shortly thereafter related to Real's declaratory judgment action.  See

23    Order Relating Cases, Docket No. 52.

24    Following an October 3, 2008 hearing, the court issued Studio defendants' requested

25    Temporary Restraining Order to restrain and enjoin Real from further distribution of the RealDVD

26    product.  See Docket No. 43. Minute Entry: Temporary Restraining Order Hearing (filed under seal).

27    That same day, Studio defendants filed a counter-complaint against Real alleging DMCA violations

28    and breach of contract of the CSS license agreement, brought as a beneficiary claim by certain of the

United States District Court

For the Northern District of California

Studio defendants as Eligible Content Providers and third-party beneficiaries with standing to sue under the agreement.  See Counter-Complaint, ¶¶ 34-50.

On October 6, 2008, Real's legal department e-mailed a document preservation memorandum to members of the RealDVD team, instructing recipients to "preserve all documents and electronic and hard copy data from July 2007 to the present relating to any aspect of RealDVD, the CSS License Agreement and the DVD CCA."  Godfrey Dec., Docket No. 160, Exh. A (copy of e-mail).  On October 8, 2008, Real's Chief Executive Officer Rob Glaser sent an e-mail instructing employees to "retain all emails and documents relating to RealDVD."  Godfrey Dec., ¶ 3.

On November 11, 2008, DVD CCA filed a motion for a preliminary injunction to join the Studio defendants to enjoin Real from producing, selling, offering, marketing or otherwise trafficking its RealDVD product.  See Docket No. 61.  That same day, Real filed a motion to amend its complaint to add claims for a second Real product that "shares many of the functionalities of RealDVD, including DVD playback from both a physical drive and from a secure digitally-stored copy of the DVD, i.e., Facet (the New Platform), so that both products could be adjudicated at once. See Docket No. 62 at  2:18-20.

On December 22, 2008, the court granted Real's motion to amend its complaint to include the Facet product.  See Docket No. 92 (Minute Entry) and Amended Complaint ¶¶ 1-2.  Real currently seeks a judgment declaring that the CSS License Agreement permits Real to manufacture and offer for sale the RealDVD (which is also referred to as Vegas) and Facet products and that Real has not violated the DMCA.  Id. ¶ 37.  Real asserts that the RealDVD and Facet products preserve the CSS encryption and enhance the original protection by incorporating an additional layer of protection at a level beyond what is required by the CSS License Agreement.  Id. ¶ 34.  Real argues that the RealDVD product is neither primarily designed nor produced for the purpose of circumventing a technological measure that effectively controls access to a copyrighted work and has other commercially significant purposes.  Id. ¶ 36.  Real also notified defendants that the Facet product would be brought to market shortly.  Id. ¶ 25.

DVD CCA subsequently filed counterclaims against Real for breach of contract and breach of the implied covenant of good faith and fair dealing.  See DVD CCA Answer to Amended

United States District Court

For the Northern District of California

1   Complaint, Docket No. 96.  DVD CCA alleges that the CSS License Agreement does not permit

2   Real to manufacture and/or offer for sale the RealDVD and Facet products, and further, that these

3   products allow for circumvention of the protections that the CSS-protected DVDs embody.  Studio

4   defendants have also alleged that RealDVD bypasses the CSS protection measures by making a

5   complete, bit-for-bit copy of the entire contents of a CSS-protected DVD onto either a local

6   computer hard drive or a connected external USB hard drive.  See Counter-Complaint, ¶ 30.

7       Also at the December 22, 2008 hearing, the court permitted defendants to introduce claims

8   that Real's products circumvent non-CSS technologies, named "ARccOS" and "Ripguard," in the

9   forthcoming preliminary injunction proceedings and instructed parties to confer regarding discovery

10   relating to these non-CSS technologies.  See Lane Dec. ISO Pls.' and Counterclaim Defs.' Mot. to

11   Shorten Time and Mot. to Preclude or Continue, Docket No. 105, ¶ 4 ("Second Lane Dec."); see also

12   Transcript of Proceedings held on February 3, 2009, Docket No. 125, at 4:18-5:6 ("February

13   Transcript").  ARccOS and Ripguard are technologies that work in conjunction with CSS technology

14   to prevent ripping of DVDs.  These technologies were developed by independent companies,

15   Macrovision and Sony DADC, and sold to Studio defendants.  See February Transcript at 4:18-5:6.

16       On January 16, 2009, Real filed a motion to dismiss DVD CCA's second counterclaim for

17   breach of the implied covenant of good faith and fair dealing, alleging that in adhesion contracts, of

18   which the CSS Licensing Agreement is one, it is improper to read in implied terms.  Defendants

19   oppose, arguing that it is (1) not an adhesion contract, and (2) even if it was, the implied covenant of

20   good faith and fair dealing still applies.  On January 26, 2009, plaintiffs filed a motion to preclude

21   claims based on non-CSS technology at the preliminary injunction hearing, alleging inadequate

22   discovery review time.

23       On February 25, 2009, Studio defendants filed a motion for sanctions for Real's alleged

24   spoliation of evidence.  On March 2, 2009, DVD CCA joined this motion.  Defendants allege that

25   Real has failed to take adequate steps to preserve evidence from the April 2007 inception of the

26   disputed Facet product, and spoliated key evidence, specifically notebooks of Senior Program

27   Manager Nicole Hamilton on the Facet project and an ARccOS.zip file.  Real opposes, arguing that

28   (1) there was no duty to maintain documents until at least the beginning of negotiations between the

parties in September 2008, and shortly thereafter, in October 2008, Real instituted a document hold;

(2) that Real was unaware of the existence of these notebooks, because Hamilton had failed to turn

them over when Hamilton's supervisor had previously asked for all Facet-related materials; and (3)

contrary to defendants' argument, Real management issued no orders to destroy related evidence.

Real also subsequently produced the disputed ARccOS.zip file on March 4, 2009.

On March 20, 2009, one business day before the oral hearing, Real withdrew its motion to

dismiss DVD CCA's second counterclaim, alleging it will raise the arguments at the upcoming

preliminary injunction hearing.  The court nonetheless addresses this motion, for the benefit of the

parties moving forward, along with the other two pending motions herein.  The court turns first to

the two motions to dismiss/preclude claims.

LEGAL STANDARD

I.      Motion to Dismiss (Rule 12(b)(6))

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

sufficiency of a claim."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Because Rule

12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court

may [typically] look only at the face of the complaint to decide a motion to dismiss."  Van Buskirk

v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).  A motion to dismiss should be

granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face."

Bell Atl. Corp. v. Twombly, 550 U.S. 544, ----, 127 S. Ct. 1955, 1974 (2007).  Dismissal can be

based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

Allegations of material fact are taken as true and construed in the light most favorable to the

nonmoving party.  Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  The court

need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted

deductions of fact or unreasonable inferences.  See Sprewell v. Golden State Warriors,

266 F.3d 979, 988 (9th Cir. 2001); Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir.

1994).

**II.**     Sanctions for Spoliation of Evidence

District courts may impose sanctions as part of their inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991); see also Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.2d 363, 368 (9th Cir. 1992) (excluding evidence as a sanction for spoliation). This power includes the "broad discretion to make . . . evidentiary rulings conducive to the conduct of a fair and orderly trial." Id. at 368, quoting Campbell Indus. v. M/V Gemini, 619 F.2d 24, 27 (9th Cir. 1980).

District courts' inherent power to sanction may be invoked in response to destruction of evidence. If a party breaches its duty to preserve evidence, the opposing party may move the court to sanction the party destroying evidence. See Unigard, 982 F.2d at 365.

Courts may sanction parties responsible for spoliation of evidence in three ways. First, a court can instruct the jury that it may draw an inference adverse to the party or witness responsible for destroying the evidence. See Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993); Akiona v. United States, 938 F.2d 158, 161 (9th Cir. 1991). Second, a court can exclude witness testimony proffered by the party responsible for destroying the evidence and based on the destroyed evidence. See, e.g., Glover, 6 F.3d at 1329; Unigard, 982 F.2d at 368-69. Finally, a court may dismiss the claim of the party responsible for destroying the evidence. See Allstate Ins. Co. v. Sunbeam Corp., 53 F.3d 804, 806-07 (7th Cir. 1995); see also Chambers, 501 U.S. at 45 ("outright dismissal . . . is a particularly severe sanction, yet is within the court's discretion"); Alexander v. Nat'l Farmers Org., 687 F.2d 1173 (8th Cir. 1982) (noting dismissal of claims is a severe sanction and may be warranted for "outrageous" destruction of evidence).

A party's destruction of evidence need not be in "bad faith" to warrant a court's imposition of sanctions. Glover, 6 F.3d at 1329; Unigard, 982 F.2d at 368 n.2. District courts may impose sanctions against a party that merely had notice that the destroyed evidence was potentially relevant to litigation. See Glover, 6 F.3d at 1329; Akiona, 938 F.2d at 161; cf. Unigard, 982 F.2d at 368 n.2 (sanctions may be imposed for "willfulness or fault by the offending party"). However, a party's motive or degree of fault in destroying evidence is relevant to what sanction, if any, is imposed. Baliotis v. McNeil, 870 F. Supp. 1285, 1291 (M.D. Pa. 1994); see also Schmid v. Milwaukee Elec.

United States District Court
For the Northern District of California

8

United States District Court

For the Northern District of California

1   Tool Corp., 13 F.3d 76, 79 (3rd Cir. 1994) (courts should choose "the least onerous sanction

2   corresponding to the willfulness of the destructive act and the prejudice suffered by the victim").

3        As soon as a potential claim is identified, a litigant is under a duty to preserve evidence

4   which it knows or reasonably should know is relevant to the action.  Nat'l Ass'n of Radiation

5   Survivors v. Turnage, 115 F.R.D. 543, 556-57 (N.D. Cal. 1987) (Patel, J.); Baliotis, 870 F. Supp. at

6   1290; see also Unigard, 982 F.2d at 365, 369 (upholding the district court's exclusion of plaintiff's

7   expert testimony based on evidence plaintiff destroyed two years before filing suit).  The future

8   litigation must be "probable," which has been held to mean "more than a possibility."  Hynix

9   Semiconductor Inc. v. Rambus, Inc., 591 F. Supp. 2d 1038, 1061 (N.D. Cal. 2006) (Whyte, J.).  The

10  duty to preserve evidence also attaches when "a party should have known that the evidence may be

11  relevant to future litigation."  In re Napster, Inc. Copyright Litig., 462 F. Supp. 2d 1060, 1068 (N.D.

12  Cal. 2006), quoting Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).

13

14  DISCUSSION

15  I.    Real's Motion to Dismiss DVD CCA's Second Counterclaim

16       Real contends that DVD CCA's second counterclaim does not assert a claim as a matter of

17  law.  DVD CCA asserts that Real breached the implied covenant of good faith and fair dealing

18  because it created the RealDVD and Facet products to copy CSS-protected DVD content to a

19  computer hard drive for later playback without the DVD, which frustrates the purpose of the CSS

20  License Agreement.

21       To support its contention, Real argues that the CSS License Agreement was a contract of

22  adhesion and should be interpreted to comport with the adhering party's, i.e., Real's, reasonable

23  interpretation.  Real also argues that defendants are using the implied covenant of good faith and fair

24  dealing to supplement terms to the contract, and "should not benefit . . . from allegedly implied

25  terms it did not explicitly include into the standardized contract [DVD CCA] drafted."  Pls. Mot. at

26  2:20-21.

27       A covenant of good faith and fair dealing is *implied* in law in every contract and "exists

28  merely to prevent one contracting party from unfairly frustrating the other party's right to receive the

9

benefits of the Agreement actually made." <u>Guz v. Bechtel Nat'l Inc.</u>, 24 Cal. 4th 317, 349 (2000). As the name of the common-law claim — *implied* covenant of good faith and fair dealing — makes explicitly clear, the terms need only be *implied*, not, as plaintiffs suggest, "explicitly include[d] into the standardized contract."  For the court to find, even in putative adhesion contracts, that a licensor cannot plead a breach of the implied covenant of good faith and fair dealing because the licensor failed to explicitly include terminology directed at the licensee's allegedly bad faith actions, would completely eviscerate the protection of this common-law claim.  Furthermore, the court need not — and should not — decide the merits of Real's "adhesion contract" claim at this point.  Ruling at the pleading stage on whether or not the CSS Licensing Agreement is an adhesion contract is inappropriate.  <u>See</u> <u>Woodard v. S. Cal. Permanente Med. Group</u>, 171 Cal. App. 3d 656, 677 (1985) ("Whether a contract is one of adhesion generally would present a mixed question of law and fact."). Perhaps Real recognized this fact and so chose to withdraw its motion at this stage.

The purpose of the CSS Licensing Agreement is to "prevent casual consumers from making unauthorized copies of the DVD content."  CSS Licensing Agreement at Recital A.  DVD CCA, at this stage, has adequately pled that there was a contract, that its purpose was to prevent unauthorized copying of DVD content, and that Real, through the use of its product allowing copying of DVDs to hard drives, allegedly breaches the implied covenant of good faith and fair dealing.  DVD CCA's second counter-claim will be duly considered on the merits at the forthcoming preliminary injunction hearing.

II.   Real's Motion to Preclude Claims Based on Non-CSS Technologies

Real seeks to preclude the adjudication of whether it circumvents the non-CSS technologies, ARccOS and Ripguard, from the preliminary injunction proceedings previously scheduled for March 3, 2009, because Real alleges it has been deprived of complete discovery of basic technological information regarding ARccOS and Ripguard technologies.  Real argues that between the sheer volume of documents received, as well as being precluded from using its experts to examine the documents due to the protective order placed on the documents, Real will be inadequately prepared for the preliminary injunction hearing.  Second Lane Dec. ¶ 11-12.  Alternatively, Real requests a

1  continuance for the hearing to allow it to more adequately review the documents and prepare, and

2  also requests appointment of a magistrate judge as a discovery referee.

3       The court previously moved the preliminary injunction hearing from its earlier date of March

4  3, 2009 to April 1, 2009.  <u>See</u> Minutes Entry from February 3, 2009 Discovery Hearing.  Real raised

5  this very issue during that telephone conference, and the court decided that a postponement of the

6  hearing would allow Real several additional weeks to prepare.  Plaintiffs' motion to preclude is

7  hereby **DENIED** in light of the further continued preliminary injunction hearing date, now

8  scheduled to begin on April 24, 2009.

9       Finally, the court turns to the Studio defendants' motion, which has been joined by DVD

10  CCA, for sanctions based on spoliation of evidence.

11  III.    Defendants' Motion for Sanctions for Spoliation of Evidence

12      Defendants assert that Real has failed to take adequate steps to preserve evidence and has

13  spoliated key evidence during the course of this litigation.  Specifically, defendants allege that Real

14  employees were fully knowledgeable about the potential for litigation since early 2007, and

15  therefore carefully crafted any potentially discoverable document in a manner helpful to Real's

16  litigation by using specific words and avoiding certain word phrases.

17      Defendants base their motion on the deposition testimony of Real's former Senior Program

18  Manager Nicole Hamilton, Strategic Advisors Todd Basche and Richard Wolpert, and other Real

19  employees.  <u>See</u> Lynch Dec. ISO Motion for Sanctions for Spoliation of Evidence, Docket No. 130,

20  Exhs. 1-7 ("Lynch Dec.").  Hamilton, who was employed by Real until one week prior to the start of

21  this litigation, testified that she was told by her boss, Phil Barrett, to delete emails related to

22  ARccOS and Ripguard technologies on several occasions. <u>Id.</u>, Exh. 6 at 39:23-41:20.  Defendants

23  also learned about Hamilton's notebooks, which she stated were handed over to Real at the time of

24  her termination and may contain information regarding the Facet technology, but have not been

25  produced in discovery.  <u>Id.</u> at 150:4-25, 21 & 22.

26      Wolpert stated in his deposition that his own "standard practice" was to keep documents that

27  he thought were relevant that he may need for his recollection in the future, but also to delete "tons

28  of stuff" every day.  Lynch Dec., Exh. 7 at 157:3-9.          Basche, a consultant for Real on the

RealDVD project, was never asked to preserve his documents and deleted everything he had related to RealDVD project in April 2008, when his consulting arrangement ended, as was his customary practice.[2]  Basche Dec., Docket No. 156, ¶ 3.

Based on these depositions, defendants allege that Real failed to take steps to preserve evidence, including: (1) failing to instruct employees to preserve evidence; (2) possibly destroying Hamilton's notebooks for the Facet technology; (3) routinely instructing employees to delete possibly relevant emails; (4) failing to produce ARccOS-related archive files; and (5) allowing Strategic Advisors Basche and Wolpert on the RealDVD project to destroy project-related documentation.  Real has also refused to permit redeposition of Barrett, the supervisor allegedly responsible for the destruction orders.

Defendants urge that appropriate sanctions are warranted in this situation.  Defendants request six different sanctions: (1) a preservation order for all existing and future documents relating to RealDVD, CSS, ARccOS or Ripguard, including backup tapes; (2) precluding Real from impeaching or controverting Hamilton's testimony on five areas which the controverted notebooks purportedly cover; (3) inferring that Real knowingly purchased technologies to circumvent ARccOS and Ripguard; (4) precluding Real from offering testimony from Basche and Wolpert; (5) requiring Real to produce Barrett for a deposition on spoliation and Facet; and (6) requiring Real to pay monetary sanctions as appropriate.

## A.   Preservation Order

### (i)   Pre-litigation Preservation of Evidence

Defendants argue that Real knew since early 2007 that litigation over RealDVD was inevitable and that it failed to preserve documents and data since that time.  Defendants assert that the following indicates Real's knowledge of probable litigation in early 2007: (1) Real's April 2007 presentation describes the "DMCA" as a "risk" to RealDVD; (2) Real's July 2007 presentation discusses the "threat of a lawsuit;" (3) Hamilton testified that she was told within hours of being hired in July 2007 that there would be litigation over RealDVD and that the idea of litigation over RealDVD was drummed into the team on a daily basis; and (4) Hamilton testified that there were

United States District Court

For the Northern District of California

1  concerns about litigation over Facet and with DVD CCA.  See Lynch Dec., Exhs. 11, 13, 16 & 6 at

2  17:18-23; 27:3-17.

3       Defendants rely on Real's April 2007 presentation, which has a bullet point slide with the

4  title "DVD Ripping Issues" and subtitle "Risks."  Lynch Dec., Exh. 13.  There are bullet points for

5  "DVD CCA issues and tactics" and "DMCA issues."  Id.  Real's July 2007 presentation has a slide

6  that has a box labeled "threats" and a bullet point stating "[l]egal action by Hollywood on basis of

7  copyright, not DVD CCA license."  Lynch Dec., Exh. 16.

8       Given that Real entered into the CSS License Agreement in August 2007, it is not clear

9  whether the slide from the April 2007 presentation indicates knowledge of probable litigation with

10 DVD CCA or a possible discussion of plans to license CSS technology from DVD CCA.  The July

11 2007 presentation merely references a theoretical threat of litigation "by Hollywood" and not an

12 actual threat by any particular party.  Moreover, it indicates that Real did not believe that it would be

13 sued based on the DVD CCA license, given that it was a presentation created before the August

14 2007 CSS License Agreement.  Thus, these presentation slides are not strong indicators of

15 knowledge of probable litigation with defendants.  See Hynix, 591 F. Supp. 2d at 1061.

16      Defendants also assert that there were discussions among employees about litigation

17 concerning RealDVD during Hamilton's employment.  Defendants argue that according to

18 Hamilton, Barrett instructed employees to use certain words in emails or documents because there

19 may be "litigation one day."  Lynch Dec., Exh. 6 at 101:18-102:1.  For instance, Barrett stated in an

20 email that ARccOS was not encryption and that he wouldn't call it copy protection.  Lynch Dec.,

21 Exh. 12.  Barrett acknowledged that he instructed members of the Facet team to minimize use of

22 words like "ripping" because the term may be misconstrued.  Barrett Dec. ISO Pls. Opp. to Mot. for

23 Sanctions for Spoliation, Docket No. 168, ¶ 5.

24      Real argues that even if a few employees recognized that litigation concerning a new product

25 was a possibility—a possibility that exists with many new products—Real was under no obligation

26 to preserve all documentation until there was an actual threat or notice of a lawsuit.  The court

27 agrees with Real that a general apprehension of lawsuits does not create a duty to preserve all

28

13

1    documentation related to RealDVD.  The cited statements do not rise to a probability that the instant

2    litigation by or against Studio defendants would result.

3         A general concern over litigation does not trigger a duty to preserve evidence.  Real had no

4    duty to preserve relevant documents or evidence until a potential claim was identified or future

5    litigation was probable.  See Turnage, 115 F.R.D. at 556-57; Baliotis, 870 F. Supp. at 1290; Hynix,

6    591 F. Supp. 2d at 1061.  Real participated in discussions about RealDVD with Studio defendants in

7    August 2008, but Real asserts that it was negotiating in good faith and that none of the

8    representatives from the studios threatened litigation during those meetings.  See Coppinger Dec.,

9    Docket No. 184, ¶ 3.  However, shortly before its September 8, 2008 planned announcement of

10   RealDVD, Real was on notice that litigation was probable and a potential claim was identifiable

11   because various studios objected to RealDVD's release and expressed concern that RealDVD

12   violated the CSS License Agreement.  As a result of the objections by the studios, Real entered into

13   a tolling/standstill agreement concerning RealDVD.  Real was also given actual notice of litigation

14   on September 25, 2008, which created a duty to ensure preservation of its relevant documents and

15   data.

16        Thus, beginning in early September 2008, Real knew that there was probable litigation and

17   had a duty to preserve all documents and evidence related to this action.  The court finds that Real

18   was not under a duty to preserve evidence in anticipation of litigation prior to September 2008.

19            (ii)    Willful Destruction of Documents

20        Based mostly on Hamilton's deposition testimony, defendants argue that (1) Real has not

21   preserved or produced Hamilton's notebooks, (2) Real's employees or team members destroyed

22   documents or emails and (3) Real has not produced the arccos.zip file purchased from overseas

23   hackers.  The court examines each in turn.

24        On October 6, 2008, Real distributed an email to members of the Facet and Vegas RealDVD

25   teams, as well as other employees, consultants and officers who may have documents and materials

26   relevant to the litigation, instructing them to preserve documents and hard copy data from July 2007

27   to the present relating to any aspect of RealDVD, the CSS License Agreement and the DVD CCA.

28   Godfrey Dec., Exh. A.  The memorandum states:

14

Please do not destroy, discard, alter or erase any document or computerized information generated on or after July 1, 2007 to the present relating to: (1) RealDVD, including the development, marketing and distribution of RealDVD; (2) the CSS License Agreement and Real's activities under that Agreement, and (3) the DVD CCA, including any communications with the DVD CCA.

Id.

It further states that the retention policy applies to all electronic and hard copy information, including letters, memos, reports, handwritten notes, e-mails, computer records and programs, data stored on hard drives and backup tapes. Id.

Real's employees have maintained that they have not deleted emails related to RealDVD in ordinary business practice or since this litigation hold instruction. See, e.g., Barrett Dec. ¶ 4; Moore Dec. ¶ 4; Wood Dec. ¶ 4; Coppinger Dec. ¶ 5. There is an obvious gap between early September 2008 and October 6, 2008, where Real did not have a preservation policy in place for documents or data related to RealDVD or DVD CCA, although they were on notice of this action against them. However, defendants have not alleged that Real willfully destroyed any documents or data relating to RealDVD or this litigation during that period of time. Defendants do allege, however, that Real may have destroyed documents or data relating to Facet, given that the litigation hold in October did not mention the preservation of documents related to Facet. Real alleges, however, that the term "RealDVD" includes all RealDVD products, including Facet. The litigation hold notice went to members of both the Facet and Vegas teams, as well as other employees. Godfrey Dec. ¶ 2. Moreover, on oral argument, Real's Senior Vice President and General Counsel Robert Kimball stated that the custom at Real was to refer to all RealDVD technologies as "RealDVD" and that those working at Real would know that included both the Vegas and Facet products. The depositions of Real employees seem to be consistent with this assertion.

The court finds this preservation policy is sufficient for comprehensive preservation of evidence going forward, with regard to RealDVD, which includes both Vegas and Facet documents. To ensure the preservation of relevant documents by Real going forward, the court hereby instructs the parties to negotiate and file a stipulated proposed Preservation Order for all existing and future documents relating to all products at issue or likely to be at issue in this litigation, specifically at this time Vegas, Facet, and any other RealDVD products, as well as any items relating to CSS, ARccOS and Ripguard, including backup tapes.

15

United States District Court

For the Northern District of California

1    With regard to Hamilton's notebooks, defendants contend that Real has not produced three or

2  four of Hamilton's notebooks, which were handed to Real's officers, DeWhitt and Mathew, upon

3  Hamilton's termination.  Plaintiffs contend that Hamilton only handed over a single notebook which

4  was placed in her locked office for three months after her termination and that they do not know

5  what happened to the notebook.  DeWhitt Dec. ¶ 7; Mathew Dec. ¶ 6.  Plaintiffs also argue that they

6  cannot locate Hamilton's notebooks, did not destroy her notebooks and that her notes were

7  unintelligible or unreadable to others.  DeWhitt Dec. ¶ 10; Mathew Dec. ¶ 6; First Lane Dec., Exh. G

8  at 86:6-9.  They also believe that it does not contain material related to Facet because Hamilton had

9  not worked on the Facet project for three months prior to her termination, i.e., since June 2008.

10  DeWhitt Dec. ¶ 9; Mathew Dec. ¶ 6.

11    Since Hamilton was terminated less than one week prior to this action, which was within the

12  time period when Real was on notice of probable litigation from Studio defendants, Real was

13  required to preserve any of her relevant work documents.  See In re Napster, Inc. Copyright Litig.,

14  462 F. Supp. 2d at 1068.  Even though Hamilton had not worked on the RealDVD project since June

15  2008, Real should have known at the time of her termination that her notebooks from the period of

16  time in which she worked on RealDVD were relevant to this action.  There is no indication that

17  these notebooks were willfully destroyed by Real, and they may have been inadvertently lost in the

18  course of termination of an employee.  However, Real failed to preserve the notebooks after

19  Hamilton's termination, which was during the time they knew about litigation with Studio

20  defendants.  Even if it was a single notebook with little relation to the Facet product, as plaintiffs

21  contend, this notebook should have been preserved for possible relevance to this litigation.  Id.

22    Thus, sanctions for failure to preserve Hamilton's notebooks are appropriate.  Pursuant to the

23  court's inherent power to impose sanctions, the court GRANTS sanctions against Real for failing to

24  preserve Hamilton's notebooks in relation to this litigation.  See Chambers, 501 U.S. at 43.

25    Next, defendants assert that Real's Senior Strategic Advisor Barrett instructed RealDVD

26  team members to destroy emails.  There is a discrepancy between what Hamilton has testified in

27  regards to instructions to destroy documents or emails and what Real employees have declared in

28  regards to their regular practice and in relation to this action.  Hamilton has testified that Barrett

16

United States District Court

For the Northern District of California

1    instructed her to delete emails, but Barrett stated that he never told anyone to delete emails related to

2    this action, either before September 30, 2008, or thereafter.  Lynch Dec., Exh. 6 at 39:23-41:20;

3    Barrett Dec. ¶ 5.  However, there have been no allegations that documents or emails were

4    specifically destroyed or deleted from early September 2008 until October 6, 2008.  Thus, this

5    discrepancy is therefore of no moment because any practices of deleting emails were stopped under

6    the preservation memo sent in October 2008.

7         Defendants also assert that Wolpert and Basche deleted documents or emails.  Wolpert's

8    statement that he deleted "tons of stuff" every day was vague as to what he had deleted, and it was

9    not clarified or questioned further by the deposition attorney.  Lynch Dec., Exh. 7 at 157:3-9.

10   Wolpert has since testified in a post-deposition declaration that he did not mean that he deleted

11   emails or documents he received or generated in connection with his work on either Vegas or Facet

12   technology.  Wolpert Dec., Docket No. 163, ¶ 7.  Wolpert stated in his declaration that he saved all

13   emails related to his work on Vegas and Facet and all Vegas and Facet-related non-email files on his

14   hard drive and that he had never been told to delete any email by anyone at Real.  Id. ¶¶ 3 & 6.

15   Basche stated that he deleted everything he had related to the RealDVD project in April 2008, but

16   has subsequently located a back-up drive (from his home residence) with a substantial number of the

17   non-email documents and provided these documents to Real.  Basche Dec. ¶ 4.  Any documents that

18   Basche may have destroyed were lost before Real had a duty to preserve them in early September

19   2008.

20        Real's employees also state that they were never instructed to delete documents or emails

21   related to RealDVD.  Barrett Dec. ¶ 5; Wood Dec. ¶ 5; Buzzard Dec. ¶ 4; Coppinger Dec. ¶ 5;

22   Albertson Dec. ¶ 4.  There is no other indication that Real's employees have willfully disobeyed the

23   preservation instructions implemented since October 6, 2008.  Thus, it is difficult to conclude that

24   Real's employees or team members willfully destroyed evidence related to this action.

25        Lastly, defendants argue that sanctions are appropriate because Real did not initially produce

26   its arccos.zip file, which was obtained by Jeff Chasen, head of the RealDVD project, from the CEO

27   of Rocket Division Software.  Lynch Dec., Exhs. 14 & 15.  Real first alleged that the file was

28   corrupted by a virus, but then produced the arccos.zip file to Studio defendants on March 4, 2009.

17

United States District Court

For the Northern District of California

1  Defendants argue that sanctions are still necessary because Real prevented the production of the file,

2  even though it was not corrupted and contained highly relevant evidence.

3        Since the file has been subsequently produced by Real, defendants have not shown that they

4  were seriously prejudiced by the delay, particularly given the multiple continuances of deadlines in

5  this litigation, and Real has not engaged in willful destruction of the file.  Thus, the court DENIES a

6  defendants' request for sanctions in regards to the arccos.zip file.

7        B.     Order Precluding Real from impeaching or controverting Hamilton's Testimony

8        Defendants move for an order precluding Real from impeaching or controverting Hamilton's

9  testimony based on the following five areas purportedly covered in Hamilton's notebooks: (1) Real's

10  awareness of, and strategies undertaken to circumvent ARccOS and Ripguard; (2) Real's use of

11  CSS-cracking code in the development of Facet and its knowledge that such code was non-

12  compliant with the CSS license specifications; (3) Real's knowledge at the time of entering the CSS

13  license that DVD CCA would view RealDVD to be non-compliant; (4) Real's knowledge that its

14  product would be used by consumers for rent/rip/return or borrow/rip/return purposes; and (5) Real's

15  awareness that movies marked with CGMS flags were marked "do not copy" by content owners.

16        The content of Hamilton's notebooks is unknown, but the above listed topics purportedly

17  covered in the notebooks may be discoverable by other sources of evidence.  Hamilton's notebooks

18  were only one possible relevant source of evidence relating to RealDVD, and there are other sources

19  of evidence that are relevant to Real's knowledge or awareness of the above listed issues.  Real

20  employees maintain that the notebooks were not a comprehensive record on the development of

21  Facet, and the source code is the most comprehensive record.  Barrett Dec. ¶ 6; Wood Dec. ¶ 8.

22  Moreover, defendants have not met their burden of showing that the notebooks are in someway

23  unique evidence for showing Real's knowledge or awareness of its non-compliance with the CSS

24  License Agreement or strategies to circumvent ARccOS and Ripguard.

25        On oral argument, counsel for Studio defendants asserted that Hamilton testified that her

26  notebooks had dates and notes of relevant meetings, in chronological order and describing the Facet

27  project in detail.  However, this argument is controverted by Hamilton's deposition testimony where

28  she stated: "I don't want to make too much of the quality of my notes, they were just for me so I

1   expect they might be either unreadable or intelligible to other people most often . . ." Lynch Dec.,

2   Exh. 6 at 86:6-9.

3        Thus, the court DENIES defendants' request to preclude Real from impeaching or

4   controverting Hamilton's testimony related to the above listed topics.

5        C.        Adverse Inference Re: ARccOS and Ripguard

6        Defendants argue that the court should infer that Real knowingly purchased technologies to

7   circumvent ARccOS and Ripguard.  They argue that this inference should be made based on the

8   arccos.zip file that was purchased by Real from overseas and was suddenly made unavailable.  Since

9   Real provided the arccos.zip file to defendants, the production of this file is no longer an issue.

10       The court will, however, infer from communications between Real's Jeff Chasen and the

11  CEO of Rocket Division Software that Real was aware of the non-CSS technologies, ARccOS and

12  Ripguard.  Lynch Dec., Exhs. 14 & 15.  An inference that Real knowingly purchased technologies to

13  circumvent ARccOS and Ripguard, however, is premature at this stage of the litigation and is

14  DENIED.

15       D.        Preclusion of Basche and Wolpert Testimony

16       Defendants argue that because Basche deleted all of his files relating to RealDVD and

17  Wolpert deleted "tons" of emails everyday, Real should be precluded from offering testimony from

18  Basche and Wolpert.  Wolpert's statement regarding deleting emails was vague as to what he had

19  deleted, and he has stated that he did not delete RealDVD-related emails.  Wolpert Dec. ¶ 7.  Basche

20  has stated that he has since retrieved documents through back-up and relayed them to Real for

21  production.  Basche Dec. ¶ 3.  Real has also implemented a preservation policy on all documents and

22  emails related to RealDVD shortly after the start of this action.  This has reduced any prejudice to

23  defendants related to discovery of evidence from Basche and Wolpert.  Thus, the court DENIES

24  precluding the testimony of Basche and Wolpert.

25       E.        Producing Barrett for a Deposition

26       On December 22, 2008, the court instructed the parties to work out the depositions they

27  needed, specifically for deposing experts, with regard to Facet by January 9, 2009.  Lynch Dec., Exh

28  8 at 74:11-14; 75:8-76:2.  Defendants argue that the court ruled that they were entitled to a

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  redeposition of Barrett on Facet, and because Barrett had a campaign to destroy documents

2  unfavorable to Real's litigation, there is a greater reason for this deposition to go forward.

3  Accordingly, even though defendants have already deposed Barrett once, the court hereby GRANTS

4  defendants' request for a deposition on spoliation and Facet and instructs Real to produce Barrett for

5  a second deposition on these topics.

6      F.      Monetary Sanctions

7      Although the court finds no evidence of willful destruction of documents, Real failed to

8  preserve Hamilton's notebooks when it knew there was probable litigation with Studio defendants

9  and knew that Hamilton's notebooks could contain relevant notes from the RealDVD project.

10     The court chooses not to draw an adverse inference against Real for alleged spoliation of

11 evidence, nor will the court exclude witness testimony proffered by Real or dismiss Real's claims

12 based on this failure to preserve evidence at this time.  See Glover v. BIC Corp., 6 F.3d at 1329.

13     Pursuant to the court's inherent power to impose sanctions, the court GRANTS monetary

14 sanctions against Real for failing to preserve evidence in relation to this litigation.  See Chambers v.

15 NASCO, Inc., 501 U.S. at 43.  An award of attorneys' fees and related costs is GRANTED to

16 defendants for pursuing the evidence of spoliation of Hamilton's notebooks and for bringing this

17 part of the sanctions motion.

18

19 CONCLUSION

20     Real's motions to dismiss DVD CCA's second counterclaim has been withdrawn.  Real's

21 motion to preclude claims based on non-CSS technologies is **DENIED**.

22     Defendants' motion for sanctions for spoliation of evidence is **GRANTED IN PART** and

23 **DENIED IN PART**.  Defendants' motions are granted insofar as: (1) the court instructs the parties

24 to negotiate and file a stipulated proposed Preservation Order for all existing and future documents

25 relating to all products at issue in this litigation, including RealDVD, or Vegas, and Facet; (2) the

26 court imposes monetary sanctions for Real's failure to preserve Hamilton's notebooks; (3) the court

27 awards reasonable attorneys' fees and related costs for pursuing the evidence of spoliation of

28

Hamilton's notebooks and for bringing this part of the sanctions motion; (4) the court will draw an adverse inference as to Real's knowledge of ARccOS and Ripguard.

Defendants' remaining motions for sanctions are denied.

Defendants are granted leave to file an application and declaration(s) for a monetary award (and a proposed order) including attorneys' fees and costs in accordance with the preceding paragraph within thirty (30) days of the filing of this order. Real may respond as to reasonableness of the fees only and shall do so within thirty (30) days of the filing of the application.

IT IS SO ORDERED.

Dated: May 5, 2009

_____
MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**United States District Court**
For the Northern District of California

21

**ENDNOTES**

1.  All Docket numbers refer to the Electronic Court File for the declaratory judgment suit filed by Real, under the assigned case number C 08-04548 MHP.

2.  The portion of Basche's deposition testimony cited by Studio defendants mentions nothing about preserving documents. Accordingly, the court refers to the testimony in the Basche declaration provided by Real on opposition to the motion for sanctions that acknowledges what Studio defendants are contending he said.

**United States District Court**
For the Northern District of California