| | |
|---|---|
| 1 | JAMES A. DiBOISE, State Bar No. 83296 <br> Email: jdiboise@wsgr.com |
| 2 | LEO CUNNINGHAM, State Bar No. 121605 <br> Email: lcunningham@wsgr.com |
| 3 | COLLEEN BAL, State Bar No. 167637 <br> Email: cbal@wsgr.com |
| 4 | MICHAEL A. BERTA, State Bar No. 194650 <br> Email: mberta@wsgr.com |
| 5 | TRACY TOSH LANE, State Bar No. 184666 <br> Email: ttosh@wsgr.com |
| 6 | WILSON SONSINI GOODRICH & ROSATI <br> Professional Corporation |
| 7 | One Market Street <br> Spear Tower, Suite 3300 |
| 8 | San Francisco, CA 94105 |
| 9 | Attorneys for Plaintiffs and <br> Counterclaim Defendants |
| 10 | REALNETWORKS, INC. and <br> REALNETWORKS HOME |
| 11 | ENTERTAINMENT, INC. |
| 12 | (additional counsel listed on following page) |

13  UNITED STATES DISTRICT COURT

14  NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 15 | REALNETWORKS, INC., a Washington Corporation; and REALNETWORKS HOME ENTERTAINMENT, INC., a Delaware corporation, | Case Nos. C08 04548 MHP; <br> C08 04719 MHP |
| 16 | | |
| 17 | | **PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND VIOLATION OF SHERMAN ACT AND STATE LAW** |
| 18 | Plaintiffs, | |
| 19 | v. | |
| 20 | DVD COPY CONTROL ASSOCIATION, INC., a Delaware nonprofit corporation, DISNEY ENTERPRISES, INC., a Delaware corporation; PARAMOUNT PICTURES CORP., a Delaware corporation; SONY PICTURES ENTER., INC., a Delaware corporation; TWENTIETH CENTURY FOX FILM CORP., a Delaware corporation; NBC UNIVERSAL, INC., a Delaware corporation; WARNER BROS. ENTER. INC., a Delaware corporation; and VIACOM, Inc., a Delaware Corporation, | **Before:** Hon. Marilyn Hall Patel <br> **Dept:** Courtroom 15 <br> **Date:** June 22, 2009 <br> **Time:** 2:00 p.m. |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | Defendants. | |
| 26 | | |
| 27 | AND RELATED CASES | |
| 28 | | |

PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND
AMENDED COMPLAINT
CASE NOS.: C08 04548 MHP; C08 04719 MHP

Dockets.Justia.com

1 DONALD E. SCOTT, (Admitted Pro Hac Vice)
Email: donald.scott@bartlit-beck.com
2 MARK S. OUWELEEN, (Admitted Pro Hac Vice)
Email: mark.ouweleen@bartlit-beck.com
3 KARMA M. GIULIANELLI, State Bar No. 184175
Email: karma.giulianelli@bartlit-beck.com
4 BARTLIT BECK HERMAN
PALENCHAR & SCOTT LLP
5 1899 Wynkoop Street, 8th Floor
Denver, CO 80202

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on June 22, 2009 at 2:00 p.m. or at such date and time as the Court may establish, Plaintiffs and Counterclaim Defendants RealNetworks, Inc. and RealNetworks Home Entertainment, Inc. (collectively, "RealNetworks") will and hereby do move pursuant to Fed. R. Civ. P. 15(a) for an Order permitting RealNetworks to file a Second Amended Complaint to add new claims against the DVD Copy Control Association ("DVD CCA") and Disney Enterprises, Inc., Paramount Pictures Corp., Sony Pictures Entertainment, Inc., Twentieth Century Fox Film Corp., Warner Brothers Entertainment, Inc., NBC Universal, Inc. and Viacom, Inc. (collectively, the "Studio Defendants").

This Motion is based on this Notice of Motion and Motion, including the Memorandum of Points and Authorities set forth below, the [Proposed] Second Amended Complaint for Declaratory Relief and Violation of Sherman Act and State Law attached as Exhibit A hereto,[1] the pleadings and papers on file with the Court, the argument of counsel, and on any other matters properly before the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    ISSUE TO BE DECIDED (LOCAL RULE 7-4(A)(3))**

Should RealNetworks be granted leave to amend its responsive pleadings to assert its antitrust claims against the Studio Defendants and the DVD CCA under Rule 15(a)?

**II.   INTRODUCTION**

RealNetworks respectfully moves this Court for leave to add antitrust claims against the Studio Defendants and the DVD CCA. Through discovery in this case relating to the DVD CCA's and the Studio Defendants' request for a preliminary injunction, RealNetworks has

---

[1] Real's proposed Second Amended Complaint will be asserted against all of the parties that are named as defendants in its original action, including all seven Studios and the DVD CCA. Real is also separately filing certain of these new causes of actions as counterclaims against the DVD CCA. Leave is not required to assert these counterclaims against the DVD CCA because Real has not yet answered DVD CCA's Counterclaims filed on January 12, 2009, and is therefore asserting its Sherman Act and state law counterclaims against the DVD CCA in conjunction with its Answer to the DVD CCA's Counterclaims.

become aware of facts demonstrating that the DVD CCA and the Studio Defendants have engaged in both a horizontal group boycott of RealNetworks and, in the case of the Studio Defendants alone, a collective refusal to deal with RealNetworks. The testimony of the Studio Defendants during the preliminary injunction hearing further confirmed the existence of a horizontal conspiracy between the Studio Defendants and involving the DVD CCA. In that testimony, witnesses for the Studio Defendants (Ms. King and Dr. Kelly) unambiguously confirmed the Studios' position that the CSS License Agreement resulted from a joint agreement among the Studios to prohibit all copies of DVD content unless the Studios jointly authorize the making of such a copy. Pursuant to the Studios' and DVD CCA's interpretation of the CSS License Agreement, each Studio has ceded its individual authority to authorize the use of its movie content through *individual* copyright licenses in favor of a *joint agreement* to grant or withhold the use of such content– the CSS License Agreement. *See* Tr. 74:1-12; 79:22-80:3; 87:16-88:4; 98:10-23; 111:22-112:5 (testimony of Ms. King). Under the Studios' and the DVD CCA's interpretation, no DVD CCA licensee can obtain rights to copy any individual Studio's content without joint agreement among the Studios. The conduct at issue is *per se* unlawful under Section 1 of the Sherman Act and also violates California law.

As the Court is aware, in 2008, RealNetworks sought to meet strong consumer demand among DVD owners for affordable technology that would enable them to save a secure copy of their DVDs to a computer hard drive for safekeeping, portability, easy retrieval, and later playback. It developed two innovative products – the RealDVD software known as "Vegas" and the New Platform (code named "Facet" prior to its commercial release) – that allow users to save and play a secure backup copy of the DVDs they own and to organize their favorite movies, TV shows, scenes and actors so that they are all just a click away. The conduct described in the claims that RealNetworks seeks leave to assert reflects a concerted and unlawful effort on the part of the Studio Defendants and the DVD CCA to eliminate competition from RealNetworks in the market for technology that enables a consumer to make a lawful, secure backup copy of DVDs that she owns. The exclusionary conduct of the Studio Defendants and the DVD CCA

1 deprives consumers of innovative and affordable technology to meet their demands and to enable
2 them to exercise their fair use right to make these backup copies.

3       Under Rule 15(a), leave to amend is liberally granted and it is an abuse of discretion to deny leave in the absence of a showing of prejudice or bad faith, or without a showing that the proposed amendment is frivolous. *See Cooper Dev. Co. v. Employers Ins. of Wausau*, 765 F. Supp. 1429, 1432 (N.D. Cal. 1991) ("Leave to amend should be denied only when there is a showing of undue delay, bad faith, futility of amendment or prejudice to the opposing party."). Delay alone does not provide a sufficient basis for denying leave to amend. *Hurn v. Retirement Fund Trust of Plumbing, Heating & Piping Industry of So. Calif.*, 648 F.2d 1252, 1254 (9th Cir. 1981).

      Here, none of the factors weighing against granting leave to amend is present. Since becoming aware of the conduct giving rise to these claims, RealNetworks has been working diligently to confirm that it has a sufficient evidentiary basis to assert the claims. This evidence has come through RealNetworks' investigation of the underlying facts, including discovery undertaken in connection with the preliminary injunction proceedings, and has been confirmed and strengthened by evidence adduced at the preliminary injunction hearing. The Studio Defendants and the DVD CCA will suffer no prejudice as a result of this amendment. Fact discovery is in its early stages, and they will have ample opportunity to prepare a defense to these claims. Moreover, granting leave here will simply assure that these claims will go forward against all of the involved parties as opposed to only one (the DVD CCA, as to which no leave is required (*see* footnote 1, *supra*)).

## III. PROCEDURAL BACKGROUND

      This litigation was formally initiated before this Court when RealNetworks filed its Complaint for Declaratory Relief on September 30, 2008. [Dkt. No. 1] RealNetworks sought declaratory relief from Defendants' assertions that (a) the RealDVD product violates the CSS License Agreement, and (b) the RealDVD product violates the anti-circumvention provisions of the Digital Millenium Copyright Act. Four of the Studio Defendants responded to RealNetworks' Complaint on October 3, 2008, by renewing their prior application for a

1  temporary restraining order, and on that same date five of the Defendants (Disney, Paramount,
2  Sony, Fox and Warner Brothers) filed a Counter-Complaint against RealNetworks asserting the
3  same causes of action as to which RealNetworks had sought declaratory relief. [Dkt. Nos. 8 and
4  15] RealNetworks filed its Answer to the Counter-Complaint on October 31, 2008. [Dkt. No.
5  57]

6  RealNetworks sought leave to amend its declaratory judgment complaint to add the Facet
7  product on November 11, 2008. [Dkt. No. 62] Leave was granted by this Court on December
8  23, 2008. [Dkt. No. 92]

9  This Court granted the Studio Defendants' and DVD CCA's request to extend the
10 temporary restraining order on October 9, 2008. [Dkt. No. 45] Since that time, the parties have
11 been conducting discovery and other activities in preparation for and in furtherance of the
12 preliminary injunction hearing. To date, the Court has heard testimony and argument on the
13 preliminary injunction motion on April 24, 28, 29 and May 7, 2009. Closing arguments are
14 currently set for May 21, 2009. All fact discovery and motion practice to date has been in
15 furtherance of these preliminary injunction proceedings.

16 **IV.     ARGUMENT**

17 Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be
18 freely given when justice so requires" and reflects an underlying policy that disputes should be
19 determined on their merits, and not on the technicalities of pleading rules. Fed. R. Civ. P. 15(a);
20 *Foman v. Davis*, 371 U.S. 178, 181-82 (1962). Rule 15(a) has been consistently applied in this
21 district and circuit to grant leave unless there is a showing of prejudice, undue delay, bad faith or
22 "futility of amendment." *Cooper Dev. Co.*, 765 F. Supp. at 1432; *see also Bowles v. Reade*, 198
23 F.3d 752, 757 (9th Cir. 1999); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079
24 (9th Cir. 1990); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *Advanced*
25 *Cardiovascular Sys. v. SciMed Life Sys.*, 989 F. Supp. 1237, 1241 (N.D. Cal. 1997).

26 The four factors that are relevant to determining whether leave should be granted are: (1)
27 whether there has been undue delay; (2) whether the moving party has acted in bad faith or with
28 a "dilatory motive"; (3) whether the amendment would be futile because the claims appear on

1  their face to be frivolous; and (4) whether the non-moving party would be prejudiced by granting
2  leave to amend.  *Foman*, 371 U.S. at 182.  Importantly, delay alone is an insufficient basis upon
3  which to deny leave to amend.  *Hurn*, 648 F.2d at 1254 (denial of motion for leave to amend held
4  to be an abuse of discretion even though motion made five years after the original complaint was
5  filed).  In the Ninth Circuit, the non-moving party bears the burden of demonstrating why leave
6  to amend should be denied.

7  Here, as set forth below, none of the four relevant factors supports denying leave to
8  amend.

9      **A.**    **Amendment Will Not Prejudice the Studio Defendants or the DVD CCA**

10  There will be no prejudice to the Studio Defendants or the DVD CCA by granting
11  RealNetworks leave to file its proposed Second Amended Complaint.  These proceedings are at
12  an early stage, and there will be ample time for the Studio Defendants and the DVD CCA to do
13  whatever discovery or motion practice they believe is necessary to defend against these claims.
14  No pre-trial deadlines or trial date have been scheduled yet in the case.  Moreover, since the
15  DVD CCA will under any circumstances have to defend against these claims in this litigation
16  (again, for which no leave to file is required), discovery relating to the proposed claims will be
17  on-going in any event.

18  More importantly, the claims that RealNetworks seeks to assert go to the heart of the
19  Studio Defendants' and the DVD CCA's claims against RealNetworks and undermine their
20  fundamental justification for the imposition of liability on RealNetworks.  They are thus
21  inextricably intertwined with the pre-existing claims in this litigation and derive from the same
22  set of operative facts.  Their assertion against the Studio Defendants and the DVD CCA will not
23  alter the nature of the litigation in any fundamental way and, instead, will permit the Court to
24  consider all of the facts and legal theories relevant to the claims that have already been asserted
25  in this litigation.  Under circumstances such as these, the Studio Defendants will be unable to
26  carry their burden of demonstrating prejudice for the simple reason that no prejudice will result
27  from granting the leave requested.  *See Hip Hop Beverage Corp. v. RIC Representacoes*
28  *Importacao e Comercio Ltda.*, 220 F.R.D. 614, 622 (C.D. Cal. 2003) (finding no prejudice where

"the issues contained in [the] proposed claims are substantially related to the issues contained in [the] Plaintiffs' Complaint").

### B. RealNetworks Has Acted in Good Faith in Asserting These Claims and There Has Been No Undue Delay

There is no evidence that RealNetworks is asserting these claims for a "wrongful motive" or that it engaged in "undue delay" before filing them. *See DCD Programs*, 833 F.2d at 187. As set forth above, the assertion of these claims will allow this Court to consider the Studio Defendants' and the DVD CCA's breach of contract and circumvention allegations in the appropriate factual and theoretical context. Nor is there evidence that RealNetworks is asserting these claims at this time for any tactical or strategic reason. *See id.* (declining to conclude that the time it took to assert the claims was evidence of bad faith, where timing resulted from completion of factual investigation); *cf. Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987) (upholding denial of leave to amend on grounds of bad faith where district court had concluded that the proposed amendment was designed simply to destroy jurisdiction of the court). To the contrary, RealNetworks adjusted the timing of its request for leave to assert these claims in large part to minimize any potential disruption of the preliminary injunction proceedings.[2]

The exclusionary conduct engaged in by the Studio Defendants and the DVD CCA goes to the heart of the Studio Defendants' and the DVD CCA's allegations of unlawful conduct by RealNetworks. As RealNetworks has uncovered and analyzed the evidence, it has worked diligently to formulate its claims based on that evidence and to test its assertions against the law

---

[2] Real sought and received an extension of time to file its response to the DVD CCA's Counterclaims from March 30, 2009 to May 13, 2009. *See* Stipulation and Order Extending Time for Plaintiffs and Counterclaim Defendants To Answer the Counterclaims of Defendant and Counterclaim Plaintiff DVD CCA [Dkt No. 243]. At that time, the preliminary injunction proceedings were scheduled to be held on April 24, 28 and 29, 2009. Real's request to postpone the filing of its response to the DVD CCA's counterclaims until after the then-scheduled preliminary injunction hearing was in large part to avoid any interference with or distraction from those proceedings. When closing arguments were postponed until May 21, 2009, Real requested a further extension of its time to respond to the DVD CCA's counterclaims until after the completion of the preliminary injunction proceedings. The DVD CCA, however, declined to stipulate to a further extension of Real's time to respond, thus requiring Real to respond to the DVD CCA's counterclaims on or before May 13, 2009.

relating to horizontal group boycotts. Having done so, RealNetworks reached the conclusion that the Studio Defendants and the DVD CCA have used their allegations regarding the scope of the CSS License Agreement to cloak an underlying unlawful agreement amongst the Studios that no Studio alone can authorize the making of a copy or copies of a DVD embodying a copyrighted work that that Studio owns for any purpose.[3] Thus, pursuant to the Studios' and the DVD CCA's interpretation of the CSS License Agreement, Fox cannot authorize RealNetworks to build technology that permits a consumer to make a copy of a Fox motion picture DVD without the permission of Universal and Warner Brothers and Disney and so on. There is no justification for this restriction and its plain result is a group boycott of technology providers like RealNetworks. By seeking leave to amend to assert its claims, RealNetworks simply seeks to have the opportunity to complete factual discovery on its Sherman Act and state law claims and have them decided by a Court.

### C. Amendment Will Not Be Futile

"If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182. Here, there is no question that the amendment that RealNetworks seeks will *not* be futile. The antitrust claims that RealNetworks seeks leave to assert are well-grounded in case law and are supported by concrete facts. In fact, the Federal Circuit recently analyzed whether a claim for patent misuse arising out of a joint refusal to license a patent in a way that would permit the development of competing technologies could constitute a violation of the Sherman Act. *Princo Corp. v. Int'l Trade Comm'n*, No. 2007-1386, 2009 WL 1035222 (Fed. Cir. April 20, 2009). Reversing the International Trade Commission's dismissal of Princo's patent misuse claim, the Federal Circuit stated:

---

[3] The Studios argue that consumers need Studio authority to make even a single, fair use copy of a purchased DVD, an argument Real disputes as contrary to copyright law. *See* 17 U.S.C. §107. Regardless, as interpreted by the Studios and the DVD CCA, the CSS Agreement prohibits an individual Studio from authorizing a copy or copies of the Studio's own movie to be made from a CSS-protected DVD for *any* reason – fair use or otherwise. According to the Studios' and the DVD CCA's interpretation of the CSS Agreement, authority to copy a work owned by an individual Studio can only be procured from all of the Studios, acting in concert.

PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
CASE NOS.: C08 04548 MHP; C08 04719 MHP
-8-

1  In contrast, here Princo contends that Philips and Sony agreed from the outset to license Lagadec, a potential competitor to the Raaymakers pool patents, in a way that would necessarily prevent it from ever becoming a commercially viable alternative technology that might compete with the Orange Book standard. . . . It is one thing to offer a pooled license to competing technologies; it is quite another to refuse to license competing technologies on any other basis.  In contrast to tying arrangements, there are no benefits to be obtained from an agreement between patent holders to forego separate licensing of competing technologies . . . ."

*Id*. at *13.

So too, here.  Through their interpretation of the CSS License Agreement, the Studio Defendants and the DVD CCA agreed, from the outset, that the Agreement would preclude all copying, regardless of whether that copying could otherwise be licensed individually by a given Studio or was lawful without a license under the fair use doctrine.  In so doing, they, like Philips and Sony in *Princo*, entered into an agreement that necessarily prevents competition from third parties like RealNetworks (and Kaleidescape).  Given the nature of the claims that RealNetworks seeks leave to assert, there is no viable argument that the assertion of the claims will be futile. *See Hip Hop Beverage*, 220 F.R.D. at 622-23 ("An amendment is 'futile' only if it would clearly be subject to dismissal.") (citing *DCD Programs*, 833 F.2d at 188).

## V.     CONCLUSION

For the foregoing reasons, RealNetworks respectfully requests that the Court grant its Motion for Leave to File its Second Amended Complaint for Declaratory Relief and Violation of Sherman Act and State Law against the Studio Defendants.

Dated:  May 13, 2009

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: /s/ Leo P. Cunningham
      Leo P. Cunningham

Attorneys for Plaintiffs
REALNETWORKS, INC. AND
REALNETWORKS HOME
ENTERTAINMENT, INC.