| | |
|---|---|
| GLENN D. POMERANTZ (SBN 112503) | ROBERT H. ROTSTEIN (SBN 72452) |
| Glenn.Pomerantz@mto.com | rxr@msk.com |
| BART H. WILLIAMS (SBN 134009) | ERIC J. GERMAN (SBN 224557) |
| Bart.Williams@mto.com | ejg@msk.com |
| KELLY M. KLAUS (SBN 161091) | MITCHELL SILBERBERG & KNUPP LLP |
| Kelly.Klaus@mto.com | 11377 West Olympic Boulevard |
| MUNGER, TOLLES & OLSON LLP | Los Angeles, California 90064-1683 |
| 355 South Grand Avenue, 35th Floor | Tel: (310) 312-2000; Fax: (310) 312-3100 |
| Los Angeles, CA 90071-1560 | |
| Tel: (213) 683-9100; Fax: (213) 687-3702 | |

GREGORY P. GOECKNER (SBN 103693)
gregory_goeckner@mpaa.org
DANIEL E. ROBBINS (SBN 156934)
dan_robbins@mpaa.org
15301 Ventura Boulevard, Building E
Sherman Oaks, California 91403-3102
Tel: (818) 995-6600; Fax: (818) 285-4403

Attorneys for Motion Picture Studio Plaintiffs/Declaratory
Relief Claim Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REALNETWORKS, INC., et al., | CASE NO. C 08-4548-MHP |
| Plaintiffs, | |
| vs. | **ADMINISTRATIVE MOTION FOR JUDICIAL NOTICE OF REALNETWORKS' PATENT APPLICATIONS** |
| DVD COPY BATES ASSOCIATION, INC., et al. | |
| Defendants. | [Declaration of Rohit K. Singla and Proposed Order filed herewith] |
| UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, et al., | CASE NO. C 08-4719-MHP |
| Plaintiffs, | |
| vs. | |
| REALNETWORKS, INC., et al. | |
| Defendants. | |

On June 11, 2009, the Patent and Trademark Office (PTO) published five patent applications filed by RealNetworks in 2007 and 2008 relating to RealDVD.  None of these applications were produced in discovery, despite being called for by the Studios' requests — and it is clear why not:  In three of the applications Real tries to *patent* the very ARccOS/RipGuard circumvention technologies that it has told this Court do not even exist.  These patent applications flatly contradict the testimony and proposed findings submitted by Real and strongly support the Studios' contentions regarding Real's circumvention of ARccOS and RipGuard.  For example:

- Real and its witnesses have told the Court that ARccOS and RipGuard are not copy protection technologies and that Real's engineers did not know how ARccOS and RipGuard worked.  Yet Real simultaneously has told the PTO that "Macrovision RipGuard™" and "Sony ARccOS™" are "copy protection mechanisms" and then described specific techniques used by ARccOS and RipGuard.

- Real has insisted that the Facet DVDWalk function does not circumvent ARccOS and RipGuard because it does not identify ARccOS/RipGuard protections or have "any mechanism . . . that deals with an ARccOS or RipGuard error."  Yet Real's patent applications describe in detail how its DVDWalk technology is used to "detect and/or *avoid* media obfuscation schemes" like ARccOS and RipGuard.  *Indeed, the point of the application is to patent those very detection and avoidance techniques.*

- Real has told the Court, through witnesses and proposed findings, that ARccOS and RipGuard can only delay but cannot prevent a "linear copy" of DVDs.  But Real is insisting to the PTO that ARccOS and RipGuard can "cause an archiving process to fail" or "never complete" — exactly contrary to its representations to this Court.

The applications list as inventors Phillip Barrett and James Bielman, witnesses who repeatedly denied knowing what ARccOS and RipGuard are, much less trying to circumvent them.

The Studios respectfully request that the Court take judicial notice of these three patent applications, and consider them as part of the record.  *See Coinstar, Inc. v. Coinbank Automated Systems, Inc.*, 998 F. Supp. 1109, 1114 (N.D. Cal. 1998) (patent applications and supporting declarations subject to judicial notice); *accord Monster Cable Prods., Inc. v. Discovery Communs., Inc.*, 2004 WL 2445348, at *1 n.1 (N.D. Cal. 2004).  Judicial notice is warranted here because the applications have been in Real's possession and control but unavailable to the Studios; because the applications so directly contradict Real's contentions before this Court; and because the applications should have been produced in discovery.

## I. REAL'S PATENT APPLICATIONS CONTRADICT ITS LITIGATION POSITIONS AND WITNESS TESTIMONY.

The three patent applications which the Studios seek to add to the record are U.S. Patent Application Publication No. US 2009/0148125 A1 (Watson, Bielman, and Barrett); U.S. Provisional App. No. 61/095,249 (Chasen, Buzzard, *et al.*); and U.S. Provisional App. No. 61/012,500 (Barrett, Hamilton, *et al.*). They are attached hereto as Exhibits A-C. The '125 application was filed on December 10, 2008, during discovery in this case and just weeks before the depositions of Real's engineers. The '125 application claims priority to the '500 and '249 provisional applications, which were filed in December 2007 and September 2008, respectively.

### A. ARccOS/RipGuard Are Copy Protection Schemes.

Real insisted at the preliminary injunction hearing that ARccOS/RipGuard are not copy protection schemes. Its expert, Mr. Dixon, testified that ARccOS and RipGuard are *not* "copy protection measures." [Tr. 921:2-6.] Mr. Bielman, the only engineer Real proffered at the hearing and an inventor on one of Real's patent applications, testified that he did not "classify [ARccOS] as copy protection." [Tr. 1083:7-10.] Mr. Barrett likewise testified in his deposition that he "d[idn't] believe that ARccOS is a[] . . . copy protection scheme." [Barrett at 172:12-14.] One section of Real's proposed findings is labeled "ARccOS and RipGuard are not Copy Protection Because They Lack Authentication and Encryption." [Real's FOF at 66.]

Yet, in its December 2007 and June 2008 provisional applications (predating this litigation), Real correctly describes "Macrovision RipGuard™, Sony ARccOS™" as "copy protection mechanisms" or "copy protection schemes." ['500 Application at ¶ 0015; '249 Application at ¶ 0113.] The patent applications recognize that "Archos [sic] provides copy protection schemes found on many DVD discs." ['249 Application ¶ 0113.]

### B. ARccOS and RipGuard Cause Copying to *Fail.*

Real's argument that ARccOS/RipGuard are not effective copy protection is based in part on the allegation that ARccOS/RipGuard-protected DVDs can always be copied by a linear scheme, given enough time. Mr. Bielman testified that ARccOS/RipGuard could not prevent a linear copy of a DVD. [Tr. 1011:12-18.] Real had its expert Mr. Dixon give the same

testimony: that ARccOS/RipGuard only slowed down copying. [Tr. 871:9-13, 890:15-891:3; 895:10-19] In its proposed findings, Real asked the Court to find that "[i]t is not possible to stop a linear copy with ARccOS or RipGuard errors because DVD drives can be directed to ignore or 'time out' on any errors encountered." [Real's FOF ¶ 114; *see also id.* ¶¶ 113-117, 142.]

Putting aside the fact that even slowing copying can effectively control illicit copying,[1] Real's patent applications directly contradict what Real has been telling the Court. Real told the PTO that ARccOS and RipGuard "obfuscation schemes" "may cause an archiving process to fail," *i.e.*, to "never complete." ['125 Application at ¶ 0025.] The patent applications describe ARccOS and RipGuard as "designed to *defeat* track-by-track copying methods." ['500 Application at ¶ 0015.] Indeed, part of Real's basis for seeking to patent its circumvention technologies is that copying of protected DVDs can otherwise fail altogether.

### C. Facet's "DVDWalk" Has Been Specifically Designed to "Remove" and "Avoid" Techniques Used by ARccOS and RipGuard.

Mr. Bielman told the Court that Facet does not circumvent ARccOS or RipGuard, denying that Facet could "tell one way or another, when it gets a read error back from a DVD, whether that error was put there intentionally or unintentionally." [Tr. 1012:12-19.] Mr. Bielman specifically denied that DVDWalk had "any mechanism that recognizes an ARccOS or RipGuard disc." [Tr. 1018:20-1019:1.] Real asks this Court, similarly, to find that there is "no mechanism or code in Facet to identify ARccOS or RipGuard errors" and that "[t]he Facet design team has never made a change to the DVD Walk code to address an ARccOS or RipGuard error." [Real's FOF ¶¶ 125, 154-155.] Real is telling the Court that Facet cannot identify ARccOS or RipGuard protections and so cannot possibly be "avoiding" or "removing" those techniques.

The patent applications, again, tell a sharply different story, confirming the evidence presented by the Studios. All **40** claims of the '125 application claim a "media analysis component" designed to "walk" the DVD or otherwise determine how to copy ("archive") a DVD with ARccOS or RipGuard. The application explains that the idea is "to distinguish between read errors . . . due to . . . damage and those caused *by intentionally placed bad data*." ['125

---

[1] The issue for DMCA purposes, of course, is not whether ARccOS/RipGuard are "copy protection" but whether they are effective technological measures under 17 U.S.C. § 1201(b).

- 3 -    MOTION FOR JUDICIAL NOTICE
CASE NO. C 08-4548-MHP

Application at ¶ 0119.]  The goal of "walking" the DVD is to then "detect and/or *avoid* media obfuscation schemes."  ['125 Application at ¶ 0025.]  The application discusses how Real's technology "detects" or "determines" that the DVD contains "invisible" buttons, dummy menu items, "cyclic data in the segment," or an "infinite still frame in the segment."[2] ['125 Application at ¶¶ 0025, 0028, 0095, 0101.]  Real explains to the PTO that if such techniques are found, then DVD Walk "may *remove* the segment from the media walk data structure," or "*avoid* intentionally invalid data by *avoiding* segments on the recording medium." ['125 Application at ¶¶ 0101, 0103.]   Real's denials to this Court that DVDWalk avoids or removes ARccOS/RipGuard protection fly in the face of its claims to the PTO, which Real made to obtain patent protection for its methods for circumventing ARccOS and RipGuard.[3]

### D. Real's Witnesses—Including the Very Inventors Listed on the Patent Applications—Disguised and Hid the Truth About ARccOS and RipGuard

At his December 15, 2008 deposition, Phillip Barrett — the Manager of the Facet project and named inventor on Real's applications — denied any knowledge of ARccOS and RipGuard: "[I am] not really sure exactly what ARccOS is."  He insisted that sector errors were caused by smudges, manufacturing errors, scratches, and things children did to DVDs. [*Id.* at 17:10-18:8.].  He testified that he had not even a "suspicion" as to why such errors might be intentionally included to slow down linear copying.  [Barrett Depo. 124:16-125:21.]

But, just *five days prior* to Mr. Barrett's deposition, Real filed the '125 application — with Mr. Barrett as an inventor — that claimed priority to applications that discuss ARccOS and RipGuard by name and explain that they are copy protection techniques.  Mr. Barrett understood that these techniques rely on bad sectors.  The '125 application describes ARccOS/RipGuard as utilizing "obfuscation data [that] may include one or more 'bad sectors.'"[4]

---

[2] Contrary to the patent applications, Mr. Bielman insisted before the Court that "infinite still frames" did not have "anything to do with ARccOS or RipGuard." [Tr. 1020:15-1021:6.]

[3] The '249 application similarly explains that Vegas circumvents ARccOS and RipGuard by first detecting "bad sectors intentionally placed on the media (e.g., as opposed to defects . . . )," determining that "the cell is a copy protection cell," and then "skip[ping] the cell." ['249 Application at ¶ 0114, 0117.]

[4] The '125 application filed in December 2008 — after the Studios had raised the issue of ARccOS and RipGuard circumvention — replaces the earlier explicit references to "ARccOS" and "RipGuard" with the more generic term "obfuscation schemes" or "obfuscation techniques."

['125 at ¶ 0025.] Mr. Barrett understood also that "copy protection measures (e.g. Macrovision RipGuard™ [and] Sony ARccOS™ . . .) . . . may be designed to defeat track-by-track copying methods by deliberately including large amounts of invalid data." ['500 Application at ¶ 0016] Mr. Barrett, and the other engineers at Real, also knew of other techniques used by ARccOS and RipGuard. The '125 application, for example, discusses "invisible" buttons, "dummy" menu items, an "infinite still frame in the segment," etc. ['125 Application at ¶¶ 0028, 0095, 0101.]

Mr. Barrett's claims of ignorance about ARccOS/RipGuard — and Real's contentions and other testimony on this subject — cannot be true given the disclosures in Real's own patent applications. Mr. Barrett and Mr. Bielman, as inventors, *submitted declarations under oath* attesting to their review and understanding of the entire application, and the truth of statements therein. [Exh. A ("Declaration for Patent Application")]; *see* 37 C.F.R. 1.63(b)(2).

## II. PATENT APPLICATIONS SHOULD HAVE BEEN PRODUCED IN DISCOVERY.

These patent applications were undeniably called for in discovery. The Studios' first set of discovery requests, for example, sought all documents with keywords such as "ARccOS," "RipGuard," and "bad sector" — all of which terms appear in Real's applications. [Exh. D at C.14-15] More importantly, the Studios repeatedly asked for documents comprising architecture, technical or design specifications or documentation for RealDVD: a category clearly encompassing the technical patent specifications. [*Id.* at B; Exh. E at II.B.1] The Studios asked *specifically* for such patent applications after the deposition of Nicole Hamilton.[5] [Exh. F at 2]

Real's omission is particularly surprising given this Court's instructions to Real's in-house counsel — who *must have known about the patent applications* — to personally ensure compliance with Real's discovery obligations: "[m]ake sure that . . . when you say that every and all documents that have been sought and searched for have, in fact, been turned over." The Court could not have been clearer: "I'm going to hold [you] personally responsible for . . . making sure that the discovery complies with what is required, and that it is entirely produced so there is no gap between outside counsel and in-house counsel." [March 3 Hearing Tr. at 45:7-9, 44:3-7.]

---

[5] Ms. Hamilton is also listed as an inventor and testified that she helped develop Real's circumvention technology, demonstrating again the prejudice to the Studios from the loss of Ms. Hamilton's engineering notebooks.

### III. CONCLUSION

The Studios respectfully request the Court, pursuant to Local Rule 7-11, to consider the attached patent applications as part of the record on the Studios' Motion for Preliminary Injunction.

DATED: June 24, 2009                    /s/ Rohit K. Singla
                                        ROHIT K. SINGLA
                                        MUNGER, TOLLES & OLSON LLP

                                        Attorneys for Studio Defendants/Counterclaim-Plaintiffs/Plaintiffs

                                        COLUMBIA PICTURES INDUSTRIES, INC., DISNEY ENTERPRISES, INC., PARAMOUNT PICTURES CORP., SONY PICTURES ENTERTAINMENT, INC., SONY PICTURES TELEVISION INC., TWENTIETH CENTURY FOX FILM CORP., NBC UNIVERSAL, INC., WALT DISNEY PICTURES, WARNER BROS. ENTERTAINMENT, INC., UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, UNIVERSAL CITY STUDIOS LLLP, AND VIACOM, INC.