1  JAMES A. DiBOISE, State Bar No. 83296
   Email: jdiboise@wsgr.com
2  LEO CUNNINGHAM, State Bar No. 121605
   Email: lcunningham@wsgr.com
3  COLLEEN BAL, State Bar No. 167637
   Email: cbal@wsgr.com
4  MICHAEL A. BERTA, State Bar No. 194650
   Email: mberta@wsgr.com
5  TRACY TOSH LANE, State Bar No. 184666
   Email: ttosh@wsgr.com
6  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
7  One Market Street
   Spear Tower, Suite 3300
8  San Francisco, CA 94105

9  Attorneys for Plaintiffs and
   Counterclaim Defendants
10 REALNETWORKS, INC. and
   REALNETWORKS HOME
11 ENTERTAINMENT, INC.

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14

15 REALNETWORKS, INC., a Washington           Case Nos. C08 04548 MHP;
   corporation; and REALNETWORKS HOME                   C08 04719 MHP
   ENTERTAINMENT, INC., a Delaware
16 corporation,                               **REALNETWORKS' OPPOSITION TO
                                              STUDIO DEFENDANTS'
17              Plaintiffs,                   ADMINISTRATIVE MOTION FOR
                                              JUDICIAL NOTICE OF
18        v.                                  REALNETWORKS' PATENT
                                              APPLICATIONS**
19 DVD COPY CONTROL ASSOCIATION, INC., a
   Delaware nonprofit corporation, DISNEY
20 ENTERPRISES, INC., a Delaware corporation;
   PARAMOUNT PICTURES CORP., a Delaware
21 corporation; SONY PICTURES ENTER., INC., a
   Delaware corporation; TWENTIETH CENTURY
22 FOX FILM CORP., a Delaware corporation; NBC
   UNIVERSAL, INC., a Delaware corporation;
23 WARNER BROS. ENTER. INC., a Delaware
   corporation; and VIACOM, Inc., a Delaware
24 corporation,

25              Defendants.

26

27 AND RELATED CASES

28

1     The Studio Defendants' so-called Administrative Motion for Judicial Notice of
2 RealNetworks' Patent Applications ("Motion") should be denied.  It is a ham-handed attempt to
3 reargue issues that are under submission to this Court by mischaracterizing three patent
4 applications and the arguments RealNetworks made in opposition to the Defendants' Motion for
5 Preliminary Injunction.  There is no justification for re-opening the record to allow consideration
6 of either the three patent applications or the Studio Defendants' further arguments purportedly
7 based on them.
8     The Studio Defendants' Motion is based on certain formerly confidential Real patent
9 applications of which the Studio Defendants have been long aware but which they nevertheless
10 now claim were improperly withheld in discovery.  They were not.  Read carefully, the Studio
11 Defendants' Motion admits that the patent applications were not responsive to the discovery
12 requests to which the parties eventually agreed, only that they could have been responsive to an
13 initial set of requests – requests that the Studio Defendants agreed to abandon during the parties'
14 negotiations to limit the scope of discovery for purposes of the preliminary injunction
15 proceeding.  In April 2009, six months after the parties agreed to discovery limitations and well
16 after the Studios prevailed upon this Court to declare that the limited period for document
17 discovery had concluded, the Studios requested that Real supplement its document production
18 with copies of the patent applications.  Given the Studios own refusals to produce supplemental
19 documents to Real, it is no surprise that Real did not accept the Studios Defendants' invitation to
20 submit to supplemental one-sided discovery at that late date.  The Studio Defendants' carefully
21 worded innuendo that the patent applications were improperly withheld from discovery therefore
22 has no merit.
23     Nor is there any merit in the Studio Defendants' mischaracterization of either the
24 preliminary injunction record or the select snippets from the patent applications to reargue
25 preliminary injunction issues.  As discussed below, the patent applications are consistent with
26 Real's arguments as to why the ARccOS and RipGuard products are not "effective technological
27 measures" under the DMCA and the Studios attempt to selectively reargue the preliminary
28 injunction proceedings should be rejected.

I.    **The Patent Applications Were Not Called For In The Limited, Agreed-Upon Preliminary Injunction Discovery**

The Studios' assertion that the patent applications in issue "were undeniably called for in discovery" is false.  Real has abided by all of its discovery obligations and no discovery requests agreed to by the parties encompass the patent applications in issue.  While the Studios claim that their "first set" of discovery requests dated October 28, 2008, were comprised of keywords searches which may have implicated the patent applications (*see* Exhibit D to Motion), what the Studios fail to acknowledge is that during the parties' discovery meet and confer, <u>Real explicitly rejected the very keyword searches upon which the Studios now seek to rely</u>.  Indeed, while the Studios attach as exhibits two emails comprising various discovery requests by the Studios, they omit the specific email rejecting the keyword searches in issue.  *See* Ex. A to Decl. of Jason Putnam Gordon filed concurrently herewith at 2 (email from Mr. Berta stating that the keyword searches proposed were "not feasible in time allotted for the parties to meet the mutual production deadline of November 17" and specifically identifying the keyword searches which would be performed by Real).  The Studios own Exhibit E to this Motion which identifies the Studios' document requests as of November 6, 2008 (more than a week after and superseding the Studios' initial requests identified in Exhibit D to Motion) confirms that the keyword searches in issue were dropped by the Studios, just as Real agreed to drop numerous requests for documents during the preliminary injunction phase.[1]  Similarly baseless is the assertion that Real's patent applications constitute technical or design specifications for RealDVD which should have been produced is similarly misplaced – patent applications describe ***inventions*** and are not particular

---

[1] It is worth noting that discovery in this case was highly expedited and that the Studios refused to produce relevant information that they believed could not be collected and reviewed in the limited time allotted and also refused to produce information outside of "what you [Real] absolutely need[s]."  *See* Ex. B. to Gordon Decl.  Indeed the Studios explicitly stated that in discovery both sides would "need to forego some things we obviously would like . . . [t]hat's why we're both doing this without prejudice to positions we may take down the road if we get into full-blown discovery."  *Id*. The Studios suggestion now that Real's failure to broadly construe discovery requests and overturn every stone for potentially responsive information constitutes some sort of discovery abuse is without basis and ignores the parties' agreements to the contrary.

product specifications. 35 U.S.C. § 112. Real produced product specifications for the RealDVD products long ago along with the source code that specifically sets forth the products' operations. The Studios' suggestion that Real wrongly withheld documents it agreed to produce is untrue.

What is true is that the Studios have been aware of the patent applications in issue since February 13, 2008, when Ms. Hamilton discussed them during her deposition, and that they specifically requested such patent applications in April 2008. Exhibit F to Motion. It is also true that the Studios never followed up nor moved the Court when Real did not agree to produce such patent applications, as by that time discovery for the PI proceeding was long closed. These applications are by no means "new" evidence concealed by Real as the Studios would have the Court believe – and such false assertions in no way justify additional briefing on a preliminary injunction proceeding which has been closed for over a month. The Studios' request to supplement the record to include the patent applications should be denied and their attempt to submit additional briefing on issues already pending before the Court should be rejected.

## II. The Real Patent Applications Are Consistent With Real's Evidence And Arguments At The Preliminary Injunction Proceeding

The Studio Defendants also seek to rely on the patent applications to advance new arguments with respect to the closed preliminary injunction proceeding. In order to do so, the Studio Defendants have mischaracterized both Real's arguments in the preliminary injunction proceeding and the contents of the patent applications themselves.

### A. Whether ARccOS Or RipGuard Are Intended As "Copy Protection" Mechanisms Is Irrelevant

First, the Studio Defendants falsely claim that Real argued that ARccOS and RipGuard are not labeled or marketed as "copy protection" measures. The Studio Defendants then cite to portions of the patent applications recognizing that ARccOS and RipGuard are intended to provide some sort of "copy protection" to argue that the patent applications contain an admission of something. There is no such admission – the labeling and intent behind ARccOS or RipGuard products is irrelevant to the Studio Defendants' claims under the DMCA. As Real argued at the preliminary injunction proceeding, regardless of the intent behind ARccOS and RipGuard or whether they are marketed as or labeled as *intending* to provide some sort of "copy protection,"

they are not eligible as "effective technological measures" under the DMCA. This is so because (1) ARccOS and RipGuard comprise intentional errors that mimic errors that can appear unintentionally on DVDs and (2) the ARccOS and RipGuard techniques freely allow access and copying of DVDs if a software program accesses the DVD in a DVD Video Specification compliant manner. These arguments have nothing to do with what ARccOS or RipGuard are called. Instead, they have to do with fundamental facts that Real provided at the preliminary injunction proceeding about the nature and limitations of the ARccOS or RipGuard error techniques that have been grafted onto accepted DVD Video standards.

Indeed, while the Studio Defendants argue on Page 2 of their Motion that the term "copy protection" should have some meaning, they then acknowledge (as they must) the irrelevance of their entire argument by expressly conceding on Page 3 of their Motion that "the issue for DMCA purposes, of course, is not whether ARccOS/RipGuard are 'copy protection' but whether they are effective technological measures under 17 U.S.C. § 1201(b)." The label "copy protection" is entirely irrelevant to the issues before this Court under the DMCA and thus the Studios' first attempt to identify relevant evidence by the patent applications' use of this term fails.

### B.   ARccOS and RipGuard Cannot Prevent Linear Copying of DVDs

Next, the Studio Defendants attempt to manufacture an inconsistency between Real's patent applications and the evidence adduced at the preliminary injunction proceeding regarding the ability to make a linear copy of DVDs infected with ARccOS or RipGuard errors. That argument also fails. What Real established at the preliminary injunction proceeding through, among other evidence, the ***admissions*** of the Macrovision engineer who created RipGuard, was that computer software would ***always*** be able to make a copy of a DVD with sector errors on it *if the computer software were configured to ignore and proceed through those sector errors*. *See, e.g.*, Hollar Tr. at 46:18-47:2 (lodged with Studios' Notice of Lodging of Designated Deposition Testimony of Mark Hollar and Video (docket entry 321), filed May 12, 2009); Hearing Tr. (Dixon) at 899:20-901:3; *see also* Motion at 3:2-4.

REAL'S OPP. TO STUDIO DEFS.' ADMIN. MOT.
FOR JUD. NOTICE OF REAL'S PAT. APPS.
CASE NOS.  08-cv-04548 MHP
 08-cv-04179 MHP

4

Contrary to the Studio's claim, there is no inconsistency between Real's arguments in the preliminary injunction proceeding and the statements in the patent applications. Real has consistently acknowledged that if a computer program is designed such that it does ***not*** ignore sector errors, then such sector errors could cause a copying process to fail for that program. This is no more and no less than what is stated in Real's patent applications, which acknowledge that a set of DVD errors "***may*** cause an archiving process to fail" (*see* Motion at 3:7-8). This is not the issue. Rather, the issue before the Court is the following: where a trivial computer program ability – *i.e.*, the ability to ignore sector errors – enables a complete useable copy of a DVD, should the intentional use of sector errors be elevated to an "effective technological measure" under the DMCA? Real has argued that it should not – the intentional use of such errors cannot be protected by the DMCA when they are so easily ignored in the case of a simple linear copy of a DVD. This is especially true where the Studio Defendants themselves have conceded that "subjective intent" – *e.g.*, the Studios' asserted intent to prevent copying by using such errors – is "irrelevant" under the DMCA (*see* Studio P.I. Motion at 18) and where the Studios have admitted that ARccOS and RipGuard are, indeed, ineffective. Hearing Exhibit E (MPAA-WAR-0010954-5).

### C. DVD Walk Is Designed To Traverse A DVD In A DVD Video Specification Compliant Manner

The final argument of the Studios is the exact same rhetorical argument that the Studios advanced at the hearing: if DVD software is designed to follow the DVD Video Specifications, and thus would never see ARccOS or RipGuard errors (which the Studios' experts have admitted are designed to be invisible to software following the DVD Video Specifications), does that software "avoid" ARccOS or RipGuard errors under the DMCA? It does not. As Mr. Bielman candidly explained at the preliminary injunction proceeding, he was aware that the ARccOS and RipGuard product used some indeterminate grab-bag of errors. Hearing Tr. at 1017:3-18. But, he was also aware that interacting with a DVD in a DVD Video Specification compliant manner, under Real's license through the FLLC would ensure that Real's software should not see such errors. *See, e.g., id*. This awareness is no more and no less than what the various quoted

snippets of the patent specifications state. The awareness that ARccOS and RipGuard errors exist cannot be equated to "circumvention" of an "effective technological measure" under the DMCA, because, as Real's evidence at the preliminary injunction proceeding showed, ARccOS and RipGuard do not contain any "effective technological measure" against access and copying in a DVD Video Specification compliant manner. *See also* Hearing Tr. (Dixon) at 865:14-866:11. Whether accessing and copying a DVD in a licensed and compliant manner "avoids" errors that are never intended to be seen by compliant software is an interesting linguistic question, but does not amount to circumvention under the DMCA. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 547 (6th Cir. 2004) (the DMCA does not "extend to a technological measure that restricts one form of access but leaves another route wide open."); *see also I.M.S. Inquiry Mgmt. Sys. Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 530-3 (S.D. N.Y. 2004) (an entity does not violate the DMCA by utilizing an authorized access mechanism regardless of whether copies are made or whether the entity has permission to use that access mechanism for copying); *Egilman v. Keller & Heckman*, LLP, 401 F. Supp. 2d 105, 113-14 (D.D.C. 2005) (same). The patent applications do not contain any statements that conflict with this conclusion.

## CONCLUSION

For the foregoing reasons, the Studio Defendants' claims that the patent applications should be made part of the record for the Studio Defendants' Motion for Preliminary Injunction should be denied.

Date:  June 29, 2009

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/
       Michael A. Berta

Attorneys for Plaintiffs and Counterclaim Defendants REAL NETWORKS, INC. and REALNETWORKS HOME ENTERTAINMENT, INC.