# EXHIBIT B

Dockets.Justia.com

**Berta, Michael**

| | |
|---|---|
| **From:** | Tosh Lane, Tracy |
| **Sent:** | Thursday, November 13, 2008 6:38 AM |
| **To:** | Berta, Michael; Bal, Colleen; DiBoise, Jamie; Nelson, Christopher; Gordon, Jason P. |
| **Subject:** | FW: Open Discovery Issues |

FYI

---

**From:** Barth, Lawrence [Lawrence.Barth@mto.com]
**Sent:** Wednesday, November 12, 2008 6:09 PM
**To:** Tosh Lane, Tracy
**Cc:** ~REALDVD
**Subject:** FW: Open Discovery Issues

Tracy:

Attached (in blue) are my responses to your email of earlier today.

Larry Barth


1.   <u>Privilege Issues</u>:  What are the parameters of the Studios' claim of privilege and joint privilege?  Are you claiming any privilege with the DVD CCA and if so, what are the parameters?  We have asked for this information at least 3 times and have not yet been given a response.  You are currently in the midst of document review so you must have made some internal determination regarding where you are claiming privilege.  Please provide this information as soon as possible.

   For the record, we were the ones who proposed to share with you the principles against which we were making privilege calls.  We have never refused to share them with you; I simply told you that it made no sense to do so in the abstract, before we had had a chance to review particular documents that would inform our views on privilege, and our ability to enunciate principles clearly.  You are right in thinking that, as our review now progresses, we are in a better position to share some of those principles, and I was in the process of writing you on that subject.  These are not exhaustive, and as documents raising additional issues arise, I shall share with you the bases for privilege claims.

   To start with the most obvious, we are withholding (i) communications from in-house counsel at a given studio to his or her clients at that studio; and (ii) communications within a given studio in which such legal advice is repeated or referred to.

   To the extent we run across communications between or among studios (i) in which privileged or work product information is shared in confidence; and (ii) where the studios are acting in their joint interest, we are withholding such communications.  Communications between or among studio counsel concerning this case would provide one such example.

   As I have explained to you, the studios' directors on the board of the DVD CCA are jointly represented by Dan Robbins of the MPAA.  Communications between Mr. Robbins and his clients are being withheld.  Similarly, group communications among the studio's DVD CCA directors and their counsel are being withheld.  Similarly, communications between two or more studio DVD CCA directors discussing Mr. Robbins' counsel are being withheld.

   Communications between or among studio DVD CCA directors' and non-studio DVD CCA directors are not being withheld, except in situations where the various DVD CCA directors are communicating with DVD CCA counsel (or regarding advice from DVD CCA counsel).  Communications among studio and non-studio DVD CCA directors regarding *Kaleidescape*, for example, would fall in this category if they included information from or relating to legal advice from DVD CCA legal counsel.

   Communications among members of the MPAA's "Copy Protection Working Group" and the MPAA's counsel, and among members of the MPAA's "technical committee" and its counsel, are being withheld as privileged.  Generally,

1

communications among members of the "Copy Protection Technical Working Group" are not being withheld as privileged. Of course, each responsive document is being reviewed individually and there may be exceptions to this (e.g., if individual members or groups within the CPTWG are communicating with their own counsel).

2. <u>CSS Amendments</u>: With respect to documents relating to the amendments to the CSS License Agreement, your latest email discusses responsive information in terms of "disk in tray" amendments. We understand that in the fall of 2007 there was a proposed amendment addressing persistent copying (which may have been referred to as "managed copy"), as well as an amendment related to "disk in tray" - please confirm that you are producing responsive information for both "disk in tray" and persistent copying amendments. We further informed you that we understand that the Studios had proposed a copying related amendment in late 2006 and that we believe information relating to this amendment is relevant and should be produced. We also understand that for every amendment, there is a report on the amendment, and that members submit written comments. We want to make sure that we get the report, comments and vote for every amendment relating to copying or disc in tray. Please confirm that the Studios are producing such information to the extent it is in their possession.

We are producing non-privileged communications discussing the "disk in tray" amendments (which you referred to as the post-*Kaleidescape* amendments.) I explained to you that we could not collect and produce, within the allotted time frame, documents "regarding" managed copy amendments, but agreed to work with you to get such amendments *themselves* from the DVD CCA. I thought you had moved beyond your request for all documents "regarding" such amendments. I am unaware of what you are referring to as "persistent copying amendments" but, again, would suggest you try to get what you take to be relevant proposed amendments (along with reports, etc.) from the DVD CCA.

3. <u>Testimony from the Studio Witnesses in Cartoon Network v. CSC Holdings</u>: We would like to move forward on this request and do not believe it should be burdensome for any party. A simple letter from the studios is all that is required to move the process forward, and Real will determine how to proceed if and when there is any objection from a party to that case. Please confirm that you will notify parties in that action that testimony from the studio witnesses has been requested, and also what you believe would be a "reasonable" time period for an objection to be asserted.

Per your earlier request, counsel for the studios already has written to the appropriate parties giving notice as required under the protective order in the referenced action. If there is an objection, we will let you know. If not, we will produce the requested documents.

4. <u>Harm Documents</u>: We believe that the studios are refusing to produce the following categories of documents:

   A. <u>High Level Reports/Presentations Regarding</u>:
      -calculations/estimates of losses due to piracy/illegal copying of DVDs and other forms of content
      -bases/methodologies for such calculations/estimates

   B. <u>Documents related to the CSS License Agreement and "Managed Copy", "Digital Copy" or "Burn-to-DVD" as those terms are used in the Declaration of Michael Dunn, including the implementation of "Managed Copy", "Digital Copy" or "Burn-to-DVD" under the CSS License Agreement or the relationship between "Managed Copy", "Digital Copy" or "Burn-to-DVD" and the CSS License Agreement</u>.

   C. <u>Documents related to any proposed or contemplated amendments to the CSS License Agreement relating to "Managed Copy", "Digital Copy" or "Burn-to-DVD" as those terms are used in the Declaration of Michael Dunn</u>. You offer these documents "as a compromise". We do not agree to forego the documents requested in item B above. Does this mean you are unwilling to produce these documents?

   D. <u>Documents sufficient to explain the technology underlying "Managed Copy", "Digital Copy" and "Burn-to-DVD" as those terms are used in the Declaration of Michael Dunn, including technical specifications, schematics, design and development documents.</u>

We shared with you our view that the documents in categories 4A, 4B and 4D have little to do with the issues at this stage of the proceedings, and that we could not begin to collect and process them -- along with everything else you have asked for -- within the time available. They are certainly not within the category of "what you absolutely need," as Judge Patel admonished both sides.

On Category 4C, please see my comments above. I thought we had agreed that you would seek from the DVD CCA proposed amendments themselves. Again, we could not hope to collect and process all documents "related to" the subjects you describe.

As we have stated, the above information is highly relevant to harm and indeed, was initially raised in this case by the studios in the Declaration of Michael Dunn to support the Studio's assertion that they are irreparably harmed by RealDVD. Given that it is the Studios who have asserted harm based on the above topics, we do not understand how you can refuse production, particularly since any burden will be minimal since you are already collecting documents from the appropriate person at the Studios on related topics (at least for category A).

It's not my purpose in this email to argue, but only to share facts and positions. We have been understanding of many of the things you told us you couldn't do in the allotted time frame, and will need to forego some things we obviously would like. That's why we're both doing this without prejudice to positions we make take down the road if we get into full-blown discovery.

Regardless, please confirm that the studios' position is that these documents will not be produced. Further, if there are other documents requested by Real that the studios refuse to produce that are not addressed in this email, please let me know immediately. We need to finalize our areas of dispute so that we can bring such issues to the Court's attention when Judge Patel returns.

Thanks.

Tracy