1 | JAMES A. DiBOISE, State Bar No. 83296
Email:  jdiboise@wsgr.com
2 | LEO CUNNINGHAM, State Bar No. 121605
Email:  lcunningham@wsgr.com
3 | COLLEEN BAL, State Bar No. 167637
Email:  cbal@wsgr.com
4 | MICHAEL A. BERTA, State Bar No. 194650
Email:  mberta@wsgr.com
5 | TRACY TOSH LANE, State Bar No. 184666
Email: ttosh@wsgr.com
6 | WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
7 | One Market Street
Spear Tower, Suite 3300
8 | San Francisco, CA 94105

9 | Attorneys for Plaintiffs and
Counterclaim Defendants
10 | REALNETWORKS, INC. and
REALNETWORKS HOME
11 | ENTERTAINMENT, INC.

12 | UNITED STATES DISTRICT COURT

13 | NORTHERN DISTRICT OF CALIFORNIA

14 |

15 | REALNETWORKS, INC., a Washington
corporation; and REALNETWORKS HOME
ENTERTAINMENT, INC., a Delaware
16 | corporation,

17 |                          Plaintiffs,

18 |        v.

19 | DVD COPY CONTROL ASSOCIATION, INC., a
Delaware nonprofit corporation, DISNEY
20 | ENTERPRISES, INC., a Delaware corporation;
PARAMOUNT PICTURES CORP., a Delaware
21 | corporation; SONY PICTURES ENTER., INC., a
Delaware corporation; TWENTIETH CENTURY
22 | FOX FILM CORP., a Delaware corporation; NBC
UNIVERSAL, INC., a Delaware corporation;
23 | WARNER BROS. ENTER. INC., a Delaware
corporation; and VIACOM, Inc., a Delaware
24 | corporation,

25 |                          Defendants.

26 | AND RELATED CASES

27 |

28 |

Case Nos. C08 04548 MHP;
        C08 04719 MHP

**REALNETWORKS' OPPOSITION TO
DEFENDANTS' ADMINISTRATIVE
MOTION FOR EXTENSION OF TIME
TO RESPOND TO REALNETWORKS'
SECOND AMENDED COMPLAINT**

REAL'S OPP. TO DEFS.' ADMIN. MOT. FOR EXTENSION TO
RESPOND TO REAL'S SECOND AMENDED COMPLAINT
CASE NOS. 08-cv-04548 MHP;  08-cv-04179 MHP

Dockets.Justia.com

1    The Defendants' administrative requests for a further extension of time to answer

2  RealNetworks, Inc. and RealNetworks Home Entertainment, Inc.'s ("Real's") antitrust claims

3  should be denied.  Missing from Defendants' briefs is an acknowledgment that Real already gave

4  Defendants a *six-week extension* to file a response to Real's claims, providing the Defendants

5  with a total of *more than two months* to respond.[1]  Steer Decl, Exh. 1 (Dkt. 414) (stipulation and

6  order extending time); *id*. at ¶2 (admitting that Real filed antitrust claims on May 13, 2009).

7  Two months is more than enough time for the numerous Studio and DVD CCA counsel to

8  research relevant legal issues, consider strategic options and prepare a well-planned response.

9  There is no legitimate basis for the further delay that Defendants seek to introduce into the

10  schedule.

11    Given that Defendants have already obtained from Real a significant extension of time to

12  respond, their current request for even more time is not driven by any actual need.  Instead,

13  Defendants seek an open-ended extension, tethered to a single event that has nothing to do with

14  the merits of Real's antitrust claims:  this Court's decision on Defendants' preliminary injunction

15  motion.  In short, Defendants seek delay for delay's sake, presumably because they perceive a

16  strategic advantage in putting off for as long as possible adjudication of Real's antitrust claims

17  against them.

18    Defendants' principal "justification" for the requested extension is that Real's antitrust

19  claims supposedly "depend upon the construction of the CSS License."  Studio Admin. Req. at 1.

20  They therefore contend that it would be more efficient to permit them to wait to file theoretical

21  Rule 12 motions to dismiss the claims until after the Court issues its preliminary injunction

22  ruling.  But this justification has no merit.  Real's Second Amended Complaint makes clear that

23  the illegality of Defendants' conduct is not dependant upon judicial interpretation of the CSS

24

25    [1] Real granted an extension to the DVD CCA to respond to Real's antitrust counterclaims,
which were filed as of right, and a separate extension to the Studio Defendants to respond to
26  Real's motion for leave to amend the complaint to add the antitrust claims against the Studio
Defendants.  Because the Studio Defendants have filed a statement of non-opposition to the
27  motion for leave to amend and are seeking to coordinate their time to respond to Real's antitrust
claims with the DVD CCA's time to respond, Real treats the Defendants' response time together
28  in this opposition.

1    License Agreement.  *See, e.g*., Second Amended Complaint at ¶128.  As Real has pleaded, the

2    Defendants' have engaged in *per se* illegal behavior, regardless of the Court's preliminary

3    injunction ruling.

4         Moreover, the preliminary injunction ruling is not by its terms a final adjudication, and

5    given the importance of this case to all concerned, will likely be appealed by one or more of the

6    parties in any event.  Permitting the Defendants to delay responding to Real's antitrust claims

7    until after a preliminary ruling would therefore not achieve the certainty concerning the

8    construction of the CSS License Agreement that Defendants claim to seek, and would prejudice

9    Real to no purpose.

10        Real respectfully requests that the Court deny the Defendants' administrative requests for

11   a further indefinite extension of time.

12   **I.     Real's Antitrust Claims Do Not Turn On the Court's Preliminary Injunction Ruling**

13        The Defendants' contention that Real's antitrust claims depend on the Court's

14   construction of the CSS Agreement is incorrect.  Real alleges that the Studios and DVD CCA

15   agreed to claim that the CSS License Agreement prohibits CSS licensees from competing in the

16   market for technology that enables consumers to make secure back-up copies of DVDs that they

17   own.[2]  This is an illegal group boycott.  *See, e.g*., [Proposed] Second Amended Complaint, ¶¶39-

18   54, 77-85, 107-108, 118-129; *Fashion Originator's Guild v. Federal Trade Commission*, 312

19   U.S. 457, 467-68 (1941).

20        As alleged, the illegality of the Studios and DVD CCA's conduct does not depend on

21   judicial interpretation of the CSS License Agreement, because what is at issue is the Defendants'

22   conduct, not the meaning of the CSS License Agreement.[3]  Whether or not the Court interprets

23    

24       [2] In its fourth cause of action, Real also alleges a collective refusal deal under Section 1 of
     the Sherman Act against the Studio Defendants only based on the Studios' collusive agreement
25   to refuse to negotiate with Real in advance of Real's release of the RealDVD product.

26       [3] Nor does the illegality of Defendants' conduct turn on adjudication of the "fair use" issue.
     Even if Real needed a license to the DVD content from the Studios, the law does not permit the
27   Studios to refuse to negotiate those rights except on collective terms.  *See Fashion Originator's
     Guild*, 312 U.S. at 468.

28    

1    the CSS License Agreement in the Defendants' favor for purposes of the preliminary injunction

2    ruling, the Defendants' group conduct is nevertheless *per se* illegal.  As alleged by Real:

3       [T]he Studio Defendants' and DVD CCA's interpretation of the CSS License
        Agreement, by which they have denied RealNetworks the right to use the
4       encryption technology that it has licensed from the DVD CCA unless and until
        RealNetworks assents to the DVD CCA's and the Studio Defendants' demands that
5       it exit the relevant market, have rendered the CSS License Agreement void under
        Section 1 (if their interpretation is held to be correct), or amounted to a *de facto*
6       agreement in violation of Section 1 (if their interpretation is held not to be correct).

7     [Proposed] Second Amended Complaint at ¶128; *see also id*. at ¶¶83-84.

8            The Defendants cite incomplete snippets of the allegations against them to support their

9    claim that Real's antitrust case stands or falls on the Court's interpretation of the CSS

10   Agreement.  Studios' Admin. Req. at 2.  However, read in their entirety, the passages quoted by

11   Defendants make clear that the Defendants' collective interpretation of the CSS Agreement and

12   corresponding collective conduct are prohibited by the antitrust laws regardless of the Court's

13   ultimate interpretation of the CSS License Agreement.  [Proposed] Second Amended Complaint,

14   ¶¶83-84; Motion for Leave at 3.  In short, there is no need to delay litigation of Real's claims

15   based on any supposed dependence on construction of the CSS License Agreement.

16           Moreover, the Defendants' suggestion that the Court's preliminary injunction ruling will

17   resolve all uncertainty regarding the ultimate construction of the CSS Agreement, allowing them

18   to file more "efficient" motions to dismiss, ignores reality.  A preliminary injunction ruling is not

19   a final ruling on the merits and is an appealable ruling in any event.  Thus, even if construction

20   of the CSS License Agreement were relevant to the antitrust claims, a preliminary injunction

21   ruling could not afford any finality sufficient to justify the delay sought by the Defendants.

22           Finally, if the Defendants for whatever reason feel they need to see the Court's

23   preliminary injunction ruling before attacking Real's antitrust claims on the merits, there is a

24   much more straightforward solution to the one they offer.  The Defendants should answer Real's

25   claims forthwith.  If, after receiving the Court's preliminary injunction ruling they are still

26   interested in attacking Real's antitrust claims on the merits, they have not lost the ability to do

27   so:  they can simply file Rule 12(c) motions for judgment on the pleadings.  There is no need to

28   delay adjudication of Real's antitrust claims.

REAL'S OPP. TO DEFS.' ADMIN. MOT. FOR EXTENSION TO                    -3-
RESPOND TO REAL'S SEcond AMENDED COMPLAINT
CASE NOS.  08-cv-04548 MHP;  08-cv-04179 MHP

**II.     Delaying the Antitrust Case Would Allow Defendants To Game The System and Would Be Prejudicial To Real**

Equally unavailing is the Defendants' claim that the open-ended deadline they seek will promote "efficiency" without prejudicing Real.  There is no efficiency in keeping the rest of the case on ice, particularly where the antitrust claims do not depend on the preliminary injunction ruling.

The delay sought by Defendants is highly prejudicial to Real:  there is a great deal of work to be done in connection with the antitrust claims and no reason to put up artificial barriers to Real's prosecution of those claims.  The prejudice to Real of delay is particularly profound where the relief Real seeks against the Defendants includes an injunction barring them from illegally seeking to stifle competition in the market for products that compete with the Studios, including competition from Real.  The fact that Real took the time to carefully research and draft its antitrust claims before filing them is no reason to put them on hold indefinitely, as Defendants contend.

**CONCLUSION**

For the foregoing reasons, the Studio Defendants' and DVD CCA's requests for extensions of time to respond to Real's [Proposed] Second Amended Complaint should be denied.

Date:  July 2, 2009                               WILSON SONSINI GOODRICH & ROSATI
                                                  Professional Corporation


                                                  By:   /s/ Colleen Bal
                                                            Colleen Bal

                                                  Attorneys for Plaintiffs and Counterclaim Defendants
                                                  REAL NETWORKS, INC. and REALNETWORKS
                                                  HOME ENTERTAINMENT, INC.