REGINALD D. STEER (SBN 056324)
rsteer@akingump.com
MARIA ELLINIKOS (SBN 235528)
mellinikos@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
580 California Street, 15th Floor
San Francisco, California 94104-1036
Telephone:    (415) 765-9500
Facsimile:    (415) 765-9501

STEPHEN MICK (SBN 131569)
smick@akingump.com
MICHAEL SMALL (SBN 222768)
msmall@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2029 Century Park East, Suite 2400
Los Angeles, California 90067-3012
Telephone:    (310) 229-1000
Facsimile:    (310) 229-1001

WILLIAM SLOAN COATS (SBN 94864)
wcoats@whitecase.com
MARK WEINSTEIN (SBN 193043)
mweinstein@whitecase.com
MARK F. LAMBERT (SBN 197410)
mlambert@whitecase.com
**WHITE & CASE LLP**
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, California 94306
Telephone:    (650) 213-0300
Facsimile:    (650) 213-8158

Attorneys for Defendant and Counterclaimant
DVD COPY CONTROL ASSOCIATION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REALNETWORKS, INC., a Washington Corporation; and REALNETWORKS HOME ENTERTAINMENT, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>DVD COPY CONTROL ASSOCIATION, INC., a Delaware nonprofit corporation, et al.<br><br>Defendants.<br><br>AND RELATED CASES | Case No. C08 04548 MHP<br>Related Case No. C08 CV 04719 MHP<br><br>**NOTICE OF MOTION AND MOTION OF DVD COPY CONTROL ASSOCIATION, INC. TO DISMISS COUNTERCLAIMS**<br><br>**Before:** Hon. Marilyn Hall Patel<br>**Courtroom:** 15<br>**Date:** September 14, 2009<br>**Time:** 2:00 p.m.<br><br>[Proposed Order filed herewith] |

1

MOTION OF DVD CCA TO DISMISS
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2   PLEASE TAKE NOTICE THAT, on September 14, 2009, at 2:00 pm, or such other date and
3   time as the Court may establish, before the Honorable Marilyn Hall Patel of the United States District
4   Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California,
5   Defendant and Counterclaimant DVD Copy Control Association ("DVD CCA") will and hereby does
6   move pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for dismissal of the Counterclaims of
7   RealNetworks, Inc. and RealNetworks Home Entertainment, Inc. (collectively, "RealNetworks") against
8   DVD CCA.

9   This Motion is based upon this Notice of Motion and Motion, the attached Supporting
10  Memorandum of Points and Authorities, the pleadings, records, and papers on file in this action, such
11  other papers as may be filed at or before the hearing, the oral arguments of counsel, and any other
12  matters properly before the Court.

13  Dated:  July 14, 2009                          Respectfully submitted,

                                                   AKIN GUMP STRAUSS HAUER & FELD LLP

                                                   WHITE & CASE LLP


                                                   By _____/s/_____
                                                       REGINALD D. STEER
                                                       Attorneys for Defendant and Counterclaimant
                                                       DVD COPY CONTROL ASSOCIATION, INC.

2

MOTION OF DVD CCA TO DISMISS
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

**TABLE OF CONTENTS**

**Page No.**

I.  INTRODUCTION ........................................................................................................1

II. STATEMENT OF FACTS ..........................................................................................1

III. ARGUMENT...............................................................................................................5

    A.  The Counterclaims Do Not Adequately Allege That DVD CCA Participated In Any Conspiracy To Violate The Antitrust Laws..............................5

    B.  The Sherman Act Claim Must Be Dismissed For The Independent Reason That The Alleged Conspiratorial Conduct of DVD CCA Is Immunized Under The *Noerr-Pennington* Doctrine .................................................8

    C.  Alternatively, The Sherman Act Claim Must Be Dismissed At Least Insofar As It Asserts *Per Se* Liability Against DVD CCA .............................9

    D.  RealNetworks's Cartwright Act Claim Fails For The Same Reasons As Its Federal Antitrust Claim ......................................................................................11

    E.  RealNetworks's UCL Claim Fails For The Same Reasons As Its Federal Antitrust Claim...................................................................................................12

IV. CONCLUSION..........................................................................................................12

# TABLE OF AUTHORITIES

**CASES**                     **Page No.**

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) ........................................................................................................ 5, 6

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................................... 5, 6, 7, 9

*Blank v. Kirwan*,
    39 Cal. 3d 311 (1985) ............................................................................................................. 11

*Chavez v. Whirlpool Corp.*,
    93 Cal. App. 4th 363 (2001) ................................................................................................... 12

*Conley v. Gibson*,
    355 U.S. 41 (1957) ............................................................................................................... 5, 7

*Copperweld Corp. v. Independence Tube Corp.*,
    467 U.S. 752 (1984) ............................................................................................................. 7, 8

*Exxon Corp. v. Superior Court*,
    51 Cal. App. 4th 1672 (1997) ................................................................................................. 11

*Freeman v. Lasky, Haas & Cohler*,
    410 F.3d 1180 (9th Cir. 2005) .................................................................................................. 8

*Freeman v. San Diego Ass'n of Realtors*,
    77 Cal. App. 4th 171 (1999) ................................................................................................... 11

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*
    896 F.2d 1542 (9th Cir. 1990) .................................................................................................. 2

*In re ATM Fee Antitrust Litig.*,
    554 F. Supp. 2d 1003 (N.D. Cal. 2008) ............................................................................. 9, 10

*Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*,
    407 F.3d 1027 (9th Cir. 2005) .................................................................................................. 8

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ........................................................................................ 5, 6, 7, 9

*Morrison v. Viacom, Inc.*,
    66 Cal. App. 4th 534 (1998) ................................................................................................... 11

*Prof'l Real Estate Investors v. Columbia Pictures Indus.*,
    508 U.S. 49 (1993) .................................................................................................................... 8

*Rick-Mik Enters. v. Equilon Enters.*,
    532 F.3d 963 (9th Cir. 2008) .................................................................................................... 5

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*,
    792 F.2d 210 (D.C. Cir. 1986) ............................................................................................... 10

*SC Manufactured Homes, Inc. v. Liebert*,
    162 Cal. App. 4th 68 (2008) .................................................................................................. 12

*State of Cal. ex rel. Van de Kamp v. Texaco, Inc.*,
    46 Cal. 3d 1147 (1988) ........................................................................................................ 11

*Texaco, Inc. v. Dagher*,
    547 U.S. 1 (2006) ...................................................................................................... 8, 9, 10

**STATUTES**

National Cooperative Research and Production Act, 15 U.S.C. §§ 4301-4305 .................... 11, 12

66 Fed. Reg. 40,727 (Aug. 3, 2001) ....................................................................................... 2, 11

74 Fed. Reg. 17,985 (Apr. 20, 2009) ............................................................................................ 2

**OTHER AUTHORITIES**

Antitrust Modernization Commission, *Report and Recommendations* 118 (2007) .................... 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Sherman Act counterclaim brought by RealNetworks against DVD CCA is riddled with fatal deficiencies. First, RealNetworks does not allege that DVD CCA has refused it *anything at all.* To the contrary, it is undisputed that DVD CCA dealt with RealNetworks in the only capacity it could: by granting RealNetworks exactly the CSS license it requested. Therefore, RealNetworks does not and cannot plausibly allege that DVD CCA took part in any concerted refusal to deal.

Moreover, RealNetworks's Sherman Act counterclaim is subject to dismissal for at least the following additional reasons: (1) DVD CCA's conduct as licensor of CSS technology cannot be part of an antitrust conspiracy because it is the conduct of a single entity, not of more than one entity as is required to state a claim for an antitrust conspiracy and (2) all of DVD CCA's conduct that is alleged to be part of the supposed conspiracy is immunized from liability by the *Noerr-Pennington* doctrine. Because RealNetworks's other claims, for violation of California's Cartwright Act and Unfair Competition Law ("UCL"), are premised on the exact same allegations as RealNetworks's Sherman Act claim, the California law claims fail as well. Accordingly, DVD CCA respectfully requests that RealNetworks's counterclaims be dismissed in their entirety. Alternatively, DVD CCA submits that RealNetworks's counterclaims should be dismissed pursuant to the "core activity" doctrine and statutory law applicable to joint ventures, to the extent that the claims purport to allege *per se* federal and state antitrust liability against DVD CCA.

## II. STATEMENT OF FACTS[1]

Before making DVDs commercially available to the public, owners of movie and television content were understandably reluctant to distribute content on DVDs without a way to protect their copyrighted material. To address these concerns, as well as the concerns of companies seeking to cost-

---

[1] This Statement of Facts draws from the facts alleged in RealNetworks's complaint and counterclaims and their exhibits, from RealNetworks's answers to the complaints of DVD CCA and the Studios and from judicially noticeable matters. DVD CCA does not concede the truth of RealNetworks's fact allegations, nor does it concede the truthfulness of RealNetworks's characterizations of underlying facts (for example, RealNetworks's mischaracterizations of preliminary injunction hearing testimony in paragraphs 13-15 of the counterclaims).

1

MOTION OF DVD CCA TO DISMISS
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

effectively manufacture products for playing DVDs, Matsushita Electric Industrial, Inc., Ltd. ("Matsushita") and Toshiba Corporation developed the DVD Content Scramble System ("CSS") technology. RealNetworks Complaint Ex. 1 ("License Agreement") Recital A[2]. The CSS technology encrypts the video information on a DVD to prevent unauthorized consumer copying of copyrighted content. *Id.*; RealNetworks Complaint ¶ 20.

Manufacturers desiring to create products to play back CSS-protected DVDs must obtain a CSS license. RealNetworks Complaint ¶¶ 20-21. That license, first referred to as the CSS Interim License Agreement (collectively with all subsequent versions of the CSS License Agreement and integrated documents, the "Agreement"), was originally administered by Matsushita, one of the original developers of CSS. *See* License Agreement Recitals A & B (noting that Matsushita was a developer of CSS), §1.10 (defining "CSS Interim License Agreement" and naming Matsushita as interim licensor). Responsibility for licensing and enforcing CSS technology now rests with DVD CCA, a Delaware not-for-profit corporation. *See id.*; RealNetworks Complaint ¶ 12; RealNetworks Counterclaims ¶ 47. Over the course of its existence, the DVD CCA's membership has included not only the Studios, but hundreds of other companies in the consumer electronics, computer software and information technologies industries. *See, e.g.*, 66 Fed. Reg. 40,727-40,729 (Aug. 3, 2001) (Department of Justice Antitrust Division notice listing DVD CCA's members); 74 Fed. Reg. 17,985 (Apr. 20, 2009) (noting changes in DVD CCA's membership). The entities that have been licensed by DVD CCA to use the CSS technology include owners and manufacturers of content distributed on DVD discs, creators of encryption engines, hardware and software decrypters, and manufacturers of DVD Players and DVD-ROM drives. RealNetworks Complaint ¶¶ 20-21; RealNetworks Counterclaims ¶ 47.

RealNetworks became a CSS Licensee to obtain the decryption keys and other CSS technical information needed to implement playback of CSS-protected DVD content, so that it could make and sell its RealDVD software. RealNetworks Counterclaims ¶ 59. RealNetworks executed the Agreement

---

[2] The Court may consider the CSS License Agreement in the context of this motion to dismiss, because RealNetworks attached the CSS License Agreement as Exhibit 1 to its Complaint for Declaratory Relief. *See* Dkt. No. 2; *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (materials properly submitted with the complaint are part of the complaint for purposes of a 12(b)(6) motion).

on August 13, 2007, with the understanding that the Agreement establishes the terms and conditions under which RealNetworks may use CSS. RealNetworks Answer to DVD CCA Counterclaims ("RealNetworks Answer") ¶ 9; RealNetworks Counterclaims ¶ 59. The terms of the Agreement explicitly require RealNetworks to abide by the CSS Specifications in full. *See* License Agreement § 4.2.1. Moreover, at the time RealNetworks executed the Agreement, it was well aware of DVD CCA's interpretation of the Agreement as barring devices that allow consumers to make copies of CSS-protected DVDs. RealNetworks Counterclaims ¶ 22. RealNetworks was familiar with DVD CCA's publicly-stated positions in the state court action *DVD CCA v. Kaleidescape, Inc.*, No.1:04 CV 031829 (Cal. Superior Ct., Mar. 29, 2007), which is under submission before a California appellate court. RealNetworks Counterclaims ¶¶ 22-23.

Nevertheless, RealNetworks developed, marketed and planned on distributing RealDVD, a product that enables copying of CSS-protected DVD content onto a hard drive for later playback without the DVD present, thereby thwarting the CSS technology's purpose of preventing unauthorized consumer copying. License Agreement Recital A; RealNetworks Answer ¶ 12. RealNetworks slated RealDVD for launch on September 30, 2008. RealNetworks Counterclaims ¶ 60.

In September 2008, shortly before launching RealDVD, RealNetworks allegedly approached the Studios to seek agreements relating to the Studios' content in light of RealDVD's copying capabilities. RealNetworks Counterclaims ¶¶ 7-9 ("Before RealNetworks released Vegas, RealNetworks approached the Studios to notify them of the product, and to explore mutual marketing opportunities"; referring to "the negotiations between RealNetworks and the Studios"). There is no allegation that DVD CCA participated in these discussions. *See generally id.* (omitting any mention of DVD CCA). Indeed, RealNetworks never alleges that DVD CCA owns or has any right to license the content that RealNetworks discussed with the Studios.

Soon after, on September 30, 2008, RealNetworks filed a declaratory judgment action in this Court against the Studios and DVD CCA. *Id.* at ¶ 60. On the same day, the Studios filed a complaint in the Central District of California for, *inter alia*, breach of the Agreement as third-party beneficiaries and violations of the Digital Millennium Copyright Act, and seeking a temporary restraining order enjoining

3

MOTION OF DVD CCA TO DISMISS
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

1  RealNetworks from distributing RealDVD.  *Id.*; *see also* Complaint, *Universal City Studios Prods. v.*
2  *RealNetworks, Inc.*, No. C-08-04719-MHP (N.D. Cal. Sept. 30, 2008) (Dkt. No. 1); Notice of
3  Application and Ex Parte Application of Plaintiffs for Temporary Restraining Order, *Universal City*
4  *Studios* (N.D. Cal. Sept. 30, 2008) (Dkt. No. 7).  The Central District action was transferred to this
5  Court, which granted the temporary restraining order.  DVD CCA then counterclaimed against
6  RealNetworks for breach of the Agreement and the implied covenant of good faith and fair dealing.
7  RealNetworks Counterclaims ¶ 61.  DVD CCA and the Studios subsequently filed motions for a
8  preliminary injunction against the sale of RealDVD.  *Id.*  The hearing on these motions for preliminary
9  injunction took place before this Court in April and May 2009.

10  On May 13, 2009, in the midst of the preliminary injunction hearing, RealNetworks filed
11  counterclaims in reply to DVD CCA's breach of contract and implied covenant counterclaims, alleging
12  federal and state antitrust and unfair competition causes of action.  RealNetworks alleged in its
13  counterclaims that it "approached *the Studios* to notify them of the [RealDVD] product, and to explore
14  mutual marketing opportunities," but that it "was unable to conclude a deal with any of *the Studios*."
15  RealNetworks Counterclaims ¶¶ 7-9 (emphasis added).  RealNetworks also characterized as an alleged
16  "horizontal group boycott" an agreement among "*[t]he Studios* . . . that they would claim that they
17  cannot enter into individual [marketing and licensing] agreements with RealNetworks."  *Id.* at ¶¶ 10-11
18  (emphasis added).  Moreover, RealNetworks's counterclaims include a section entitled "***The Group***
19  ***Boycott:  Refusing to Deal with RealNetworks***," alleging that "[t]he Studios have entered into a
20  'contract, combination, or conspiracy,' within the meaning of Section 1, among the Studios."  *Id.* at ¶ 70;
21  *see also id.* at ¶¶ 40-44 (accusing only Studios of "making these agreements," entering into an "illegal
22  scheme," having a "collective agreement not to negotiate individual licenses for their content with
23  RealNetworks," and having an "illegal agreement").  None of the aforementioned paragraphs alleges
24  any involvement in the supposed "group boycott" by DVD CCA.[3]  Indeed, RealNetworks's only factual

---

[3] RealNetworks simultaneously moved to file a proposed second amended complaint alleging these same causes of action against the Studios.  Dkt. No. 324.

4

MOTION OF DVD CCA TO DISMISS
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

allegations against *DVD CCA* all attack only its "interpretation of the CSS License Agreement." *Id.* at ¶ 37; *see also id.* at ¶¶ 34, 36, 38, 71, 81, 90.

## III. ARGUMENT

### A. The Counterclaims Do Not Adequately Allege That DVD CCA Participated In Any Conspiracy To Violate The Antitrust Laws

The Supreme Court's landmark opinion in *Bell Atlantic Corp. v. Twombly* holds that to survive a motion to dismiss, an antitrust complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made" to violate the antitrust laws. 550 U.S. 544, 556 (2007); *see Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (applying *Twombly*); *Rick-Mik Enters. v. Equilon Enters.*, 532 F.3d 963, 970 (9th Cir. 2008) (same). Under this pleading standard, "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice" to defeat a motion to dismiss. *Twombly*, 550 U.S. at 556; *see also id.* at 564, n.9 ("descriptions of parallel conduct" pled in conjunction with allegations that defendants "engaged in a contract, combination or conspiracy and agreed not to compete with one another" were insufficient to survive a motion to dismiss) (internal quotations omitted); *accord Kendall*, 518 F.3d at 1047. Following *Twombly*, the Ninth Circuit has held that "to allege an agreement between antitrust co-conspirators, the complaint *must* allege facts such as a 'specific time, place or person involved in the alleged conspiracies.'" *Kendall*, 518 F.3d at 1047 (emphasis added) (quoting *Twombly*, 550 U.S. at 565 n.10); *see also id.* at 1048 (dismissing complaint because it "does not answer the basic questions: who, did what, to whom (or with whom), where, and when?").

The Supreme Court's ruling in *Twombly* "'retired' the familiar language derived from *Conley v. Gibson* which provided 'the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Rick-Mik*, 532 F.3d at 971 (quoting *Twombly*, 550 U.S. at 561 (citing *Conley*, 355 U.S. 41, 45-46 (1957))) (internal citations omitted); *see also Kendall*, 518 F.3d at 1047 n.5 (observing that the *Twombly* court "specifically abrogated the usual 'notice pleading' rule" for the purpose of antitrust pleadings); *accord Rick-Mik*, 532 F.3d at 971. Underscoring that *Twombly* had supplanted the *Conley* standard, the Supreme Court subsequently made clear in *Ashcroft v. Iqbal* that a

5

complaint is not "plausible" enough to survive a motion to dismiss if it is "more likely explained by" lawful behavior.  129 S. Ct. 1937, 1950 (2009); *see also Twombly*, 550 U.S. at 557 n.5 (complaint must be "factually suggestive" of liability and not just "factually neutral"); *Kendall*, 518 F.3d at 1049 ("Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief," and it must therefore be dismissed. *Iqbal*, 129 S. Ct. at 1950 (internal quotations omitted).  Of course, the rule has long been that "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id*. at 1951 (internal quotations omitted).  In short, in order to survive DVD CCA's motion to dismiss, RealNetworks's counterclaims in this case must not only raise the possibility that DVD CCA participated in a conspiracy to violate the antitrust laws, but must provide the factual particulars that make such participation *plausible* in comparison to alternative views of the alleged facts.  They do not meet this standard.

      RealNetworks's allegations do not plausibly allege that DVD CCA participated in any conspiracy to violate the antitrust laws.  Specifically, RealNetworks alleges that it "approached *the Studios* to notify them of the product, and to explore mutual marketing opportunities," but that it "was unable to conclude a deal with any of *the Studios*."  RealNetworks Counterclaims ¶¶ 7-9 (emphasis added).  RealNetworks then characterizes as an alleged "horizontal group boycott" an agreement among "*[t]he Studios* . . . that they would claim that they cannot enter into individual [marketing and licensing] agreements with RealNetworks." *Id.* at ¶¶ 10-11 (emphasis added).  Tellingly, RealNetworks later alleges in the section of its counterclaims entitled "***The Group Boycott:  Refusing to Deal with RealNetworks***," that "[t]he Studios have entered into a 'contract, combination, or conspiracy,' within the meaning of Section 1, among the Studios." *Id.* at ¶ 70 (emphasis added); *see also id.* at ¶¶ 40-44 (accusing only Studios of "making these agreements," entering into an "illegal scheme," having a "collective agreement not to negotiate individual licenses for their content with RealNetworks," and having an "illegal agreement").  None of RealNetworks's allegations concerning the purported refusal to deal with it implicate DVD

6

MOTION OF DVD CCA TO DISMISS
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

1 CCA.  And none of its allegations provide any details of any purported agreement between DVD CCA
2 and the Studios that "answer the basic questions: who, did what, to whom (or with whom), where, and
3 when?"  *Kendall*, 518 F.3d at 1048.  Furthermore, to the extent that RealNetworks is trying to claim that
4 the creation of the CSS License Agreement was conspiratorial, that claim cannot proceed because
5 RealNetworks has not alleged that DVD CCA existed at the time of that event or played any role in it;
6 indeed, RealNetworks has not alleged when the Agreement was drafted, who drafted it, when DVD CCA
7 was formed, etc.  *See id.* at 1047-48 (quoting *Twombly*, 550 U.S. at 565 n.10).

8      Instead, RealNetworks offers the barebones conclusory allegation that "DVD CCA was the
9 instrumentality that [the Studios] used to effectuate the boycott."  RealNetworks Counterclaims at ¶16.
10 But RealNetworks's bald statement that DVD CCA was an "instrumentality" lacks any of the
11 specifics—the who, what, where and when—demanded by the Supreme Court and the Ninth Circuit.
12 *Kendall*, 518 F.3d at 1047-48 (quoting *Twombly*, 550 U.S. at 565 n.10).

13      RealNetworks's "refusal to deal" claim against DVD CCA also fails as a matter of law for the
14 undisputed reason that DVD CCA *did* in fact deal with RealNetworks.  As RealNetworks admits, DVD
15 CCA's involvement is limited to its role in licensing CSS technology.  *See, e.g.*, RealNetworks
16 Counterclaims ¶ 12.  As RealNetworks also admits, it "entered into a CSS License Agreement with the
17 DVD CCA on or about August 13, 2007"; in other words, in executing its function of licensing CSS
18 technology, the DVD CCA did not refuse to deal with RealNetworks.  *Id.* at ¶ 59.  In fact, RealNetworks
19 has not alleged that it ever asked DVD CCA for anything other than the license that it received.  *See*
20 *generally id.*  Not only do the counterclaims alleging a group boycott against DVD CCA therefore fail
21 the *Twombly* plausibility test, they also would have failed to satisfy the more liberal *Conley* pleading
22 standard because, having admitted that DVD CCA granted it a CSS license, RealNetworks cannot
23 provide any "set of facts in support of its claim" that DVD CCA refused to deal with it.  355 U.S. at 45-
24 46.

25      RealNetworks's conspiracy allegations fall short for another reason:  they do not explain how
26 DVD CCA's actions can form the basis for an antitrust *conspiracy* claim when the actions are those of a
27 single entity.  In *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769-71 (1984), the
28

7

MOTION OF DVD CCA TO DISMISS
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

1  Supreme Court held that a corporation and its subsidiaries could not conspire to violate the antitrust laws
2  because they effectively constituted a single entity, which could not possibly conspire with itself.  After
3  a quarter of a century, the single-entity rule of *Copperweld* has developed deep roots in antitrust law.  As
4  the Ninth Circuit has explained:  "Lower courts have since applied *Copperweld*'s reasoning (sometimes
5  referred to as the 'single-entity' rule) to a broader variety of economic relationships."  *Jack Russell*
6  *Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1034 (9th Cir. 2005) (collecting
7  cases).  Indeed, the Supreme Court has recognized that a joint venture executing its purpose is acting as
8  a single entity; it cannot conspire with its own constituents to execute that purpose any more than a
9  parent can conspire with its subsidiary.  *See Texaco, Inc. v. Dagher*, 547 U.S. 1, 7 (2006) ("As a single
10 entity, a joint venture, like any other firm, must have the discretion to determine the prices of the
11 products that it sells").  Here, there is no question that DVD CCA is a "single entity"; RealNetworks
12 itself has recognized that "DVD CCA is a Delaware nonprofit corporation."  RealNetworks
13 Counterclaims ¶ 47.  And RealNetworks has not alleged any factual basis for how this corporation could
14 conspire with its own members (in this case, the Studios) in light of the single-entity rule.

15      In summary, RealNetworks (1) has not alleged any plausible basis for DVD CCA's involvement
16 in the alleged group boycott by the Studios; and (2) cannot allege that DVD CCA refused to deal with it
17 in light of DVD CCA's granting it the CSS license it requested.  Even if RealNetworks had alleged that
18 DVD CCA had a role in the alleged conspiracy, those allegations would be implausible in light of the
19 single-entity rule and the fact that DVD CCA is a unitary corporate entity.  Each of these points
20 independently vitiates the counterclaims against DVD CCA and compels their dismissal as a matter of
21 law.

22      **B.      The Sherman Act Claim Must Be Dismissed For The Independent Reason That
              The Alleged Conspiratorial Conduct of DVD CCA Is Immunized Under The *Noerr-*
23            *Pennington* Doctrine**

24      Under the *Noerr-Pennington* doctrine, the filing of a lawsuit is immune from the antitrust laws.
25 *E.g., Prof'l Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 56-57 (1993).  That
26 immunity protects not only the filing of the lawsuit itself, but also "conduct incidental to" the filing.
27 *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005) (internal quotations omitted).
28

The allegedly illegal conduct asserted in RealNetworks's counterclaims is precisely the kind of conduct that is protected under *Noerr-Pennington*. Virtually all of the alleged factual matter underlying RealNetworks's accusations of conspiracy against DVD CCA comes from submissions for the preliminary injunction hearing in this case, which is protected litigation conduct. RealNetworks Counterclaims ¶¶ 13-15. In fact, all of RealNetworks's direct accusations against DVD CCA attack only DVD CCA's "interpretation of the CSS License Agreement," which is a thinly disguised way of attacking DVD CCA's expressed legal position as to the Agreement—conduct that is indisputably incidental to litigation and hence protected under *Noerr-Pennington*. *Id.* at ¶ 37; *see also id.* at ¶¶ 34, 36, 38, 71, 81, 90.

RealNetworks tries to avoid DVD CCA's *Noerr-Pennington* defense by claiming that it is suing over either the creation of the Agreement or DVD CCA's and the Studios' interpretation of the Agreement, not their litigation positions concerning RealNetworks's breach of the Agreement. *Id.* at ¶ 39. However, insofar as RealNetworks is attacking DVD CCA's interpretation of the Agreement, this is simply an attack on a litigation position and is therefore foreclosed by *Noerr-Pennington*. And, as explained above in Section II.A, if RealNetworks is attacking the formation of the Agreement, it has not alleged any of the facts needed to show that DVD CCA played a role in that event. Consequently, RealNetworks has not stated any claim against DVD CCA in connection with the formation of the Agreement. *See Kendall*, 518 F.3d at 1047-48 (quoting *Twombly*, 550 U.S. at 565 n.10). In sum, RealNetworks has no way to circumvent DVD CCA's invocation of *Noerr-Pennington* immunity.

### C. Alternatively, The Sherman Act Claim Must Be Dismissed At Least Insofar As It Asserts *Per Se* Liability Against DVD CCA

At the very least, DVD CCA's conduct is not susceptible to *per se* liability under the Sherman Act. Instead, the alleged conduct must be assessed under the "rule of reason" because, as RealNetworks alleges, DVD CCA and the Studios are involved in a joint venture and "the business practice being challenged [here] involves the core activity of the joint venture itself." *Dagher*, 547 U.S. at 7; *accord In re ATM Fee Antitrust Litig.*, 554 F. Supp. 2d 1003, 1013 (N.D. Cal. 2008). In *Dagher*, the Supreme Court considered a price-fixing claim leveled against the gasoline sellers Shell and Texaco based on the

9

MOTION OF DVD CCA TO DISMISS
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

1  price-setting policies of their joint venture, Equilon.  547 U.S. at 3.  The Court concluded that *per se*
2  liability was inappropriate despite the fact that, by forming Equilon, Shell and Texaco had effectively
3  created uniform gasoline prices for the geographic market in question.  *Id.* at 3-4.  In so holding, the
4  Court rejected the approach of the Court of Appeals, which had asked whether Equilon fit into the
5  "ancillary restraints" exception to the *per se* prohibition against price-fixing.  *Id.* at 7.  The Supreme
6  Court concluded that, because "the business practice being challenged involve[d] the core activity of the
7  joint venture itself," *per se* liability did not apply to begin with, and consideration of any exception to
8  such liability was unnecessary.  *Id.*; *accord ATM Fee*, 554 F. Supp. 2d at 1013 (no *per se* liability for an
9  ATM network's setting of interchange fees because setting such fees was the core activity of that
10 network).  Instead, the practice had to be evaluated under the rule of reason.  *Id.*

11      Here, RealNetworks's allegation and admission that DVD CCA is a "joint venture" created to
12 administer the licensing of CSS technology brings DVD CCA squarely within the standards articulated
13 by the Supreme Court in *Dagher*.  RealNetworks Counterclaims ¶¶ 12, 31, 47.[4]  Even if DVD CCA
14 could somehow participate in a conspiracy through its interpretation of the Agreement, as RealNetworks
15 has alleged, and that interpretation was not immunized under *Noerr-Pennington*, interpreting the
16 Agreement is indisputably part of DVD CCA's licensing function.  As such, RealNetworks is attacking
17 the way DVD CCA has executed its "core activity."  Consequently, DVD CCA's alleged participation in
18 any conduct allegedly underlying RealNetworks's conspiracy allegations cannot be the basis for *per se*
19 liability, and RealNetworks's allegations of *per se* liability should be dismissed.[5]

---

[4] DVD CCA does not concede the accuracy of RealNetworks's characterization of DVD CCA as a joint venture dominated by the Studios, but does not contest that characterization for the limited purposes of this Motion.

[5] On a fuller record, DVD CCA could advance several additional grounds to support the proposition that RealNetworks's antitrust claims are meritless in whole or in part.  Those grounds include the ancillary restraints doctrine (which posits that a restraint is subject to the rule of reason if it is "subordinate and collateral [to a legitimate joint venture] in the sense that it serves to make [the venture] more effective in accomplishing its purpose," *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 224 (D.C. Cir. 1986)); the application of the rule of reason to the conduct of standard-setting organizations in the intellectual property context (*see, e.g.*, Antitrust Modernization Commission, *Report and Recommendations* 118 (2007); and the fact that the challenged conduct here would pass the "rule of reason" standard for scrutiny of alleged antitrust violations.  Because extrinsic evidence would be necessary to advance these grounds, however, DVD CCA has refrained from asserting them in this motion (without prejudice to make these arguments in the future, if necessary).

*Per se* liability on the part of DVD CCA is precluded on the separate and independent ground that DVD CCA was notified to the United States Department of Justice and Federal Trade Commission in 2001, pursuant to the National Cooperative Research and Production Act, 15 U.S.C. §§ 4301-4305 ("NCRPA"), as acknowledged in RealNetworks's counterclaims. *See* RealNetworks Counterclaims ¶ 31 (describing DVD CCA as "a joint venture trade association"), ¶ 32 (citing 66 Fed. Reg. 40,729, in which the Department of Justice Antitrust Division gave notice of DVD CCA's application under the NCRPA). Congress enacted the NCRPA specifically to ensure that fear of antitrust liability would not discourage firms from forming research and production joint ventures, and specifically provided that a notified joint venture will not be illegal per se, but will "be judged on the basis of its reasonableness, taking into account all relevant factors affecting competition." 15 U.S.C. § 4302.[6] RealNetworks has already effectively admitted that DVD CCA falls under the aegis of the NRCPA. Consequently, the imposition of *per se* liability on DVD CCA is statutorily barred by 15 U.S.C. § 4302, warranting dismissal of RealNetworks's claims for such liability.

### D. RealNetworks's Cartwright Act Claim Fails For The Same Reasons As Its Federal Antitrust Claim

While the Cartwright Act and Sherman Act are not mirror images of one another, "[f]ederal law interpreting Sherman Antitrust Act section 1 . . . is useful when addressing issues arising under" the Cartwright Act. *Morrison v. Viacom, Inc.*, 66 Cal. App. 4th 534, 541 (1998) (citing *State of Cal. ex rel. Van de Kamp v. Texaco, Inc.*, 46 Cal. 3d 1147, 1164 (1988) (superseded by statute on other grounds)). And it is especially helpful in this case, where California law has explicitly adopted the aforementioned grounds for dismissal of RealNetworks's Sherman Act claim. *See, e.g.*, *Freeman v. San Diego Ass'n of Realtors*, 77 Cal. App. 4th 171, 196 (1999) ("California requires a high degree of particularity in the pleading of Cartwright Act violations . . . The unlawful combination or conspiracy must be pled with specificity") (internal quotations omitted); *id.* at 189 (single-entity rule); *Blank v. Kirwan*, 39 Cal. 3d 311, 323-27 (1985) (*Noerr-Pennington*); *Exxon Corp. v. Superior Court*, 51 Cal. App. 4th 1672, 1682

---

[6] The NCRPA also provides that rule of reason analysis applies to claims under state law as well as federal law, and limits claims to actual damages (rather than treble damages). 15 U.S.C. § 4302.

11

(1997) (product market); *see also* 15 U.S.C. §§ 4302, 4305 (precluding imposition of *per se* liability against joint ventures "under any State law similar to the [federal] antitrust laws" if notified to the Justice Department and FTC).  Accordingly, RealNetworks's Cartwright Act claim should be dismissed in its entirety for the reasons articulated in Sections III.A-B, *supra*, or alternatively should be dismissed to the extent that it asserts a claim for *per se* liability for the reasons stated in Section III.C, *supra*.

### E. RealNetworks's UCL Claim Fails For The Same Reasons As Its Federal Antitrust Claim

RealNetworks alleges that DVD CCA's conduct is "unfair" and violative of the UCL for the same reasons that it allegedly violates the antitrust laws.  RealNetworks Counterclaims ¶ 97.  But "conduct alleged to be 'unfair' because it unreasonably restrains competition and harms consumers . . . is not 'unfair' if the conduct is deemed reasonable and condoned under the antitrust laws."  *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001); *accord SC Manufactured Homes, Inc. v. Liebert*, 162 Cal. App. 4th 68, 93 (2008).  Thus, RealNetworks's UCL claim should be dismissed in its entirety for the reasons articulated in Sections III.A-B, *supra*.

## IV. CONCLUSION

For the reasons stated above, DVD CCA respectfully submits that RealNetworks's counterclaims should be dismissed in their entirety; alternatively, they should be dismissed insofar as they allege claims for *per se* antitrust liability.

Dated:  July 14, 2009                    Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

WHITE & CASE LLP


By _____/s/_____
    REGINALD D. STEER
    Attorneys for Defendant and Counterclaimant
    DVD COPY CONTROL ASSOCIATION, INC.

12

MOTION OF DVD CCA TO DISMISS
CASE NO. C08 04548 MHP; C08 CV 04719 MHP