REGINALD D. STEER (SBN 056324)
rsteer@akingump.com
MARIA ELLINIKOS (SBN 235528)
mellinikos@akingump.com
AMIT KURLEKAR (SBN 244230)
akurlekar@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
580 California Street, 15th Floor
San Francisco, California 94104-1036
Telephone:      (415) 765-9500
Facsimile:       (415) 765-9501

STEPHEN MICK (SBN 131569)
smick@akingump.com
MICHAEL SMALL (SBN 222768)
msmall@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2029 Century Park East, Suite 2400
Los Angeles, California 90067-3012
Telephone:      (310) 229-1000
Facsimile:       (310) 229-1001

WILLIAM SLOAN COATS (SBN 94864)
wcoats@whitecase.com
**WHITE & CASE LLP**
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, California 94306
Telephone:      (650) 213-0300
Facsimile:       (650) 213-8158

Attorneys for Defendant and Counterclaimant
DVD COPY CONTROL ASSOCIATION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REALNETWORKS, INC., a Washington Corporation; and REALNETWORKS HOME ENTERTAINMENT, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>DVD COPY CONTROL ASSOCIATION, INC., a Delaware nonprofit corporation, et al.<br><br>Defendants.<br><br>AND RELATED CASES | Case No. C08 04548 MHP<br>Related Case No. C08 CV 04719 MHP<br><br>**REPLY OF DVD COPY CONTROL ASSOCIATION, INC. IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS**<br><br>**Before:** Hon. Marilyn Hall Patel<br>**Courtroom: 15**<br>**Date:** October 26, 2009<br>**Time:** 2:00 p.m. |

REPLY IN SUPPORT OF MOTION OF DVD CCA TO DISMISS
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

Dockets.Justia.com

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................................1

II.    ARGUMENT........................................................................................................................2

      A.    RealNetworks's Counterclaims Do Not Adequately Allege That DVD CCA Participated In Any Conspiracy To Violate The Antitrust Laws ......................................3

          1.    RealNetworks's Allegation That DVD CCA Is The Instrumentality Of A Studio Conspiracy Fails To Meet The *Twombly* Pleading Standards...................3

          2.    The Cases That RealNetworks Cites Only Highlight The Deficiencies Of Its Pleading.............................................................................................................5

          3.    RealNetworks's Attempt To Evade DVD CCA's "Single Entity" Defense Is Unavailing ........................................................................................................8

      B.    RealNetworks's Counterclaims Must Be Dismissed For The Independent Reason That The Alleged Conspiratorial Conduct Of DVD CCA Is Immunized Under The *Noerr-Pennington* Doctrine ................................................................................................9

      C.    At Minimum, RealNetworks's Counterclaims Must Be Dismissed Insofar As They Assert *Per Se* Liability Against DVD CCA ..................................................................10

III.    CONCLUSION.................................................................................................................12

i

REPLY IN SUPPORT OF MOTION OF DVD CCA TO DISMISS
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

# TABLE OF AUTHORITIES

## CASES

*Albrecht v. Herald Co.*,
  390 U.S. 145 (1968) ........................................................................................................... 7

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988) ........................................................................................................... 9

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ................................................................................................. 5, 11

*Associated General Contractors of California, Inc. v. California State Council of Carpenters*,
  459 U.S. 519 (1983) ........................................................................................................... 2

*Associated Press v. United States*,
  326 U.S. 1 (1945) ............................................................................................................... 7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................. *passim*

*Broadcast Music, Inc. v. Columbia Broad. Sys., Inc.*,
  441 U.S. 1 (1979) ............................................................................................................... 6

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977) ........................................................................................................... 3

*Business Electronics Corp. v. Sharp Electronics Corp.*,
  485 U.S. 717 (1988) ......................................................................................................... 10

*Cal. Dental Ass'n v. FTC*,
  526 U.S. 756 (1999) ......................................................................................................... 12

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
  690 F.2d 1240 (9th Cir. 1982) ........................................................................................... 9

*DVD CCA v. Kaleidescape, Inc.*,
  No. H031631 (Cal. Ct. App. Aug. 12, 2009) ................................................................. 1, 2

*Fashion Originators' Guild of Am. v. FTC*,
  312 U.S. 457 (1941) ....................................................................................................... 5, 6

*Freeman v. Lasky, Haas & Cohler*,
  410 F.3d 1180 (9th Cir. 2005) ........................................................................................... 9

*Freeman v. San Diego Ass'n of Realtors*,
  322 F.3d 1133 (9th Cir. 2003) ........................................................................................... 8

*FTC v. Ind. Fed'n of Dentists*,
  476 U.S. 447 (1986) ......................................................................................................... 10

*FTC v. Superior Court Trial Lawyers Ass'n*,
  493 U.S. 411 (1990) ......................................................................................................... 11

*Gregory v. Fort Bridger Rendezvous Ass'n*,
    448 F.3d 1195 (4th Cir. 2006) ......................................................................................... 8

*Grip-Pak, Inc. v. Ill. Tool Works, Inc.*,
    651 F. Supp. 1482 (N.D. Ill. 1986) .................................................................................. 9

*In re Actimmune Mktg. Litig.*,
    614 F. Supp. 2d 1037 (N.D. Cal. 2009) ......................................................................... 12

*In re ATM Fee Antitrust Litig.*,
    554 F. Supp. 2d 1003 (N.D. Cal. 2008) ......................................................................... 11

*In re Canadian Import Antitrust Litig.*,
    470 F.3d 785 (8th Cir. 2006) ........................................................................................... 7

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ......................................................................................... 4

*Leegin Creative Leather Prods. v. PSKS, Inc.*,
    551 U.S. 877 (2007) ...................................................................................................... 10

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ....................................................................................... 12

*Modesto Irrigation Dist. v. Pac. Gas & Elec. Co.*,
    309 F. Supp. 2d 1156 (N.D. Cal. 2004) ........................................................................... 3

*Nat'l Soc'y of Prof'l Eng'rs v. United States*,
    435 U.S. 679 (1978) ........................................................................................................ 8

*Northwest Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*,
    472 U.S. 284 (1985) ................................................................................................. 6, 10

*Nynex Corp. v. Discon, Inc.*,
    525 U.S. 128 (1998) ........................................................................................................ 6

*Princo Corp. v. Int'l Trade Comm'n*,
    563 F.3d 1301 (Fed. Cir. 2009) .................................................................................. 7, 11

*State Oil Co. v. Khan*,
    522 U.S. 3 (1997) ............................................................................................................ 7

*Texaco Inc. v. Dagher*,
    547 U.S. 1 (2006) ............................................................................................... 8, 10, 11

*United States v. Sealy, Inc.*,
    388 U.S. 350 (1967) ........................................................................................................ 7

*Universal City Studios, Inc. v. Reimerdes*,
    111 F.Supp.2d 294 (S.D.N.Y. 2000) ............................................................................... 7

*Visa U.S.A. Inc. v. First Data Corp.*,
    No. C 02-01786 JSW, 2006 WL 516662 (N.D. Cal. Mar. 2, 2006) ................................. 8

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    395 U.S. 100 (1969) .................................................................................................. 7, 11

REPLY IN SUPPORT OF MOTION OF DVD CCA TO DISMISS
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

**STATUTES**

15 U.S.C. § 4301(b) ..........................................................................................................................11

REPLY IN SUPPORT OF MOTION OF DVD CCA TO DISMISS
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

RealNetworks's antitrust counterclaims, asserted long after this litigation started and near the end of the Court's preliminary injunction proceedings, are a last-ditch to effort to get around the fact that RealNetworks simply is not entitled under either its License Agreement with the DVD CCA or the DMCA to create products that copy CSS-protected DVDs.  In seeking refuge in the antitrust laws, RealNetworks tries to whitewash its calculated gamble that its use of the CSS License to build a DVD copier would somehow be protected by the state trial court's decision in the *Kaleidescape* case.  That gamble, made with full knowledge of the inevitable litigation that would follow, backfired on RealNetworks when this Court's temporary restraining order and preliminary injunction decision enforced federal law and the CSS License Agreement's requirements against RealNetworks, and when (as occurred following the filing of DVD CCA's opening memorandum support its motion to dismiss the antitrust claims) the California Court of Appeal reversed the trial court in *Kaleidescape*.[1]  It is the effect of these court decisions that has caused the "harm" (delayed release of RealDVD) for which RealNetworks seeks relief in its antitrust claims.  But the consequences of judicial enforcement of an agreement (like the CSS License Agreement) and laws (like the DMCA) that protect the integrity of intellectual property cannot be the basis of an antitrust claim.

Simply put, there was no antitrust conspiracy here, and RealNetworks has not pleaded one.  Like its counterclaims, RealNetworks's opposition repeatedly intones the word "conspiracy," but does not identify the basic details of that supposed conspiracy as required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  The opposition reiterates the barebones allegation in the counterclaims that, in administering the CSS License Agreement, DVD CCA is the "instrumentality" through which the Studios purportedly have carried out a conspiracy to refuse to negotiate individually with RealNetworks for use of their copyrighted content.  But *Twombly* demands that RealNetworks plead the specifics of how the DVD CCA has become the instrumentality of that boycott—who, did what, to whom (or with

---

[1] *DVD CCA v. Kaleidescape, Inc.*, No. H031631, 2009 WL 2450711, at *16 (Cal. Ct. App. Aug. 12, 2009).

1

REPLY IN SUPPORT OF MOTION OF DVD CCA TO DISMISS
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

whom), where, and when? RealNetworks has failed to do that. Furthermore, RealNetworks's allegation that DVD CCA is the instrumentality of collective Studio action to refuse to negotiate individually for use of copyrighted content is implausible because, by its terms, the CSS License Agreement only addresses how CSS is to be used. It does not require an individual studio to use CSS; nor does it otherwise restrict the ability of an individual studio to license its copyrighted content. In fact, as is publicly known (and as this Court found in its Preliminary Injunction Order), individual Studios have made their copyrighted content available to third parties, allowing consumers to access the content in a variety of ways (including, for example, through iTunes, Hulu, and Amazon.com). And, as RealNetworks acknowledges in its counterclaims, individual Studios also have made their content available to consumers through the purchase of digital copies. E.g., RealNetworks Counterclaims ¶ 74.

In addition to confirming the pleading infirmities of the counterclaims, RealNetworks's opposition reinforces that those claims are based on DVD CCA's interpretation of the License Agreement (*i.e.*, that licensed devices must playback DVDs directly from the DVD disc)—an interpretation that this Court in its Preliminary Injunction Order and the California Court of Appeal in *Kaleidescape* now have adopted. Indeed, RealNetworks does not identify *any* pre-litigation conduct of DVD CCA that could have caused RealNetworks's supposed antitrust injury. The interpretation of the Agreement that RealNetworks attacks anew in its antitrust claims is incidental to the litigation between the parties and therefore is immunized from antitrust liability under the *Noerr-Pennington* doctrine.[2]

## II.   ARGUMENT

An antitrust plaintiff must demonstrate that the defendant's alleged antitrust violations caused it to suffer injury. *See Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 535 (1983). Apparently recognizing that this Court's prior decisions in the case negate its ability to allege causation, RealNetworks argues that those decisions do not matter to the antitrust inquiry. It states: "[w]hether or not the license granted by DVD CCA is reasonable or lawful, and whatever restrictions that license does or does not impose, is not the issue" with respect to its

---

[2] RealNetworks does not dispute that if its Sherman Act claim against DVD CCA is dismissed, its state law claims should be dismissed as well. *Compare* Opening Mem. 11-12 *with* Opposition Mem. 17-18. Accordingly, DVD CCA's discussion herein of RealNetworks's Sherman Act claim applies equally to the state law claims.

conspiracy claim against DVD CCA.  Opposition Mem. 3.  But this Court's Preliminary Injunction Order, finding that DVD CCA's interpretation of the restrictions in the CSS License Agreement is reasonable and likely to prevail at trial, is highly pertinent to the sufficiency of the allegations supporting RealNetworks's antitrust claims.  RealNetworks's supposed antitrust injury is the delayed release of its DVD copier product.  RealNetworks Counterclaims ¶ 74.  That "injury" stems entirely from the fact that the Court's orders bar it from releasing that product.  Harms to an antitrust plaintiff stemming from judicial enforcement against it of federal law (the DMCA) and an agreement to protect the integrity of intellectual property (the CSS License Agreement) simply do not give rise to any legally cognizable injury, and certainly are not "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489 (1977); *see also Modesto Irrigation Dist. v. Pac. Gas & Elec. Co.,* 309 F. Supp. 2d 1156, 1170 (N.D. Cal. 2004).  RealNetworks has not alleged that its alleged injury flows from any actions of the DVD CCA.  Its allegation that the DVD CCA is the "instrumentality" of an antitrust conspiracy that caused its injury fails to meet the *Twombly* pleading standards; the cases on which it relies merely highlight the deficiency of its pleading; and its attempt to evade DVD CCA's "single entity" and *Noerr-Pennington* defenses are unavailing.

### A. RealNetworks's Counterclaims Do Not Adequately Allege That DVD CCA Participated In Any Conspiracy To Violate The Antitrust Laws

#### 1. RealNetworks's Allegation That DVD CCA Is The Instrumentality Of A Studio Conspiracy Fails To Meet The *Twombly* Pleading Standards

Recognizing that it cannot state a claim based on an alleged refusal to deal (because DVD CCA *did* grant RealNetworks a CSS License), RealNetworks now denies that it alleged any "refusal to deal," Opposition Mem. 1, 8, and instead uses the rubric "boycott" to describe its claim, *see, e.g.*, *id.* at 2, 4.  This is just semantics.[3]  Whatever the label, RealNetworks's antitrust claims fail to satisfy the pleading standards of *Twombly*.

---

[3] Indeed, RealNetworks's own counterclaims equate "refusal to deal" and "boycott."  *See* RealNetworks Counterclaims p. 26 ("The Group Boycott:  Refusing to Deal with RealNetworks").

3
REPLY IN SUPPORT OF MOTION OF DVD CCA TO DISMISS
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

*Twombly* requires an antitrust plaintiff to plead a "'specific time, place, or person involved in the alleged conspiracies,'" and fill in the blanks that answer "the basic questions: who, did what, to whom (or with whom), where, and when?" *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047-48 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 565 n.10). RealNetworks falls back on the conclusory allegation that, through the CSS License Agreement, "DVD CCA is the instrumentality that gives life to" a purported agreement among the Studios to boycott RealNetworks by refusing to negotiate individually with RealNetworks for use of the Studios' copyrighted content. Opposition Mem. 2. But RealNetworks fails to identify the "who," "where," "when" and "what" that *Twombly* and *Kendall* demand to support RealNetworks's conclusory "instrumentality" allegation. For example, RealNetworks has failed to identify any provision in the CSS License Agreement that restricts the ability of an individual Studio to license its copyrighted content, and no such provision exists. Furthermore, RealNetworks has not specified the date, place or deliverer of any communication or agreement between any Studio and the DVD CCA about the Studios' alleged refusal to negotiate individually with RealNetworks. Nor has RealNetworks explained with the sufficiency required by *Twombly* and *Kendall* how the Studios have managed to mold DVD CCA into an instrumentality of a purported Studio conspiracy when (as this Court found and as RealNetworks concedes) the Studios normally do not even account for a majority of the members of the DVD CCA Board of Directors and the remaining members are representatives of other industries. Preliminary Injunction Order ¶ 7; RealNetworks Counterclaims ¶ 47.

Instead of addressing directly the pleading requirements imposed by *Twombly*, RealNetworks tries to distinguish that case by arguing that in *Twombly*, there was a threshold dispute over the existence of an agreement, whereas here "there is an agreement," namely, the CSS License Agreement. Opposition Mem. 5. This argument gets RealNetworks nowhere: the CSS License Agreement is a contract between DVD CCA and RealNetworks, and the Studios are merely third-party beneficiaries. The Agreement licenses CSS to those who wish to use that patented technology for the purpose of creating DVD playback devices, and precludes licensees from using the technology to make unauthorized copies of DVDs. As previously noted, nothing in the License Agreement restricts the ability of an individual Studio to license its copyrighted content. In short, the CSS License Agreement has nothing to do with the alleged conspiracy for which DVD CCA purportedly serves as the

instrumentality—*i.e.*, the Studios' conspiracy to refusing to negotiate individually with RealNetworks for use of the Studios' copyrighted content.

RealNetworks's instrumentality allegation is further belied by the fact that individual Studios actually have made their copyrighted content available through such mechanisms as agreements with third parties for Internet downloads from sites like iTunes, Hulu, and Amazon.com, to cite just a few obvious examples. Preliminary Injunction Order ¶ 17. And, as RealNetworks itself acknowledges, individual Studios also have made their copyrighted content available through the purchase of digital copies. RealNetworks Counterclaims ¶ 25. All of these distribution methods have nothing to do with CSS or the CSS License Agreement; instead, they illustrate that each Studio is free to decide how to distribute its copyrighted content (on DVDs or otherwise) and Studios have actively done so. The CSS License Agreement simply does not restrict any Studio from striking its own deal for authorized use of that content. RealNetworks's instrumentality allegation erroneously conflates CSS with the Studios' copyrighted content. They are two separate things. This crucial distinction between what DVD CCA does in administering the CSS License Agreement and what individual Studios can do, and have done, with their protected content thus shows the implausibility of RealNetworks's theory that the Studios as a group have used DVD CCA to preclude individual Studios from negotiating separately with third parties regarding access to that content. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (complaint fails to state a claim if allegations do not "plausibly give rise to entitlement to relief") (citing *Twombly*).[4]

### 2. The Cases That RealNetworks Cites Only Highlight The Deficiencies Of Its Pleading

The case law that RealNetworks cites as support for the sufficiency of its conspiracy allegations against DVD CCA does not help its cause. RealNetworks relies heavily on *Fashion Originators' Guild of Am. v. FTC*, 312 U.S. 457 (1941) ("*FOG*") for the proposition that DVD CCA has participated in "a

---

[4] RealNetworks mischaracterizes the preliminary injunction hearing testimony of DVD CCA's expert, Dr. Kelly, asserting that he "confirmed that the Studios and the DVD CCA intend the CSS agreement to prohibit any copies of DVD content to a hard drive without the authority of the Studios." Counterclaims ¶ 14 and Opposition at 5 (both citing Tr. 152:20-153:8, 149:8-23)). That is not what Dr. Kelly actually said in the passages that RealNetworks cites. Dr. Kelly spoke there only about the requirements of the CSS Specifications, not about any supposed directives from the Studios to the DVD CCA. Tr. 149:8-23, 152:20-153:8.

per se unlawful horizontal group boycott." Opposition Mem. 2. That case is inapposite. In *FOG*, a guild of fashion manufacturers and designers conceded that they sought to destroy competition by boycotting retailers who sold garments copied by "style pirates," other manufacturers who copied Guild members' designs. (Their boycott also extended to manufacturers who sold to stores that sold pirated goods.) 312 U.S. at 461-62. As the Supreme Court subsequently explained, *FOG* involved a "group boycott in the strongest sense: a group of competitors threatened to withhold business from third parties unless those third parties would help them injure their directly competing rivals." *Nynex Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998). Nothing like that is at issue here. DVD CCA did not refuse a license to RealNetworks or constrain third parties from dealing with RealNetworks. Nor does RealNetworks allege that the licensing system itself violates the antitrust laws.

*FOG* is distinguishable on an additional ground. In *FOG*, the defendant sought to limit access to designs that were not protected by copyright or patent. 312 U.S. at 461-62. By contrast here, the Content Scramble System that is the subject of the License Agreement seeks to accomplish the reasonable goal of protecting copyrighted works from unlawful duplication. *See, e.g.*, RealNetworks Counterclaims ¶ 81 (noting copyrighted nature of content). The Supreme Court has long recognized that the antitrust laws exist in harmony with efforts (like the CSS License Agreement) to protect intellectual property. *Broadcast Music, Inc. v. Columbia Broad. Sys., Inc.* 441 U.S. 1, 18-19 (1979).

Subsequent Supreme Court cases holding that the plaintiff has the burden of proving that *per se* treatment of a group boycott claim is appropriate further diminish the relevance of *FOG*. *E.g., Northwest Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co*., 472 U.S. 284, 298 (1985). It is not enough to allege in conclusory terms that a boycott (or refusal to deal) exists, as RealNetworks has done; the plaintiff must allege facts that allow the court to make a threshold antitrust determination concerning the legality of the challenged conduct based on considerations of market efficiency. *See id*. at 295 (wholesale purchasing cooperative was not *per se* violation of the antitrust laws because it "would seem to be 'designed to increase economic efficiency and render markets more, rather than less, competitive'") (quoting *Broadcast Music,* 441 U.S. at 20 (concluding that blanket licensing arrangement advanced efficiency by reducing transaction costs for licensees and licensors of copyrighted compositions)). RealNetworks cannot meet that pleading burden because DVD CCA's licensing of CSS

has played a critical role in promoting the worldwide dissemination of copyrighted materials and the mass production of DVD playback devices, as this Court has found.  *See* Preliminary Injunction Order ¶ 22; *see also Universal City Studios, Inc. v. Reimerdes,* 111 F. Supp. 2d 294, 309-10 (S.D.N.Y. 2000) (discussing role of CSS in facilitating widespread consumer access to DVDs).[5]

The other cases that RealNetworks cites (most of which, like *FOG*, are decades old and long pre-date *Twombly* and *Iqbal*) do not address pleading requirements.  Opposition Mem. 2-4, 6-8 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100 (1969) (post-trial review); *Princo Corp. v. Int'l Trade Comm'n*, 563 F.3d 1301 (Fed. Cir. 2009) (review of full administrative hearing); *Albrecht v. Herald Co.*, 390 U.S. 145 (1968) (post-trial); *United States v. Sealy, Inc.,* 388 U.S. 350 (1967) (same); *Associated Press v. United States*, 326 U.S. 1 (1945) (summary judgment)).  These cases also are distinguishable on their facts.  In *Albrecht*, a newspaper publisher terminated the plaintiff's distributorship in retaliation for the plaintiff's failure to follow the publisher's price dictates.  390 U.S. at 147.[6]  In *Associated Press,* a newspaper cooperative promulgated by-laws that directly imposed a boycott against non-members.  326 U.S. at 8-13.  In *Zenith Radio*, the only issue on appeal was existence of damages, not whether there had been a conspiracy.  395 U.S. at 107-08, 113-29.  In *Princo*, the court explicitly stated that it was not determining whether *per se* treatment was appropriate.  563 F.3d at 1314 n.11.  And in *Sealy*, the licensor was determined to be the "instrumentality" of the licensees' conspiracy because it was the licensees' alter ego.  388 U.S. at 353-54.  Here, in contrast, RealNetworks has not alleged any action taken by DVD CCA that affects the Studios' ability to license their content, as opposed to what DVD CCA does in licensing the use of its patented CSS technology.

---

[5] Furthermore, *FOG* was brought by the Federal Trade Commission, which does not have to make a showing of antitrust injury, unlike private plaintiffs such as RealNetworks.  *See In re Canadian Import Antitrust Litig.*, 470 F.3d 785, 791 (8th Cir. 2006) (unlike private plaintiffs, government entitles asserting antitrust claims need not show that they suffered antitrust injury).

[6] RealNetworks's citation to the 40-plus-year-old *Albrecht* case is particularly puzzling given that the Supreme Court has said that "Albrecht has little or no relevance to ongoing enforcement of the Sherman Act."  *State Oil Co. v. Khan*, 522 U.S. 3, 18 (1997).

### 3. RealNetworks's Attempt To Evade DVD CCA's "Single Entity" Defense Is Unavailing

RealNetworks's opposition mischaracterizes DVD CCA's argument for dismissal based on the "single-entity" rule, which posits that a joint venture executing its purpose is generally acting as a single entity, and that such actions cannot form the basis of an antitrust conspiracy claim. Opening Mem. 8 (citing *Texaco Inc. v. Dagher*, 547 U.S. 1, 7 (2006)). Contrary to RealNetworks's assertion (Opposition Mem. 12), DVD CCA did not contend in its opening memorandum that a joint venture, such as DVD CCA, *always* acts as a single entity. Rather, it stated that, in *this* case, "RealNetworks has not alleged any factual basis for how [DVD CCA] could conspire with its own members in light of the single-entity rule." Opening Mem. 8. Nothing that RealNetworks says in its opposition fills that crucial void in its counterclaims.

The cases that RealNetworks cites rejecting a single entity defense all predate *Dagher*. Moreover, they are distinguishable because (1) they were resolved on summary judgment or after a trial and therefore did not discuss the pleading requirements for antitrust conspiracy claims; and (2) they all involved a joint venture that took direct action against the plaintiff in excess of the venture's purpose. Opposition Mem. 13-14 (citing *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1142-43 (9th Cir. 2003) (granting summary judgment against joint venture's single-entity defense where joint venture fixed prices for real estate listing services); *Visa U.S.A. Inc. v. First Data Corp.*, No. C 02-01786 JSW, 2006 WL 516662, at *1-2 (N.D. Cal. Mar. 2, 2006) (granting summary judgment against joint venture's single-entity defense where joint venture ran allegedly anti-competitive system in question); *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 684-86 (1978) (reviewing trial concerning professional association's ban against competitive bidding for its members' services); *Gregory v. Fort Bridger Rendezvous Ass'n*, 448 F.3d 1195, 1199 (4th Cir. 2006) (reversing summary judgment grant on single-entity defense advanced by organization that allegedly led action that sought to put plaintiff out of business). In contrast here, on RealNetworks's own account, the DVD CCA was executing its fundamental purpose in dealing with RealNetworks, *i.e.,* administering the CSS License Agreement. Moreover, RealNetworks has not alleged any direct action taken against it by DVD CCA.

B.   **RealNetworks's Counterclaims Must Be Dismissed For The Independent Reason That The Alleged Conspiratorial Conduct Of DVD CCA Is Immunized Under The *Noerr-Pennington* Doctrine**

Conduct incidental to litigation is immunized from antitrust liability under the *Noerr-Pennington* doctrine, *see Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005). Because the conduct of DVD CCA that RealNetworks challenges, DVD CCA's interpretation of the CSS License Agreement, is incidental to the parties' litigation before this Court, it is subject to *Noerr-Pennington* immunity. Indeed, the injury for which RealNetworks seeks redress (the delayed release of RealDVD) was caused by this Court's holding in this litigation that DVD CCA's interpretation is likely to prevail.

RealNetworks's primary response is that the immunity for litigation-related conduct does not extend to prior conspiratorial conduct. Opposition Mem. 14-15 (citing *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240 (9th Cir. 1982); *Grip-Pak, Inc. v. Ill. Tool Works, Inc.*, 651 F. Supp. 1482 (N.D. Ill. 1986)). But that principle has no bearing here because RealNetworks has not alleged any conspiratorial conduct on DVD CCA's part that pre-dates DVD CCA's interpretation of the Agreement in connection with this litigation. *See* Section II.A, *supra*.

For this reason, RealNetworks's contention (Opposition Mem. 15) that *Noerr-Pennington* "affords no protection for private agreements that are not, themselves, petitioning activities" misses the mark. RealNetworks does not allege that the creation of the CSS License Agreement itself in the 1990s was anticompetitive or was anything but a unilateral act (or, as noted in the opening memorandum, that DVD CCA played any role in it). It alleges only that DVD CCA's interpretation of the Agreement is anticompetitive. But the only interpretation of the Agreement that has impact on RealNetworks is the one that DVD CCA is asserting in this litigation and that led to the entry of the Preliminary Injunction Order.[7]

---

[7] RealNetworks's reliance on *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492 (1988), is misplaced. In that case, the Supreme Court refused to confer *Noerr-Pennington* immunity on petitioning to a private body because that activity was only indirectly connected to petitioning the government. Here, RealNetworks is challenging the lawfulness of DVD CCA's arguments in defense of litigation that was initiated by RealNetworks—activity that is undeniably connected to petitioning a public body (this Court).

9
REPLY IN SUPPORT OF MOTION OF DVD CCA TO DISMISS
CASE NO. C08 04548 MHP; C08 CV 04719 MHP

1   C.   **At Minimum, RealNetworks's Counterclaims Must Be Dismissed Insofar As They Assert *Per Se* Liability Against DVD CCA**
2

3  RealNetworks has not persuasively responded to DVD CCA's arguments for dismissal of
4  RealNetworks's claims of *per se* liability. *See* Opening Mem. 9-11. For one, as explained *supra* in
5  Section II.A.2, RealNetworks's extensive reliance on *FOG* to argue for *per se* antitrust liability is
6  misplaced. In any event, as the Supreme Court has recently reaffirmed, application of *per se* antitrust
7  liability is confined to only the most well-established and egregious anti-competitive enterprises. *See,*
8  *e.g.*, *Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877, 886-87 (2007) ("the *per se* rule is
9  appropriate only after courts have had considerable experience with the type of restraint at issue . . . and
10 only if courts can predict with confidence that it would be invalidated in all or almost all instances under
11 the rule of reason . . . a departure from the rule-of-reason standard must be based upon demonstrable
12 economic effect rather than upon formalistic line drawing") (internal quotations and citations omitted);
13 *Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717, 723 (1988); *Northwest Wholesale*
14 *Stationers*, 472 U.S. at 289. Moreover, "the *per se* approach has generally been limited to cases in
15 which firms with market power boycott suppliers or customers in order to discourage them from doing
16 business with a competitor—a situation obviously not present here." *FTC v. Ind. Fed'n of Dentists*, 476
17 U.S. 447, 458 (1986). Thus, RealNetworks's claims of *per se* liability are to be viewed skeptically from
18 the outset, especially in light of the pro-competitive effects that DVD CCA's licensing practices have
19 had in promoting the widespread dissemination of DVDs. Against this backdrop, DVD CCA has
20 advanced two independent bases for precluding *per se* liability claims against it, neither of which
21 RealNetworks credibly refutes in its opposition.

22  First, under *Dagher*, 547 U.S. at 7, the "core activity" of a joint venture is not susceptible to *per*
23 *se* antitrust analysis. *See* Opening Mem. 9-10. RealNetworks does not dispute that its attacks center on
24 DVD CCA's core activity of administering the licensing of CSS. Instead, RealNetworks says that the
25 holding of *Dagher* (and that of *In re ATM Fee Antitrust Litig.*, 554 F. Supp. 2d 1003, 1013 (N.D. Cal.

1  2008)) should be confined to price-fixing cases.  RealNetworks cites no authority, however, to support
2  that proposition; there is no reason to limit *Dagher* in that fashion.[8]

3      *Per se* liability also is barred here by the National Cooperative Research and Production Act
4  ("NCRPA"), which is designed to encourage firms to form joint ventures without fear of antitrust
5  liability.  As indicated in its opening memorandum, DVD CCA has followed prescribed steps in
6  applying to the Justice Department and the Federal Trade Commission for NCRPA protection.  Opening
7  Mem. 11.  RealNetworks's response is an unsupported assertion that DVD CCA has acted outside the
8  scope of its NCRPA-protected activities.  But RealNetworks cannot defeat this motion to dismiss by
9  merely relying on its bare recitation of a legal conclusion.  *See, e.g.*, *Iqbal*, 129 S. Ct. at 1951 ("bare
10 assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are
11 conclusory and not entitled to be assumed true").

12     The sole factual assertion that RealNetworks *does* make—that DVD CCA's conduct falls outside
13 of NCRPA because the CSS License Agreement "restricts the sale or licensing of movies and other
14 content"—fails to overcome DVD CCA's NCRPA defense for two reasons.  First, as RealNetworks
15 itself concedes, restriction of the sale or licensing of content is not enough to trigger the exception to
16 NCRPA coverage; RealNetworks needs to show that the restriction "is not reasonably required to
17 prevent misappropriation of proprietary information."  15 U.S.C. § 4301(b) (quoted in Opposition Mem.
18 10).  This Court's Preliminary Injunction Order, holding that the CSS License Agreement is intended to
19 prevent unauthorized copying of copyrighted content on DVDs and that DVD CCA's interpretation of
20 the anti-copying requirements of the Agreement is reasonable, renders such a showing by RealNetworks
21 impossible.  Second, RealNetworks's assertion proves too much:  under RealNetworks's rationale *no*
22 licensing scheme that in any way limits the subsequent sale or licensing of the licensed product would

---

[8] RealNetworks cites *FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (1990) ("*SCTLA*"), for the proposition that boycotts by joint ventures are *per se* illegal.  The case holds no such thing. Indeed, *SCTLA* did not even involve a joint venture,.  *SCTLA* merely involved a group of lawyers who agreed that they would not represent indigent defendants in the District of Columbia court system until their compensation was increased.  *Id*. at  414.  Furthermore, *SCTLA* predated *Dagher*, and did not consider the "core activity" issue at all; it consequently has no bearing here.  Equally inapposite are *Zenith Radio* and *Princo*, two cases that RealNetworks cites elsewhere in its opposition memorandum in favor of *per se* liability; the former case never even discussed whether *per se* liability should have been imposed, *see generally* 395 U.S. 100, and the latter explicitly disavowed any determination as to whether *per se* liability was appropriate, *see* 563 F.3d at 1314 n.11.

1 be protected by NCRPA.  This clearly cannot be the case, for owners of intellectual property would be
2 far less willing to license their property without some limitation on the scope of those licenses, and
3 NCRPA was created precisely to promote such pro-competitive activities as licensing.  In that vein, the
4 role of DVD CCA is to administer licensing of CSS technology to DVD CCA members so that they can
5 use it, if they wish, in a variety of DVD and DVD-related products.  And that is precisely what is
6 contemplated by the protection that the DVD CCA is afforded under the NCRPA.[9]

### III.     CONCLUSION

RealNetworks's counterclaims are flawed at their core; they cannot be amended to state a viable claim of antitrust conspiracy against DVD CCA.  RealNetworks's opposition makes clear that RealNetworks's allegations are the best it can do and does not request leave to amend in the event the Court grants DVD CCA's motion to dismiss.  Accordingly, DVD CCA respectfully submits that the Court should dismiss the counterclaims against it without leave to amend.  *See In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1048 (N.D. Cal. 2009) (Patel, J.) (citing *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000)).  At minimum, the counterclaims should be dismissed insofar as they allege claims for *per se* antitrust liability.

Dated:  September 4, 2009              Respectfully submitted,

                                       AKIN GUMP STRAUSS HAUER & FELD LLP

                                       WHITE & CASE LLP


                                       By _____/s/_____
                                          REGINALD D. STEER
                                          Attorneys for Defendant and Counterclaimant
                                          DVD COPY CONTROL ASSOCIATION, INC.

---

[9] RealNetworks asserts that there is little practical difference between *per se* liability and "rule of reason" liability.  Opposition Mem. 10-12.  This argument weights in favor of dismissing the *per se* claims, not preserving them.  Whether or not RealNetworks is correct that there are minimal distinctions between *per se* claims and rule of reasons claims, *see Cal. Dental Ass'n v. FTC*, 526 U.S. 756, 779-81 (1999), there is no reason to refrain from dismissing claims for *per se* liability that, like RealNetworks's claims here, are legally untenable.