PAGES 1 - 56

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE MARILYN HALL PATEL, JUDGE

```
REALNETWORKS, INC.,          )
ET AL.,                      )
                             )
          PLAINTIFFS,        )
                             )
   VS.                       )          NO. C 08-04548 MHP
                             )
DVD COPY CONTROL             )
ASSOCIATION, INC.,           )
ET AL.,                      )
                             )
          DEFENDANTS.        )
_____)
```

SAN FRANCISCO, CALIFORNIA
MONDAY, OCTOBER 26, 2009

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

FOR PLAINTIFF:          WILSON SONSINI GOODRICH & ROSATI
                        1301 AVENUE OF THE AMERICAS
                        40TH FLOOR
                        NEW YORK, NY  10019
              BY:  **JONATHAN M. JACOBSON**
                   **LISA DAVIS**
                   **BILL WAY**
                   ATTORNEYS AT LAW


                        WILSON SONSINI GOODRICH & ROSATI
                        ONE MARKET STREET
                        SPEAR TOWER, SUITE 3300
              BY:  **SAN FRANCISCO, CA  94105**
                   **LEO CUNNINGHAM**
                   **COLLEEN BAL**
                   ATTORNEYS AT LAW
              **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:           JAMES YEOMANS, CSR #4039, RPR
                       OFFICIAL REPORTER
               COMPUTERIZED TRANSCRIPTION BY ECLIPSE

Dockets.Justia.com

```
 1   APPEARANCES:  (CONTINUED)

 2

 3   FOR PLAINTIFF:          WILSON SONSINI GOODRICH & ROSATI
                             1799 K STREET, NW, FIFTH FLOOR
                             WASHINGTON, DC  20006
 4                  BY:  RENATA B. HESSE
                             ATTORNEYS AT LAW
 5

 6   FOR DEFENDANT:          MUNGER TOLLES & OLSON LLP
                             355 SOUTH GRAND AVENUE
 7                           35TH FLOOR
                             LOS ANGELES, CA  90071
 8                  BY:  KELLY MAX KLAUS
                         GLENN DOUGLAS POMERANTZ
 9                       ATTORNEYS AT LAW

10   FOR DEFENDANT:          MUNGER TOLLES & OLSON LLP
                             560 MISSION STREET
11                           27TH FLOOR
                             SAN FRANCISCO, CA  94105
12                  BY:  ROHJIT SINGLA
                         ATTORNEYS AT LAW
13

14   FOR DEFENDANT:          AKIN GUMP STRAUSS HAUER & FELD
                             580 CALIFORNIA STREET
15                           15TH FLOOR
                             SAN FRANCISCO, CA  94104
16                  BY:  REGINALD DAVID STEER
                         ATTORNEY AT LAW

17   FOR DEFENDANT:          AKIN GUMP STRAUSS HAUER & FELD
                             2029 CENTURY PARK EAST
18                           SUITE 2400
                             LOS ANGELES, CA  90067
19                  BY:  STEPHEN ROY MICK
                         ATTORNEY AT LAW
20

21   FOR DEFENDANT:          SIMPSON THACHER & BARTLETT
                             2550 HANOVER STREET
                             PALO ALTO, CA  94304
22                  BY:  HARRISON J. FRAHN, IV
                         MICHAEL LIZUNO
23                       ATTORNEYS AT LAW

24

25
```

1   MONDAY, OCTOBER 26, 2009                              2:00 P.M.

2            (THE FOLLOWING PROCEEDINGS WERE HEARD IN OPEN COURT:)

3        **THE CLERK:**  CALLING CIVIL 08-4548, REALNETWORKS, INC.

4   VERSUS DVD COPY CONTROL ASSOCIATION, ET AL.

5        **THE COURT:**  MAY I HAVE YOUR APPEARANCES, PLEASE.

6        **MR. POMERANTZ:**  GOOD AFTERNOON.

7        GLENN POMERANTZ ON BEHALF OF THE STUDIOS, WITH ME MY

8   COLLEAGUE KELLY KLAUS.

9        **MR. STEER:**  REGINALD STEER ON BEHALF OF THE DVD CCA

10  AND MY COLLEAGUE STEVE MICK IS HERE WITH ME.

11       **MR. FRAHN:**  GOOD AFTERNOON.

12       HARRISON FRAHN FROM SIMPSON THACHER & BARTLETT ON

13  BEHALF OF PARAMOUNT AND VIACOM.  I'M JOINED WITH MY COLLEAGUE

14  MIKE LIZUNO.

15       **THE COURT:**  YES.  OVER HERE.

16       **MR. JACOBSON:**  YOUR HONOR, JONATHAN JACOBSON FROM

17  WILSON SONSINI FOR REAL, I'M JOINED MY COLLEAGUE RENATA HESSE,

18  MARK OUWELEEN, COLLEEN BAL, BILL WAY, LEO CUNNINGHAM WHO YOU

19  KNOW, AND LISA DAVIS WHO YOU KNOW.

20       THANK YOU.

21       **THE COURT:**  THANK YOU.

22       NOW, THIS IS YOUR MOTION, WHO'S GOING TO BE HEARD ON

23  THIS?

24       **MR. POMERANTZ:**  I WILL ADDRESS THE MOTION FIRST, IF I

25  MAY.

1          **THE COURT:**  YES.  AND WHEN YOU SAY FIRST?

2          **MR. POMERANTZ:**  MR. STEER --

3          **THE COURT:**  YOU'RE GOING TO BE JOINED BY OTHERS AS

4     WELL?

5          **MR. POMERANTZ:**  MR. STEER HAS SEPARATE ARGUMENTS ON

6     BEHALF OF DVD CCA, I WILL BE SPEAKING ON BEHALF OF THE STUDIOS.

7          **THE COURT:**  YES, OKAY.

8          WHAT DO YOU UNDERSTAND THE THEORY THAT'S SET FORTH BY

9     REAL, REALNETWORKS, BUT I REFER TO IT AS REAL GENERALLY FOR

10    SHORTHAND, THE THEORY THAT IS NOW ESPOUSED WITH RESPECT TO THE

11    BASIS FOR THE ANTITRUST VIOLATIONS?

12         **MR. POMERANTZ:**  IT DEPENDS WHETHER YOU'RE READING THE

13    COMPLAINT OR THE OPPOSITION BRIEF.  IN THE COMPLAINT THEIR

14    THIRD CAUSE OF ACTION, I THINK, PRIMARILY BASED ON THE FACT THE

15    CSS LICENSE ITSELF CONSTITUTES AN ILLEGAL CONSPIRACY, A GROUP

16    BOYCOTT.

17         IN THEIR OPPOSITION BRIEF THEY SEEM TO SAY THAT THERE

18    MAYBE SOME AGREEMENT FLOATING OUT THERE SEPARATE AND APART FROM

19    THE LICENSE, THAT THEN WAS IMPLEMENTED OR THE LICENSE WAS A

20    VEHICLE FOR THAT AGREEMENT.

21         WE DON'T THINK EITHER ONE OF THOSE REALLY MATTERS AT

22    THE END OF THE DAY, WHETHER IT'S ONE OR THE OTHER, BECAUSE WE

23    THINK OUR ARGUMENTS ARE VALID EITHER WAY.

24         THEN THERE'S THE FOURTH CAUSE OF ACTION, WHICH IS

25    THE -- A SEPARATE CAUSE OF ACTION ASSERTED ONLY AGAINST THE

1    STUDIOS, NOT THE DVD CCA, THAT SEEMS TO BE BASED ON THE

2    DISCUSSION IN THE FEW WEEKS PROCEEDING THE FILING OF THE

3    LAWSUIT THAT REAL SAYS CONSTITUTE A SEPARATE CONSPIRACY OR

4    GROUP BOYCOTT.  AGAIN, WE BELIEVE THAT IS ALSO INVALID FOR

5    CERTAIN REASONS SET FORTH IN OUR BRIEF.

6            SO I'M SURE THAT MR. JACOBSEN WILL HAVE SOME VIEW AS

7    TO WHAT THEY ARE ALLEGING.  WE THINK THEY KIND OF MANEUVERED

8    AROUND TRYING TO GET AROUND ARGUMENTS, WHEN THEY SEE ONE

9    ARGUMENT THEY SAY ONE THING, WHEN THEY SEE ANOTHER ARGUMENT

10   THEY SAY SOMETHING ELSE.

11           IT DOESN'T REALLY MATTER HERE, REALLY DOESN'T, WHETHER

12   THEY ALLEGING THE LICENSE ITSELF IS UNLAWFUL OR WHETHER THEY

13   ALLEGE THERE'S SOME AGREEMENT FLOATING OUT THERE SEPARATE FROM

14   THE LICENSE, IT DOESN'T MATTER.

15           WHAT WE THINK MATTERS, YOUR HONOR, IS JUST WHAT'S IN

16   THE COMPLAINT, THAT'S WHAT A MOTION TO DISMISS IS ALL ABOUT.

17   WE THINK THAT WHAT THEY HAVE ALLEGED IN THE COMPLAINT AND WHAT

18   THEY HAVE NOT ALLEGED IN THE COMPLAINT IS MORE THAN ENOUGH TO

19   GRANT OUR MOTION ON SEVERAL GROUNDS.

20           AND WE HAVE THREE SEPARATE GROUND, WHICH I'D LIKE TO

21   GET INTO IN A MOMENT, BUT I DON'T WANT TO IGNORE THESE TWO

22   GIGANTIC ELEPHANTS IN THE ROOM.

23           WE ALL KNOW THAT ANTITRUST CONSPIRACY DID NOT STOP

24   REAL FROM LAUNCHING REAL DVD INTO THE MARKETPLACE, THEY

25   LAUNCHED IT INTO THE MARKETPLACE.

1          WHAT STOPPED REAL FROM FURTHER SELLING IT WAS THIS

2     COURT'S INJUNCTIONS.  BECAUSE THEY WERE ACTING UNLAWFULLY THIS

3     COURT ENJOINED THEM FROM CONTINUING TO SELL IT.  NO ANTITRUST

4     CONSPIRACY STOPPED THEM FROM SELLING THE PRODUCT, THEY LAUNCHED

5     IT IN THE MARKETPLACE.

6          SO WE ALL KNOW THAT THERE'S NOTHING THE COMPLAINT CAN

7     SAY THAT CHANGES THOSE FACTS AND IT DOESN'T SAY ANYTHING

8     DIFFERENT THAN THAT.

9          AND, SECOND, WE ALL KNOW THAT IT'S VERY COMMON AND

10    VERY PRO-COMPETITIVE TO HAVE UNIFORMED INTELLECTUAL PROPERTY

11    LICENSES, YOUR HONOR DISCUSSED THOSE KIND OF LICENSES IN THE

12    PRELIMINARY INJUNCTION RULING.  IT HAPPENS ALL THE TIME.

13         AND THERE'S UNIFORMITY IN THOSE LICENSES, MEANING,

14    THAT INDIVIDUAL LICENSEES CAN'T ENTER INTO INDIVIDUAL

15    AGREEMENTS THAT CHANGE THE TERMS IN SOME WAY, SO THAT THERE'S A

16    LEVEL PLAYING FIELD AMONG ALL THE LICENSEES.

17         AND WE ALL KNOW THOSE KIND OF AGREEMENTS ARE OUT

18    THERE.  WE ALL KNOW THAT THEY ARE VERY PRO-COMPETITIVE IN THE

19    MARKET, IT ALLOWS THE MARKETS TO WORK EFFICIENTLY.

20         THAT'S ALL THEY REALLY ARE ALLEGING HERE, AT THE END

21    OF THE DAY, IS THAT EVERYBODY AGREED CSS COULD -- WOULD BE A NO

22    COPY TECHNOLOGY.  IF YOU USE CSS YOU CAN'T COPY, THAT'S IT.

23         BUT IF YOU DON'T USE CSS, THE CSS LICENSE SAYS NOTHING

24    ABOUT WHAT CAN OR CAN'T DO AND REAL DOESN'T ALLEGE OTHERWISE.

25    SO THOSE ARE SORT OF THE TWO ELEPHANTS IN THIS ROOM.

```
 1              NO MATTER WHAT ARGUMENTS EVERYBODY MAKES, WHICH IS

 2      THAT THE CONSPIRACY DIDN'T STOP THEM FROM LAUNCHING REAL DVD

 3      AND UNIFORM LICENSING IN THE INTELLECTUAL PROPERTY SPACE

 4      PRO-COMPETITIVE.

 5              THE COURT:  THE CSS LICENSE DOESN'T PREVENT ANYONE

 6      FROM COPYING CONTENT, CORRECT?

 7              MR. POMERANTZ:  IT DOESN'T --

 8              THE COURT:  HAS TO DO -- IT OTHER -- OTHER

 9      PROSCRIPTIONS?

10              MR. POMERANTZ:  CORRECT.  ALL I WAS SAYING, YOUR

11      HONOR, WAS THAT --

12              THE COURT:  I'M NOT REFERENCING WHAT YOU WERE ACTUALLY

13      SAYING, BUT IT DOESN'T PREVENT YOU FROM GETTING A LICENSE FROM

14      THE CONTENT OWNER TO COPY MUSIC CONTENT, CORRECT?

15              MR. POMERANTZ:  CORRECT.  IN FACT, THE STUDIO, AS

16      EVERYBODY KNOWS, LICENSE THEIR CONTENT TO ITUNES OR AMAZON, A

17      LOT OF OTHER PLACES, THEY SEND OUT DIGITAL COPIES, NONE OF

18      THOSE HAVE CSS.

19              SO WHATEVER A LICENSEE CAN OR CAN'T DO WITH THOSE IS

20      NOT AT ALL GOVERNED BY THE CSS LICENSE, WHICH ONLY PERTAINS

21      WHEN CSS IS BEING USED.

22              SO OUR FIRST ARGUMENT, YOUR HONOR, IS THAT REAL HAS

23      NOT ADEQUATELY ALLEGED INJURY IN FACT OR CAUSATION, AND THAT

24      ALL ARISES FROM A SUPREME COURT TEST IN ASSOCIATED GENERAL

25      CONTRACTORS.
```

1          BASICALLY, WHAT THAT CASE IS THAT ANY ANTITRUST

2     PLAINTIFF HAS TO ALLEGE WHAT THEIR HARM IS, WHAT THE DEFENDANTS

3     DID WRONG, AND THAT WHAT THE DEFENDANTS DID WRONG CAUSED THEIR

4     HARM.

5          THAT'S AN ESSENTIAL ELEMENT OF ANY ANTITRUST CLAIM AND

6     YOU HAVE TO PLEAD IT IN THE COMPLAINT.  AND AS WE KNOW FROM

7     IGBAL AND TWOMBLY YOU CAN'T JUST SAY THE CONCLUSORY STATEMENT

8     THAT THE HARM WAS CAUSED BY THE CONSPIRACY, YOU NEED TO PLEAD

9     MORE.

10         REAL DID PLEAD MORE, TO ITS CREDIT, THEY DIDN'T JUST

11    PLEAD A CONCLUSION ON THE ISSUE OF CAUSATION.  THEY VERY

12    SPECIFICALLY PLEADED WHAT THEIR HARM WAS.

13         DOES YOUR HONOR HAVE A COPY OF THE COMPLAINT IN FRONT

14    OF YOU?

15              **THE COURT:**  YES.  SECOND AMENDED COMPLAINT?

16              **MR. POMERANTZ:**  YES.

17              **THE COURT:**  CERTAINLY.

18              **MR. POMERANTZ:**  THEY PLEAD THAT HARM IN PARAGRAPHS 110

19    THROUGH 112.  AND IN THAT SECTION, WHICH IS HEADED THE GROUP

20    BOYCOTT HAS HARMED REALNETWORKS THEY ALLEGE TWO DIFFERENT KINDS

21    OF HARMS.

22         THE FIRST IS IN PARAGRAPH 112 WHERE THEY SAID REAL'S

23    ENTRY INTO THE MARKET WAS DELAYED, AND THAT'S ON THE TOP OF

24    PAGE 29, YOUR HONOR, THEY REFER TO DELAY IN THE LAST SENTENCE

25    OF 112.  THAT SAME DELAY IS ALSO ALLEGED IN PARAGRAPH 110.  SO

1    THEY WERE DELAYED INTO THE MARKET FROM SELLING REAL DVD.

2         THE SECOND HARM THAT THEY SPECIFICALLY ALLEGE IS A

3    TAINT THAT'S IN PARAGRAPH 111.  THAT REAL DVD HAS BEEN TAINTED

4    WITH A MISLABEL OF BEING AN ILLEGAL PRODUCT.  THOSE ARE THE TWO

5    HARMS THAT THEY ALLEGE, THAT'S WHAT THEIR COMPLAINT SAYS.

6         THE ONE THING WE ALL KNOW IS THE ALLEGE CONSPIRACIES

7    DIDN'T CAUSE EITHER ONE OF THOSE HARMS.  AND THEY DON'T ALLEGE

8    THAT EITHER.

9         **THE COURT:**  WELL, THE -- ONE OF THE DEVICES, AT LEAST,

10   WAS OUT IN THE MARKET TO SOME EXTENT BEFORE THE INJUNCTION OR

11   TRO?

12        **MR. POMERANTZ:**  PRECISELY.  SO NO CONSPIRACY STOPPED

13   THEM FROM LAUNCHING IT, THE ONLY THING STOPPED THAT PRODUCT

14   CONTINUING BEING SOLD IS YOUR HONOR'S INJUNCTION.

15        SO, AND NOWHERE IN THEIR COMPLAINT DO THEY SAY THAT

16   THE CONSPIRACY CAUSED THE DELAY.  AND THE REASON WHY THEY

17   DIDN'T SAY THAT IS BECAUSE NOWHERE IN THE COMPLAINT DO THEY

18   ALLEGE THEY WENT TO EACH STUDIO AND SAID MAY WE PLEASE HAVE A

19   LICENSE.

20        BECAUSE, YOUR HONOR, REMEMBER THE WHOLE GIST OF THEIR

21   POSITION WAS THEY DIDN'T NEED A LICENSE FROM EACH INDIVIDUAL

22   STUDIO, THAT THE CSS LICENSE WAS ENOUGH, IT ALLOWED THEM TO

23   LAUNCH REAL DVD.

24        SO IF THE CONSPIRACY THEY'RE ALLEGING IS THAT

25   AGREEMENT THAT EACH OF THEM -- I'M SORRY, THE CONSPIRACY

1   THEY'RE ALLEGING THE STUDIOS AGREED NOT TO ISSUED INDIVIDUAL

2   LICENSES, THEY NEVER ASKED FOR ONE, THEY NEVER ALLEGED THEY

3   ASKED FOR ONE.

4        THEY CLEARLY -- THE CONSPIRACY ISN'T WHAT CAUSED THEIR

5   HARM AND WE ALL KNOW WHAT CAUSED THEIR HARM.  WHAT CAUSED THEIR

6   HARM WAS THAT THEY WERE ACTING UNLAWFULLY AND YOUR HONOR

7   ENJOINED THEM FROM SELLING THE PRODUCT.

8        AND SO IT'S CLEAR UNDER THE ASSOCIATED GENERAL

9   CONTRACTORS STANDARD FOR CAUSATION THAT THEY HAVE NOT

10  ADEQUATELY ALLEGED THAT.  THE ALLEGED CONSPIRACY CASE HAD THE

11  SPECIFIC INJURIES THAT THEY ALLEGE IN PARAGRAPHS 110 THROUGH

12  112.

13       NOW, THEY ARGUED IN RESPONSE THAT, WELL, YOUR HONOR'S

14  INJUNCTIONS WERE ONLY PRELIMINARY, THEY WEREN'T FINAL RULINGS,

15  THEY HAVE BEEN ADJUDGED A LAW VIOLATOR.

16       IT'S TRUE THAT YOUR HONOR'S RULINGS RIGHT NOW ARE

17  PRELIMINARY RULINGS, BUT IT DOESN'T MATTER BECAUSE IT'S THOSE

18  PRELIMINARY RULINGS THAT STOPPED THEM FROM SELLING REAL DVD,

19  THAT DELAYED THEIR FURTHER SELLING IT INTO THE MARKET AND THAT

20  TAINTED THEM WITH THE LABEL OF ISSUING AN ILLEGAL PRODUCT.

21       IT'S THEIR OWN ILLEGAL CONDUCT THAT LEAD TO THE

22  INJUNCTIONS, IT'S THOSE INJUNCTIONS THAT STOPPED THEM FROM

23  SELLING.  SO OUR FIRST ARGUMENT, YOUR HONOR, IS THAT THEY HAVE

24  NOT ADEQUATELY ALLEGED CAUSATION.

25       **THE COURT:**  WHAT ABOUT THE ALLEGATION WITH RESPECT TO

1   PARAMOUNT AND THEIR NEGOTIATIONS?

2         PARAMOUNT MAYBE -- PARAMOUNT'S LAWYERS GOING TO SPEAK

3   TO THAT?

4         **MR. POMERANTZ:**  I'LL BE PREPARED TO ADDRESS IT, IF

5   THEY THINK I'VE NOT COVERED EVERYTHING.

6         SO THAT'S -- THAT HAS TO DO WHETHER THEY HAVE

7   ADEQUATELY PLED DIRECT EVIDENCE OF A CONSPIRACY.  AND, YOUR

8   HONOR, THAT'S ON PARAGRAPH 74 OF THE COMPLAINT.

9         AND IF YOU LOOK AT PARAGRAPH 74 AND ACCEPTING IT AS

10   TRUE, WHAT THAT SAY IS THAT REALNETWORKS AND PARAMOUNT ENGAGED

11   IN NEGOTIATIONS AND THAT THOSE NEGOTIATIONS BROKE DOWN OVER

12   PRICE.

13         IN FACT, WHAT THEY SPECIFICALLY ALLEGE IS THAT

14   PARAMOUNT INDICATED IT WAS NOT PREPARED TO BREAK WITH THE

15   STUDIO CARTEL WITHOUT SUBSTANTIAL COMPENSATION FOR DOING SO.

16   IF YOU PASS ENOUGH WE'LL GO AHEAD AND DO A DEAL WITH YOU.

17         THERE'S NOTHING THERE THAT INDICATES THAT THERE WAS AN

18   AGREEMENT AMONGST STUDIOS TO DENY INDIVIDUAL LICENSES AND WE

19   ALL KNOW THAT'S NOT THE CASE BECAUSE THE STUDIOS CAN'T GIVE

20   INDIVIDUAL LICENSES UNDER THE UNIFORM CSS LICENSE.

21         THAT'S AN ATTACHMENT TO THEIR COMPLAINT, YOUR HONOR,

22   FULLY ABLE AND, IN FACT, ENTITLED TO RELY ON THE TERMS OF THAT

23   LICENSE.  THE LICENSE ON ITS FACE IS A UNIFORM LICENSE THAT NO

24   INDIVIDUAL LICENSEE CAN CHANGE.

25         REMEMBER THE LICENSOR IS THE DVD CCA, SO PARAMOUNT

1   COULD NOT, ON ITS OWN, SAY DON'T WORRY ABOUT THAT

2   SPECIFICATION, THAT'S OVER THERE, THAT PREVENTS COPYING, THAT'S

3   NOT PARAMOUNT'S RIGHT TO DO, THAT'S THE DVD CCA'S RIGHT TO DO.

4           **THE COURT:**  WHAT KIND OF A LICENSE COULD PARAMOUNT

5   ENTER INTO WITH RESPECT TO CONTENT?

6           ESSENTIALLY -- ESSENTIALLY ANY KIND OF RECORDING THAT

7   WERE NOT CSS PROTECTED?

8           **MR. POMERANTZ:**  CERTAINLY.

9           **THE COURT:**  WHAT ABOUT CSS PROTECTED?

10          **MR. POMERANTZ:**  THEY COULDN'T DO ANYTHING THAT WOULD

11  AFFECT ANY OF THE SPECIFICATION OR ANY OF THE LICENSE TERMS

12  BECAUSE IT'S NOT THEIRS TO CHANGE.

13          THERE IS AN AMENDMENT PROCESS FOR THE CSS LICENSE, AND

14  CERTAINLY PARAMOUNT AND REAL COULD HAVE GONE TO THE DVD CCA AND

15  ITS MEMBERS, FOLLOWED THE PROTOCOL FOR TRYING TO GET AMENDMENT

16  FOR ALLOWING CERTAIN THINGS TO HAPPEN.

17          EITHER EVERYBODY GETS THE BENEFIT OF THAT OR NOBODY

18  DOES.  THEY'RE NOT -- THE WHOLE POINT OF THIS, WAS THAT YOU

19  WEREN'T GOING TO ALLOW JUST PARAMOUNT AND REAL TO ENTER INTO A

20  LICENSE THAT BASICALLY PROVIDED REAL WITH FAVORABLE TREATMENT

21  WITH RESPECT TO THE CSS SPECIFICATIONS AND THE CSS LICENSE,

22  THAT WOULD UNDERCUT THE WHOLE POINT HAVING A UNIFORM LICENSING

23  PROCEDURE.

24          SO THIS IS NOT DIRECT EVIDENCE, YOUR HONOR, THE LAW

25  DEFINES WHAT DIRECT EVIDENCE IS.  DIRECT EVIDENCE IS SOMETHING

1  WHERE THERE IS NO INFERENCE NEEDED WHATSOEVER.

2          THEY TRIED TO CREATE THIS AND ARGUE THIS IS REAL

3  DIRECT EVIDENCE, BUT BY INSERTING THE WORDS PREPARED TO BREAK

4  WITH A STUDIO CARTEL AND AS IF TO SAY THAT REAL, I'M SORRY,

5  THAT PARAMOUNT SAID THAT, THIS DOES NOT SAY PARAMOUNT SAID WE

6  WON'T BREAK WITH THE STUDIO CARTEL, DOESN'T SAY THAT AND I

7  SERIOUSLY DOUBT THAT'S WHAT PARAMOUNT SAID.

8          THE WORDS STUDIO CARTEL CLEARLY ARE REFERRING BACK TO

9  THE ALLEGATIONS REAL HAS MADE IN ITS OWN COMPLAINT.  AND THAT'S

10  EXACTLY WHAT HAPPENED IN TWONBLY AND THE COURT SAID THAT

11  ALLEGATION IS JUST REFERRING TO PRIOR ALLEGATIONS, IT'S

12  CONCLUSION THAT YOUR DRAWING.

13          THEY'RE DRAWING THE PHRASE STUDIO CARTEL FROM THEIR

14  EARLIER ALLEGATIONS, THERE DOES NOT SAY THAT'S WHAT PARAMOUNT

15  SAID.

16          **THE COURT:**  BUT DON'T WE GET BACK TO THIS LICENSE FOR

17  A MOMENT.  COULD THEY ENTER INTO A LICENSE WITH PARAMOUNT OR

18  ANY OTHER STUDIO THAT SUBJECT TO THE CSS AGREEMENT, SUBJECT TO

19  THE CSS AGREEMENT?

20          **MR. POMERANTZ:**  ABSOLUTELY.

21          **THE COURT:**  IN OTHER WORDS, CONTENT THAT CSS PROTECTED

22  AND THEIRS -- COULD THEY THEN AGREE WITH PARAMOUNT OR ANY OTHER

23  STUDIO TO LICENSE THAT CONTENT SUBJECT TO THE CSS AGREEMENT?

24          **MR. POMERANTZ:**  AS LONG AS IT DOESN'T CHANGE THE CSS

25  AGREEMENT, THE ANSWER IS, YES.

1          **THE COURT:**  RIGHT, SUBJECT TO ALL THE TERMS AND

2     CONDITIONS?

3               **MR. POMERANTZ:**  ABSOLUTELY.

4          **THE COURT:**  REALLY BE LAWYER LIKE ABOUT IT.

5          **MR. POMERANTZ:**  THINK ABOUT IT WHAT MR. GLASER SAID

6     WHEN HE WAS ON THE STAND HERE, THEY WEREN'T -- THEIR OBJECTIVE

7     WASN'T REALLY TO COPY DVD'S, IT WAS TO HAVE -- GET MOVIES TO A

8     HARD DRIVE AND THEN COME UP WITH ALL THESE FEATURES THAT ALLOW

9     THE USER TO ORGANIZE THEM AND SORT THEM AND GET ADDITIONAL

10    INFORMATION AND PARENTAL CONTROLS AND THINGS OF THAT SORT.

11          THERE'S LOT OF WAYS TO GET MOVIES ONTO A HARD DRIVE

12    AND REAL HAD EVERY RIGHT TO GO TO EACH STUDIO INDIVIDUALLY AND

13    SAY, LET'S TALK ABOUT A DEAL THAT WE CAN GET MOVIES ONTO HARD

14    DRIVES TO ALLOW PEOPLE TO THEN ORGANIZE THEM WITH OUR REALLY

15    SOPHISTICATED COOL REAL DVD SOFTWARE.

16          THEY COULD HAVE DONE THAT, THEY COULD HAVE GONE THERE.

17    THERE'S NOTHING THEY ALLEGE IN THIS COMPLAINT OR ANY OF US KNOW

18    ABOUT THAT WOULD PRECLUDE THAT KIND OF BILATERAL AGREEMENT

19    BETWEEN THE STUDIO AND REAL, IF IT DIDN'T INVOLVE COPYING A

20    CSS-PROTECTED DISK.

21          AND THEY ALLEGE THAT THERE'S WAYS OF DOING THAT, IT'S

22    NOT AS IF IT'S SOMETHING OUTSIDE OF THE COMPLAINT.  FOR

23    EXAMPLE, IN THEIR COMPLAINT THEY ALLEGE THAT THE STUDIOS ARE

24    PUTTING OUT SOMETHING CALLED A DIGITAL COPY AND THEY

25    SPECIFICALLY ALLEGE THAT DIGITAL COPIES COMPETE WITH WHAT REAL

1    IS TRYING TO DO WITH REAL DVD.

2            WHAT A DIGITAL COPY IS, IT'S A DISK THAT IS NOT CSS

3    ENCRYPTED AND IT COMES IN A PACKAGE WITH THE DVD THAT IS CSS

4    ENCRYPTED, AND IT ALLOWS THE PURCHASER TO PUT A COPY OF THE

5    MOVIE RIGHT ONTO THEIR HARD DRIVE, AND IT'S WITHOUT CSS

6    LICENSE.

7            SO THEY KNOW THAT THAT EXISTS AND THAT YOU CAN DO IT

8    BECAUSE THEY ALLEGE IT IN THEIR COMPLAINT.  SO YOUR HONOR

9    DOESN'T NEED TO GRANT THIS MOTION, YOUR HONOR DOESN'T NEED TO

10   GO BEYOND WHAT YOU ALREADY KNOW FROM WHAT THEY ALLEGE IN THEIR

11   COMPLAINT, IT'S THERE AND IT SAYS THAT.

12           AND THAT GETS ME TO THE SECOND GROUND FOR WHY I THINK

13   YOUR HONOR SHOULD DISMISS THIS COMPLAINT.  AND THAT IS THAT

14   TWONBLY AND IQBAL, I'M SURE EVERYBODY COMES IN TODAY AND SAY

15   TWONBLY AND IQBAL TO YOUR HONOR.

16           **THE COURT:**  I SAY IT RIGHT BACK TO THEM.

17           **MR. POMERANTZ:**  I KNOW, SO I'M TALKING ABOUT KENDALL.

18   KENDALL IS THE NINTH CIRCUIT INTERPRETATION OF TWONBLY, AND

19   WHAT KENDALL SAYS IS THAT THIS IS IN THE ANTITRUST CONTEXT,

20   ALLEGATIONS OF FACT THAT COULD JUST AS EASILY SUGGEST RATIONAL

21   LEGAL BUSINESS BEHAVIOR BY THE DEFENDANTS AS THEY COULD SUGGEST

22   AN ILLEGAL CONSPIRACY ARE INSUFFICIENT TO PLEAD A VIOLATION OF

23   THE ANTITRUST LAWS.

24           SO WHAT YOU DO IS YOU LOOK AT THEIR COMPLAINT, ASSUME

25   THE STUDIO DID WHAT THEY SAY WE DID, IS THAT CONSISTENT WITH

1    LAWFUL BEHAVIOR?

2              AND IF IT IS CONSISTENT WITH LAWFUL BEHAVIOR IT MAY

3    ALSO BE CONSISTENT WITH THE CONSPIRACY, BUT IF IT'S EQUALLY

4    CONSISTENT WITH LAWFUL BEHAVIOR THEY HAVE NOT STATED AN

5    ANTITRUST CLAIM.

6              WHAT ARE THEY ALLEGING HERE, THEY'RE BASICALLY

7    ALLEGING THE STUDIOS AGREED, HEY, WE WANT TO HAVE A NO COPY

8    TECHNOLOGY THAT NONE OF US CAN CHANGE, AND THAT THIS CONSUMER

9    ELECTRONICS COMPANIES AND THAT THE IT COMPANIES ALSO CAN'T

10   CHANGE, IT'S A NO COPY TECHNOLOGY, BUT IT'S NON-EXCLUSIVE, SO.

11             IF YOU USE THIS TECHNOLOGY YOU KNOW NO ONE CAN COPY

12   AND YOU CAN'T CHANGE THE TERMS OF THE LICENSE, AND IF YOU DON'T

13   LIKE THAT YOU DON'T HAVE TO USE THAT TECHNOLOGY, YOU CAN GO DO

14   IT IN SOME OTHER WAY.

15             THAT'S TOTALLY LAWFUL BEHAVIOR AND THERE'S MANY, MANY,

16   MANY CASES OUT THERE THAT SAY IT'S COMPLETELY LEGITIMATE TO

17   COME UP WITH A NON-EXCLUSIVE DISTRIBUTION METHOD THAT IS

18   EXCLUSIVE, THAT IS -- I'M SORRY, THAT IS LIMITED WHERE YOU

19   CAN'T COPY IT AND YOU CAN'T CHANGE IT, IT'S UNIFORM LICENSE.

20             AND THAT'S WHAT WE HAVE HERE AND THE ONE CASE WE CITE

21   TO YOUR HONOR IS SUPPORT OF THAT PROPOSITION IS THE CBSV V.

22   ASCAP CASE THAT HAS TO DO WITH THE BLANKET LICENSE THAT ASCAP

23   AND BMI ISSUED FOR PERFORMANCE RIGHTS TO MUSICAL COMPOSITIONS.

24             AS YOUR HONOR REMEMBERS, THAT CASE WENT UP TO THE

25   SUPREME COURT.  SUPREME COURT SAID LIKE IT LICENSE OR NOT PER

1    SE ILLEGAL, AND THEN THEY SEND IT BACK DOWN TO THE COURT OF

2    APPEAL TO DECIDE WHETHER UNDER THE RULE OF REASON IT WAS

3    UNLAWFUL.

4              AND IN THAT REMANDED CASE THE, I BELIEVE, THE SECOND

5    CIRCUIT SAID THAT UNDER THE RULE OF REASON IT IS NOT UNLAWFUL.

6    THERE IS NO RESTRAINT BECAUSE BESIDES THE BLANKET LICENSE TO

7    GET RIGHTS TO MUSICAL COMPOSITIONS, CBS COULD GO TO EACH

8    COMPOSER AND GET THE LICENSE.

9              IT WAS A NON-EXCLUSIVE BLANKET LICENSE, NOTHING TO

10   STOP THE CBS FROM GOING DIRECTLY TO EACH COMPOSER AND GETTING

11   DIRECT LICENSE FROM THE COMPOSER OR MUSIC PUBLISHER.

12             THAT WAS ON A FACTUAL RECORD AT TRIAL, BUT EVERY FACT

13   YOU WOULD NEED TO MAKE THAT FINDING HERE IS ALREADY ADMITTED IN

14   THE COMPLAINT.  BECAUSE THEY ADMIT THAT CSS IS NOT THE ONLY WAY

15   THAT MOVIE STUDIOS DISTRIBUTE THEIR MOVIES, THEY ADMIT DIGITAL

16   COPIES AND OTHER WAYS NOT USING CSS ARE AVAILABLE AND THEY WERE

17   AVAILABLE TO REAL.

18             SO, AGAIN, BECAUSE OF THE TWONBLY STANDARD WHICH SAYS,

19   AND IQBAL AND KENDALL WHICH SAYS THEY HAVE TO ALLEGE SOMETHING

20   THAT IS INCONSISTENT WITH LAWFUL BEHAVIOR, THEY HAVEN'T DONE

21   THAT, THERE'S NOTHING UNLAWFUL WITH WHAT THEY ALLEGE EVEN IF

22   YOU ACCEPT IT AS TRUE.

23             THERE'S ALSO THE FOURTH CAUSE OF ACTION I DON'T WANT

24   TO FORGET THAT, WHICH IS THE ALLEGATION THAT THE CONVERSATIONS

25   FEW WEEKS BEFORE TRIAL, I'M SORRY, BEFORE THE FILING OF THE

1    COMPLAINT CONSTITUTED A CONSPIRACY BECAUSE THE STUDIOS WOULDN'T

2    LICENSE TO REAL.

3            THERE'S NOTHING ABOUT THAT THAT'S INCONSISTENT WITH

4    LAWFUL BEHAVIOR.  REAL COMES TO EACH STUDIO THREE WEEKS BEFORE

5    THEY'RE ABOUT TO LAUNCH A PRODUCT AND SAYS, BY THE WAY, WE'RE

6    LUNCHING THIS PRODUCT, FOR EACH OF THEM TO DECIDE NOT TO ENTER

7    INTO A LICENSE AGREEMENT WITH REAL IN THAT SITUATION IS,

8    OBVIOUSLY, CONSISTENT WITH LAWFUL BEHAVIOR.  THEY SAY IT'S

9    BECAUSE OF A CONSPIRACY, BUT IT'S OBVIOUSLY CONSISTENT WITH

10   LAWFUL BEHAVIOR ALSO.

11           AND I KNOW THIS IS WHERE YOUR HONOR HEARS TWOMBLY AND

12   IQBAL A LOT, WHICH IS WHAT KIND OF DETAIL DO YOU NEED TO HAVE

13   IN A COMPLAINT?

14           I WOULD SUBMIT, YOUR HONOR, THAT THERE IS NO WAY, IF

15   THERE IS NO DIRECT EVIDENCE HERE AND I WOULD SUBMIT THAT

16   PARAMOUNT'S ALLEGATION IS NOT DIRECT EVIDENCE.

17           THAT THEY HAVE AN OBLIGATION TO MEET THE TWONBLY AND

18   IQBAL STANDARDS WITH RESPECT TO DETAILED ALLEGATIONS WITH

19   SPECIFIC ALLEGATIONS, WHO DID WHAT TO WHOM, ET CETERA.

20           THEY DON'T EVEN MENTION WHAT EACH OF THE STUDIOS DID

21   OR DIDN'T DO IN CONNECTION WITH THIS CONSPIRACY A FEW WEEKS

22   BEFORE TRIAL.  AND I WOULD SUGGEST, YOUR HONOR, THIS IS

23   WOEFULLY SHORT OF THE IGBAL AND TWONBLY REQUIREMENTS.  THAT WAS

24   OUR SECOND ARGUMENT.

25           OUR THIRD ARGUMENT IS NOERR-PENNINGTON.  I KNOW YOUR

1    HONOR IS VERY FAMILIAR WITH NOERR-PENNINGTON, I'VE SEEN YOUR

2    NAME ON A NUMBER OF CASES INVOLVING NOERR-PENNINGTON.

3         WE BELIEVE HERE THAT THE EXPRESS ALLEGATIONS IN THE

4    COMPLAINT SHOW THAT NOERR HAS TO BE TRIGGERED IN A NUMBER OF

5    WAYS.

6         LET'S START WITH THAT FOURTH CAUSE OF ACTION, THE ONE

7    ABOUT FEW WEEKS BEFORE, THE DISCUSSION A FEW WEEKS BEFORE THE

8    FILING OF THE LAWSUIT.

9         THEY HAVE SOME VERY SPECIFIC ALLEGATIONS, YOUR HONOR,

10   WHICH SHOW THAT THOSE WERE SETTLEMENT DISCUSSIONS.  I WOULD

11   JUST GIVE YOU PARAGRAPH NUMBERS YOU CAN SEE WHAT THEY SAY.

12        PARAGRAPH 97 WHERE THEY REFER TO ATTEMPTS TO RESOLVE

13   THE ENSUING DISPUTE, PARAGRAPH 132 WHERE THEY REFER TO ATTEMPTS

14   TO RESOLVE THE STUDIO DEFENDANTS STATED CONCERNS, PARAGRAPH 88

15   DISCUSSES THE TOLLING AGREEMENT THAT THE PARTIES ENTERED INTO,

16   TOLLING IN ORDER TO PRECLUDE HAVING TO FILE A LAWSUIT RIGHT

17   AWAY.

18        IT IS VERY, VERY CLEAR UNDER NINTH CIRCUIT LAW, SOSA

19   IN PARTICULAR, SOSA VERSUS DIRECT TV, THAT SETTLEMENT

20   DISCUSSION THAT PRECEDE THE FILING OF A LAWSUIT JUST AS

21   PROTECTED UNDER NOERR AS ANYTHING THAT HAPPENS DURING THE

22   LAWSUIT BECAUSE IT'S INCIDENTAL TO THE LITIGATION.

23        AND REAL WANTS YOUR HONOR TO FIND THAT WHAT WE WERE

24   DISCUSSING, COMMERCIAL TERMS, MARKETING OPPORTUNITIES AND OTHER

25   THINGS LIKE THAT, WE WEREN'T DISCUSSING SETTLEMENT.

1     WELL, SOSA ADDRESSES THAT AS WELL, ANY PRE-LITIGATION

2   SETTLEMENT DISCUSSION IS GOING TO HAVE COMMERCIAL INTEREST AT

3   STAKE, THAT'S WHAT HAPPENS IN BUSINESS LITIGATION.

4     THE MERE FACT THERE ARE COMMERCIAL TERMS BEING

5   DISCUSSED DOESN'T IN ANY WAY SUGGEST THAT THOSE WEREN'T

6   SETTLEMENT DISCUSSIONS THAT ARE PROTECTED.

7     WE CLEARLY KNEW THAT THERE WAS A DISPUTE, THEY ADMIT

8   IT AND THE PARTIES WERE ATTEMPTING TO RESOLVE IT, THAT'S A

9   SETTLEMENT DISCUSSION PROTECTED BY NOERR.

10     THE THIRD CAUSE OF ACTIONS ALSO BASED ON ACTIVITIES

11   THAT ARE PROTECTED UNDER NOERR.  TWO RESPECTS, YOUR HONOR.

12   LET'S GO BACK TO THE ISSUE OF HARM.

13     REMEMBER THAT THEIR HARM IS THAT THEY WERE DELAYED IN

14   LAUNCHING REAL DVD AND THAT THERE WAS A TAINT THAT THEIR

15   PRODUCT WAS ILLEGAL.

16     THOSE TWO HARMS ARE SPECIFICALLY CAUSED BY YOUR

17   HONOR'S RULINGS AND IF THE HARM IS CAUSED BY A GOVERNMENTAL

18   DECISION, INCLUDING A COURT RULING, NOERR APPLIES.

19     THAT'S WHAT THE ARMSTRONG SURGICAL CASE SAYS AND

20   THAT'S WHAT OTHER CASES SAY.  IF AN ELEMENT OF THE CLAIM, A

21   REQUIRED ELEMENT OF THE CLAIM REQUIRES YOU TO LOOK AT A

22   GOVERNMENTAL DECISION, INCLUDING A COURT DECISION, IT'S BARRED

23   UNDER NOERR.

24     SECONDLY, HERE OTHER ELEMENTS OF THEIR CLAIM ARE ALSO

25   IMPLICATING PETITIONING ACTIVITIES.  THEY TALK ABOUT THE

1  COLLECTIVE INTERPRETATION THAT THE STUDIOS AND THE DVD CCA HAVE

2  GIVEN TO THE CSS LICENSE, THAT'S IN PARAGRAPH 82.

3          AND THEY SPECIFICALLY REFER TO THINGS THAT HAPPENED IN

4  THIS COURTROOM DURING THE PRELIMINARY INJUNCTION PROCEEDING,

5  PARAGRAPHS 51 THROUGH 53.

6          THEY ARE UNQUESTIONABLY BASING THEIR CLAIM ON A

7  COLLECTIVE POSITION THAT THE STUDIOS AND THE DVD CCA ASSERTED

8  IN THIS COURTROOM AND THAT'S PROTECTED BY NOERR.

9          THOSE ARE THE THREE BASIS OF OUR CLAIM, CAUSATION,

10  THEY HAVEN'T PLED ANYTHING THAT'S INCONSISTENT WITH LAWFUL

11  PRO-COMPETITIVE BEHAVIOR AND NOERR-PENNINGTON.

12          THANK YOU, YOUR HONOR.

13  **THE COURT:**  ALSO, WHAT DO YOU UNDERSTAND, ALTHOUGH,

14  ONE WAY NOT NEED TO GET TO THAT, AT LEAST, AT THIS STAGE, THE

15  RELEVANT MARKET TO BE?

16          I SEE ALLEGATIONS IN THE COMPLAINT, BUT WHAT DO YOU

17  UNDERSTAND THAT RELEVANT MARKET TO BE?

18  **MR. POMERANTZ:**  YOUR HONOR, I THINK, THE RELEVANT

19  MARKET THAT THEY HAVE PLED IS CREATING OR OTHERWISE OBTAINING

20  MOVIES THAT THE CONSUMER ALREADY OWNS IN A DVD FORMAT.

21          THEY TRIED TO SAY IN THEIR BRIEF THE RELEVANT MARKET

22  IS -- REQUIRES THAT THEY COPY DIRECTLY FROM A DVD, BUT THAT'S

23  NOT WHAT THEY PLED, THAT IS NOT WHAT THEY PLED.  WHAT THEY PLED

24  WAS --

25  **THE COURT:**  WHAT YOU JUST STATED.

1          **MR. POMERANTZ:** -- WHAT I JUST STATED.  IN FACT,

2     PARAGRAPH 99 AND --

3          **THE COURT:** RIGHT.

4          **MR. POMERANTZ:** -- AND THE REASON WHY THEY PLED THAT,

5     YOUR HONOR, BECAUSE THEY REALLY COULDN'T PLEAD THAT THEY HAD TO

6     COPY DIRECTLY FROM A DVD BECAUSE THAT'S NOT WHAT MR. GLASER

7     SAID ON THE STAND AND THAT IS A BINDING ADMISSION ON REAL.

8          HE IS THE CEO OF THE COMPANY.  HE TESTIFIED TO THAT ON

9     DIRECT EXAMINATION IN THE PRELIMINARY INJUNCTION PROCEEDING.

10    IT IS BINDING FOR PURPOSE OF THIS MOTION.

11         SO WHEN THEY WROTE PARAGRAPH 99 THEY SPECIFICALLY

12    DESCRIBED A MARKET WHERE TO CREATE OR OTHERWISE OBTAIN AND, YOU

13    KNOW, YOUR HONOR, YOU KNOW THAT ALSO FROM THEIR ALLEGATIONS

14    REGARDING THE DIGITAL COPY.

15         LOOK AT PARAGRAPH 112 AGAIN.  PARAGRAPH 112 REFERS TO

16    OUR SELLING OF THESE DIGITAL COPIES AND SAYS THAT WE'RE TRYING

17    TO CAPTURE THE MARKET FOR THEMSELVES, WHAT THEY'RE TALKING

18    ABOUT IS MARKET REAL WANTS TO ENTER.

19         BUT, OF COURSE, DIGITAL COPY IS NOT CSS.  THEY

20    SPECIFICALLY ALLEGE THAT IN PARAGRAPH 103.  103 SAYS THAT

21    DIGITAL COPIES IS WITHOUT CSS ENCRYPTION.

22         SO THEY HAVE SPECIFICALLY PLED THAT THE RELEVANT

23    PRODUCT MARKET INCLUDES PRODUCTS THAT ARE NOT ENCRYPTED WITH

24    CSS, OTHERWISE THERE'S NO WAY THAT DIGITAL COPY PRODUCTS

25    COMPETE WITH REAL DVD.  AND YET THAT'S WHAT THEY ALLEGE.

1          SO YOU KNOW THAT THEIR PRODUCT MARKET IS BROADER THAN

2     JUST COPYING DIRECTLY FROM DVD'S, BOTH BY PARAGRAPH 99 WHERE

3     THEY DEFINE THE RELEVANT PRODUCT MARKET AND BY THE ALLEGATIONS

4     OF DIGITAL COPY IN PARAGRAPHS 112 AND 103.

5          **THE COURT:**  DO YOU UNDERSTAND THEY HAVE A DIFFERENT

6     ARGUMENT NOW IN THEIR OPPOSITION TO YOUR MOTION?

7          **MR. POMERANTZ:**  YES.  I BELIEVE THAT IN THEIR

8     OPPOSITION TO OUR MOTION THEY'RE SAYING THE PRODUCT MARKET IS

9     LIMITED TO CSS-PROTECTED DISKS.

10          BUT I DON'T BELIEVE THAT PRODUCT MARKET CAN, FIRST OF

11     ALL, IT'S NOT WHAT THEY PLED.

12          AND, SECONDLY, I DON'T BELIEVE THEY REASONABLY CAN

13     PLEAD THAT GIVEN WHAT MR. GLASER SAID ON THE STAND.

14          **THE COURT:**  OKAY.  THANK YOU.  I WILL HEAR FROM ALL

15     THE DEFENDANTS THAT ARE GOING TO BE HEARD AND THEN I'LL HEAR

16     FROM REAL.

17          **MR. STEER:**  THANK YOU, YOUR HONOR.  I'M, AGAIN,

18     REGINALD STEER ON BEHALF OF THE DVD CCA.

19          **THE COURT:**  STILL REGINALD STEER.

20          **MR. STEER:**  NO CHANGE SINCE HALF AN HOUR AGO.  AND I

21     AGREE WITH THE POINTS MR. POMERANTZ HAS MADE, BUT LET ME ADD A

22     COUPLE OF THINGS TO THEM THAT ARE A LITTLE DIFFERENT FOR THE

23     ALLEGATIONS AGAINST THE DVD CSS.

24          FIRST, AS TO NOERR-PENNINGTON, THE ANALYSIS HERE IS

25     EXTREMELY SIMPLE, BECAUSE WHEN ONE READS THE COUNTERCLAIMS

```
 1    AGAINST DVD CCA WHAT THEY SAY IS THAT DVD CCA'S INTERPRETATION

 2    OF THE CSS LICENSE AGREEMENT --

 3            THE COURT:  WHICH PARAGRAPH ARE YOU LOOKING AT?  AND

 4    I'LL FOLLOW ALONG.

 5            MR. STEER:  COUNTERCLAIM PARAGRAPH 37.

 6            THE COURT:  UH-HUH.

 7            MR. STEER:  ALSO 34, 36, IN THAT RANGE.  THERE'S OTHER

 8    PARAGRAPHS IN ADDITION, YOUR HONOR, BUT I THINK THOSE ARE THE

 9    KEY ONES.

10            THE COURT:  OKAY.  THE ANTITRUST COUNTERCLAIM APPEAR

11    TO START AT PARAGRAPH 39; IS THAT CORRECT?

12            OR THEY START EARLIER THAN THAT?

13            MR. STEER:  I'M SORRY.

14            THE COURT:  ARE YOU LOOKING AT THE EARLIER AMENDED?

15            MR. POMERANTZ:  I THINK, THE COMPLAINT AGAINST THE DVD

16    CCA IS DIFFERENT THAN THE COMPLAINT AGAINST US.

17            MR. STEER:  IT IS.  IF YOU'RE LOOKING AT, YOUR HONOR,

18    IF YOU'RE LOOKING AT THE SECOND AMENDED COMPLAINT.

19            THE COURT:  I'M LOOKING AT THE WRONG ONE.

20            MR. STEER:  YOU'RE LOOKING AT THE WRONG DOCUMENT

21    BECAUSE THE COUNTERCLAIMS AGAINST US ARE A LITTLE BIT

22    DIFFERENT.

23            THE COURT:  OKAY.

24            MR. POMERANTZ:  AT LEAST, IN TERMS OF THE PARAGRAPH

25    NUMBERING.  I'M REFERRING TO THE COUNTERCLAIMS AGAINST DVD CCA
```

1    AND IF IT'S AT PAGE 19 OF THOSE COUNTERCLAIMS, AT THE VERY

2    BOTTOM PARAGRAPH 37 SAYS:

3         IF THE DVD CCA AND STUDIOS ARE RIGHT IN THEIR

4    COLLECTIVE INTERPRETATION ET CETERA, ET CETERA, ET CETERA, THEN

5    THE AGREEMENT IS ILLEGAL.  SO IT'S THE INTERPRETATION THAT

6    THEY'RE ATTACKING HERE AS FAR AS DVD CCA IS CONCERNED.

7         THE ONLY ALLEGATION AS TO THE ISSUANCE OF ANY SUCH

8    INTERPRETATION HAVING ANYTHING TO DO WITH REALNETWORKS, YOUR

9    HONOR, IS THAT DVD CCA ADVANCED ITS INTERPRETATION IN THIS

10   COURTROOM AND IT HAD TO DO THAT BECAUSE IT WAS SUED BY

11   REALNETWORKS.

12        WE DID NOT INITIATE THIS LITIGATION, REALNETWORKS

13   INITIATED LITIGATION AGAINST DVD CCA, AND IF THAT DOES NOT FALL

14   WITHIN THE PRIVILEGE CREATED OR THE EXEMPTION CREATED BY

15   NOERR-PENNINGTON I CAN'T IMAGINE WHAT DOES.

16        **THE COURT:**  AS A MATTER OF FACT, DVD CCA WAS NOT A

17   PARTY PLAINTIFF IN THE ACTION BROUGHT IN THE CENTRAL DISTRICT.

18        **MR. STEER:**  THAT'S CORRECT, YOUR HONOR.

19        **THE COURT:**  OKAY.

20        **MR. STEER:**  WE DID FILE COUNTERCLAIMS.

21        **THE COURT:**  YES, BUT THAT WAS THIS ACTION INITIATED BY

22   REALNETWORKS?

23        **MR. STEER:**  CORRECT.  WE HAD TO DEFEND OURSELVES AND

24   THAT DEFENSE INCLUDED DEFENDING THE CSS LICENSE AGREEMENT AND

25   ADVOCATING THE INTERPRETATION WE BELIEVE IS CORRECT.  CLEARLY

1    PRIVILEGED.

2          **THE COURT:**  HAD THERE BEEN AT ANY TIME IN THE PAST ANY

3    COMMUNICATION BETWEEN REAL AND DVD CCA ABOUT ITS INTERPRETATION

4    OF THE AGREEMENT?

5          **MR. STEER:**  YOUR HONOR, THERE'S NO ALLEGATIONS OF ANY

6    SUCH COMMUNICATION, AND THE COURT WILL RECALL THAT DURING THE

7    PRELIMINARY INJUNCTION PHASE REALNETWORKS KIND OF MADE SOME

8    NOISE ABOUT HOW DVD CCA WOULDN'T COMMUNICATE WITH US, WOULDN'T

9    TALK TO US.

10          THEY DIDN'T -- NEVER OFFERED ANY EVIDENCE THAT THEY

11   ASKED TO TALK ABOUT INTERPRETATION OF THE AGREEMENT, HOW IT

12   WOULD APPLY TO THEM OR ANYTHING OF THAT SORT, BUT THEY THREW UP

13   THAT ACCUSATION KIND OF IN THE AIR.

14          SO THE ANSWER TO THE COURT'S QUESTION IS, THERE IS

15   NOTHING ALLEGED HERE AND NOR WAS ANYTHING IN THE RECORD.

16          **THE COURT:**  NO, NOT IN THE COMPLAINT, I'M GOING OVER

17   THE FOUR CORNERS, SOMETIMES WE DO THAT, YOU KNOW, NOT IN THE

18   FINAL WRITTEN OPINION, OF COURSE.

19          **MR. STEER:**  OF COURSE.  PURELY FOR BACKGROUND.  SO AS

20   I SAY, NOERR-PENNINGTON PROTECTS THE DVD CCA'S CONDUCT IN THIS

21   LITIGATION.

22          LET'S GO BACK TO WHAT DVD CCA IS ALLEGED TO HAVE DONE

23   IN THESE COUNTERCLAIMS BECAUSE THERE IS A LITTLE BIT MORE.

24          WHAT THERE IS THE ACCUSATION THAT DVD CCA SOMEHOW WAS

25   THE INSTRUMENTALITY OF CONSPIRACY AMONG STUDIOS.

1      WELL, THE TERM INSTRUMENTALITY REALLY ISN'T DEFINED,

2   THEY DON'T SAY HOW IT WAS AN INSTRUMENTALITY, BUT IF WE LOOK AT

3   WHAT FEW FACTS THEY DO ALLEGE, IT'S PRETTY CLEAR WHAT THEY'RE

4   SAYING.

5      THEY'RE SAYING REALNETWORK TRIED TO NEGOTIATE SOME

6   SORT OF UNDEFINED LICENSE WITH SOME STUDIOS, THE ONLY ONE WE

7   KNOW OF BY NAME IS PARAMOUNT BECAUSE THEY MAKE AN ACCUSATION

8   AGAINST PARAMOUNT.

9      THE STUDIOS DID NOT DECIDE, THEY DECIDED NOT TO ENTER

10  INTO SUCH LICENSING AGREEMENTS WITH REAL.  THERE'S NO

11  ALLEGATION THE DVD CCA, BY THE WAY, HAD ANYBODY THERE AT THOSE

12  NEGOTIATIONS, PARTICIPATED, WAS CONSULTED OR WAS IN ANY WAY

13  AWARE OF OR INVOLVED WITH THOSE NEGOTIATIONS.

14     **THE COURT:**  OR INFLUENCED PARAMOUNT IN ITS DECISION?

15     **MR. STEER:**  OR IN ANY REGARD HAD ANYTHING TO DO WITH

16  IT.  SO THE NEXT STEP IS THAT SOMEONE FROM -- THEY ALLEGE

17  SOMEONE FROM ONE OF THE STUDIOS TOLD THEM THAT THEY NOT

18  LICENSED BECAUSE THEY UNDERSTAND THAT THE CSS LICENSE AGREEMENT

19  PROHIBITS THEM LICENSING REAL.

20     BUT, AGAIN, THERE'S NO EVIDENCE OR ALLEGATION, I

21  SHOULD SAY, THAT ANYBODY SPOKE TO DVD CCA.  THIS IS SOMEBODY

22  ELSE'S INTERPRETATION OF THE CSS LICENSE AGREEMENT AND THERE'S

23  NOTHING CONSPIRATORIAL ABOUT IT.

24     AND WE KNOW, AS MR. POMERANTZ HAS STATED, STUDIOS DO,

25  IN FACT, LICENSE THEIR CONTENT SEPARATE AND APART FROM USING

1    CSS.

2              AND, AGAIN, THE CSS LICENSE AGREEMENT, YOUR HONOR, IS

3    NOT EXCLUSIVE.  NOTHING IN IT REQUIRES STUDIO TO USE CSS ON ALL

4    OF THE MOVIE DVD'S THAT IT PRODUCES OR ANY OF THEM.

5              IT'S AVAILABLE ONCE LICENSED AND ONCE LICENSED THE

6    LICENSEE MUST ADHERE TO THE TERMS OF THE LICENSE.  MUST NOT

7    DEFEAT THE INTELLECTUAL PROPERTY RIGHTS INVOLVED.

8              BUT IT'S EVIDENT AS REALNETWORK ITSELF ALLEGES THERE'S

9    DIGITAL COPY THAT ISN'T PROTECTED BY CSS, SO THERE ARE WAYS TO

10   ENTER INTO SUCH AGREEMENTS WITHOUT INVOLVING CSS.

11             AND THAT, YOUR HONOR, I SUSPECT EXPLAINS WHY DVD CCA

12   HAD ABSOLUTELY NO ALLEGED INVOLVEMENT IN THESE COMMUNICATIONS

13   BETWEEN REALNETWORKS AND THE STUDIOS.  REAL NETWORKS KNEW THAT,

14   SO THE BOTTOM LINE IS THAT --

15        **THE COURT:**  YOU WOULD AGREE WITH MR. POMERANTZ, I TAKE

16   IT, THAT YOU COULD ALSO ENTER INTO AN AGREEMENT WITH A STUDIO

17   TO COPY CSS PROTECTED WORK IF, IN FACT, YOU AGREE TO ADHERE TO

18   THE CSS LICENSE TERMS, CORRECT?

19        **MR. STEER:**  SUBJECT TO THE CSS LICENSE TERMS, YOUR

20   HONOR, CORRECT.

21        **THE COURT:**  THAT'S WHAT I'M --

22        **MR. STEER:**  AS MR. POMERANTZ EXPLAINED, THERE IS A

23   PROCEDURE FOR AMENDMENT, IT REQUIRES APPROVAL OF THE ENTIRE

24   ORGANIZATION ULTIMATELY OR REPRESENTATIVES OF THE ENTIRE

25   ORGANIZATION.

1          AND THERE'S NO ALLEGATION THAT THAT PROCESS OR

2     PROCEDURE WAS EVER STARTED OR SUGGESTED BY REALNETWORKS.  SO

3     IT'S AN AVENUE THEY APPARENTLY CHOSE NOT TO PURSUE BECAUSE THE

4     COURT HAS HEARD THEIR POSITION, HAS BEEN THAT THEY, IN FACT,

5     WERE IN COMPLIANCE WITH THE CSS LICENSE AGREEMENT.

6          THEY NEVER TOOK THE POSITION THAT WE'LL DO SOMETHING

7     ELSE TO CHANGE IT BECAUSE WE GOT TO DO THAT IN ORDER TO COMPLY

8     WITH IT.  THEY SIMPLY -- NOT SIMPLY, BUT IN A COMPLICATED WAY

9     ARGUED WHAT THEY DO COMPLY WITH THE AGREEMENT, THEY'RE WRONG.

10         SO MY POINT, YOUR HONOR, IS THAT THE CONCLUSORY

11    ALLEGATION THAT SOMEBODY USED THE EXISTENCE OF THE CSS LICENSE

12    AGREEMENT AS AN EXCUSE FOR NOT ENTERING INTO A LICENSING

13    ARRANGEMENT WITH REALNETWORKS, THAT DOESN'T STATE ANTITRUST

14    CLAIMS AGAINST DVD CCA.

15         I WANTED TO MAKE THIS ARGUMENT FOR YEARS IN A CIVIL

16    CASE, I CAN DO IT FINALLY, MY CLIENT WASN'T THERE PERIOD.

17              **THE COURT:**  OKAY.

18              **MR. STEER:**  THANK YOU.

19              **THE COURT:**  THANK YOU.

20              **MR. POMERANTZ:**  YOUR HONOR, IF I COULD JUST CLARIFY.

21              **THE COURT:**  YOUR CLIENT ISN'T UNDER INDICTMENT, YOU

22    KNOW.

23              **MR. STEER:**  FOUR YEARS IN THE ARMY JAG CORP.

24              **MR. POMERANTZ:**  MAY I, IN THE COLLOQUY WITH MR. STEER,

25    I JUST WANT TO CLARIFY ONE POINT BEFORE MR. JACOBSEN GETS ON,

1    SO HE CAN RESPOND.

2           YOUR HONOR, WHEN YOU POSE THE QUESTION TO MR. STEER

3    ABOUT WHAT KIND OF A LICENSE COULD BE ENTERED INTO SUBJECT TO

4    THE CSS LICENSE, IT SOUNDED A LITTLE DIFFERENT TO ME WHEN I WAS

5    SITTING THERE THAN WHEN HE WAS STANDING HERE.

6           I WANT TO CLARIFY WHAT I BELIEVE IS THE STUDIOS'

7    POSITION.  THE CSS LICENSE IS A NO COPY LICENSE, YOU CAN'T COPY

8    LICENSE.  IF A STUDIO WANTS TO ENTER INTO AGREEMENT WITH REAL

9    THAT ALLOWS COPYING OF A CSS-PROTECTED DISK THE STUDIO WOULD

10   HAVE TO DO TWO THINGS AND SO WOULD REAL.

11          FIRST, HAVE TO ENTER INTO A LICENSE, BILATERAL

12   LICENSE, STUDIO WITH REAL.  BEFORE THEY COULD ACTUALLY

13   IMPLEMENT THAT LICENSE THEY WOULD HAVE TO GO BACK TO THE DVD

14   CCA AND FOLLOW THE AMENDMENT PROCEDURE IN ORDER TO BASICALLY

15   COME UP WITH AN EXCEPTION TO THE NO COPY RESTRICTION.

16          THEY'VE DONE THAT IN THE PAST.  THAT HAS HAPPENED IN

17   THE PAST WITH RESPECT TO BURN TO DVD COPYING, WHICH IS NOT

18   WHAT'S AT ISSUE HERE.  BUT I JUST WANTED CLARIFY, IF WHAT

19   YOU'RE DOING IS COPYING CSS-PROTECTED DISKS BILATERAL LICENSE

20   CAN'T WORK UNTIL YOU GO BACK TO THE DVD CCA.

21          IF WHAT YOU WANT TO DO IS GET A COPY OF A MOVIE ONTO A

22   HARD DRIVE WITHOUT USING CSS PROTECTION, YOU DON'T HAVE TO GO

23   TO THE DVD CCA, YOU CAN DO THAT BETWEEN THE STUDIO AND REAL.

24          **THE COURT:**  MR. STEER, DO YOU AGREE WITH THAT?

25          **MR. STEER:**  YES, YOUR HONOR, I DO.  I THOUGHT THAT'S

1    WHAT OUR COLLOQUY INVOLVED.  THANK YOU.

2              **THE COURT:**  YES.

3              **MR. FRAHN:**  BRIEFLY ON THE BEHALF OF PARAMOUNT, BUZ

4    FRAHN OF SIMPSON THATCHER, NICE TO SEE YOU.

5              I THINK, THAT YOUR HONOR'S QUESTION IS, WHAT COULD

6    THEY HAVE BEEN NEGOTIATING ABOUT BETWEEN PARAMOUNT AND REAL?

7              I THINK, THERE'S AT LEAST FOUR PRACTICAL THINGS THAT

8    THEY COULD HAVE BEEN TALKING ABOUT.

9              NUMBER ONE, AND REMEMBER THIS TALK HAPPENED JUST

10   SEVERAL WEEKS BEFORE REAL SAID IT'S GOING TO INTRODUCE A

11   PRODUCT, I THINK, THE FIRST SUBJECT OF DISCUSSIONS WOULD BE

12   WHAT IS IN, RIGHT, THIS CAME OUT OF THE BLUE, AND SO YOU WANT

13   TO FIND OUT WHAT IT WAS.

14             THE SECOND THING THEY COULD HAVE BEEN TALKING ABOUT IS

15   COMING UP WITH A DEAL THAT IS OUTSIDE CSS SUCH AS ITUNES OR THE

16   AMAZON DOWNLOAD SERVICE, SOMETHING REALLY OUTSIDE OF CSS AND

17   BUT ALLOWS REAL TO IMPLEMENT THE ADDITIONAL SERVICES THAT IT

18   SAID IT WANTED TO OFFER.

19             THE THIRD THING THAT COULD BE TALKING ABOUT IS TRYING

20   TO STRUCTURE A DEAL SUBJECT TO AND IN COMPLIANCE WITH THE CSS

21   LICENSE.

22             AND THEN, I THINK, FOURTH THING THEY COULD HAVE BEEN

23   TALKING ABOUT IS STRUCTURE A DEAL THAT'S DEPENDED UPON MUTUALLY

24   COOPERATING TO SEEK AN AMENDMENT OF THE CSS LICENSE AND ANY

25   OTHER NECESSARY AMENDMENTS TO ENABLE THE FUNCTIONALITY THAT

1   REAL WANTED TO PUT OUT THERE.

2         NOW, NONE OF THAT IS IN REAL'S ALLEGATION.  WE'RE

3   TALKING ABOUT THE FOUR CORNERS AGAIN, NONE OF THAT THOSE

4   POSSIBILITIES ARE IN REAL'S ALLEGATION.

5         BUT IMPORTANTLY WHAT ALSO MISSING FROM REAL'S

6   ALLEGATIONS, ANY ALLEGATION THAT PARAMOUNT OR FOX, WHICH IS THE

7   OTHER STUDIO THEY NAME OR ANY OF THE OTHER STUDIOS, THEY MIGHT

8   HAVE HAD DISCUSSIONS WITH BEFORE LAUNCH WAS ENGAGING IN THOSE

9   DISCUSSIONS IN BAD FAITH.

10        SIMPLY NOT THERE.  CERTAINLY ALL OF THE INFORMATION

11  ABOUT THE DISCUSSIONS IS AVAILABLE TO REAL.  THEY MENTION IN

12  THE COMPLAINT THERE ARE NUMEROUS TERM SHEETS EXCHANGED, SO ALL

13  OF THOSE DISCUSSIONS WE HAVE TO ASSUME WERE IN GOOD FAITH, THAT

14  PARTIES ACTUALLY THOUGHT THEY COULD REACH A DEAL.

15        WHETHER IT'S SUBJECT TO AN AMENDMENT, WHETHER IT'S

16  OUTSIDE CSS, WE DON'T KNOW BECAUSE THEY DON'T PUT IT IN THEIR

17  COMPLAINT, BUT THEY THOUGHT THEY COULD HAVE REACHED A DEAL IN

18  GOOD FAITH.

19        WHAT IS ALSO --

20        **THE COURT:**  AT AN EXORBITANT PRICE.

21        **MR. FRAHN:**  SUBSTANTIAL IN ONE SENTENCE, BUT

22  EXORBITANT IN THE NEXT.  WHAT WE DON'T SEE IS ANY DIRECT

23  EVIDENCE.

24        IN OUR PLEADING A COMPLAINT AND SOMEONE ON THE OTHER

25  SIDED ADMITTED TO ME THEY WERE A MEMBER OF A CARTEL, YOU

1    CERTAINLY SEE SOME QUOTATIONS MARKS IN MY COMPLAINT.

2            I WOULDN'T USE THE VERB INDICATED.  I DON'T KNOW WHAT

3    THE WORD INDICATE MEANS.  IF SOMEBODY SAID SOMETHING THEY SAID

4    IT, IF THEY DEMANDED SOMETHING THEY DEMANDED IT.

5            WHEN YOU USE THE WORD INDICATED, THAT WAS THE WORD IS

6    IN PARAGRAPH 74, THAT'S KIND OF A WISHY WASHY WORD WHICH SAYS,

7    ESSENTIALLY, I'M TAKING FROM YOUR CONDUCT YOU INDICATED

8    SOMETHING TO ME, I'M INFERRING SOMETHING, I THINK, THAT'S THE

9    MOST THEY HAVE.

10            CERTAINLY NOT DIRECT EVIDENCE, CERTAINLY DOESN'T RISE

11    TO THE LEVEL OF THE DIRECT EVIDENCE.  AND THE PRIMARY CASE THEY

12    CITE WHICH THE MAC TRUCK CASE WHERE YOU GOT THREE SEPARATE

13    PEOPLE GIVING DETAILED TESTIMONY FROM THREE DIFFERENT SOURCES

14    ABOUT THE WHO, WHAT, WHEN, WHERE AND HOW AS TO THE DIRECT

15    EVIDENCE IN THE CONSPIRACY.

16            SIMPLY THEY'RE NOT DIRECT EVIDENCE TO SAY THAT SOMEONE

17    INDICATED WHATEVER EXORBITANT, OR EXTRAVAGANT, OR SUBSTANTIAL

18    WHATEVER IT IS, JUST DOESN'T GET THERE.

19            SO WHAT YOU HAVE, AT MOST, IS THE ALLEGATION THAT

20    DIFFERENT STUDIOS BEGAN NEGOTIATIONS WITH REAL, THEY GOT TO

21    DIFFERENT PLACES AND AT THE END OF THE DAY THEY COULDN'T REACH

22    AGREEMENT ON PRICE.

23            NOW, I WOULD SUGGEST TO YOU THE MORE PLAUSIBLE

24    CONCLUSION FROM THOSE ALLEGATIONS NOT A CONSPIRACY, BUT A

25    SEPARATE, PEOPLE WERE ACTING IN THEIR OWN INDEPENDENT ECONOMIC

1    SELF-INTEREST, NOT CONSPIRATORIALLY.

2         **THE COURT:**  NOW, WITH RESPECT TO THE EXAMPLES YOU WERE

3    GIVEN THE OPTIONS AVAILABLE AND THE THIRD ONE, BUT PARTICULARLY

4    WITH NEGOTIATING ANY KIND OF COPYING ARRANGEMENT SUBJECT TO USE

5    THE TERM IN COMPLIANCE WITH THE CSS.

6         IS IT YOUR OPINION THAT THEY WOULD NOT NEED TO OBTAIN

7    SOME KIND OF AMENDMENT IF THAT WAS GOING TO BE THE NATURE OF

8    THE AGREEMENT?

9         **MR. FRAHN:**  NO, THAT'S NOT MY OPINION.  IF THE NATURE

10   OF THE AGREEMENT WAS TO COPY CSS-PROTECTED MATERIAL, THEN YOU

11   WOULD HAVE TO MAKE THAT AGREEMENT SUBJECT TO IMPLEMENTATION,

12   ONLY AFTER YOU HAD AMENDED THE CSS LICENSE THROUGH THE DVD CCA

13   PROCESS.

14        **THE COURT:**  SO WE HAVE A CONSISTENT --

15        **MR. FRAHN:**  I THINK, IT'S CLEAR.

16        **THE COURT:**  OKAY.

17        **MR. FRAHN:**  THANK YOU, YOUR HONOR.

18        **THE COURT:**  WHO ARE WE GOING TO HEAR FROM,

19   MR. JACOBSON?

20        **MR. JACOBSON:**  YES, YOUR HONOR.  YOUR HONOR, IF I MAY

21   APPROACH, I HAVE A COUPLE OF VISUAL AIDS FOR THE COURT.

22   THEY'RE UP ON THE BOARD, I HAVE MINIATURES.

23        **THE COURT:**  PLEASE HAND THEM TO MR. BOWSER OVER HERE.

24   THANK YOU.

25        **MR. JACOBSON:**  YOUR HONOR, I'M GOING TO TRY TO PROCEED

1    IN AN ORGANIZED FASHION TO ADDRESS EACH OF THE ISSUES HERE.

2                WE HAVEN'T HEARD ABOUT THE NATIONAL COOPERATIVE

3    RESEARCH ACT OR THE SINGLE ENTITY DEFENSE AT ALL AS THE OTHER

4    SIDE HAS ON PAPERS ON THOSE POINTS, BUT I DO WANT TO ADDRESS

5    THE OTHER ISSUES.

6                AND WHILE IT'S STILL FRESH IN OUR MIND I WANT TO SAY

7    ONE THING ABOUT THE ALLEGATION CONCERNING PARAMOUNT.  WE'LL

8    TALK A BIT MORE LATER, BUT I WILL TELL YOU RIGHT NOW THAT THE

9    WORD USED BY THE PARAMOUNT REPRESENTATIVE IN THE COURSE OF THE

10   MEETING WAS CARTEL.  THE SPECIFIC QUOTATION FROM THAT

11   REPRESENTATIVE.

12          **THE COURT:**  HOW COME IT'S NOT IN QUOTATIONS MARKS IN

13   THE COMPLAINT?

14          **MR. JACOBSON:**  SINCE WHEN -- IT'S A FAIR QUESTION,

15   YOUR HONOR, BUT SINCE WHEN IS A COMPLAINT SUBJECT TO RULE 12

16   ANALYSIS BASED ON THE USE OR NON-USE OF QUOTATIONS ATTACHED TO

17   A PHRASE IN A COMPLAINT?

18                I NEVER HEARD THAT UNTIL THE ARGUMENT ADVANCED TODAY,

19   JUST NOT THE LAW.

20          **THE COURT:**  I TELL YOU ONE THING.  IF I WERE DRAFTING

21   A COMPLAINT AND I HAD SOME LANGUAGE THAT WAS STRAIGHT OUT OF

22   THE MOUTH OF THE OPPOSITION, I WOULD SURE PUT IT, AND THIS IS A

23   DEAD RINGER, THIS IS DEAD RINGER LANGUAGE, I'D PUT IT IN

24   QUOTES.

25                I WANT THE, YOU KNOW, THE RECIPIENTS OF THAT COMPLAINT

1    TO KNOW THAT THIS WAS WHAT WAS SAID.

2           **MR. JACOBSON:**  AND YOU KNOW WHAT?

3           **THE COURT:**  I WOULDN'T USE THE WORD INDICATED, I'D USE

4    SAID.

5           **MR. JACOBSON:**  MAYBE WE SHOULD HAVE DONE THAT, WE

6    DIDN'T DO THAT.  I'M TELLING YOU RIGHT NOW IN OPEN COURT THAT

7    THE PHRASE USED BY THE PARAMOUNT REPRESENTATIVE WAS QUOTE "I'LL

8    REQUIRE BLOOD MONEY TO BREAK THE CARTEL."

9           ALL RIGHT.  IF WE HAVE TO FILE AMENDED PLEADING WE CAN

10   PUT THAT QUOTATION IN, BUT I'M TELLING YOU RIGHT NOW IT'S NOT A

11   PARAPHRASE, IT'S NOT AN INFERENCE, IT'S DIRECT EVIDENCE FROM A

12   PARTICIPANT IN AN AGREEMENT WITH RIVALS THAT THAT PARTICIPANT

13   WAS A MEMBER OF A CARTEL WITH THE OTHER STUDIOS.

14          THAT IS DIRECT EVIDENCE UNDER ANY SENSE OF THE TERMS,

15   IT MAY BE WE SHOULD GET SOME LARK FOR NOT PUTTING QUOTATION

16   MARKS AROUND THE WORD IN THE COMPLAINT, BUT I'M TELLING YOU AS

17   A MEMBER OF THE BAR RIGHT NOW IN OPEN COURT THAT THOSE ARE THE

18   WORDS THAT WAS USED.  SHOULDN'T BE ANY MISTAKE ABOUT IT, YOUR

19   HONOR.

20          **THE COURT:**  NOW, THE CHARACTERIZATION ALSO DOES NOT

21   NECESSARILY OBTAIN IF, IN FACT, THERE AREN'T FACTS TO SUPPORT

22   THAT CHARACTERIZATION.

23          **MR. JACOBSON:**  LET'S NOW TALK ABOUT --

24          **THE COURT:**  SOMEBODY MAYBE USING A CHARACTERIZATION

25   RATHER LOOSELY AS YOU GUYS ARE RUNNING A CARTEL OR SOMETHING,

1  BUT.

2        **MR. JACOBSON:**  NO, THIS WAS A STATEMENT BY PARAMOUNT

3  REPRESENTATIVE AND, AGAIN, THAT'S THE SORT OF ANALYSIS THAT ONE

4  ENGAGES IN IN DISCOVERY THAT IS APPROPRIATELY THE SUBJECT OF

5  RULE 56 MOTION PRACTICE, BUT CERTAINLY NOT THE BASIS FOR RULE

6  12 DISMISSAL OF COMPLAINT, YOUR HONOR.

7        NOW, I'D LIKE TO GET BACK TO, AGAIN, WHICH IS, WHAT IS

8  THIS CASE ABOUT?

9        AND YOU ASKED WHAT ARE REALLY THE CLAIMS?

10        THERE REALLY TWO CONSPIRACY CLAIMS BEING ADVANCED

11  HERE.

12        THE FIRST IS NOT A CONSPIRACY OF INTERPRETATION, THE

13  FIRST IS THAT THE DVD CCA LICENSE AGREEMENT, THE CSS LICENSE IS

14  A PRODUCT OF AN AGREEMENT AMONG HORIZONTAL COMPETITORS, THAT NO

15  ONE WILL MAKE A COPY OF A CSS-PROTECTED DISK WITHOUT AMENDING

16  THE AGREEMENT, SO WHICH REQUIRES THE ASSENT OF ALL THE MEMBERS.

17        AS WE HEARD FROM COUNSEL A FEW MOMENTS AGO BEFORE

18  DOING SO, THE EFFECT OF THAT IS THAT NO ONE CAN MAKE A COPY OF

19  A CSS-PROTECTED DISK WITHOUT GOING TO THE REST OF THE STUDIOS

20  TO GET THEIR ASSENT TO DO SO.

21        THAT IS CONCERTED REFUSAL TO LICENSE AND WE'LL TALK

22  ABOUT THE LEGAL IMPLICATIONS OF THAT, BUT THAT IS THE FIRST OF

23  OUR TWO ANTITRUST CLAIMS.

24        **THE COURT:**  NOW, IT'S NOT STRICTLY A HORIZONTAL

25  ARRANGEMENT BECAUSE YOU HAVE OTHER PARTICIPANTS IN THIS

```
 1    AGREEMENT, MANUFACTURERS, IT'S QUITE A VARIED GROUP OF

 2    PARTICIPANTS, SO IT'S NOT JUST AN AGREEMENT AMONGST

 3    COMPETITORS, HORIZONTAL COMPETITORS.

 4              MR. JACOBSON:  THAT'S TRUE AND --

 5              THE COURT:  WHAT KIND OF AGREEMENT IS THAT?

 6              MR. JACOBSON:  IT'S A HORIZONTAL AGREEMENT, YOUR

 7    HONOR, BUT PART OF THE ANALYSIS OF WHETHER THERE ARE SUCH

 8    VERTICAL OVERTONES TO THE AGREEMENT THAT WE SHOULD APPLY RULE

 9    OF REASON ANALYSIS IS, AGAIN, THE APPROPRIATE SUBJECT OF

10    DISCOVERY AND MOTION PRACTICE.

11              I WANT TO BRING UP PARAGRAPH 47 OF THE COMPLAINT, THE

12    COMPLAINT AGAINST THE STUDIOS.  ALTHOUGH, THIS RELATES DIRECTLY

13    TO THE ALLEGATIONS THAT BEGINS AGAINST THE ASSOCIATION AS WELL.

14              THIS IS QUOTATION FROM TESTIMONY THAT TOOK PLACE

15    BEFORE THE COURT -- I'M SORRY, DID I SAY 47?  74.  AND DO I

16    HAVE THE PARAGRAPHING WRONG ON THE CHART?

17              SO THE STATEMENT IS -- I'M SORRY, THAT'S THE WRONG

18    BOARD.  PARAGRAPH 51.

19              LOGISTICAL DIFFICULTIES, YOUR HONOR, YOU HAVE MY

20    APOLOGIES.

21              SO THE TESTIMONY OF MS. KING, THIS IS IN CONNECTION

22    WITH THE DRAFTING OF THE INTERIM LICENSE AND THE PROVISIONS

23    THAT ULTIMATELY BECAME PART OF THE FINAL AGREEMENT, WAS THAT

24    THE STUDIOS WERE ADAMANT THAT THERE WOULD NEVER BE A COPY MADE

25    TO THE HARD DRIVE, THAT IS A HORIZONTAL AGREEMENT.
```

1          NOW, THERE ARE OTHER PARTIES THAT ARE PARTY TO THE

2     LICENSE AGREEMENT, THAT'S TRUE, BUT WE BELIEVE THAT THIS ASPECT

3     OF THE AGREEMENT, STEPPING BACK A FEW MONTHS, WE DIDN'T THINK

4     THE AGREEMENT SHOULD BE READ THIS WAY.

5          BUT WE NOW KNOW THAT IT IS, YOUR HONOR, READING THIS

6     WAY, AND WE HAVE IT FROM COUNSEL ON THE OTHER SIDE THAT THERE

7     IS AN AGREEMENT AMONG ALL THE STUDIOS AND THE DVD ASSOCIATION

8     THAT THERE WILL BE NO COPIES MADE TO THE HARD DRIVE.

9          THAT IS A HORIZONTAL AGREEMENT, THERE'S NO QUESTION

10    THE CONCERTED ACTION ELEMENT OF A SHERMAN ONE CLAIM HAS BEEN

11    ALLEGED HERE, ABSOLUTELY NO QUESTION ABOUT THAT.

12         NOW, WE'LL GET IN A MINUTE TO THE LEGAL IMPLICATIONS

13    OF THIS, IS THIS A CONCERTED REFUSAL TO DEAL SUBJECT TO PER SE

14    ANALYSIS?

15         IS IT SUBJECT TO ANALYSIS UNDER THE RULE OF REASON?

16         THAT'S A SEPARATE QUESTION, BUT THE ELEMENTS OF

17    CONCERTED --

18         **THE COURT:**  I THOUGHT YOUR ARGUMENT WAS WE DON'T DEAL

19    WITH THAT ON A MOTION TO DISMISS, WHETHER PER SE OR RULE OF

20    REASON.

21         **MR. JACOBSON:**  YOUR HONOR, I THINK, THAT IS CORRECT

22    AND WE CITE THE CALIFORNIA DENTAL CASE FOR THAT PROPOSITION,

23    AND I DO THINK THAT'S TRUE.

24         BUT WHAT I WANT TO BE ABLE TO DEMONSTRATE TO YOUR

25    HONOR IN A FEW MINUTES IS THAT, WHETHER YOU VIEW IT AS PER SE

1    OR WHETHER YOU VIEW IT WAS RULE OF REASON, EVERYTHING THAT ONE

2    WOULD NEED TO HAVE IN A COMPLAINT IS IN THIS COMPLAINT.

3            SO I DO NOT RETREAT FROM THE STATEMENT IN THE BRIEF

4    WHICH I BELIEVE IS CORRECT AS A MATTER OF SOUND ANTITRUST

5    ANALYSIS, THAT THAT IS AN ISSUE THAT'S REACHED LATER IN THE

6    CASE ULTIMATELY, WHETHER IT'S RULE OF REASON OR PER SE, BUT

7    CERTAINLY EITHER ONE, AND BOTH HAVE BEEN ALLEGED WITH

8    SUFFICIENT PARTICULARITY IN THIS COMPLAINT TO WITHSTAND A

9    MOTION UNDER RULE 12.

10           NOW, SO THE FIRST CAUSE OF ACTION, THE FIRST

11   CONSPIRACY IS THE CREATION OF THE CSS LICENSE AGREEMENT ITSELF,

12   A PRODUCT OF AN AGREEMENT AMONG COMPETITORS CLEARLY JOINED IN

13   BY THE DVD CCA.  THERE'S NO PLAUSIBLE ARGUMENT OTHERWISE, THEY

14   ARE THE ONES THAT ADMINISTER IT.  SO THAT IS THE FIRST CAUSE.

15           THE SECOND CAUSE OF ACTION IS THE LATER AGREEMENT AND

16   ONE TO WHICH DVD CCA IS NOT CHARGED WITH PARTICIPATING, JUST

17   THE AGREEMENT AMONG THE STUDIOS, AND THAT IS THE CARTEL

18   AGREEMENT AMONG THE STUDIOS NOT TO AUTHORIZE REAL DVD WITHIN

19   THE CONFINES OF THE CSS LICENSE AGREEMENT, TO HAVE THE REAL DVD

20   PRODUCT AVAILABLE FOR THEIR OWN, INDIVIDUALLY OWNED CONTENT,

21   AND THAT IS THE SECOND ALLEGATION IN THE CASE.

22           **THE COURT:**  WHICH PARAGRAPH ARE YOU REFERRING TO IN

23   THE COMPLAINT THAT GETS TO THAT?

24           **MR. JACOBSON:**  LET ME PULL OUT THE COMPLAINT.  I'M

25   DEALING NOW WITH THE SECOND AMENDED COMPLAINT, BUT THE FIRST

1    ANTITRUST CAUSE OF ACTION IS LAID OUT AT PARAGRAPHS 118, ET

2    SEQ.

3           AND THE SECOND ANTITRUST CAUSE OF ACTION, WHICH IS OUR

4    FOURTH CAUSE OF ACTION DECLARATORY, YOU MAY RECALL IS LAID OUT

5    AT PARAGRAPHS 130, ET SEQ.

6           NOW, MR. POMERANTZ SPENT A GREAT DEAL OF TIME TALKING

7    ABOUT THE ISSUE OF CAUSATION.

8           **THE COURT:**  I KNOW, BEFORE THAT YOU SAY THAT THE

9    STUDIO DEFENDANTS CONSPIRED AND REACHED A COLLUSIVE AGREEMENT,

10    THIS IS PARAGRAPH 32, TO ENGAGE IN COLLECTIVE REFUSAL TO DEAL,

11    ET CETERA, ET CETERA.

12           **MR. JACOBSON:**  I'M SORRY, WHICH PARAGRAPH?

13           **THE COURT:**  123 AND THE STUDIO DEFENDANTS.

14           **MR. JACOBSON:**  YES.

15           **THE COURT:**  BUT AREN'T THOSE THE KIND OF CONCLUSORY

16    ALLEGATIONS?

17           THEY DON'T HAVE ANY MEAT ON THEM ABOUT WHAT, YOU KNOW,

18    WHAT AGREEMENTS WERE MADE, WHO PARTICIPATED IN THOSE, WERE ALL

19    THE STUDIO DEFENDANTS THERE OR SOME OF THEM THERE.

20           IT'S VERY BEAR.  YOU GOT A LOT OF PARAGRAPHS, BUT

21    THEY'RE SPARSE ON FACTS WHICH, I THINK, TWONBLY AND KENDALL

22    SPEAK TO.

23           **MR. JACOBSON:**  YOUR HONOR, IF YOU JUST LOOK AT ONE

24    SENTENCE, OBVIOUSLY, YOU CAN LIMIT YOURSELF TO WHAT'S IN ONE

25    SENTENCE.

1       **THE COURT:**  I'M LOOKING AT A NUMBER OF PARAGRAPHS THAT

2    GO FROM THE ONE THAT YOU INITIALLY INDICATED ON PAGE -- MUST BE

3    33, EVEN BEFORE, YEAH, 33 OVER TO --

4       **MR. JACOBSON:**  BUT --

5       **THE COURT:**  -- OVER TO PAGE 36 AND I DON'T SEE, YOU

6    KNOW, I SEE CONCLUSIONS, BUT I DON'T SEE SPECIFICITY.  FACTS.

7       **MR. JACOBSON:**  PARAGRAPH 74 IS SPECIFIC.

8       **THE COURT:**  PARAGRAPH 74?

9       **MR. JACOBSON:**  74 IS SPECIFIC.  THAT IS THE PARAGRAPH

10   WE WERE TALKING ABOUT EARLIER.

11      **THE COURT:**  THIS PARTICULAR PARAGRAPH?

12      **MR. JACOBSON:**  YES.

13      **THE COURT:**  I SEE.

14      **MR. JACOBSON:**  WE DON'T NEED THAT BOARD.  THOSE ARE --

15   WE DON'T NEED THAT BOARD.

16      YOUR HONOR, WE HAVE ALLEGED IN THAT PARAGRAPH, AGAIN,

17   YOU KNOW, I TAKE YOUR HONOR'S ADMONITION THAT SHOULD HAVE NOT

18   USED THE WORD INDICATED, WE SHOULD HAVE LAID IT OUT, BUT THE

19   ALLEGATIONS IN PARAGRAPH 64 WHICH I HAVE ELABORATED ON HERE IN

20   OPEN COURT AND WILL BE PREPARED TO FILE AMENDED COMPLAINT IF

21   YOUR HONOR DEEMS IT NECESSARY, I REALLY DON'T THINK IT IS, BUT

22   IF YOU BELIEVE THAT IT IS, WE WILL DO SO, THOSE RELATE TO THE

23   FOURTH CAUSE OF ACTION.  THE SECOND ANTITRUST CAUSE OF ACTION.

24   AND THAT STATEMENT BY PARAMOUNT IS ABOUT AS EXPLICIT AS ONE CAN

25   GET.

1          NOW, THERE'S NO DOUBT WHO THE PARTICIPANTS WERE,

2   PARAMOUNT WAS AWARE AT THE TIME THAT REAL WAS IN DISCUSSIONS

3   WITH ALL OF THE DEFENDANTS, STUDIO DEFENDANTS WHO HAVE BEEN

4   NAMED IN THE CASE.

5          THE CARTEL ADMISSION THAT WAS MADE BY PARAMOUNT

6   PLAINLY PERTAINED TO EACH OF THOSE COMPANIES.  AGAIN, IF WE

7   HAVE TO AMEND THE COMPLAINT TO STATE THAT WITH EVEN GREATER

8   PARTICULARITY, WE ARE PREPARED TO DO SO.  BUT I DON'T THINK

9   IT'S NECESSARY, I THINK, IT'S CLEAR.

10          **THE COURT:**  YOU WERE GOING TO TALK ABOUT CAUSATION,

11   THE COURTROOM IS FILLING UP WITH 3:00 O'CLOCK AND THEN SOON THE

12   4:00 O'CLOCK.

13          **MR. JACOBSON:**  WASN'T MY CHOICE TO GO FORWARD AND I'M

14   GOING TO BE AS QUICK AS I CAN BECAUSE I REALLY DON'T THINK IT'S

15   THAT COMPLICATED ONCE YOU UNDERSTAND THE ALLEGATIONS.

16          PLEASE, JUST LEAVE THE BOARDS THE WAY THEY ARE.  I

17   DON'T NEED ANYTHING.

18          SO LET ME GO THROUGH IT QUICKLY.  THE ILLEGALITY

19   DEFENSE DEPENDS ENTIRELY ON THE PROPOSITION THAT REAL DVD

20   VIOLATES THE CSS LICENSE AGREEMENT.  YOUR HONOR HAS AGREED WITH

21   THAT PROPOSITION.

22          AS YOU KNOW WE CONTESTED IT AT GREAT LENGTH AND WITH

23   GREAT EMOTION IN THIS COURT.  WE LOST, THE CASE IS ON APPEAL,

24   BUT WE'RE ASSUMING FOR PURPOSE OF TODAY THAT THAT LOSS

25   CONTINUES AND MR. POMERANTZ IS RIGHT IN THAT NARROW ASPECT OF

1   HIS CAUSATION ARGUMENT.

2        BUT WHAT HE TOTALLY BLANKS WAS HE TOTALLY IGNORING THE

3   CSS LICENSE AGREEMENT PRECLUDES COPIES OF DVD'S BECAUSE OF THE

4   HORIZONTAL AGREEMENT AMONG THE STUDIOS THAT IT WOULD DO SO.

5        THE ONE REFERRED TO IN PARAGRAPH 51, THE BOARD THAT

6   WAS PREVIOUSLY UP THERE, THE STATEMENT OF MS. KING THE STUDIOS

7   ARE ADAMANT IN CONSTRUCTING THAT LICENSE AGREEMENT THAT COPIES

8   OF DVD'S NOT BE MADE.

9        SO THE CAUSATION ARGUMENT IS ENTIRELY CIRCULAR.  YES,

10  IT IS TRUE IT VIOLATES THE CSS LICENSE AGREEMENT BASED ON YOUR

11  HONOR'S RULING, BUT THAT'S NOT THE ISSUE.  THE ISSUE IS HOW DID

12  WE GET TO THAT STATE OF AFFAIRS?

13       WE GOT TO THAT STATE OF AFFAIRS BECAUSE OF A

14  HORIZONTAL AGREEMENT AMONG THE STUDIOS THAT THAT IS WHAT THE

15  CSS LICENSE AGREEMENT WOULD SAY.

16       **THE COURT:**  AREN'T YOU ALSO IGNORING THE FACT THAT THE

17  COURT FOUND THAT REAL WAS IN VIOLATION OF THE DMCA?

18       **MR. JACOBSON:**  AND REAL --

19       **THE COURT:**  AND WAS ACTING ILLEGALLY ITSELF BY VIRTUE

20  OF THE ACTIVITIES IT WAS ENGAGING IN.

21       **MR. JACOBSON:**  YOUR HONOR, I'M NOT IGNORING THAT, LET

22  ME ADDRESS THAT PRECISELY.

23       THE PRINCIPLE REASON FOR THE VIOLATION OF THE DMCA, IS

24  THAT THERE WAS NO INDIVIDUAL AUTHORIZATION BY THE STUDIOS OF

25  THAT CONTENT, OF THE COPYING OF THE CONTENT TO THE HARD DRIVE,

1   BUT THAT WAS MADE IMPOSSIBLE, AGAIN, BY THE TERMS OF THE CSS

2   LICENSE AGREEMENT.

3          FT CSS LICENSE AGREEMENT DOESN'T REQUIRE UNIVERSAL

4   AGREEMENT AMONG ALL THE STUDIOS TO ALLOW THE DVD CONTENT TO BE

5   COPIED TO THE HARD DRIVE, THEN THERE IS NO VIOLATION OF THE

6   DMCA.

7          SO THE ENTIRE ARGUMENT THAT IS A RED HERRING.  IT

8   ASSUMES THAT THE ORIGINAL AGREEMENT TO CRAFT THE CSS LICENSE

9   AGREEMENT IN THE WAY IT DOES WAS LAWFUL, BUT THAT'S THE ISSUE

10  IN THE CASE.

11         THAT'S NOT THE ANSWER, THAT'S THE ISSUE, YOUR HONOR.

12  SO THE CAUSATION ISSUE TRULY --

13      **THE COURT:**  HOW DO YOU THINK YOU WOULD HAVE FAIRED IF

14  THE ACTION HAD BEEN BROUGHT JUST AS A -- BY CLAIMING A

15  VIOLATION OF THE DMCA?

16      **MR. JACOBSON:**  I THINK --

17      **THE COURT:**  WITHOUT REGARD TO ANY VIOLATION OF ANY OF

18  THE LICENSE AGREEMENT?

19      **MR. JACOBSON:**  BUT THE REASON THERE'S A DMCA VIOLATION

20  IS THAT IT'S NOT AUTHORIZED UNDER THE LICENSE AGREEMENT.  SO

21  IT'S ENTIRELY CIRCULAR, YOUR HONOR, IT'S ENTIRELY CIRCULAR.

22      **THE COURT:**  I GUESS, ONE PERSON'S CIRCLE IS ANOTHER

23  PERSON'S SQUARE.

24      **MR. JACOBSON:**  WELL --

25      **THE COURT:**  NOT SURE WHERE THE CIRCULAR IS IN THIS

1   CASE.  I THINK, I HAVE A PRETTY GOOD IDEA, THOUGH.  SO HOW --

2           **MR. JACOBSON:**  YOUR HONOR, IF YOU GO BACK --

3           **THE COURT:**  HOW ARE YOU -- WHAT IS THE INJURY AND WHAT

4   IS THE CAUSE OF THAT INJURY?  THE INJURY, I THINK, I CAN FIGURE

5   OUT.

6           **MR. JACOBSON:**  THE INJURY IS WE CAN'T MARKET REAL DVD,

7   THAT'S THE INJURY.

8           **THE COURT:**  UH-HUH.  RIGHT.

9           **MR. JACOBSON:**  WHAT IS THE CAUSE OF THAT INJURY?

10          THE CAUSE OF THAT INJURY IS THE CRAFTING OF THE CSS

11  LICENSE AGREEMENT IN A WAY THAT NO INDIVIDUAL STUDIOS CAN

12  AUTHORIZE A COPY OF THE CONTENT TO THE HARD DRIVE.

13          **THE COURT:**  BECAUSE THE COURT ENFORCES THE DMCA AND

14  THE COURT ENFORCED THE LICENSE AGREEMENT, THE CSS LICENSE

15  AGREEMENT AND WHICH YOU TAKE ISSUE, BUT THE COURT ENFORCED IT.

16  I DON'T KNOW HOW YOU GET AROUND THE NOERR-PENNINGTON PROBLEM.

17          **MR. JACOBSON:**  THAT'S A COMPLETELY SEPARATE ISSUE AND

18  WHAT YOUR HONOR IS TALKING ABOUT JUDICIAL ORDER IS NOT A

19  NOERR-PENNINGTON ISSUE, IT'S A SOVEREIGN COMPULSION ISSUE.

20          THAT'S ANALYTICALLY INACCURATE WITH ALL RESPECTS TO

21  THE NOERR-PENNINGTON ISSUE.  HAS NOTHING TO DO WITH THE

22  AGREEMENT TO DRAFT THE CSS LICENSE AGREEMENT IN THE WAY THAT

23  THE STUDIOS DID.

24          ONCE YOU UNDERSTAND THAT THE PRINCIPLE BASIS OF THIS

25  CLAIM IS THE COLLECTIVE AGREEMENT AMONG THE STUDIOS TO CRAFT

1    THE CSS LICENSE AGREEMENT IN A WAY THAT PRECLUDES INDIVIDUAL

2    ACTION BY THE STUDIOS, THE DMCA ARGUMENT GOES AWAY, ALL OF THE

3    CAUSATION ARGUMENTS GO AWAY.

4          THE CAUSE IS THE CREATION OF THE CSS LICENSE AGREEMENT

5    IN THAT FASHION.  FTC SS LICENSE AGREEMENT HAD BEEN CREATED IN

6    A FASHION THAT AUTHORIZED STUDIOS TO LICENSE REAL INDIVIDUALLY,

7    THEN EACH STUDIO COULD HAVE MADE THAT DETERMINATION ON ITS OWN

8    INDIVIDUALLY.

9          IT'S ADMITTED IN OPEN COURT TODAY THAT A STUDIO CANNOT

10   DO SO UNDER THE CSS LICENSE AGREEMENT, THAT IT REQUIRES THE

11   ASSENT OF ALL THE STUDIOS, THAT IS ALL THE CONCERTED ACTION WE

12   NEED, THAT RESOLVES THE CAUSATION ISSUE.

13         THE ONLY ISSUE THEN IS TRULY WHETHER THE AGREEMENT,

14   THE CSS LICENSE AGREEMENT AND THE CONSTRUCTION THE STUDIOS

15   EFFECTED IS ONE THAT RESTRAINS TRADE UNREASONABLY?

16         THERE'S NO NOERR-PENNINGTON ISSUE ASSOCIATED WITH THAT

17   LONG BEFORE LITIGATION BEGAN OR EVEN CONTEMPLATED.

18         **THE COURT:**  BUT IT WASN'T BEING ENFORCED, AT LEAST,

19   NOT THE OPPORTUNITY FOR THAT ENFORCEMENT.  IN FACT, AT ONE

20   POINT I UNDERSTOOD THAT THE POSITION THAT REAL TOOK WAS IT

21   DIDN'T NEED A LICENSE AND IT WAS FORGING AHEAD.

22         BUT THEN IT BROUGHT ITS ACTION ABOUT THE SAME TIME

23   THAT DEFENDANTS BROUGHT THEIR ACTION IN THE CENTRAL DISTRICT,

24   YOU BROUGHT A DEC RELIEF ACTION AND IN THIS COURT WITH REGARD

25   TO DMCA WITH REGARD TO THAT AGREEMENT.

1    **MR. JACOBSON:**  YES, WE DID.  AND WE BELIEVE WE WERE

2    RIGHT.

3        **THE COURT:**  THAT'S WHAT STOPPED THE MUSIC, SO TO

4    SPEAK.

5        **MR. JACOBSON:**  AT THE END OF THE DAY YOUR INJUNCTION

6    IS WHAT STOPPED US, THERE'S NO QUESTION ABOUT THAT.  I'M NOT

7    ARGUING OTHERWISE.

8        BUT I'M ARGUING THAT IN TERMS OF ANTITRUST CAUSATION

9    WHAT GETS YOU THERE UNDER YOUR ANALYSIS, WITH ALL RESPECT, AS

10   YOU KNOW, WE DON'T AGREE WITH YOUR ANALYSIS.

11       **THE COURT:**  YOU MAY NOT AGREE WITH ME.

12       **MR. JACOBSON:**  BUT WE'RE ACCEPTING IT.

13       **THE COURT:**  THAT'S THE LAW OF THE CASE RIGHT NOW.

14       **MR. JACOBSON:**  WE'RE ACCEPTING THAT LAW OF THE CASE

15   FOR PURPOSE OF THIS COMPLAINT.

16       **THE COURT:**  IS IT YOUR ARGUMENT THAT WITHOUT THAT

17   AGREEMENT THERE WOULD NOT BE ANY DMCA VIOLATION?

18       **MR. JACOBSON:**  YOUR HONOR, WITHOUT AN AGREEMENT THEN

19   WE WOULD NEED THE PERMISSION OF EACH INDIVIDUAL STUDIO TO COPY

20   THEIR CONTENT TO THE HARD DRIVE.

21       IF EACH INDIVIDUAL STUDIO SAID INDEPENDENTLY WITHOUT

22   CONSPIRING WITH THE OTHER, YOU CAN'T COPY MY CONTENT TO THE

23   HARD DRIVE AND WE DID IT ANYWAY THAT WOULD BE A DMCA VIOLATION,

24   THERE'S NO QUESTION ABOUT THAT, GIVEN YOUR HONOR'S RULING, BUT

25   THAT'S NOT WHAT HAPPENED.

1        WHAT HAPPENED IS AN AGREEMENT AMONG COMPETITORS THAT

2   THEY COULD NOT TAKE THAT INDIVIDUAL ACTION, THAT'S WHY THIS IS

3   AN ANTITRUST CASE, YOUR HONOR.

4        YOU HAD AN AGREEMENT AMONG THE, BASICALLY, THE ENTIRE

5   MOTION PICTURE INDUSTRY THAT SAID WE HAVE TO ACT TOGETHER TO

6   AUTHORIZE FIRMS SUCH AS REAL TO MAKE COPIES OF THE

7   CSS-PROTECTED CONTENT TO THE DVD.

8        THAT IS A SUBSTANTIAL ANTITRUST ISSUE, IT'S NOT ONE

9   THAT SHOULD REMOTELY BE RESOLVED ON A MOTION TO DISMISS, YOUR

10  HONOR.

11       **THE COURT:**  OKAY.  IS THERE ANYTHING ELSE YOU WANT TO

12  SAY?

13       **MR. JACOBSON:**  I DO WANT TO TALK BECAUSE A LOT OF TIME

14  WAS --

15       **THE COURT:**  BRIEFLY.

16       **MR. JACOBSON:**  I'LL BE AS BRIEF AS I CAN, BUT I DO

17  WANT TO BE RESPONSIVE TO YOUR QUESTIONS AND THE POINT OF, GEE,

18  WHAT ABOUT THE SECOND CIRCUIT'S DECISION ON REMAND IN THE ASCAP

19  CASE?

20       WHAT ABOUT THE DEFINITION OF THE RELEVANT MARKET HERE,

21  I THINK, REQUIRES TO BE ADDRESSED.  PARAGRAPH 99 OF THE

22  COMPLAINT DOES NOT SAY WHAT MR. POMERANTZ SAID IT SAID.

23       PARAGRAPH 99 SAYS THAT THE RELEVANT PRODUCT MARKET IS

24  THE PROVISION OF TECHNOLOGY THAT ENABLES CONSUMERS TO CREATE OR

25  OTHERWISE OBTAIN DIGITAL COPIES OF MOVIES AND TV SHOWS THAT

1   THEY OWN.

2        THAT'S WHERE HE STOPPED ON DVD'S, ON DVD'S.  THE

3   RELEVANT MARKET ALLEGED IN THIS COMPLAINT, WHICH IS NOT

4   CHALLENGED IN EITHER OF THE MOTIONS TO DISMISS, IS THE COPYING

5   OF CONTENT FROM DVD'S ONTO THE HARD DRIVE.  THAT IS WHAT THIS

6   AGREEMENT IN RESTRAINT OF TRADE PREVENTS, YOUR HONOR.

7        ONCE YOU ACCEPT THAT MARKET DEFINITION AND YOU HAVE TO

8   NOT ONLY BECAUSE IT'S A MOTION TO DISMISS, BUT BECAUSE IT'S NOT

9   EVEN THE SUBJECT OF ANY OF THE GROUND FOR DISMISSAL ALLEGED IN

10  THE MOTIONS.

11       ONCE YOU ACCEPT THAT MARKET DEFINITION, THEN IF YOU

12  TAKE A RULE OF REASON APPROACH THIS AGREEMENT HAS REDUCED

13  OUTPUT IN THAT MARKET TO ZERO.

14       THAT IS THE QUID ESSENTIAL RESTRAINT OF TRADE.  OUTPUT

15  REDUCTION IS THE CENTRAL PURPOSE OF THE ANTITRUST LAWS TO

16  PREVENT.  OUTPUT REDUCTION IS THE RESTRAINT OF TRADE THAT THE

17  SHERMAN ACT CONTEMPLATED FROM THE BEGINNING.

18       THIS AGREEMENT REDUCES OUTPUT IN THE MARKET THAT WE

19  ALLEGE TO ZERO, THAT'S ABOUT AS RESTRICTIVE AS YOU CAN GET.

20       NOW, WE CITE A NUMBER OF CASES AND I WILL REFER YOUR

21  HONOR IN PARTICULAR TO THE KRASNOV CASE AND THE PRIME TIME 24

22  CASE, KRASNOV SUPREME COURT CASE, IT'S A DISTRICT COURT CASE,

23  BUT IT WAS AFFIRMED ON DIRECT APPEAL BY THE SUPREME COURT.

24       THAT A CONCERTED REFUSAL TO LICENSE, WHICH IS WHAT

25  THIS IS AGREEMENT AMONG COMPETITORS THAT LICENSES CAN ONLY BE

1   GRANTED THROUGH THE CONSENT OF THE GROUP, THAT'S <u>KRASNOV</u>, IS A

2   PER SE VIOLATION OF THE ANTITRUST LAWS.

3           AND, AGAIN, AS I SAID, EVEN IF IT'S NOT PER SE, IT'S

4   PLAINLY RESTRAINT UNDER THE RULE OF REASON.  SO YOUR HONOR

5   CLEARLY HAS DIFFICULTIES, AS I CAN TELL, FROM THE QUESTIONS

6   THAT YOUR POSING TO ME.

7           AND IT MAY WELL BE IN THE COURSE OF DISCOVERY THE

8   CONCERNS THAT YOU RAISED ARE PROBED AND ULTIMATELY PROVED

9   DISPOSITIVE, I DON'T THINK SO.

10          I THINK, WE HAVE A SUBSTANTIAL CASE HERE.  I THINK, WE

11  HAVE A CARTEL ARRANGEMENT AMONG THE DOMINANT FIRMS IN THE

12  MOTION PICTURE BUSINESS TO PRECLUDE THIS SORT OF COMPETITION.

13  I THINK, THAT VIOLATES THE ANTITRUST LAWS.

14          BUT, AT A MINIMUM, THIS IS NOT THE SORT OF COMPLAINT

15  THAT SHOULD GO BY THE WAYSIDE UNDER RULE 12.  THIS IS ONE THAT

16  DETERMINES, SHOULD BE DETERMINED THROUGH DISCOVERY, RULE 56 AND

17  WE BELIEVE TRUMP.

18          THANK YOU VERY MUCH.

19          **THE COURT:**  MR. POMERANTZ.

20          **MR. POMERANTZ:**  YES, YOUR HONOR.

21          **THE COURT:**  BRIEFLY.

22          **MR. POMERANTZ:**  I WILL BE VERY BRIEF.

23          YOUR HONOR UNDERSTANDS OUR CAUSATION ARGUMENT, I JUST

24  WANT TO ADD ONE POINT.  MR. JACOBSEN SAID THAT THE CAUSE OF THE

25  INJURY WAS SOME HORIZONTAL AGREEMENT IN CONNECTION WITH THE

1    CSS, HE NEVER MENTIONED ARCCOS AND RIPGUARD BECAUSE THE

2    HORIZONTAL AGREEMENT THEY'RE ALLEGING HAS NOTHING TO DO WITH

3    ARCCOS AND RIPGUARD.

4          THAT WAS AN ENTIRELY INDEPENDENT BASIS OF YOUR HONOR'S

5    RULING UNDER THE DMCA AND ALSO IS A CAUSE, CLEARLY A CAUSE OF

6    THEM NOT BEING ABLE TO MARKET REAL DVD.  HAS NOTHING TO DO WITH

7    THE CONSPIRACY THAT THEY'RE ALLEGING.

8          SECOND, THEY MISSTATE WHAT THEY ALLEGE AND WHAT I

9    SAID.  THIS IS NOT A MATTER IF THEY NEED TO GO GET AN

10   AMENDMENT, IT DOESN'T MEAN THERE'S A HORIZONTAL AGREEMENT

11   AMONGST THE STUDIOS.  THERE IS AMENDMENT PROCEDURE UNDER THE

12   CSS LICENSE, DOESN'T MEAN THE STUDIOS HAVE TO AGREE.

13         THEY KNOW THAT, THEY KNOW WHAT THE BY-LAWS SAY.  THEY

14   DIDN'T ALLEGE THAT THERE'S A PROCEDURE TO GO THROUGH AMONGST

15   ALL THE INDUSTRY PARTICIPANTS BEFORE ONE CAN AMEND THE CSS

16   LICENSE, IT'S NOT A HORIZONTAL CONSPIRACY AMONG THE STUDIOS.

17         MR. JACOBSEN COMMENT ABOUT THEIR ALLEGATION OF

18   RELEVANT MARKET, I READ ON DVD'S, BUT WHAT HE'S OVERLOOKING IS

19   THE WORDS OR OTHERWISE OBTAINED.

20         YOU CAN OBTAIN A COPY OF A MOVIE THAT YOU OWN ON DVD

21   WITHOUT COPYING A CSS-PROTECTED DISK.  THEY KNOW THAT BECAUSE

22   THEY SPECIFICALLY ALLEGE THAT DIGITAL COPIES ARE IN THE SAME

23   MARKET.

24         IT'S NOT A MARKET THAT HAS ZERO PRODUCT IN IT, THEY

25   ALLEGE THAT DIGITAL COPIES WHICH DON'T INVOLVE CSS PROTECTION

1   ARE IN THE MARKET.  SO, AGAIN, HE'S JUST SIMPLY MISREADING HIS

2   OWN COMPLAINT.

3            I'M NOT GOING TO EVEN GO OVER THE WORDS OF PARAMOUNT'S

4   REPRESENTATIVES, YOUR HONOR, DOESN'T MATTER WHETHER HE DID OR

5   DIDN'T SAY THE WORD CARTEL.  THAT'S WHAT THEY'RE NOW SAYING,

6   IT'S NOT WHAT THE COMPLAIN SAYS.

7            EVEN IF THAT DOES SAY IT, YOUR HONOR WAS EXACTLY

8   RIGHT, WHAT ARE THE FACTS THAT SUPPORT THAT ALLEGATION THAT

9   THERE WAS A CARTEL?

10           WHAT THE FACTS ARE SOMETHING THAT'S ENTIRELY LAWFUL

11  AND PRO-COMPETITIVE, THAT BUNCH OF INDUSTRIES GETTING TOGETHER,

12  GETTING A LICENSE, ACTUALLY, TOSHIBA THE LICENSE SAYS THAT ON

13  ITS FACE, THEY'RE THE ONES THAT OWN THE UNDERLYING TECHNOLOGY,

14  THEN THEY COME UP WITH A NON-EXCLUSIVE TECHNOLOGY TO KEEP DISKS

15  FROM BEING COPIED, MOVIES FROM BEING COPIED, THERE'S NO CASE

16  OUT THERE THAT SAYS THAT THAT IS PER SE UNLAWFUL.

17           IT'S TOTALLY CONSISTENT WITH LAWFUL PRO-COMPETITIVE

18  BEHAVIOR.  THIS HAS BEEN A VERY PRO-COMPETITIVE LICENSE, IT HAS

19  CREATED HUNDREDS OF MILLIONS OF DVD'S OUT IN THE MARKETPLACE.

20  I THINK WITH THAT, I'LL MOVE ON.

21           **THE COURT:**  MR. STEER, ANYTHING YOU HAVE TO SAY?

22           **MR. STEER:**  TWO THINGS.

23           **THE COURT:**  BRIEFLY.

24           **MR. STEER:**  VERY BRIEFLY.

25           ONE, THE FACT WE DIDN'T MOVE TO CHALLENGE THE RELEVANT

1    MARKET DEFINITION AT THIS TIME HAS NOTHING TO DO WITH OUR

2    BELIEFS, IF WE EVER ARE REQUIRED TO RESPOND WE'LL DENY THAT

3    THAT'S NECESSARILY STATED VALID ANTITRUST MARKET.

4           BUT MORE IMPORTANTLY FOR PURPOSE OF MY CLIENT,

5    MR. JACOBSEN DID NOT IDENTIFY ANY FACTS THAT WOULD SUPPLY THE

6    BASIS FOR ANTITRUST CLAIMS AGAINST THE DVD CCA AND, THEREFORE,

7    WE RESPECTFULLY SUBMIT THAT THE COMPLAINT, THE CROSS-COMPLAINT,

8    I'M SORRY, THE COUNTERCLAIMS AGAINST DVD CCA SHOULD BE

9    DISMISSED WITHOUT LEAVE TO AMEND.

10          THANK YOU.

11          **THE COURT:**  I THINK, HIS ARGUMENT YOU ARE THE CARTEL.

12          **MR. JACOBSON:**  YOUR HONOR, MAY I, ONE SENTENCE?

13          **THE COURT:**  YES, VERY BRIEF, PLEASE.  DID YOU WANT TO

14   SAY ANYTHING ABOUT PARAMOUNT?

15          **MR. FRAHN:**  I DON'T NEED TO ADD ANYTHING TO AFTER WHAT

16   WE ALREADY SAID, WHAT MR. POMERANTZ COVERED.

17          **MR. JACOBSON:**  OUR POINT ON ARCCOS AND RIPGUARD, IF

18   THE STUDIOS WERE AUTHORIZED TO LICENSE THEIR INDIVIDUAL

19   CONTENT, WHICH THEY CAN BECAUSE OF CSS LICENSE AGREEMENT TO

20   WHICH THE ASSOCIATION IS A PARTY, THEN THEY WOULD BE ABLE TO

21   LICENSE RIPGUARD AND ARCCOS AS WELL AND THERE'S NO --

22          **THE COURT:**  THEY CAN LICENSE THEIR CONTENT, THEY CAN

23   INDIVIDUALLY LICENSE THEIR CONTENT, JUST THAT CONTENT WHICH IS

24   SUBJECT, WHICH IS NOT ALL OF THE CONTENT THAT THEY HAVE OUT

25   THERE IN THE MARKETPLACE, BUT THAT CONTENT THAT IS SUBJECT TO

1    CSS.

2              **MR. JACOBSON:**  THAT'S THE PROBLEM, YOUR HONOR, THEY

3    AGREED THAT THEY WON'T DO THAT INDIVIDUALLY.  SO THE ARCCOS AND

4    RIPGUARD NOT AN ISSUE, EACH STUDIO COULD DO THAT INDIVIDUALLY.

5    WHAT THEY CAN'T DO IS LICENSE A COPY OF THE CSS CONTENT AND

6    THAT'S THE CLAIM.

7              **THE COURT:**  THANK YOU.  ANYTHING FURTHER?

8              **MR. POMERANTZ:**  NOTHING FURTHER.

9              **THE COURT:**  THANK YOU.

10             **MR. POMERANTZ:**  THANK YOU.

11             **MR. JACOBSON:**  THANK YOU.

12             **THE COURT:**  WE'LL ISSUE AN ORDER AND WE'LL SEE WHERE

13   WE GO FROM THERE.  THANK YOU.

14

15                   (PROCEEDINGS ADJOURNED.)

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS.

I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

THE FEE CHARGED AND THE PAGE FORMAT FOR THE TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL CONFERENCE.

FURTHERMORE, I CERTIFY THE INVOICE DOES NOT CONTAIN CHARGES FOR THE SALARIED COURT REPORTER'S CERTIFICATION PAGE.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS 28TH DAY OF OCTOBER, 2009.


/S/  JAMES YEOMANS

_____

JAMES YEOMANS, CSR, RPR